# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| DON LIPPERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-CV-4603 |
| | ) | |
| SALVADOR GODINEZ, PARTHA GHOSH, | ) | Judge Ruben Castillo |
| M.D., WILLARD ELYEA, JOSEPH | ) | Magistrate Judge Morton Denlow |
| SSENFUMA, LOUIS SHICKER, QUENTIN | ) | |
| TANNER, ADRIAN BACOT, LANEL | ) | JURY TRIAL DEMANDED |
| PALMER, ALPHONSO NORMAN, c/o | ) | |
| MALDONADO, LIPING ZHANG, M.D., | ) | |
| GLORIA BRESKE, ATHENA ROSSITER, | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, and WEXFORD HEALTH | | |
| SOURCES, INC. | | |
| | | |
| Defendants. | | |

## SECOND AMENDED COMPLAINT

Plaintiff Donald Lippert ("Lippert") is a prisoner currently incarcerated in Stateville Correctional Center ("Stateville"), one of many adult correctional facilities of the Illinois Department of Corrections (the "IDOC"). Lippert brings this action on his own behalf and on behalf of all inmates with serious medical conditions who require either a medically prescribed diet or ongoing medical treatment and are continually denied that treatment.

The allegations made in this complaint are indicative of the serious and prevalent problems with the IDOC's entire system of providing adequate medical treatment to prisoners. In the last five years, nearly 3,000 cases have been filed in Illinois alleging inadequate prison conditions, including inadequate medical treatment. The Honorable Milton Shadur of the Northern District of Illinois commented on the prevalence of prisoner cases complaining of inadequate medical treatment in a recent opinion stating:

> If the random assignment of 42 U.S.C. § 1983 lawsuits by Illinois
> prisoners echoes the totality of such filings in this judicial district
> (as seems likely), the volume of such actions charging Dr.
> Parthasarathi Ghosh with constitutional violations under the Estelle
> v. Gamble rubric would appear to bespeak a litigation cottage
> industry.  And if even a fraction of those actions have merit . . .
> Dr. Ghosh would seem to be a walking malpractice action.[1]

These cases illustrate the recurring issues in the Illinois prison system which are having a detrimental effect on inmates in need of medical attention.  These inmates have no ability to choose a healthcare provider or otherwise exercise any choice in healthcare decisions.  Instead, the inmates are forced to accept the care provided by Wexford, IDOC, and those entities' employees, which is wholly inadequate and substandard, and left to grieve to a skeptical and unabashedly unsympathetic audience.

It is clear that the widespread and persistent mistreatment of Illinois inmates needing ongoing medical attention goes beyond the unresponsiveness or indifference of specific medical personnel.  It is also a consequence of overarching policies and procedures put in place and executed by both IDOC and Wexford, which policies and procedures limit, among other things, the resources and staff necessary to adequately treat inmates' serious medical conditions.

Understaffing of nurses, physicians, and other medical personnel is a chronic problem existing in correctional facilities throughout Illinois.  Over the past two years, the John Howard Association of Illinois ("JHA") has visited each of the Illinois Correctional Centers in order to assess, among other things, the medical and healthcare programs and facilities.  The extreme lack of medical staff was a serious and consistent issue in nearly all the Centers.

---

[1] *Piggott v. Ghosh, et al.,* 2011 U.S. Dist. LEXIS 97171, *1 (N.D. Ill. Aug. 30, 2011), attached hereto as Exhibit A.

For example, On June 26, 2011, JHA visited Menard Correctional Center in Chester Illinois. JHA's report after that visit stated, "Menard suffers from chronic understaffing of nurses . . .[which] is a major factor that undermines inmate's access to competent healthcare." JHA visited Hill Correctional Center on May 31, 2011 reporting, "a 13-month backlog for dental care and a one year backlog for eye care. . . [several inmates] reported not receiving their medications, and others [reported] being denied medical care for an ongoing condition." Similarly, JHA found that Danville Correctional Center "is plagued by staff vacancies" and Pontiac Correctional Center, "[l]ike many Illinois prisons, has a gaping hole in its medical health care staff." Finally, JHA's visit to Stateville Correctional Facility revealed "significant understaffing problems" in both medical and correctional staff, a problem which "has been normal at Stateville for at least four years."[2]

Thus, this Complaint is brought, in part, by way of a class action with the aim of redressing, once and for all, these problematic, overarching policies that have caused and continue daily to cause a systemic failure in the provision of adequate medical care to Illinois inmates.

Accordingly, Lippert, individually and on behalf of all others similarly situated, by and through his attorneys, and for his Complaint against defendants Salvador Godinez ("Godinez"), Partha Ghosh ("Ghosh"), Willard Elyea ("Elyea"), Joseph Ssenfuma ("Ssenfuma"), Louis Shicker ("Shicker"), Quentin Tanner ("Tanner"), Adrian Bacot ("Bacot"), Lanel Palmer ("Palmer"), Alphonso Norman ("Norman"), Ms. Maldonado ("Maldonado")[3], Liping Zhang

•  _____

[2] See http://www.thejha.org/publications for access to all JHA Executive Summaries detailing its visits to all Illinois Correctional Facilities.

[3] We have been unable to locate Ms. Maldonado's first name.

("Zhang"), Gloria Breske ("Breske"), Athena Rossiter ("Rossiter"), Wexford Health Sources,

Inc. ("Wexford"), and Illinois Department of Corrections ("IDOC") (collectively "Defendants"),

alleges and states as follows:

**NATURE OF THE ACTION**

1.      Lippert brings Count I and II of this action on behalf of himself and a class of

individuals similarly situated pursuant to 42 U.S.C. § 1983 to redress violations of Lippert's and

class members' rights under the Eighth and Fourteenth Amendments to the U.S. Constitution to

be free from cruel and unusual punishment while they are incarcerated in IDOC facilities.  In

connection with Counts I and II, Lippert seeks injunctive and declaratory relief, as well as

attorneys' fees, and court costs from Defendants.

2.      Lippert brings Count III of this action on behalf of himself and a class of

individuals similarly situated pursuant to 815 ILCS 505, alleging violation of the Illinois

Consumer Fraud and Deceptive Trade Practices Act against Wexford.  In connection with Count

III Lippert seeks actual and punitive damages.

