**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DON LIPPERT, et al., ) | |
| ) | |
| Plaintiffs, ) | No. 10-cv-4603 |
| v. ) | |
| ) | Judge Jorge Luis Alonso |
| SALVADOR GODINEZ, et al., ) | |
| ) | |
| Defendants. ) | |

**MOTION FOR LEAVE TO FILE
PLAINTIFFS' VERSION OF REDACTED EXPERT REPORT INSTANTER**

Plaintiffs, by their attorneys, hereby move for leave to file plaintiffs' redacted version of the Court-appointed expert report instanter. Although the Agreed Order Appointing Expert specifically provided that, at the conclusion of settlement negotiations, the expert report would no longer be confidential, defendants do not want to abide by this commitment. Having said that they needed to redact the report for "security reasons" and to protect personal information, defendants have instead gutted the expert report of most of its examples of inadequate health care and all of its appendices—350 pages of detail on specific facilities and the report's mortality review. Defendants' redactions have left the report fragmented and incomplete, a shell of conclusions without detailed factual support. In support of this motion, plaintiffs state as follows:

1. On December 29, 2013, the Court entered an Agreed Order Appointing Expert (the "Order") (ECF #244) appointing Dr. Ronald Shansky ("Dr. Shansky" or the "Expert") pursuant to Rule 706 of the Federal Rules of Evidence.

2. The Expert was appointed to assist the Court "in determining whether the Illinois Department of Corrections ("IDOC") is providing health care services to the offenders in its custody that meet [] minimum constitutional standards." ECF #244 ¶ 1a. The Order provided that

1

Dr. Shansky would "investigate all components of the health care system" and, if (and only if) systemic deficiencies were identified, "propose solutions for consideration by the parties and the Court." *Id.*

3. Dr. Shansky, as contemplated by the Order, brought in additional medical, nursing and dental care experts to assist him, each of whom also was agreed to by the parties. In the course of their investigation, the expert team reviewed hundreds of IDOC health records, policies and other documents, and inspected and intensively reviewed the delivery of health and dental care at eight of IDOC's facilities, including all of the large, maximum security facilities, the facility through which most prisoners are processed upon entry to IDOC, and the facility designated by IDOC to provide specialized health care to the oldest and neediest prisoners. *See id.* ¶¶ 2a, 4a-c; Exhibits 1 & 2, pp. 3-5.

4. At the conclusion of his investigation, the Expert was charged with delivering a report "addressing the issues described in Paragraph 1a of this Order." *Id.* ¶ 5a. Initially, the report was to be delivered to the parties as a "Confidential Draft Report," with a period of time allowed for either party to submit comments on the report to the Expert. *Id.* ¶ 5b. After receiving the written comments, the Expert was to submit a "Final Confidential Report" to the parties which would, initially, be marked "Attorneys' Eyes Only" pursuant to the Protective Order entered in this matter. *Id.* ¶ 5c.

5. The Order made clear that at the conclusion of settlement negotiations the Expert's Report would no longer be confidential. Plaintiffs insisted throughout the negotiations leading to the Order that they would agree to contribute half of the compensation for the Expert's investigation—which already has cost hundreds of thousands of dollars—only if the process was open and transparent. As a result, the Order directed that the report was to remain confidential

2

only until the parties moved for approval of a proposed settlement *or* agreed (or the Court determined) that there had not been "reasonable progress" towards settlement. *Id*. The Order also provided that the Expert could be deposed by either party, and could be called as a witness at hearing or trial. *Id*. ¶¶ 1a, 5d.

6. Dr. Shansky delivered the Final Report to the parties in December 2014.

7. The Report consists of an introduction, overview of major services, and conclusion totaling 46 pages, and some 350 pages of appendices consisting of detailed reports on the specific facilities visited by the expert team and a separate section analyzing deficiencies in the health care of dozens of prisoners who died while in IDOC custody (mortality review).

8. On April 16, 2015, after being informed by the parties that settlement negotiations had broken down, the Court ordered the parties to "file the Court-appointed expert's report, after redacting identifying information about prisoners, on or before April 30, 2015." ECF #320.

