UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DON LIPPERT, et al., | ) |
| | ) |
| Plaintiffs, | ) No. 10-cv-4603 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| JOHN BALDWIN, et al., | ) Magistrate Judge Daniel G. Martin |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION FOR REAPPOINTMENT OF EXPERT**

Plaintiffs, by their attorneys, respectfully move the Court to reappoint Dr. Ronald Shansky as a court-appointed expert pursuant to Federal Rule of Evidence 706 for purposes of performing an update to his 2014 investigation and report on medical and dental care within the Illinois Department of Corrections (IDOC). In support, Plaintiffs state as follows:

1. In December 2013, by agreed order, the Court appointed Dr. Ronald Shansky as an expert in this case pursuant to Rule of Evidence 706. Dkt. 244. Dr. Shansky's task was to "assist the Court in determining whether the Illinois Department of Corrections . . . is providing health care services to the offenders in its custody that meet the minimum constitutional standards of adequacy." *Id*. ¶ 1a. The order further provided that:

> The Expert will investigate all relevant components of the health care system except for programs, services and protocols that relate exclusively to mental health. If systemic deficiencies in IDOC health care are identified by the Expert, he will propose solutions for consideration by the parties *and the Court*. *These proposed solutions* (if any) will form the bases for future negotiations . . . or, alternatively, *may be offered into evidence in the trial of this matter*.

*Id*. (emphasis added).

2. Dr. Shansky and his team performed a comprehensive investigation of IDOC medical and dental care between January and June 2014. They delivered the draft report for

1

review and comment in August 2014, and the Final Report (after Defendants had sought an extension of time to respond to it) in December 2014. Dkt. 273, 339.

3. The Final Report is now three years old. A very substantial part of the delay between 2014 and now is attributable to Defendants. After the collapse of settlement negotiations in spring 2015, when Plaintiffs attempted to move forward with discovery, Defendants initially filed a motion to stay all discovery; after this was briefed and denied, Defendants then took almost a year (into mid-2016) to complete a limited update of discovery sought by Plaintiffs to prepare their motion for class certification, despite repeated orders from Magistrate Judge Martin. *See* Dkt. 349, 369, 390, 413, 417, 459, 474.

4. As Plaintiffs told the Court in the Joint Status Report filed on May 15, 2017 (shortly after the class had been certified), Plaintiffs believed that the most critical issue in preparing this case for trial was to determine what, if anything, had changed in the delivery of medical and dental care in IDOC since the issuance of the Final Report. Dkt. 539, p. 1. Accordingly, Plaintiffs planned, in short order, to take the depositions of two Rule 30(b)(6) witnesses—one of IDOC, and one of IDOC's healthcare vendor, Wexford Health Sources, Inc.—as to what changes, if any, had been made by IDOC relating to the issues raised in the Final Report.

5. Due to the schedules of the designated witnesses and their counsel, it was over two months before these depositions took place.[1] The IDOC deposition finally took place on July 25; the witness was Dr. Steven Meeks, the current Director of Health Services (and Defendant in his official capacity).

---

[1] Plaintiffs had served the notice of deposition on Defendants and subpoena to Wexford on May 11.

2

6. Unfortunately, Dr. Meeks, despite being IDOC's designated Rule 30(b)(6) witness as well as the agency medical director, was ill-informed. He had read the first 46 pages of the Final Report shortly before the deposition, but not the remaining 359 pages, which contain the specifics of the report including detailed site analyses and descriptions of specific examples of inadequate and incompetent care. He did not testify as to any attempt to educate himself about what the Department had done to comply with the Final Report and was unfamiliar with the outcome of the commitments the Department had made in response to the Report in the Department's letter of November 2014. Aside from reviewing the first 40-odd pages of the Final Report, his sole preparation had been to read the Department's response letter of November 2014, and look at a list of vacancies and backlogs. He was not prepared to testify as to what changes the Department had made to its system since the Final Report, which was the subject of the Rule 30(b)(6) deposition.

7. Defendants have now promised Plaintiffs that three additional depositions, two of which have finally been scheduled for the latter part of September, will provide some of the information that the Director of Health Services could not provide and was not prepared to provide. Even if this proves correct, it will have taken Plaintiffs' *over four months* to obtain the answer to what should be a simple and straightforward question to Defendants: What do *you* assert that you have done to address the deficiencies in the IDOC health care system described in the 2014 Final Report of the Court-appointed Expert?

8. The answer to that question—if Plaintiffs finally get it—will only be a start. The more critical questions will be, as to any areas Defendants assert they have changed, whether they really have changed, and whether those changes make a difference.

9. By failing to provide a knowledgeable Rule 30(b)(6) witness, IDOC has highlighted the need for disinterested expert testimony. So far, IDOC itself cannot explain what, if anything, it has done.

10. Plaintiffs asked Defendants whether they would be willing to have Dr. Shansky return to perform an update to his investigation and Final Report, so that Dr. Shansky could provide the Court with a current assessment of the state of medical and dental care in IDOC. Defendants stated that they would not agree, principally (as Plaintiffs understood it) because of the negative conclusions about IDOC healthcare reached by Dr. Shansky and his team in the 2014 investigation, and also because both Plaintiffs and Defendants may have their own experts at trial.

11. Defendants misunderstand the purpose of Rule 706. Rule 706 codifies a court's inherent power to appoint *its own* experts. *See Weinstein's Evidence* par. 706.02[1] at 706-03 (1992); Fed. R. Evid. 706 advisory committee's note ("The inherent power of a trial judge to appoint an expert of his own choosing is virtually unquestioned. . . . Hence the problem becomes largely one of detail"). Thus the Rule provides that "[o]n a party's motion or on its own," a court "may appoint any expert that the parties agree on and *any of its own choosing* . . . . who consents to act." Fed. R. Evid. 706(a) (emphasis added).

