1          **<u>TRANSCRIBED FROM DIGITAL RECORDING</u>**

2                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
3                       EASTERN DIVISION

4
   DON LIPPERT, et al.,                )  Docket No. 10 C 4603
5                                       )
                          Plaintiffs,   )
6                                       )
                vs.                     )
7                                       )
   PARTHA GHOSH, et al.,                )  Chicago, Illinois
8                                       )  November 21, 2017
                          Defendants.   )  9:36 o'clock a.m.
9

10              TRANSCRIPT OF PROCEEDINGS - STATUS
       BEFORE THE HONORABLE DANIEL G. MARTIN, MAGISTRATE JUDGE
11

12  APPEARANCES:

13
   For the Plaintiffs:     MS. CAMILLE E. BENNETT
14                          MS. LINDSAY S. MILLER
                            Roger Baldwin Foundation of ACLU, Inc.
15                          150 N. Michigan Avenue, Suite 600
                            Chicago, Illinois  60601
16

17  For the Defendants:     MR. KEVIN LOVELLETTE
                            Office of the Attorney General
18                          100 W. Randolph St., 13th Floor
                            Chicago, Illinois  60601
19

20              * * * * * * * * * * * * * * * * * *

21                    PROCEEDINGS RECORDED BY
                         DIGITAL RECORDING
22              TRANSCRIPT PRODUCED BY COMPUTER

23
       **\*\*\* PLEASE NOTIFY OF CORRECT SPEAKER IDENTIFICATION \*\*\***
24     **NOTE:   FAILURE TO STAND NEAR THE MICROPHONE MAKES PORTIONS
                      UNINTELLIGIBLE AND INAUDIBLE**
25

```
 1   APPEARANCES (Continued):

 2
     Also Present:              MICHAEL P. MAZZA, LLC
 3                              BY:  MR. PAUL HALE
                                686 Crescent Boulevard
 4                              Glen Ellyn, Illinois  60137

 5
                                CASSIDAY SCHADE, LLP
 6                              BY:  MR. JOSEPH LOMBARDO
                                111 W. Monroe Street
 7                              Chicago, Illinois  60603

 8
     Transcriber:               MS. JOENE HANHARDT
 9                              Official Court Reporter
                                219 S. Dearborn Street, Suite 1744-A
10                              Chicago, Illinois  60604
                                (312) 435-6874
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE CLERK:  10 C 4603, Lippert vs. Ghosh.

 2              THE COURT:  "10 C," here come my A Troops.

 3              Send for the A Troops.

 4              (Laughter.)

 5              THE COURT:  That is what I call a team -- teams -- of

 6  lawyers.  Look at that.  Let me get a picture here.

 7              (Laughter.)

 8              THE COURT:  All right.  Lippert, et al., vs. Godinez,

 9  et al.

10              Countdown, please.

11              MS. BENNETT:  Camille Bennett, your Honor, Camille

12  Bennett for the plaintiffs -- B-e-n-n-e-t-t.

13              THE COURT:  Ms. Bennett, good morning.

14              MS. MILLER:  Good morning, your Honor, Lindsay Miller

15  -- M-i-l-l-e-r -- for the plaintiffs.

16              THE COURT:  Ms. Miller, good morning to you.

17              MR. HALE:  Good morning, your Honor, Paul Hale --

18  H-a-l-e -- for intervenor Kenneth Burks, originating from Case

19  No. 15 CV 55 before Judge Wood.

20              THE COURT:  Mr. Hale, are you taking the place of or a

21  partner to Mr. Mazza?

22              MR. HALE:  Mr. Mazza is a partner on the case.  I am

23  an associate in the firm.

24              THE COURT:  Okay.

25              MR. HALE:  Yes.
```

```
 1              MR. LOVELLETTE:  Kevin Lovellette --
 2   L-o-v-e-l-l-e-t-t-e -- on behalf of the State defendants.
 3              THE COURT:  Mr. Lovellette, good morning to you, sir.
 4              MR. LOMBARDO:  Good morning, your Honor, Joe Lombardo
 5   on behalf of the defendants in the Burks matter.
 6              THE COURT:  Joe Lombardo, good morning to you, as
 7   well.
 8              All right.  Let's get to it.
 9              Where is my pal Doran?
10              MR. LOVELLETTE:  Not around this week, your Honor.
11              THE COURT:  Pardon?
12              MR. LOVELLETTE:  He is not around.  He is taking a
13   holiday with his family.
14              THE COURT:  All right.
15              You tell him -- you tell him -- I missed him and I
16   look forward to seeing him soon.
17              MR. LOVELLETTE:  I will.
18              THE COURT:  All right?
19              And that is not at the exclusion of anyone else who is
20   not here.
21              Okay.  We have got a bunch of dates set by Judge
22   Alonso regarding the class claims.
23              Do we all have those dates or should I reiterate them?
24              MR. LOVELLETTE:  I think we have them.
25              MS. BENNETT:  I think we are aware of them, your
```