3.      Lippert brings Count IV of this action on behalf of himself and a class of

individuals similarly situated alleging contract violations by both IDOC and Wexford, wherein

all IDOC inmates are the third party beneficiaries being damaged by IDOC and Wexford's

breaches of contract.  In connection with Count IV, Lippert seeks specific performance of the

terms set forth in the contract.

4.      Lippert brings Count V of this action on behalf of himself, alleging Elyea's and

IDOC's breach of a settlement agreement entered into on March 10, 2009.  See Settlement

Agreement and Release dated March 10, 2009 ("Settlement Agreement") (Exhibit B).[4]  In connection with Count V, Lippert seeks specific performance of the Settlement Agreement.

5.　　　Lippert brings Counts VI and VII of this action on behalf of himself pursuant to 42 U.S.C. § 1983 to redress violations of Lippert's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution to be free from cruel and unusual punishment while he is incarcerated in IDOC facilities.  In connection with Counts VI and VII, Lippert seeks injunctive and declaratory relief, as well as actual, consequential, and punitive damages, attorneys' fees, and court costs from Defendants.

## JURISDICTION AND VENUE

6.　　　Jurisdiction is conferred upon this Court for Counts I, II, VI, and VII pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the matters in controversy arise under the Constitution and laws of the United States.

7.　　　Supplemental jurisdiction is conferred upon this Court for Counts III, IV, and V pursuant to 28 U.S.C. § 1367.

8.　　　Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to Lippert's claims took place within the Northern District of Illinois.

9.　　　This Court has authority pursuant to 42 U.S.C. § 1983 to award appropriate actual, consequential, compensatory, and punitive damages, and has authority under 42 U.S.C. § 1988 to award attorney fees and costs to successful civil rights plaintiffs.

- _____

[4] Paragraph 13 of the Settlement Agreement limits its disclosure except when disclosure is "necessary to enforce the terms of the Agreement."  Disclosure is necessary for Lippert's action for breach of the Settlement Agreement.

5

10.     Lippert has exhausted all administrative remedies available to him prior to bringing this 42 U.S.C. § 1983 civil rights lawsuit within the meaning of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a).

## PARTIES

11.     Lippert is an inmate of Stateville (ID # B-74054).  He was incarcerated on or around February 29, 1996, and remains in custody to this day.

12.     Defendant Godinez is the current Director of IDOC.  Lippert sues Godinez in his official capacity.

13.     Defendant Ghosh was at all times relevant to this lawsuit the medical director at Stateville.  He has and had management and administrative responsibilities at Stateville, including Lippert's medical treatment and care at Stateville.  Ghosh is employed by Wexford.  Lippert sues Ghosh in his individual capacity.

14.     Defendant Elyea at all times relevant to Count I of this lawsuit was employed by IDOC as Agency Medical Director and had management and administrative responsibilities at IDOC, including Lippert's medical treatment and care at Stateville.  Lippert sues Elyea in his individual capacity.

15.     Defendant Shicker is employed by the IDOC as the current Agency Medical Director and has management and administrative responsibilities at IDOC, including Lippert's medical treatment and care at Stateville.  Lippert sues Shicker in his official capacity.

16.     Defendant Ssenfuma is, and at all times relevant to this lawsuit was, an employee of Stateville, acting as a Registered Nurse.  He has and had management and administrative responsibilities at Stateville, including inmate grievances and medical care.   Ssenfuma is employed by Wexford.  Lippert sues Ssenfuma in his individual capacity.

13628313v.4

17.     Defendant Tanner is, and at all times relevant to this lawsuit was, the Food Supervisor at Stateville.  He has and had management and administrative responsibilities at Stateville, including inmate dietary needs.  Lippert sues Tanner in his individual and official capacity.

18.     Defendant Bacot is, and at all times relevant to this lawsuit was, a certified Medical Technician at Stateville.  She has and had medical responsibilities, including administration of inmates' daily medical treatment.  Lippert sues Ms. Bacot in her individual capacity.

19.     Defendant Palmer is, and at all times relevant to this lawsuit was, a correctional officer at Stateville employed by IDOC.  He is and was the acting Sergeant for Cell House F ("F-House").  Lippert sues Sergeant Palmer in his individual and official capacity.

20.     Defendant Norman is, and at all times relevant to this lawsuit was, a correctional officer at Stateville employed by IDOC.  He is and was assigned to F-House.  Lippert sues Mr. Norman in his individual and official capacity.

21.     Defendant Maldonado is, and at all times relevant to this lawsuit was, a correctional officer at Stateville employed by IDOC.  She is and was assigned to F-House. Lippert sues Ms. Maldonado in her individual and official capacity.

22.     Defendant Zhang is, and at all relevant times was, a physician licensed to practice in the state of Illinois.  Defendant Zhang is either an employee of, or a contractor for, Stateville. Lippert sues Ms. Zhang in her individual capacity.

23.     Defendant Breske is, and at all relevant times was, a nurse licensed to practice in the state of Illinois.  Defendant Breske is either an employee of, or a contractor for, Stateville. Lippert sues Ms. Breske in her individual capacity.

13628313v.4

24.     Defendant Rossiter is, and at all relevant times was, a nurse licensed to practice in the state of Illinois.  Defendant Rossiter is either an employee of, or a contractor for, Stateville.  Lippert sues Ms. Rossiter in her individual capacity.

25.     Defendant Wexford is, and at all times relevant to this lawsuit was, engaged in the business of providing health care professionals and services to correctional facilities in Illinois, including Stateville.

26.     Defendant IDOC is, and at all times relevant to this lawsuit was, a government agency in charge of the administration of all Illinois state prisons.

## GENERAL ALLEGATIONS

### Lippert Suffers From Type I Diabetes

27.     Lippert is an inmate in the custody of Stateville who suffers from Type I Diabetes.  His diabetes was diagnosed prior to incarceration, and Lippert received treatment for his diabetes prior to his incarceration.

28.     Stateville maintains a catalog of inmates' various disabilities and medical needs, which include a database of inmates suffering from diabetes ("Diabetes Database").

29.     On or about September 16, 1999, Lippert was placed into the Diabetes Database at Stateville.

30.     The medical progress notes ("Notes") in the Diabetes Database from September 16, 1999, recognize that Lippert suffers from IDDM Type I Diabetes, which was first diagnosed in 1990.  See Notes dated September 16, 1999 (Exhibit C).