9. This Order was in response to a motion to intervene filed by a prisoner, Cordell Williams, who sought access to the Shansky Report. ECF #306. Plaintiffs responded to this motion requesting that it be denied as moot, since, because of the failure of settlement negotiations, the report was now a "public document" and would be filed with the Court after redaction of personal identifying information. ECF #316. Defendants did not contradict this representation.

10. Plaintiffs notified defendants on April 16, 2015 that they were willing to undertake the work of redaction, *see* ECF #327-1, p.2, and specifically that this redaction was directed at "inmate numbers in the text as well as names and numbers in the appendices," *see id*. Again, there was no protest from defendants.

11. On April 27, defendants asked whether the redacted version was ready for review, stating that "[b]efore it is filed, we need to review it so that no confidential information is filed." *Id*.

12. Plaintiffs' redacted document was sent to defendants the same day. (Plaintiffs' redacted version of the Shansky Report, filed herewith under seal as Exhibit 1 (hereafter "Sealed Exh. 1").) Defendants then stated that they would need two weeks to review it. *Id*., pp. 1-2. When plaintiffs' counsel rejected this timeframe, defendants filed a Motion for Entry of Protective Order with the Court. ECF #327.

13. The Motion for Entry of Protective Order stated that defendants needed the two weeks "to review the document and have it reviewed by the Department of Corrections" in order to see whether "any unredacted material presented *any security issues*." ECF #327 ¶ 6 (emphasis added).

14. The Court granted this motion, and directed that the redacted report be filed by the parties on May 14, 2015. ECF #330.

15. On May 13, defendants forwarded their redacted version of the report to plaintiffs' counsel. (Defendants' redacted version of the Shansky Report, filed herewith under seal as Exhibit 2 (hereafter "Sealed Exh. 2").) Defendants' counsel stated, "Attached is the redacted version of the Shansky report. We have redacted the personal medical information of the inmates. Because the individual facility reports are simply case studies of the individual inmates, they were redacted in their entirety." (May 13, 2015 12:38 pm email from Thor Inouye to Ben Wolf et al., attached as Exhibit 3.)[1]

---

[1] Defendants' email (Exh. 3) also states that defendants' comments on the report should not be filed. Plaintiffs have no objection to this, since there is no provision for this in the Agreed Order.

4

16. Under the guise of protecting the "personal medical information" of the inmates, defendants have redacted virtually every specific example of the failure of medical care in the 46 pages of the Expert Report. (*See* Sealed Exh. 2, pp. 7, 15, 25-27, 29-33).[2] This does not "protect" the personal information of the inmates; what protects the personal information of the inmates is the disassociation of their identities from the disturbing and sometimes tragic histories laid out in the Report.

17. The Order expressly authorized the Expert to "recommend specific treatment for individual offenders" if "those recommendations relate[d] to systemic deficiencies in the health care provided in IDOC custody." *Id.* ¶ 1a. The examples of particular failures of care or treatment given in the Report abide by that guideline, and illustrate the systemic failures identified by the Expert in the course of his and his team members' work. (*See, e.g.*, Sealed Exh. 1, pp. 15, 25-27; *cf.* Sealed Exh. 2, pp. 15, 25-27.) Courts regularly utilize specific examples of inadequate care to explain and illustrate systemic deficiencies in the provision of correctional healthcare. *See, e.g.*, *Brown v. Plata*, 131 S. Ct. 1910, 1925 (2011) (describing examples of inadequate care provided to individual inmates to illustrate systemic deficiencies in staffing and delays in access to care); *Parsons v. Ryan*, 754 F.3d 657, 664-666 n. 5-7 (9th Cir. 2014) (reciting examples of the kinds of serious harm to which inmates are exposed by the department's systemic policies and practices, including "not providing prisoners with timely emergency

---

Plaintiffs therefore have not included the appendix to the Report containing defendants' comments in Sealed Exh. 1.
[2] A handful of specific examples remain, without the inmate's name. (*See* Sealed Exh. 2, pp. 6-7, 20). Why defendants did not handle all such examples this way is a mystery.

responses and treatment and failing to provide an adequate system for responding to health care emergencies.").[3]

18. Defendants' redaction of the appendices—all 352 pages of them—goes even farther. Contrary to the defendants' assertion, the appendices do not consist of "simply case studies of individual inmates," as the Court can readily determine. They address pertinent practices, procedures, staff, equipment and services, at each of the facilities. S*ee, e.g*., Sealed Exh. 1, Appx. A (Stateville CC), pp. 5-7 (describing chronic problems in the provision of care due to staffing and leadership vacancies); Appx. A (NRC), pp. 8-9 (describing deficiencies in reception and intake processing); Appx. A (Dixon CC), pp. 4, 40-41 (describing a "non-functional" continuous quality improvement program).