12. The fact that Defendants—who originally agreed to Dr. Shansky as a court-appointed expert—do not favor his return now because they were disappointed with his conclusions is not a reason for the Court to forgo Dr. Shansky's expert perspective. Dr. Shansky brought a wealth of pertinent knowledge and experience to the task of evaluating IDOC's medical and dental care in 2014, not least because he served as IDOC Medical Director for

4

several years in the 1980s and 1990s. Dkt. 240 ¶ 5. His perspective would be even more valuable now. (Dr. Shansky's resume is attached as Exhibit 1.)

13. As is clear from the wording of the Rule, a court may appoint an expert over the objection of one or more of the parties. *See, e.g.*, *Muniz v. Amec Const. Management, Inc.*, 623 F.3d 1290 (9th Cir. 2010) (affirming district court's appointment of expert over one party's objection); *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065 (9th Cir. 1999) (same); *Bontemps v. Lee*, 2013 WL 417790 (E.D. Cal. 2013) ("Pursuant to Rule 706, district courts may . . . appoint a neutral expert witness . . . .").

14. Courts especially turn to Rule 706 experts in complex cases, including cases involving conditions of confinement. *See, e.g.*, *Weinstein's Evidence* par. 706.02[3] at 706-06 (1992); *B.H. v. Murphy*, 984 F.2d 196, 198 (7th Cir. 1993) (district court appointed thirteen experts to review ten substantive areas of law and two people to manage the process in class action suit involving services and placements for children in state custody); *see also Lightfoot v. Walker*, 486 F. Supp. 504, 506 (S.D. Ill. 1980) (Rule 706 expert panel conducted two investigations of prison). IDOC's healthcare system serves over 40,000 prisoners in twenty-five prisons across the state of Illinois—each of which is a healthcare site. It must address everything from toothaches to major surgeries to end-of-life care. It includes a complex, multi-billion dollar contract with a private healthcare vendor, thousands of state and vendor healthcare staff, and relationships with outside physicians, hospitals, and laboratories at the University of Illinois at Chicago and throughout the state.

15. Dr. Shansky has recent familiarity with this complex system as a result of his work in 2014, as well as historic familiarity with it as one of IDOC's past statewide medical directors. The parties initially agreed to his appointment. It makes no sense to waste this resource

5

by not having his report updated for use at trial. Moreover, the need for such updating has been recognized before. In the *Lightfoot* case—which dealt with a single prison in the Illinois system, Menard Correctional Center—there were not one but two investigations by the court-appointed expert panel due to the passage of time. *Lightfoot v. Walker*, 486 F. Supp. 504, 506 (S.D. Ill. 1980); *see also Lightfoot v. Walker*, 826 F.2d 516, 518 (7th Cir. 1987).

16.     The fact that both Plaintiffs and Defendants may have their own experts at trial is also irrelevant, as the Rule expressly acknowledges. Fed. R. Civ. P. 706(e) ("[t]his rule does not limit a party in calling its own experts"). Additional experts will be a benefit in a case involving a system as sprawling and complex as the one here. In a recent proceeding before Judge Baker in the Central District concerning IDOC's protocols for the treatment of Hepatitis C—*a single disease*—the court heard testimony from not fewer than *nine* physicians, two of whom were "court-recruited" experts in Hepatitis C and liver disease. (*See* Order on Plaintiffs' Motion for Temporary Injunctive Relief, *Orr v. Elyea*, No. 08-2232, C.D. Ill. April 6, 2017, attached as Exhibit 2, pp. 2-9.) In the *Lightfoot* trial, the plaintiffs called three experts; the defendants called six; and two members of the court's panel of medical experts testified as well. 486 F. Supp. at 506.

17.     The only limit on a court's authority to appoint an expert under Rule 706 is that "the court may only appoint someone who consents to act." Fed. R. Civ. P. 706(a). Plaintiffs have reached out to Dr. Shansky and confirmed that he would be willing to be reappointed in order to perform an update of the 2014 investigation and report.[2]

---

[2] Pursuant to Rule 706, the expert's compensation is paid "by the parties in the proportion and at the time that the court directs." Fed. R. Civ. P. 706(c)(2). Under the original Agreed Order appointing Dr. Shansky pursuant to Rule 706, the parties split the cost of Dr. Shansky's work. Dkt. 244, p. 6.

Defendants should not be able to benefit from delays of their own creation. For these reasons, Plaintiffs respectfully request that the Court reappoint Dr. Ronald Shansky as a court-appointed expert pursuant to Federal Rule of Evidence 706 for purposes of performing an update to his 2014 investigation and report in this matter.

DATED: September 18, 2017

Respectfully submitted,
DON LIPPERT, et al.

By: /s/ Camille E. Bennett
*One of their attorneys*

Alan Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, IL 60640

Benjamin S. Wolf
Camille E. Bennett
Lindsay S. Miller
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave., Ste. 600
Chicago, IL 60601

Harold C. Hirshman
Dentons US LLP
233 S. Wacker Dr., Ste. 5900
Chicago, IL 60606

Jason P. Stiehl
Ryan C. Williams
Akerman LLP
71 S. Wacker Drive, 46th Floor
Chicago, IL 60606

**CERTIFICATE OF SERVICE**

       The undersigned, an attorney, certifies that on September 18, 2017, she caused a copy of the above and foregoing PLAINTIFFS' MOTION FOR REAPPOINTMENT OF EXPERT to be served on all counsel of record via the Court's electronic filing system (CM/ECF).

                                                       /s/ Camille E. Bennett