1    Honor.

2           And the other thing that --

3           THE COURT:  I didn't mean everything.

4           MS. BENNETT:  -- you may be aware of is the order that

5    we expect to see soon appointing a new court-appointed expert

6    to review the system.

7           THE COURT:  Let's deal with that in a moment.

8           Okay.  Judge Alonso has a status hearing set for May

9    2nd of 2018, 9:30 a.m.

10          Intervenor Burks' motion to compel production of

11   sealed Lippert Report documents for use in his case against

12   Wexford and three physicians, pending before Judge Wood, it is

13   fully briefed.  It is pending before this Court.

14          The issues today -- and, at the end of them, I will

15   ask for any additional issues, but I am going to try to cover

16   what we have raised and what I believe might be some

17   anticipatory issues.

18          At our status hearing on October 10th, I gave the

19   State defendants until October 31st to produce the remaining

20   outstanding e-mails and a privilege log.

21          Was that done?

22          MR. LOVELLETTE:  We missed the date, your Honor, but

23   last week we did answer -- or we did produce -- all of the

24   outstanding ESI.

25          THE COURT:  Okay.  Done.

1          When was that done?

2          MR. LOVELLETTE:  Was that Friday?

3          MS. BENNETT:  Thursday or Friday of last week.

4          MR. LOVELLETTE:  Thursday or Friday of last week.

5          THE COURT:  Just give me a date, so I've got it.

6          MR. LOVELLETTE:  It was last Friday.

7          THE CLERK:  The 17th?

8          MR. LOVELLETTE:  The 17th.

9          THE COURT:  Okay.

10          Second, the parties agreed to use the original eight

11   prisons for purposes of the State defendants updating the hard

12   copy documents kept at separate prison locations.

13          The State defendants have until November 27th to

14   update the hard copy documents from the original eight prisons.

15          The State defendants are on track to meet that

16   November 27th deadline .

17          MR. LOVELLETTE:  I believe all of that is correct,

18   except we may need another week.  We might need until December

19   4th to do that.

20          THE COURT:  Are you certain?

21          Why don't we -- I am going to keep that date in --

22   well, that is November 27th.  So, I will extend it to December

23   -- whatever you want it to -- if you promise me, cross your

24   heart and hope to cry; I never say, "hope to die."  Okay?  My

25   mother would come from beyond and give me a whack --

1              (Laughter.)

2              THE COURT:  -- that you will meet that deadline.

3   Okay?  Because they have been waiting for this stuff.

4              December, what did you say, Mr. Lovellette?

5              MR. LOVELLETTE:  4th.

6              THE COURT:  December 4th.  Okay.

7              So, defendants have until December 4th now to update

8   the hard copy documents from the original eight prisons, in

9   accordance with the agreement.

10             MS. BENNETT:  Yes.

11             THE COURT:  All right.

12             Are we all clear on that?

13             You are giving me that skinny-nose look, Ms. Bennett.

14  It's December 4th.  It is a short period of time.

15             MS. BENNETT:  Your Honor, that -- that -- is fine with

16  us.