### Based on Lippert's Type I Diabetes, Lippert Requires a Specified Medical Diet and Ongoing Medical Treatment and Care

31.     To treat his Type I Diabetes, Lippert was prescribed a special medical diet and daily insulin shots.

8

32.     While incarcerated at Stateville, it was ordered that a nurse or certified medical technician was to test Lippert's blood sugar level daily, administer his insulin shots, and provide other medical care as needed.

33.     Frequent testing and timely insulin shots are critical to Lippert's safety and health.

34.      IDDM Type I Diabetes requires a daily diet of 2800 calories pursuant to the American Diabetes Association ("ADA").  The Notes further recognize Lippert's need for such a diet and that Lippert agrees to comply with this diet.  See Exh. C.

35.     On May 7, 2001, then Medical Director at Stateville, Dr. Joseph K. Smith, emphasized that Type I Diabetes requires "management of LDL and total cholesterol values within a strict range," noting further that "diet" plays a "pivotal" role in the management of Type I Diabetes.  See Memorandum from Medical Director Dr. Joseph K. Smith, dated May 7, 2001 (Exhibit D).

36.     Due to Lippert's grave concerns about the indifference to his medical needs, on July 2, 2004, Lippert contacted the then current Director of IDOC, Roger Walker, notifying him as to the ineffective medical treatment that he was receiving, including an improper and non-compliant diet, and requesting a medical transfer to Dixon Correctional Center so that Lippert could receive proper medical care.

37.     On February 18, 2005, Defendant Ghosh drafted a letter memorandum, which appears to be addressed to certain inmates with diabetes, including Lippert.  The memorandum indicates that official policy at Stateville for diabetes will change from a calorie-controlled diet to an "LCS" diet, or "Low Concentrated Sweets" diet, which restricts concentrated sweets such as "sugar, candy, honey, jelly, jam, syrup, pies, cakes, puddings and sweetened soft drinks, etc."  See February 18, 2005 Memorandum from P. Ghosh re: Diabetic Diet (Exhibit E).

38.     Defendant Ghosh distributed this memorandum to several other individuals, including Defendant Tanner, the food supervisor at Stateville, thereby placing Defendant Tanner on notice of the need to supervise diabetic diets to conform to the diabetic diet policy at Stateville.

39.     After receiving the memorandum from Ghosh, Lippert repeatedly complained to Ghosh and other medical officials that he was not being provided an LCS diet, and that he continued to receive the standard prison diet, including sweets, desserts and other items expressly prohibited in Ghosh's memorandum of February 18, 2005.

40.     As Ghosh acknowledges in his memorandum, "it is important for a diabetic to eat a consistent amount of carbohydrate at each meal; while limiting [] intake of sweets and sugar containing food."  The standard prison diet does not provide the type and number of calories required for an individual suffering from diabetes and thus, is wholly inadequate.

41.     In April 2008, Lippert filed a grievance seeking nothing more than to receive the proper diet as prescribed by Defendant Ghosh, including "fresh fruits, fresh or steamed beans and starchy vegetables and whole grains," as well as "unrefined carbohydrates."  See Offender's Grievance dated April 20, 2008 (Exhibit F).

42.     On May 19, 2008, the RN Supervisor, Defendant Ssenfuma purportedly "reviewed" Lippert's chart and "investigated" the grievance.  See Memorandum dated May 19, 2008 (Exhibit G).

43.     Defendant Ssenfuma stated that, despite numerous documents reflecting the need and existence of a diabetic diet, no special diabetic diet existed.  Defendant Ssenfuma stated that the only "special diets" were "dental" for people with no teeth, "rend [*sic*]" for people with end-stage renal disease, and "vegan" a "Hebrew diet".  Id.

10

**Lippert Files Two Lawsuits Alleging Violation of His Constitutional Rights**

44.     Lippert exhausted all his administrative remedies through adherence to the proper grievance procedures.

45.     Thereafter, Lippert filed two complaints in the Northern District of Illinois against various employees of IDOC alleging violations of his rights for insufficient medical care of his diabetic condition, including an inadequate diet.  See *Lippert v. Willard Elyea, et al.*, No 06 CV 3537 (N.D. Ill. 2006); *Lippert v. Kimberly Williams, et al.*, No. 08 CV 6324 (N.D. Ill. 2008) (together the "Previous Actions").

46.     On March 10, 2009, the parties to the Previous Actions settled Lippert's claims by way of the global Settlement Agreement.

47.     Pursuant to the Settlement Agreement, Lippert agreed to release and forever discharge the defendants in the Previous Actions for claims "which arose or could have arisen from the facts alleged or claims made in the actions. . . from the beginning of time until the *effective date of this Agreement*."  See Settlement Agreement, Exh. A, ¶ 6 (emphasis added).

48.     At the same time, IDOC, Elyea, and the other parties to the Settlement Agreement agreed "to continue to provide [Lippert] with adequate medical care as prescribed by his current and future physicians."  See Exh. B, ¶ 5.

**Lippert Continues to be Deprived of His Medically Prescribed Diet**

49.     Since the effective date of the Settlement Agreement, Lippert has not received his medically prescribed diet and to date, Defendant IDOC and Elyea have not adhered to the terms of the Settlement Agreement and have willfully breached their express promises by, among other things, failing to provide Lippert with his medically prescribed diet.  Their breach continues to this day.

13628313v.4

50. While the order to provide diabetic patients such as Lippert with LCS diets as prescribed by Defendant Ghosh in 2005 remains in place, Lippert, to this day, has still never received such a diet.

51. As a result of an overarching policy with respect to food service at Stateville, Wexford and IDOC have continually refused to provide the LCS diet, or any other medically prescribed diets, to inmates with specific dietary needs.

52. This continued failure to provide Lippert with an adequate diet causes him to suffer ongoing injuries related to his serious medical condition, including, without limitation, diabetic neuropathy, severe headaches, weight loss, poor vision, severe fluctuating blood sugar levels and pain/numbness in his hands, feet, and legs. In fact, Lippert's injuries, caused by Defendants' nonfeasance, have required emergency treatment on several occasions.