19. Defendants' concerns go far beyond anything that could possibly protect "personal" information, let alone "security."

20. Defendants apparently are unhappy with the agreements that they made, and want to take them back. Defendants agreed to the appointment of an expert and to the appointment of this particular expert, Dr. Shansky, as well as to the members of his expert team. Defendants agreed to a process for investigation and assessment of their health care system and, if the Expert thought they were needed, to have remedies for that system proposed by the Expert. Defendants agreed that the Expert's report would be a public document, and that he could testify as a witness. Now, defendants seek to suppress many of the Expert's examples of grossly inadequate

---

[3] The Ninth Circuit recited the following example of the Arizona Department of Correction's systemic failure to provide prisoners with necessary medication and medical devices: "A prisoner at the Tucson complex was given the incorrect dosage of medication to treat his seizures in September 2011. He suffered a stroke, and despite pleas for help from his fellow inmates, waited more than a day before medical staff saw him and referred him to an outside hospital's Intensive Care Unit. Now, due to the stroke, he slurs his speech, has difficulty walking and relies on a wheelchair, and is incontinent." *Parsons*, 754 F.3d at 664 n. 5. This is the sort of illustrative information Defendants seek to redact in the present case.

care, a critical part of the analysis, apparently because they do not like the results. Defendants' overbroad redactions will interfere not only with Plaintiffs' obligation to inform the putative class of the report's substance, but also with the presumptive right of public access to materials filed with the court. *See, e.g.*, *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) ("It is beyond dispute that most documents filed in court are presumptively open to the public[.]").

21. Defendants agreed that the Expert would have discretion to use his professional judgment in his investigation. ECF #244 ¶ 4a. Defendants agreed that disagreements with the report would be addressed through comments during a period when the report remained confidential. *Id*. at ¶ 5b. Having failed to modify the report through the method they agreed to, defendants now want to force the same result by concealing most of the telling detail from the putative class members and the public. The detail makes it clear how much human suffering is caused by the defendants' broken health care system. The public (including Mr. Williams) has an interest in seeing how the workings of a significant State agency impact the lives of those committed to its care.

For these reasons, plaintiffs respectfully request that the Court permit the filing, unsealed, of plaintiffs' redacted version of the Shansky Report (Sealed Exh. 1).

DATED: May 14, 2015

Respectfully submitted,

DON LIPPERT, et al.

By: /s/ Benjamin S. Wolf
*One of their attorneys*

Alan Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, IL 60640

Benjamin S. Wolf
Harvey M. Grossman
Lindsay S. Miller
Roger Baldwin Foundation of ACLU, Inc.
180 N. Michigan Ave., Ste. 2300
Chicago, IL 60601

David T. Van Der Laan
Ebony Hope Green
William Robert Andrichik
Edwards Wildman Palmer LLP
225 West Wacker Drive, Ste. 3000
Chicago, IL 60603

John R. Seber
R. John Street
Eimer Stahl LLP
224 S. Michigan Ave., Ste. 1100
Chicago, IL 60604

Jason P. Stiehl
Robyn Marsh
Kristine Argentine
Seyfarth Shaw LLP
131 South Dearborn Street, Ste. 2400
Chicago, IL 60603

Teresa A. Sullivan
Schopf & Weiss LLP
One South Wacker Dr., 28th Floor
Chicago, IL 60606

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, certifies that he caused a copy of the above and foregoing **MOTION FOR LEAVE TO FILE PLAINTIFFS' VERSION OF REDACTED EXPERT REPORT INSTANTER** to be served on all counsel of record via the Court's electronic filing system (CM/ECF) on May 14, 2015.

                                                  /s/ Benjamin S. Wolf