17             THE COURT:  Okay.

18             MS. BENNETT:  There are a couple other issues, when

19  your Honor has finished --

20             THE COURT:  There is no doubt.

21             MS. BENNETT:  -- asking Mr. Lovellette questions.

22             THE COURT:  I have no doubt you are going to tell me

23  all about them.  I promise I will not shortchange you.

24  Promise.

25             Okay.  Third, I directed the parties to meet and

1   confer regarding a final date for the State defendants to

2   update all of their discovery production before trial,

3   including the e-mails.

4          What was the result of the meet and confer; and, have

5   the parties agreed to a reasonable date for the defendants to

6   update the discovery production before the trial?

7          MR. LOVELLETTE:  I don't believe we have had that meet

8   and confer yet.

9          MS. BENNETT:  No, your Honor.

10         We had an e-mail exchange the week before last about

11  another matter.  And we now have a firm date, to talk about

12  many discovery matters, on November 29th.

13         THE COURT:  November 29th is going to be your meet and

14  confer date?

15         MS. BENNETT:  Yes.

16         THE COURT:  Okay.  Thank you.

17         That is going to be a long meeting.  In the event we

18  have other issues, we are going to resolve them, as well.

19  Okay?

20         We will be heading toward that December 4th extended

21  deadline.  So, I am looking forward to hearing that the

22  November 29th meeting was fruitful.

23         Okay.  The parties were directed to meet and confer

24  and that will probably, I imagine, also take place November

25  29th, in good faith, in order to resolve the issue raised by

1   plaintiffs' eleventh -- I am going to say that, again, eleventh

2   -- motion to compel.

3         What is the status of plaintiffs' request for various

4   -- I quote -- "stuff" in the eleventh motion to compel right

5   now?

6         (No response.)

7         THE COURT:  Plaintiff?

8         (No response.)

9         THE COURT:  Defense?

10        (No response.)

11        THE COURT:  Anybody?

12        MR. LOVELLETTE:  I have no -- I have no -- update for

13  the Court.

14        MS. BENNETT:  Your Honor, Mr. Lovellette and I just

15  discussed the three categories, yet, again, before your Honor

16  came on the bench.

17        He is not familiar with these questions, but he is

18  now, and will hope to get answers on the 29th.

19        THE COURT:  Okay.

20        All right.  Good.

21        At our motion hearing on October 31st of 2017, the

22  State defendants were directed to provide updated responses to

23  plaintiffs' second set of interrogatories, which were

24  originally answered in 2013 -- going back a few years.

25        What is the status of this matter?  Have the

```
 1   interrogatories been updated?

 2          MS. BENNETT:  No, your Honor, they haven't.

 3          THE COURT:  Let's set a deadline.

 4          MS. BENNETT:  Thank you.

 5          THE COURT:  Let's set deadline.

 6          What is a reasonable deadline?  And I am going to

 7   stick to it.

 8          MR. LOVELLETTE:  12-14, your Honor?

 9          I am sorry, 12-4, the same date.

10          THE COURT:  December 4th.

11          The interrogatories must be updated December 4th,

12   along with the extended deadline to update the hard copy

13   documents from the original eight prisons.  Okay?

14          MR. LOVELLETTE:  What was the date that those were

15   originally answered, your Honor?

16          MS. BENNETT:  I believe it was in June of 2013.

17          MR. LOVELLETTE:  Okay.

18          THE COURT:  I just have "2013."

19          MR. LOVELLETTE:  Okay.

20          THE COURT:  When I get to the years that are in the

21   past, I tend to lose the precise date.

22          It was about four years ago, give or take a couple of

23   months one way or the other.

24          Does that sound okay?

25          MR. LOVELLETTE:  Yes.
```

1          THE COURT:  Do we all agree?

2          MR. LOVELLETTE:  I just want to make sure we are

3     answering the right ones.

4          THE COURT:  Yes.  It was at least three, and not five.

5          MR. LOVELLETTE:  Okay.

6          THE COURT:  All right.

7          (Laughter.)

8          THE COURT:  Give me the date.

9          It was at 4:00 o'clock p.m.

10         (Laughter.)

11         THE COURT:  I am sorry, I can't be that precise.

12         MR. LOVELLETTE:  I thought you said it, but you did

13    just say the year.