**Lippert Receives Inadequate Medical Care for His Diabetes on May 1, 2010**

53. On May 1, 2010, while issuing insulin shots to F-House diabetic inmates, Defendant Bacot, knowing that Lippert was an insulin dependent diabetic, refused to provide Lippert with his insulin shot. See Grievance 1 filed May 12, 2010 (Exhibit H).

54. As a result, Lippert suffered severe diabetic complications of hypoglycemia, causing Lippert to become extremely weak and dizzy. See Grievance 2 filed May 12, 2010 (Exhibit I).

55. Lippert informed Defendant Palmer that he needed medical attention because Bacot refused to administer his insulin shot. Palmer purportedly called the infirmary for assistance, but when no nurse or certified medical technician responded to the call, Palmer failed to follow up with the infirmary in a reasonable manner to safeguard Lippert's health. Palmer also refused to have Lippert escorted to the healthcare unit for assistance. Palmer's actions exhibit a deliberate indifference to Lippert's medical health. Id.

13628313v.4

56.     As a result of his hyperglycemia complications, Lippert collapsed on the floor in severe pain.  Defendants Norman and Maldonado, both aware that Lippert suffered from Type I Diabetes, observed Lippert in this condition but despite their duty and obligation to assist, Defendants Norman and Maldonado refused to help.  Id.

57.     An unreasonable amount of time later, two nurses came to Lippert's cell to check his blood sugar levels, finding it at a dangerous level of 451.[5]  Based on the reading, Lippert was rushed to the emergency unit, where he immediately received a shot of insulin.  Id.

58.     After receiving the insulin, Lippert was interviewed by Defendant Zhang, who prescribed another dose of insulin after dinner.  See Grievance 3 filed May 12, 2010 (Exhibit J).

59.     However, after dinner, despite his requests, Defendants Breske and Rossiter refused to provide Lippert with the insulin shot prescribed by Defendant Zhang.  Id.

60.     Defendant Breske told Lippert Dr. Zhang's medical orders were that if Lippert's blood sugar level was normal, he was to receive no insulin.  Lippert was sent back to F-House without receiving any insulin.  Id.

61.     Later than night, Lippert asked Defendant Rossiter, who was distributing medication in F-House, to test his blood sugar levels because he felt very sick and weak.  Defendant Rossiter stated that she would return to test his blood sugar levels and give him insulin once she completed her duties in F-House.  Id.

62.     Defendant Rossiter never returned.  Lippert again began to suffer from complications of hypoglycemia, causing him to collapse to the floor and vomit.  Id.

•       _____

[5] Average blood sugar levels range from 70 to 180 depending on the time of day.  See American Diabetes Association Guidelines.

63. With respect to the incident on May 1, 2011, Lippert has exhausted all his administrative remedies through adherence to the proper grievance procedure.

64. Defendants' continued failure to provide Lippert adequate medical treatment causes him to suffer ongoing injuries related to this serious medical condition, including, without limitation, diabetic neuropathy, severe headaches, weight loss, poor vision, severe fluctuating blood sugar levels and pain/numbness in his hands, feet, and legs. In fact, Lippert's injuries, caused by Defendants' nonfeasance, have required emergency treatment on several occasions.

**Inadequate Medical Care Results from Fundamental Issues with the System as a Whole and Problematic Policies and Procedures or Lack Thereof.**

65. Lippert's individual instances of receiving horribly inadequate medical treatment are illustrative of the overarching and systematic failures of prison medical treatment as a whole.

66. As the U.S. rate of incarceration has soared over the past decade, the number of inmates suffering from serious medical conditions and needing consistent medical treatment has soared as well. The IDOC and its contractor for medical services, Wexford, have failed miserably to deal with this problem. Further, as the number of inmates needing medical treatment increases, the availability of medical staff, medicine, and resources has decreased.

67. A serious medical condition has been defined by the courts as a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *See Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Such Serious Medical Conditions trigger the protections of the Eighth Amendment.

68. Far too often inmates' requests for medical treatment are delayed, ignored, or flat out denied. The inmates are subjected to brutality and harassment by both the correctional staff and medical staff. Inmates may be denied their necessary medication or refused admittance into

the infirmary simply because the staff member dislikes the prisoner or seemingly for no reason at all.

69.     The following paragraphs are just a few examples of  prisoners in various Illinois Correctional Facilities and are purely to demonstrate the persistent problem existing with the medical care provided in the Illinois Correctional Facilities and why this case would be best suited for class treatment.

70.     Andrew Adams ("Adams') was an inmate at Western Correctional Center.  While incarcerated, due to a former injury, Adams had constant pain and discomfort in his hand, therefore, Adams was sent to the University of Illinois Medical Center for reconstructive surgery during which eight steel rods were permanently placed in his right hand and  he was fitted with a cast.  Sometime later the cast was replaced but was so tight Adams could not feel his hand and was forced to pull the cast off himself.  Thereafter, Adams requested follow-up treatment for his hand, a replacement cast, and a bottom bunk; however, his request for all three were summarily denied.  On Oct. 10, 2010, Adams fell from his top bunk landing on his right side causing all eight steel rods to dislodge from his hand.

71.     David Damm ("Damm") is an inmate at Pontiac Correctional Center who suffers from Ankylosing Spondylitis (a form of spinal arthritis that fuses the bones together).  Under the care of Wexford, Damm had his treatment changed by the Doctor and Administrators in a cost saving method that causes Damm terrible pain and suffering.  First, the amount of Remecaid was reduced from 500 mg to 400 mg every six weeks.  Additionally, even though it is ordered that Damm receive the Remecaid every six weeks, at Pontiac Correctional Center, Damm has never received his Remecaid infusion in six weeks, and there have been periods where he has been forced to wait ten weeks before receiving his Remecaid infusions.  Due to these changes in his

15

treatment, Damm is in constant pain 4 1/2 weeks after the infusion is administered and the pain increases as the days pass.