14         THE COURT:  Yes.

15         Okay.  On October 31st, again, plaintiffs stated they

16    would provide a supplement counter-proposal to defendants.

17         We agreed to discuss setting a settlement conference

18    at today's status hearing; and, maybe I should ask this

19    question at our next status, after November 29th, but I am

20    going to be asking:  Are the parties interested in

21    participating in a settlement conference, either at this time

22    or at the end of this next meet and confer?

23         A real settlement conference, consent decree, the

24    whole shot.  I will spend the day with you, if need be.  But I

25    am not going to, you know, what we call, you know, go back and

1   forth and back and forth in increments.  We have to have a real

2   plan in place and work toward it.

3          So, does anybody want to speak to that?

4          MS. BENNETT:  Your Honor, we are still working on our

5   response to the proposal that they gave us.

6          THE COURT:  Okay.

7          MS. BENNETT:  I anticipate that we will have that back

8   to them within the next couple of weeks; and, thus, it might be

9   best to wait until December, until we have had a chance to look

10  at it, to see whether they think a conversation would be really

11  productive.

12         THE COURT:  Good.

13         Well, I want that to be in the back of everyone's head

14  as you talk and exchange discovery and other thoughts at the

15  November 29th meet and confer, because this really -- I said

16  this long ago -- this is a case that should be resolved by way

17  of settlement.

18         This would be a nightmare of a trial for everyone.

19  And much of what takes place, we are going to be able to work

20  out.  And it will give both sides the ability to have some

21  measure of control over the outcome of this case.  Okay?

22         So, I strongly encourage everyone to start thinking

23  that way.  I am.

24         And, you know, I would love to have another settlement

25  -- I would love to take another crack at helping the folks

1    settle this case; but, you know, judges don't settle cases, as

2    I always say.  The lawyers and the parties settle the case.

3    Judge facilitate it.  Okay?

4            It is just something to think about.  All right?

5            I have reviewed Intervenor Kenneth Burks' fully-

6    briefed motion to compel.  The motion seeks documents and

7    information from Dr. Shansky that comprise the basis for the

8    findings and opinions in the final report of that court-

9    appointed expert in this case regarding two topics.

10           The first are deficiencies in medical recordkeeping;

11   and, the second are deficiencies in the off-site referral

12   process for the medical treatment of the IDOC prisoners.

13           Now, in Footnote 2 -- Footnote 2 -- of Intervenor

14   Burks reply, Burks states that, "On November 13th of 2017,

15   Attorney Bennett informed Burks' counsel that Dr. Shansky had

16   recently destroyed any potential responsive documents to Mr.

17   Burks' subpoena."

18           If true, doesn't this moot the document portion of Mr.

19   Burks' subpoena to Dr. Shansky?

20           MS. BENNETT:  Your Honor, may I make a clarification

21   on that --

22           THE COURT:  Please.

23           MS. BENNETT:  -- because the way that was phrased gave

24   me a stomachache.

25           Dr. Shansky did not recently destroy documents.  He

1    disposed of his files -- this is what he tells me -- in October

2    of 2016, when he moved from Illinois to Texas.

3           That was, I think, about nine months before the Burks'

4    subpoena was served.  So, there was no document destruction

5    while there was a pending request to him for documents.

6           THE COURT:  No, it took place before that -- about a

7    year ago.

8           MS. BENNETT:  Yes.

9           And all he says he has left is the final report.  That

10   is the one document that he has relating to this matter.

11          MR. LOMBARDO:  So, to address your point, your Honor,

12   on behalf of the defendants in the first case, we would say

13   that it does, indeed, moot this motion.

14          THE COURT:  Okay.

15          Does anybody else want to weigh in on this?

16          MR. HALE:  Yes, your Honor.

17          Paul Hale for Intervenor Burks.

18          It seems that given that this case was pending while

19   -- and has been pending in 2016, it surprises me that Dr.

20   Shansky wouldn't have had a duty to preserve any documents

21   arising or related to his expert report.

22          There is another portion of the protective order,

23   Subparagraph 1, that deals with testimony arising from

24   knowledge gained during the expert review.