72.     Randy Liebach ("Liebach") is an inmate at Stateville.  On November 5, 2009, Liebach was seen by the Stateville doctor who found his Creatine levels were significantly above normal indicating issues with his kidney.  On January 5, 2011, Liebach began complaining of severe pain in his right kidney and lower stomach area.  On January 6, 2011 Liebach was seen by a doctor but was not given any treatment or pain medication.  In the following months, Liebach continued to submit sick call requests and complain of severe pain but was never seen by a doctor.  On June 21, 2010, Liebach informed the correctional officer that he was in terrible pain and there was blood in his urine, but the correctional officer told him he did not need to see a doctor.  Finally, on June 26, 2010, Liebach was granted permission to see a doctor who discovered a large kidney stone was lodged in Liebach's urethra.  The doctor then proceeded to pull the kidney stone out of the tip of the urethra using a pair of tweezers and no local anesthesia.  This medical procedure caused Liebach extreme and unnecessary pain and resulted in the doctor puncturing Liebach's urethra with the tweezers causing more pain and damage.  Ultimately, Liebach was sent to St. Joseph's where surgery was ordered.  Upon returning to Stateville, Liebach was again consistently denied treatment for pain and other symptoms related to his kidney issues.

73.     As demonstrated, for those inmates with Serious Medical Conditions that are actually able to obtain occasional medical care, the treatment is grossly substandard.  Conditions are often misdiagnosed if screening is conducted at all, inmates' medication is often delayed if given at all, and patients are often not permitted to see a doctor until they are in such severe pain or their condition has deteriorated to such an extent that emergency action needs to be taken.

13628313v.4

74.     However, this routinely poor treatment is no surprise considering that the IDOC's

contracts with Wexford, signed year after year by the director of IDOC, contains no enforceable

standards governing the quality of care provided to prisoners.

75.     The careless, inconsistent, and indifferent care Lippert and other inmates with a

Serious Medical Condition have received is emblematic of Defendants' violations of the

constitutional and legal rights of inmates and their deliberate indifference to them.  Lippert and

the class members have suffered and will continue to suffer greatly and unnecessarily as a result.

## CLASS CERTIFICATION ALLEGATIONS

76.     Lippert seeks certification of a class under Federal Rule of Civil Procedure

("Rule" or "Rules") 23.`

77.     **Definition of the Class:**  Lippert seeks certification of the following class:

> All people who are or will be confined in an Illinois adult
> correctional center, suffering from a Serious Medical Condition
> who have not received adequate medical treatment as a result of
> misconduct of Wexford, its staff members, and/or individual
> employees of Illinois Department of Corrections.

78.     **Definition of Sub-Class 1:**  Lippert seeks certification of the following sub-class:

> All people who are or will be confined in an Illinois adult
> correctional center, suffering from a Serious Medical Condition,
> who require a specific medically prescribed diet, and who have or
> are not receiving that diet during the Class Period.

79.     **Definition of Sub-Class 2:**  Lippert seeks certification of the following sub-class:

> All people who are or will be confined in an Illinois adult
> correctional center, suffering from a Serious Medical Condition,
> who require consistent, periodic medical treatment and who have
> not received that treatment as prescribed in a timely manner during
> the Class Period.

80.      **Numerosity**:  The exact number of the members of the Class is unknown and is

not available to Lippert, but it is clear that individual joinder is impracticable.  Illinois

correctional facilities house hundreds of inmates suffering from ongoing Serious Medical Conditions, all of whom, upon information and belief, require specific medically prescribed diets and/or medical treatment.  Class members can be easily identified through prison records that are available to Defendants.

81.     **Commonality:**  Common questions of fact and law exist as to all members of the class and predominate over the questions affecting only individual members.  In this case, Defendants had, and continue to have, policies and practices of failing to provide inmates suffering from serious medical conditions their medically prescribed diet and/or timely medical treatment.   Other common questions of law and fact include:

(a)     Whether Wexford has or had a policy or practice of failing to prescribe an adequate LCS or other medically prescribed diets;

(b)     Whether Wexford has implemented a cost-cutting policy resulting in the inability or refusal to prescribe the necessary LCS and other medically prescribed diets;

(c)     Whether IDOC has implemented a cost-cutting policy consisting of a reduction in staff, which led to untimely administration of medications and daily treatments of the class members;

(d)     Whether Defendants' policies and practices of failure to provide necessary medical treatment in a timely fashion violate the 8th Amendment; and

(e)     Whether class members are entitled to relief, and if so, the nature thereof.

82.     **Typicality**:  Lippert's claims are typical of the claims of the other members of the class, as Lippert sustained damages arising out of the same wrongful conduct of Defendants. Defendants violated Lippert's constitutional rights by failing to provide him with adequate medical treatment, *i.e.* his medically prescribed diet, timely administration of his insulin shots, and timely response to his hypoglycemic symptoms.  Similarly, Defendants disregarded the class members' needs for a medically prescribed diet and timely administration of medication and other treatment.

18

83.     **Adequate Representation:**  Lippert will fairly and adequately represent and protect the interests of the members of the class because he possesses the same interests and suffered the same injuries as the class members.  Lippert has no interest antagonistic to those of the class.  Further, Lippert has counsel competent and experienced in complex class actions.

84.     **Rule 23(b)(1):**  There is a clear likelihood that adjudication of these claims through separate suits would subject members of Defendant Class to potentially incompatible standards of conduct.

85.     **Rule 23(b)(2):**  Lippert seeks declaratory and injunctive relief on his behalf and on behalf of the class, thereby providing a vehicle to redress Defendants' civil rights violations on a class-wide basis.

**COUNT I**
<u>Failure to Provide Medically Prescribed Diet</u>
(Alleged on behalf of all others similarly situated against Wexford, Shicker, and Godinez)

86.     Lippert repeats and re-alleges the allegations contained in paragraphs 1 through 85 as if fully restated here.

87.     Defendants Wexford, Shicker, and Godinez are aware of which inmates suffer from serious medical conditions that, if not properly treated, pose serious medical harm to the afflicted individuals.

88.     Upon information and belief, through Defendants Godinez and Shicker, IDOC has implemented a cost cutting policy that resulted in its failure to provide the medically prescribed diet to the class members.

89.     Through Defendants Godinez and Shicker, IDOC maintains other policies related to medical and health services which restrict the class members' access to their medically prescribed diets.

19

13628313v.4

90.     Upon information and belief, Defendant Wexford is responsible for prescribing any medically necessary diets to inmates.