25          THE COURT:  Subparagraph 1(b)?

1          MR. HALE:  1(b), your Honor.

2          THE COURT:  All right.

3          Let's deal with -- le me deal with my part of that;

4     and, them, add into that, because that is my last item of

5     business here.

6          Mr. Burks now states he seeks a modification of

7     Subparagraph 1(b) of the Agreed Order appointing an expert, to

8     allow Dr. Shansky to testify in Mr. Burks' case as to,

9     "Knowledge and/or information gained in the course of

10    performing his services in this matter."

11         That is the quote from the modification request.

12         Mr. Burks has provided no authority for his alternate

13    request that Dr. Shansky be allowed to testify in Burks' case.

14         So, if, on his behalf, his team wants to modify their

15    motion to seek his testimony by way of deposition and/or trial,

16    you have got to give me a brief providing authority for

17    enforcing a subpoena for testimony directed to an expert

18    appointed by Federal Rule of Evidence 706 to assist the Court.

19    All right?

20         And, then, you know, I am not foreclosing your ability

21    to do so, I am just saying I need more than a representation at

22    a status hearing.

23         So, how much time would you like or do you need to

24    file a brief supporting your request?

25         MR. HALE:  Your Honor, discovery closes in the Judge

1  Wood version of this case December 8th.  If I could have a

2  short --

3           THE COURT:  Do you mean Judge Coleman?

4           MR. HALE:  No, Judge Andrea Wood.  It is the --

5           THE COURT:  Okay.  She has got it.  Okay.

6           MR. HALE:  A short date, your Honor.

7           I could get something in front of you in seven days.

8           THE COURT:  That is okay.  Just let me know.

9           I know there are holidays coming up.  This weekend is

10 -- this week is -- pretty much shot.  I am not going to make

11 you deliver anything to me until, at least, mid-week next week.

12          So, what would you like to do?

13          MR. HALE:  Seven days is great, your Honor.

14          THE COURT:  Seven days from today?

15          MR. HALE:  Yes.

16          THE COURT:  Okay.  That is next Tuesday, which put us

17 at the 28th.

18          Am I right?

19          THE CLERK:  Yes.

20          THE COURT:  Okay.  The 28th.

21          The defendants, you can file a response.  How long do

22 you need to respond?

23          MR. LOMBARDO:  I would ask for twenty-one days, your

24 Honor, because I would like the opportunity to -- it would be a

25 joint response, likely.  So, I would like at least twenty-one

1 days, so that I can kind of circulate with Mr. Doran and

2 possibly Ms. Bennett.

3          THE COURT:  Where does that take us, 21 days from the

4 28th?

5          THE CLERK:  December 19th.

6          THE COURT:  A December 19th response.  Okay?

7          And we will get that taken care of and, then, we will

8 rule in as expeditious a fashion as possible.

9          MR. LOMBARDO:  I would just say, your Honor, again,

10 this is going to open up the floodgates, as I argued in my

11 motion.

12          He -- Dr. Shansky -- is going to be asked to testify

13 in every single Monell claim against Wexford that there is.

14 So, you are going to see a lot of these motions coming forward.

15          THE COURT:  Let's take it -- let's take it -- one step

16 at a time.

17          MR. LOMBARDO:  All right.

18          THE COURT:  Let's see how we rule on this issue, to

19 begin with.  And, then, I don't have any idea what the ruling

20 is going to be; but, we will, you know, deal with that when the

21 issue actually arises.

22          Does Mr. Burks agree that the document portion of the

23 subpoena is moot right now?

24          MR. HALE:  If there are no documents, then there are

25 no documents.

1           THE COURT:  Right.

2           MR. HALE:  So, yes, your Honor.

3           MR. LOVELLETTE:  I would like to note for the record

4    that Mr. Burks had no knowledge of that when he brought this

5    motion to your Honor originally.  It was something that came

6    out on December 13th.