91.     Upon information and belief, Wexford has implemented a cost cutting policy that resulted in its failure to prescribe medically prescribed diets to the class members.

92.     Upon information and belief, Wexford has other policies and/or procedures in place that resulted in its failure to prescribe medically prescribed diets to the class members.

93.     Defendants Wexford, Shicker, and Godinez are aware of the dietary needs of patients with certain serious medical conditions and are aware that the policies and procedures of IDOC and/or Wexford result in denial of these medical diets to the class members.

94.     Defendants Wexford, Shicker, and Godinez each intentionally, through repeated acts of disregard, or with deliberate indifference to the serious medical needs of class members, continue to provide the standard prison diet to class members, thereby failing to provide medically prescribed diets and failing to take steps to ensure that inmates' treatment plans are properly carried out.

95.     Defendants Wexford, Shicker, and Godinez denied access to adequate medical dietary care and knowingly disregarded excessive risks to their health and well-being by, among other things, (a) refusing to take corrective action measures; and (b) allowing and condoning the actions of the medical department in disregarding an instituted dietary policy at Stateville.

96.     Each of the above-described actions are contrary to Defendants Wexford, Shicker, and Godinez's individual duty to provide sound medical care necessary for treating and managing the class members' serious medical conditions.  Alternatively, Defendants Wexford, Shicker, and Godinez have failed to institute proper policies and procedures at Stateville and throughout Illinois prisons to ensure the class members' receipt of sound medical care.

WHEREFORE, Plaintiff Don Lippert, on behalf of others similarly situated, respectfully requests that this Court:

A.    Determine that the action is proper as a class action maintainable under Rule 23;

B.    Declare the conduct of Defendants Wexford, Shicker, and Godinez to have violated the rights guaranteed to the class members under the Eighth and Fourteenth Amendments to the United States Constitution;

C.    Grant an Order:  (i) enjoining and prohibiting Defendants Wexford, Shicker and Godinez, and their successors from further depriving class members' constitutional rights; and (ii) requiring Defendants Wexford, Shicker, and Godinez and their successors to ensure that the class members receive their medically prescribed diets; and

D.    Award Lippert his costs and reasonable attorneys' fees incurred in connection with this class count pursuant to 42 U.S.C. § 1988.

## COUNT II
### Failure to Provide Adequate Medical Treatment
(Alleged on behalf of the class members and against Defendants Wexford, Shicker, and Godinez)

97.    Lippert repeats and re-alleges the allegations contained in paragraphs 1 through 96 as if fully restated here.

98.    Defendants Wexford, Shicker, and Godinez are aware of all inmates that require timely medical treatment, such as medication or insulin shots, on a daily basis.

99.    Based upon an overarching practice not to follow the written policies of Wexford or IDOC, Defendants Wexford, Shicker, and Godinez have caused class members to suffer countless experiences of untimely and inadequate medical treatment.

100.    Upon information and belief, through Defendants Godinez and Shicker, IDOC has instituted cost cutting policies related to medical and health services which restrict the class members' access to their timely and adequate medical care.

13628313v.4

101.    Upon information and belief, Wexford has implemented a cost cutting policy that resulted in, among other things, reduction in staff and its failure to provide timely medical treatment to the class members.

102.    Upon information and belief, Wexford has other policies and/or procedures in place that resulted in its failure to provide timely medical treatment to the class members.

103.    Wexford refuses to fill critical medical positions.  Wexford refuses to grant off-site visits for seriously ill inmates.  Wexford refuses to renew critical prescription medicine for inmates.  In short, Wexford's insistence on the bottom line over the care of its charges causes inmates to suffer, sometimes with lasting, even fatal, results.

104.    Defendants Wexford, Shicker, and Godinez have denied the class members access to adequate medical care and knowingly disregarded excessive risks to their health and well-being by, among other things, (a) refusing to take corrective action measures; and (b) allowing and condoning the actions of the medical department in disregarding an instituted dietary policy at Stateville.

105.    Defendants Wexford, Shicker, and Godinez's ongoing deliberate indifference to the class members' medical needs has deprived them of their right to be free from cruel and unusual punishment as secured to them under the Eighth and Fourteenth Amendments to the United States Constitution, and has resulted in actual physical and medical harm.

WHEREFORE, Plaintiff Don Lippert, on behalf of others similarly situated, respectfully requests that this Court:

A.      Determine that the action is proper as a class action maintainable under Rule 23;

B.      Declare the conduct of Defendants Wexford, Shicker, and Godinez to have violated the rights guaranteed to the class members under the Eighth and Fourteenth Amendments to the United States Constitution;

C.      Grant an Order:  (i) enjoining and prohibiting Defendants Wexford, Shicker, and Godinez, and their successors from further depriving the class members of their constitutional rights; and (ii) requiring Defendants Wexford, Shicker, and Godinez, and their successors to ensure that the class members receive their daily medical treatment on a timely basis and in accordance with IDOC's and Wexford's medical policies and procedures; and

D.      Award Lippert his costs and reasonable attorneys' fees accrued in accordance with this class count pursuant to 42 U.S.C. § 1988.

**COUNT III**

Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act - 815 ILCS 505
(Alleged on behalf of the class members and against Defendant Wexford**)**

106.    Lippert repeats and re-alleges the allegations contained in paragraphs 1 through 105 as if fully restated herein.

107.    At all times relevant to this Complaint, Wexford was a private company that contracted with IDOC and thus was engaged in the conduct of trade and commerce in Illinois. Wexford's conduct of its business in Illinois directly and indirectly affects the people of the State of Illinois.

108.    Wexford makes affirmative representations regarding its technological, administrative and medical services that it offers to entities such as the State of Illinois and its correctional facilities, as well as being able to provide exceptional quality medical care for the inmates of those facilities.  In truth, Wexford's representations could not be further from the truth, as demonstrated by the thousands of lawsuits brought against Wexford in the past two years.

109.    While Wexford provides medical services, its misrepresentations and omissions exceed simple medical care, but extend to each area of purported expertise Wexford declares, including its offering of  medical, behavioral health, pharmacy, utilization management, provider contracting, claims processing and quality management services, as represented on its website at www.wexfordhealth.com.