7           THE COURT:  So noted.

8           MR. LOVELLETTE:  Yes.

9           THE COURT:  All right.

10          MR. LOVELLETTE:  I am sorry to waste your time.

11          THE COURT:  You haven't -- look, you are doing

12   anything but wasting my time.  There are complexities here.  I

13   just want to make sure that we do everything properly, so that

14   we have a good record and that we can proceed in as clean a

15   fashion as possible.  Because, you know, this case is getting

16   older and older and older.  It is a 10 C.  It is my oldest

17   case.  It is probably some of your oldest case.

18          So, the document portion of the subpoena is moot.  We

19   will have a briefing on the alternate issues.

20          And let's have a status after the New Year, okay,

21   unless there is something so pressing that I need to bring the

22   folks back in December.

23          Why don't we -- you know what I want to do?  Let's get

24   back shortly after the December 4th extension.  I want to stay

25   on top of this.

1          And, so, if there is something that following week, I

2   can -- we can -- rally our troops and move on with things.

3   Okay?

4          MS. BENNETT:  Your Honor, one leftover matter --

5          THE COURT:  Sure.

6          MS. BENNETT:  -- from the Lippert documents.

7          They did, apparently, finish producing the ESI last

8   week, but we still don't have the privilege log.

9          THE COURT:  Okay.

10         Mr. Lovellette, the privilege log?

11         MR. LOVELLETTE:  Yes, that's right.

12         THE COURT:  A date?

13         MR. LOVELLETTE:  Uh --

14         THE COURT:  Today?

15         (Laughter.)

16         MR. LOVELLETTE:  No.  We are having horrible problems

17   today with Metadata extracting it into a -- into a -- log.  So,

18   can I give you an update on that at our next status in a couple

19   of weeks?

20         THE COURT:  Boy oh boy.

21         MR. LOVELLETTE:  If I have it, I will turn it over as

22   quickly as possible.

23         THE COURT:  You are lucky I am not asking Ms. Bennett

24   to make the decision on that one.

25         Okay.  You give me an update on that, but work as hard

1    as you can in the interim to iron out as many of the

2    difficulties as you can, so that we can do something in a

3    streamline fashion when we reconvene in December.

4            Ms. Miller, anything?

5            MS. MILLER:  I have nothing to add.

6            THE COURT:  By the way, Ms. Miller stood in one day

7    when you weren't here, Ms. Bennett; and, it is no criticism of

8    you, but she handled herself just like the rest of the A Troops

9    do.  So, I was not surprised.

10           MS. BENNETT:  This is a harbinger of things to come,

11   your Honor.

12           (Laughter.)

13           THE COURT:  Well, that is between and among you.  But,

14   you know, when I call you the "A Troops," I mean it.

15           All right.  What is our status date?

16           THE CLERK:  December 12th.

17           THE COURT:  December 12th at 9:30.  And looking

18   forward to lots of good news regarding extraordinary progress.

19   And away we will go.

20           Anything else?

21           MR. LOMBARDO:  Well, I would say, your Honor, since

22   our response won't even be filed by the 19th, I don't think we

23   are going to come to that, right -- the Burks' intervening

24   parties come in on that status date.

25           THE COURT:  I want everyone here.

1          MR. LOMBARDO:  You want us here on the 12th?

2          THE COURT:  Yes, I want everyone here on the 12th.  I

3    want everyone to know what is going on.  This is a series of

4    moving parts in the same machine.  All right?

5          I won't keep you long.  Look, I called you about a

6    quarter to 10:00.  Come on.

7          I will miss you if you are not here, Lombardo.

8          (Laughter.)

9          THE COURT:  Come on.  You are growing on me.  All

10   right?

11         (Laughter.)

12         THE COURT:  Okay, gang.  I will see you then.

13         MR. LOMBARDO:  Thank you.

14         MR. LOVELLETTE:  Thank you.

15         MS. BENNETT:  Thank you.

16         MS. MILLER:  Thank you.

17         MR. HALE:  Thank you.

18                         *   *   *   *   *

19   I certify that the foregoing is a correct transcript from the
     digital recording of proceedings in the above-entitled matter,
20   to the best of my ability, given the limitations of using a
     digital-recording system.

21

22   /s/ Joene Hanhardt                  March 1, 2018
     Transcriber

23

24

25