110.    Wexford's mischaracterization of the quality of its services constitutes a deceptive act under Illinois law.  Further, Wexford's false representations that its services are excellent while, in fact, inmates at facilities around Illinois suffer on account of the deliberate indifference of Wexford's personnel, constitute a deceptive trade practice under Illinois law.

111.    Wexford materially misstates and/or omits relevant facts regarding the quality of the services it will provide to the State of Illinois, its correctional facilities, and the inmates within those facilities, with an intent that others, namely IDOC and other state agencies, will rely upon the statements (*i.e.*, renew Wexford's contract).

112.    Lippert and those similarly situated have suffered actual damages as a result of Wexford's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

113.    Additionally, Wexford's misconduct is outrageous in that its deliberate indifference to inmates' medical care, all for the sake of a healthy profit margin, is done with an evil motive or carried out with a reckless indifference toward the rights of others.

114.    Wexford's representations about the quality of medical care its personnel provides to inmates is belied by the pain and suffering experienced by Lippert and other similarly situated inmates.  Yet such representations are sufficient to earn Wexford million-dollar contract renewals and perpetuate the inadequate medical care provided to inmates on a daily basis.

WHEREFORE, Plaintiff Don Lippert, on behalf of others similarly situated, respectfully requests that this Court:

A.    Hold Defendant Wexford liable and Award the class members actual damages in an amount to be proven at trial;

B.    Award the class members punitive damages to deter Defendant Wexford from engaging in similar conduct in the future; and

C.    Award class members any other relief as this Court deems just, proper, and equitable.

24

## COUNT IV
### Breach of Contract
(Alleged on behalf of the class members and against Defendant Wexford and IDOC)

115.  Lippert repeats and re-alleges the allegations contained in paragraphs 1 through 114 as if fully restated here.

116.  At all times relevant to this Complaint, Wexford was a private company that contracted with IDOC.

117.  By the terms of said agreement, Wexford was to supply health services to inmates at IDOC prisons and the medical personnel including, but not limited to, staff physicians and nurses.  See Contract between Wexford and IDOC (Exhibit K).

118.  The Contract requires that Wexford "ensure that all medical services are provided in accordance with medically accepted community standards of care." Id. at p. 5, paragraph 2.3.1.

119.  This agreement was made for the benefit of IDOC inmates, including the class members, and as a result, Wexford had a duty to the class members to ensure that they receive appropriate and adequate medical attention and treatment while incarcerated.

120.  Wexford, by and through its contracted medical personnel, employees and agents, breached this agreement by failing to provide the appropriate attention and adequate care for the serious medical needs of the class members.

121.  IDOC, by and through Defendant Godinez, breached this agreement by failing to provide the appropriate attention and adequate care for the serious medical needs of the class members.

122.  Furthermore, under Illinois law, an entity or individual providing medical care has an implied contractual obligation to use proper skill and care and to provide proper medical aid.

123.    As a result, the class members were caused to suffer, among other things, great pain and mental anguish.

WHEREFORE, Plaintiff Don Lippert, on behalf of others similarly situated, respectfully requests that this Court:

A.    Order specific performance from Defendants Wexford and Godinez; and

B.    Award class members any other relief as this Court deems just, proper, and equitable.

**COUNT V**
Breach of Contract
(Alleged on Behalf of Lippert Only against Defendants Elyea, Shicker, and IDOC)

124.    Lippert repeats and re-alleges the allegations contained in paragraphs 1 through 123 as if fully restated here.

125.    On March 10, 2009, Lippert entered into the Settlement Agreement with, among others, Elyea and IDOC.

126.    Pursuant to Paragraph 5 of the Settlement Agreement (and state and federal law), Elyea, his successors, and IDOC have a continuing obligation to provide Lippert with "adequate medical care as prescribed by his current and future physicians."  See Exh. A.

127.    In breach of the Settlement Agreement and as described above from March, 11, 2009 to present, Elyea and IDOC have failed to provide or ensure that Lippert receives his medically prescribed diet and adequate medical treatment in general.

128.    As a direct and proximate result of the breach of the Settlement Agreement, Lippert has suffered damages and is entitled to specific performance of the Settlement Agreement.

WHEREFORE, Plaintiff Don Lippert respectfully requests that this Court:

A.    Order specific performance from Elyea and/or his successor, and IDOC so as to enforce the stated terms of the Settlement Agreement; and

26

13628313v.4

B.      Grant such other relief as the Court deems appropriate.

**COUNT VI**
Failure to Provide Medically Prescribed Diet
(Alleged on Behalf of Lippert individually and against Ghosh, Shicker, Ssenfuma, and Tanner)

129.    Lippert repeats and re-alleges the allegations contained in paragraphs 1 through 128 as if fully restated here.

130.    Defendants Ghosh, Shicker, Ssenfuma, and Tanner ("Count VI Defendants") know that Type I Diabetes is a serious medical condition and, if not properly treated, poses serious medical harm to individuals suffering from it.

131.    Since before the date of his incarceration, Lippert has suffered from an objectively, sufficiently serious medical condition, namely Type I Diabetes, which requires ongoing medical care and treatment, including strict adherence to Lippert's dietary needs.  The need for such dietary care is well-documented in Lippert's records, and well-recognized in this Circuit.

132.    Ghosh, as lead physician for Wexford at Stateville, is on notice of Lippert's serious medical dietary needs related to his Type I Diabetes.  In fact, in 2005, Ghosh amended the official policy of Stateville regarding the dietary needs of diabetic inmates.

133.    Defendant Shicker, as Agency Medical Director, is on notice of Lippert's required LCS diet to treat his Type I Diabetes.

134.    Since as early as 2005, Defendant Tanner has been on notice of Lippert's serious medical dietary needs related to his Type I Diabetes and the official diabetic diet in place at Stateville.

135.    Since as early as 2008, Defendant Ssenfuma has been on notice of Lippert's serious medical dietary needs related to his Type I Diabetes and the official diabetic diet in place at Stateville.

27

136.     Although Lippert resolved similar issues in his Settlement Agreement (Exh. A), the inadequate medical treatment alleged in this Count refers to the continuing constitutional violations of Lippert's rights since March 2009.

137.     Since March 2009, the Count VI Defendants each intentionally, through repeated acts of negligence, or with deliberate indifference to the serious medical needs of Lippert, disregarded and failed to follow Lippert's medically prescribed diets and failed to take steps to ensure that Lippert's treatment plans were properly carried out, including providing a routine and healthy medically prescribed diet.

138.     Since March 2009, each Count VI Defendant has continued to deny Lippert access to adequate medical dietary care and knowingly disregarded excessive risks to his health and well-being by, among other things, (a) refusing to take corrective action measures; and (b) allowing and condoning the actions of the medical department in disregarding an instituted dietary policy at Stateville.

139.     Each of the above-described actions were in contravention of the policies and procedures in place at Stateville and contrary to sound medical care for treating and managing Lippert's Type I Diabetes.  Alternatively, Count VI Defendants failed to institute proper policies and procedures at Stateville and throughout Illinois prisons to ensure Lippert's receipt of sound medical care.

140.     Count VI Defendants continue to refuse to provide Lippert the proper medical care and the medically necessary diet prescribed by Ghosh.

141.     Count VI Defendants' ongoing deliberate indifference to Lippert's medical needs has deprived Lippert of his right to be free from cruel and unusual punishment as secured to him

under the Eighth and Fourteenth Amendments to the United States Constitution, and has resulted

in actual physical and medical harm to Lippert.

WHEREFORE, Plaintiff Don Lippert respectfully requests that this Court:

A.  Declare the conduct of Count VI Defendants to have violated the rights guaranteed to Lippert under the Eighth and Fourteenth Amendments to the United States Constitution;

B.  Grant an Order: (i) enjoining and prohibiting Count VI Defendants, their successors, and other current and future employees of IDOC and Wexford from further depriving Lippert of his constitutional rights; and (ii) requiring Count VI Defendants and their successors to ensure that Lippert receives his medically prescribed diets;

C.  Award Lippert actual, consequential, compensatory, punitive, and any other damages that the Court may deem appropriate against Count VI Defendants;

D.  Award Lippert his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.  Grant Lippert such other relief as the Court deems appropriate.

**COUNT VII**
Failure to Provide Adequate Medical Treatment
(Alleged on Behalf of Lippert individually against Defendants Wexford, Zhang, Bacot, Palmer, Norman, Maldonado, Breske, and Rossiter)

142.  Lippert repeats and re-alleges the allegations contained in paragraphs 1 through

141 as if fully restated here.

143.  Defendants Wexford, Zhang, Bacot, Palmer, Norman, Maldonado, Breske, and

Rossiter ("Count VII Defendants") all have knowledge of Lippert's diagnosis of Type I Diabetes

and his need for daily checks of his blood sugar level and insulin shots.

144.  Lippert has experienced inadequate medical treatment, similar to what occurred

on May 1, 2010, at the hands of Count VII Defendants on numerous occasions.

145.    Upon information and belief, Defendants Shicker and Godinez have a pattern and practice of intentionally disregarding Lippert's need for timely administration of medications and treatment and other medical assistance when necessary.

146.    As alleged above, the actions of Defendants Zhang, Bacot, Palmer, Norman, Maldonado, Breske, and Rossiter are reflective of the general pattern and practice and result in each intentionally, through repeated acts of negligence, or with deliberate indifference to the serious medical needs of Lippert, disregarding and failing to follow medical procedures and failing to take steps to ensure that Lippert's treatment plans are properly carried out, including providing timely administration of medications, insulin shots, and other necessary medical treatment on a daily basis.

147.    Each Defendant has denied Lippert access to adequate medical treatment and knowingly disregarded excessive risks to his health and well-being by, among other things, (a) refusing to take corrective action measures; and (b) allowing and condoning the actions of the medical department in disregarding an instituted dietary policy at Stateville.

148.    Each of the above-described actions were in contravention of the policies and procedures in place at Stateville and contrary to sound medical care for treating and managing Lippert's chronic medical conditions.  Alternatively, Count VII Defendants have failed to institute proper policies and procedures at Stateville and throughout Illinois prisons to ensure Lippert receives sound medical care.

149.    Based on the misconduct of its staff, it would appear Defendant Wexford has implemented a cost-cutting policy which resulted in a reduction in staff, making it difficult for Wexford's medical staff to provide timely medical treatment and administration of medication.

150.    Wexford had or has other practices and policies which directly cause the medical

staff to provide inadequate administration of daily medications and treatments to Lippert.

151.    Count VII Defendants' ongoing deliberate indifference to Lippert's medical needs

has deprived Lippert of his right to be free from cruel and unusual punishment as secured to him

under the Eighth and Fourteenth Amendments to the United States Constitution, and has resulted

in actual physical and medical harm to Lippert.

WHEREFORE, Plaintiff Don Lippert respectfully requests that this Court:

A.    Declare the conduct of Count VII Defendants to have violated the rights
      guaranteed to Lippert under the Eighth and Fourteenth Amendments to the United
      States Constitution;

B.    Grant an Order:  (i) enjoining and prohibiting Count VII Defendants, their
      successors, and other current and future employees of IDOC and Wexford from
      further depriving Lippert of his constitutional rights; and (ii) requiring Count VII
      Defendants and their successors to ensure that Lippert receives his daily medical
      treatment on a timely basis and in accordance with IDOC's and Wexford's
      medical policies and procedures;

C.    Award Lippert actual, consequential, compensatory, punitive, and any other
      damages that the Court may deem appropriate against Count VII Defendants; and

D.    Award Lippert his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §
      1988;

13628313v.4

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Lippert demands trial by jury for all of

the issues pled so triable.

**Dated:**    October 7, 2011

Respectfully submitted,

DON LIPPERT


By: <u>s/Kristine Argentine</u>
      One of His Attorneys


Jason P. Stiehl (6276001)
Kristine Argentine (6302850)
Seyfarth Shaw LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
Phone: (312) 460-5000
Fax: (312) 460-7000
Counsel for Don Lippert

Alan Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, Illinois  60640
Phone 773-769-1411
Fax. 773-769-2224
Counsel for Don Lippert

## <u>CERTIFICATE OF SERVICE</u>

   Kristine Argentine, an attorney, certifies that she caused a true and correct copy of the foregoing **SECOND AMENDED COMPLAINT** to be served on this 7th day of October, 2011, upon all counsel on this case via the court's electronic filing system.


         <u>s/Kristine Argentine</u>