TO: HONORABLE FEDERAL JUDGE JORGE L. ALONSO, AND
COURT and MAGISTRATE JUDGE DANIEL MARTIN, Lippert
V. BALDWIN, 10-CV-4603, ET AL, 219 S. Dearborn MAR -5 2018 EAA
Chicago, IL 60604
-3-5-18
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
[this letter with all attachments is sent to a
as was done and SHOWN in the 11-1-17 made
#589 (54 pgs) Page ID #(s) 9775-9780 (filed 11-13-17)]

FROM: RON KLINER, #B77152, P.O.1700, Galesburg IL 61402

RE: Following up with additional documentation & information
updating what was sent (above cited) AND as to class
action counsel(s) "NOT" Pursuing needed "injunction" for
dental care (NOW) and CSL(s) for the class being
"NON-responsive" to class member(s) & me included.

PATED: JAN. 24TH 2018 & sent "LEGAL MAIL"          pg. 1/3

Re-sent
WITH
Notice &
Proof
of
Service
3-1-18
BY
LEGAL
MAIL

DEAR HON. JUDGE(S) ALONSO & MAGISTATE MARTIN, &ET AL—

Reference the above, and to be made a part of Lippert
V. Baldwin, and followup from the filed 11-13-17 document
#589, Page ID #(s) 9775-9828 enclosed herewith please
find the following:
1) 1-2-18 mandatory/detal (sic) Robin Randolph "PASS"
2) my 1-2-18 dental (Nurse sick call) handwritten letter to Dentist
   WALLACE FRANCIS STROW, JR and as to serious dental
   Needs, pain, problems to be addressed (with cited 12-20-16
   from HCUA Lindorff (cc'd to Strow) as to (Strow) fully capable
   of cleaning teeth + providing teeth cleaning,
3) IDFPR printout on Dr. Strow, JR. DDS + licensing
4) my 1-16-18 emergency grievance to Hill CC warden Stephanie
   Doretuy seeking help & care. (2 pgs)
5) 1-17-18 "Return of Grievance" by JOHN Frost, CSL, and CAO
   (Doretuy) determining grievance marked "emergency" is Not.
   I resubmitted it    1-17-18.

6. A memo dated 12-13-17 from Warden Doretuy regarding
   previously filed grievances (all IN Document #589)
   and only sent to me (she ignored all else sent to her)
   because I wrote (also) Gov. Rauner. (see the cc)
7. Copy my 11-10-17 REQ slip to Warden Doretuy + as to my dental
   records sent to her, my letter(s) of 9-25-17 + 10/27/17.
8. IDOC ARB letter 12/4/17 as to Grievance (emergency)
   dated 11-9-17 for Dorian Pulliam -- denying IT! He needs
   2 front teeth!
9. 11-23-17 to Dir. Baldwin/IDOC as to Pulliam + appealing from
   his grievance.
10. Pulliam's CSL Griev. Review 11-15-17 #hilem-14, denying him.

11. Pulliam's 11-9-17 Grievance/emergency declared. He needs 2 front teeth & as per AD must be done & for psychosocial reasons & more, yet Strow refuses & wants $150.00 paid!

12. JOHN LAVELLE's 3-3-17 grievance as to Dr. Strow

13. LAVelle's 2-11-17 to DENTAL. Note you get "hygienist instructions" on intake -- services NOT available!

14. LAVelle's 12-6-16 to HCUA Lindorff for dental care

15. HCUA Lindorff's 12-20-16 response

16. LAVelle's letter to Grievance office @ Hill CC CSL Frost for his grievance of 12/8/17.

17. His 12-5-17 dental pass

18. [The 12-8-17 LAVelle grievance is pending grievance offc. Frost Review @ Hill CC]

19. Wexford 10-20-17 to me, from my 9-20-17 letter.

20. My 10/29/17 back to Wexford.

21. Jenner Block/Vail letter 1-11-18 NO pro bono for me.

22. EXCERPT state Illinois Contract with WEXFORD showing 5-1-16 --- 4-30-17 Jackass dentist Strow paid $200,000 to NOT do his job & No dental hygienist -- why?

23. My 6-25-17 complaint to "IDFPR" as to Dr. Strow (pgs 1-5) and with 58 pgs Exhibits. (includes Wexford Contracts showing there was a dental hygienist @ Hill CC. 2006-05-001, @ EX.#23 (pg 70 of 105 of contract) sick call requests for dental, dental pass, grievances 2-28-17, letters to Griev. offc. GANS for grievance(s), medical advisor documentation for dental/gums/problems, receipts showing buying what I could from commissary, Grievance reviews (if you want to call them that) for grievance(s), ARB IDOC (rubberstamp) 'rulings' for grievances, Lippert Dec. 2014 report <yet nothing done? why? No injunction(s)?> grievance dated 3-3-17, dental record(s) @/from Hill CC & Dr. Strow -- note 25-50% horizontal bone loss! 5-15-17 NSC, again. 5-22-17 grievance, DDS Dr. Lago's 5-4-17 his opinion --ignored by Strow/IDOC.

24. IDFPR, 10/12/17 INV. Leon Stockstill letter as to my complaint against & for Dr. Strow. Its a joke but for seriousness.

25. My letter to IDFPR-Stockstill dated 10/24/17 & resent 12-1-17 & 1-4-18 to NO avail. JACKASSES!

26. My letter(s) to ACLU Camille Bennett, dated 1-8-18 (1pg.) 12-17-17 (1pg) 11-22-17 (2pgs)

27. Ms. Camille Bennett's 11-17-17 to me. (2pgs)

28. my 11-16-17 to ACLU Bennett, Wolf & Miller. (3pgs)

29. "Intake" ACLU Dept. / 11-3-17 to me

30. my 9-24-17 to ACLU. (1pg.)

31. my copy of letter (2 pgs) (sent 10-11-17) to Camille Bennett ACLU, Stichl & Williams @ Akerman LLP, Harold Hirshman @ Denton & Alan Mills @ Uptown.

note: this copy is the letter sent to each above in #31.

32. Uptowns 11-8-17 boiler plate to me.

33. my 11-16-17 to Uptown A. Mills, ATTY.

All cited
Herein:
W/ENCLOSURES
cc: ET. AL
CSL(S)
Tribune
Sun Times
Herald
Media~Blog
@
"Free Mk liner.
ronald Kinross.
wordpress.
com"

FOR the love of GOD I am at a loss why counsel(s) DO NOT RESPOND to me & others IN & of the CLASS OR if A 'response'—ignores & does NOT address 'substance' of letters written + as comparable to what the grievance process is / INJUNCTION (s) ARE NEEDED NOW --- Not upon a trial --- or a settlement. LET THE Record herein reflect whats taking place & NOT transpiring, ON behalf of myself and all Class members similarly situated thereby objecting to counsel(s) for the class & their NOT acting as they should! You represent me + all of US, ACT like it. DO something, I + others suffer Needlessly / It is my prayer + plea HON. Judge ALONSO Intervenes please!

sincerely #B77152





**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60604

**THOMAS G. BRUTON**
**CLERK**

¹Prisoner Correspondence

Date: ___1/31/18___

In response to your enclosed request, please see the box or boxes checked below:

☐ This court does not have the requested forms. Check with your law library or the public library.

☒ Communications to the court (such as letters sent to the judge) without a certificate of service showing that you mailed copies to all parties are what the law calls "ex parte" and will not be considered by the court. All court filings must be in the form of pleadings, with the case name, number, and caption, and served on opposing parties, in order to comply with Fed. R. Civ. P. 5. Any requests for court action must be made by motion (such as "motion for an extension of time"). **No judge's name should appear on the outside of the envelope; letters should be addressed to the Clerk of Court (in care of the Prisoner Correspondent, if you are incarcerated).**

☐ The enclosed material contains no case number or case title. Without that information the document cannot be processed. Accordingly, the material you submitted to this office is being returned to you. See Fed. R. Civ. P. 10(a).

☐ Check with the trust fund officer at your institution to determine the status of payment of your court filing fees.

☐ Status request: Attached is the latest docket entry in your case.

☐ Please be advised that we are not attorneys and are prevented by federal law from answering questions of a legal nature. We are also prohibited from interpreting the rules. You should direct your questions to an attorney who will be able to give you the legal advice you seek, or to contact the law library at your institution. We regret that we cannot assist you in this matter.

Contact:    Attorney Registration and Disciplinary Commission of the Illinois Supreme Court (ARDC)
One Prudential Plaza
130 E. Randolph Drive, Suite 1500
Chicago IL 606901

---

¹ The Prisoner Correspondence Office is the department of the Clerk's Office which processes all mail from inmates.

Rev. 06/29/2016

☐ Local Rule 5.1 (N.D. Ill.) requires that "all materials shall be filed in the divisional office of the division to which the case is assigned." Your case is assigned to the Western Division. Send all requests and documents related to this case to the Western Division at:

    U.S. District Court for the Northern District of Illinois
    327 South Church Street
    Rockford, IL 61101

☐ The Local Rules for U.S. District Court, Northern District of Illinois, are available online at www.ilnd.uscourts.gov. However, if you want a copy mailed to you, the fee is $10.50 payable to Clerk, U.S. District Court. Send the fee and your request to:

    Clerk, U.S. District Court
    Attn: Cashier
    219 S. Dearborn - 20th floor
    Chicago, IL 60604

☐ The Federal Rules of Civil, Criminal, Bankruptcy, Evidence or Appellate Procedures are available online at www.ilnd.uscourts.gov. However, if you want a hard copy, contact:

    Superintendent of Documents
    U.S. Government Printing Office
    732 North Capitol Street, N.W.
    Washington, D.C. 20402

☒ Pursuant to Local Rule 5.6 (N.D. Ill.), no pleading, motion [except for motion to intervene], or other document shall be filed in any case by any person who is not a party thereto, unless approved by the court. Without such an order, the clerk shall not accept any document sent in by a person who is not a party.

☐ We cannot comply with your request to backdate-stamp your documents. If you want received-stamped copies returned to you, they must be received at the time of filing. Accordingly, your documents are being returned to you.

☐ You filed your case under an alias, and not the name under which you are incarcerated. Your mail at the institution must be addressed to you under your institutional name. Therefore, unless you inform the court in writing of your correct name, and ask the court to remove your alias name, you will not receive any further notices from the court.

☐ Other: _____

_____

_____

_____

_____

_____

*[handwritten annotation:]* I AM A party + member of this class. Action represented BY CSL (s) thereof as such!

Rev. 06/29/2016

C/O Tabb WIN

C/O RUSH from I-A sent me

C/O RALSTON @ Hosp

Bubble offc,

1:00 PM

C/O SMITH @ Commissary Sent me to I-A.

```
OERCP101                    ILLINOIS DEPARTMENT OF CORRECTIONS      PAGE: 42
                                     Offender 360
                            PRINTED SCHED. CALL PASS                RUN DATE: 12/29/2017

                                                                    RUN TIME: 1:19:02 PM


                      ILLINOIS DEPARTMENT OF CORRECTIONS - OTS

                            OFFENDER CALL PASS ISSUED

         IDOC: B77152 KLINER,RONALD            Medium    A   Moderate      HIL:HIL:R1:A:55:L1

      PRIMARY: UNASSIGNED ,PARTICIPANT-HIL710010009



   DESTINATION: hcu                  DAY: 1/2/2018       AT:
                                                         1:00:00
                                                         PM

     PASS TYPE: DENTAL

      COMMENTS: mandatory/detal

   AUTHORIZED: ROBIN RANDOLPH


     CELL HOUSE SIGNATURE:  _____ST_____          TIME: 1:52

   DESTINATION SIGNATURE:   _____          TIME: 1:57

        EXIT SIGNATURE:     _____          TIME: 200

      RETURN SIGNATURE:     _____          TIME: ___:___
```

*+A
Via box
Med to
due to
dental
refusal
ASST accept
to this

To: WALLACE FRANCIS STROW, Dentist @ Hill CC/IDOC
and dental assistant(s) ROBIN
By *hand delivery @ dental appointment 1-2-18 1:00PM pass
(p.9. 42 / Run date 12-29-17 time 1-19:02pm)
FROM: RON KLINER # B77152, 1-A-55

COPY

RE: SEEKING DENTAL CARE/TREATMENT FROM YOU OR P.C.
SENT TO OUTSIDE dental (COTTAGE Hosp) for same and
that you ISSUE Needed NON-formularies ②

P.S. Lindorff's
HCUA LINDORFFS
MEMO
12-20-16 Lovelle
to JOHN Lovelle
ARS8521 says
clearly
" dentist is fully
capable of pro-
viding teeth.
cleanings Dr.
accel to DDS.
Straw you do
yet to
refuse this?
WHY?

dated: 1/2/18

DR STROW—
IN being called to see you today, by pass issued by you
I am seeking you address the dental needs, concerns
and for treatment & care that I need to which I've
repeatedly apprised you by sick call requests, grievances &
to which you Refuse to render, AND, pursuant to IDOC
Administrative Directive 04.03.102 & therein its ATT. A
category 1 treatment (1).

1) I need my simple "mouthguard" replaced you deem a "mandibular
repositioning device" (orange crush type it SEPT 2017) & it is
for grinding of teeth 4 to avoid temporalosis & temporal pain
you have my dental records & know all this & refuse to help me.
This is a $1.99 item I cannot get but via you, CAN you
allow me to have one sent in?

2) I need a soft toothbrush that is NOT sold on commissary,
periodontex toothpaste, piacave rinse, orabase or lidocaine for chronic
Aphtous/cankee Sores, bleeding gums ~ you refuse to HELP me,

CC:
Judge
Jorge Alonzo
10CV4603
N.D. Fed CT.
GOV. Rauner

3) You wont address (Nor N.P. Vollmer) my aphtous stomatts & I
suffer needlessly with & thru bouts & refuse me dental paste.

4) My upper front corner tooth hurts to eat, chew & in biting into
food & you do nothing.

IDOC Dir.
Baldwin
Warden Dorothy
A/W?)
Fromlun
VP/weatord
Camille
Bennett
ACLU, AHY,
Mills,
Hirshman,
Sheul,
ET. AL.
(SLIS)

5) You refuse to treat me for the ongoing periodontal disease I
have and I need the scaling & debridement treatments
I haven't had or been given by you.

6) You refuse to treat my bleeding gums & remove plaques &
calculus & IN back of my front teeth, THIS is all in my
dental records. I've gotten copies & attached them to
letters to the warden & grievances yet you ignore fore obvious
I cannot remove the calculus & plaques nor forming on my
lower front teeth — dental loops & no treatment(s) dont cut it,

7) You wont help me with gingivitis, Im 57 with a life sentence
& your reasonings & refusals make no sense. Your a dentist
with assistants, equipment & facilities & abilities, if you
wont to issue non-formularies & prescriptions for things
not sold on commissary & readily available but for my inter-
intervention & can send be out to cottage Hosp for what you
wont do & claim services not rendered, etc. I need regard-
less &

8) I've never seen any psychiatrist or psychologist or
mental health person(s) due to your so-called concern for
my safety, wellbeing & welfare. I'd gladly see them & ASK you to
please join me to do so.
I hope, as my dentist, you'll render dental care I need, seek & have
& Help me. Please schedule me accordingly!
THANK YOU — Ron/RL

## Contact

Contact Information

| Name | City/State/Zip | DBA/AKA |
|------|----------------|---------|
| WALLACE FRANCIS STROW JR DDS | Morton, IL 61550-2748 | |

## License

License Information

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|----------------|-------------|--------|----------------------|----------------|-----------------|------------------|
| 019019873 | LICENSED DENTIST | ACTIVE | 10/04/1985 | 06/24/2015 | 09/30/2018 | N |

## Other Licenses

Other Licenses

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|----------------|-------------|--------|----------------------|----------------|-----------------|------------------|
| 31*****59 | LICENSED DENTIST CONTROLLED SUBSTANCE (Schedules II III IV V ) | ACTIVE | 12/02/1985 | 06/24/2015 | 09/30/2018 | N |
| 31*****71 | LICENSED DENTIST CONTROLLED SUBSTANCE (Schedules II III IV V ) | NOT RENEWED | 12/07/2000 | 12/07/2000 | 09/30/2002 | N |
| 31*****72 | LICENSED DENTIST CONTROLLED SUBSTANCE (Schedules II III IV V ) | NOT RENEWED | 12/07/2000 | 12/07/2000 | 09/30/2002 | N |

*EMERGENCY GRIEVANCE TO WARDEN STEPHANIE Dorethy @ Hill CC*
*VIA Grievance Box 1-A.*
*Grievance officer JOHN FROST*

## ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE  1-A-55

| | | | ID#: B77152 |
|---|---|---|---|
| Date: 1/16/18 | Offender: (Please Print) RON Kliner | | |
| Present Facility: Hill | | Facility where grievance issue occurred: Hill | COPY |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] ADA Disability Accommodation
- [x] Staff Conduct
- [ ] Dietary
- [ ] Medical Treatment
- [ ] HIPAA  DENTAL SICK CALL 1-2-18 VIA MGD
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [x] Other (specify) Box) & seeing Dr. Strow 1-2-18.

- [ ] Disciplinary Report: ____/____/____ Date of Report _____ Facility where issued

> **Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.  p1/2 *AND AS SUCH ATTACH HERETO THE ENTIRE DOC #589* filed in 10CV4603 Lippert v. BALDWIN

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name of identifying information for each person involved): (including letter(s) to warden Dorethy 9-25-17 & 11-1-17) *I received a PASS for 1-2-18 1:00pm with "COMMENTS: Mandatory/detail (sic)" "Authorized: ROBIN RANDOLPH"* (I reiterate & make a part of this grievance & restate as a PART herein this grievance, as is/are in your records & my Masterfile, all my dental/medical grievances previous to this grievance) (as such left 1-A bldg at 1:52 pm by c/o RUSH (your log records, c/o RUSH, & my PASS attached hereto will show this) (it should be noted my being "late" is attributable to being last from 1-A @ commissary & awaiting c/o Smith to send me back to 1-A bldg. & he was apprised I had a dental PASS & can confirm this) I arrived at the Hill CC hospital & gave my pass to c/o Ralston who put 1:57 on it & sent me RIGHT in to the dental office saying, "they're waiting for you." At the door was Dr. Wallace Francis Strow, JR. & his 2 dental (con pg 2)

*SEE ATTACHED/ IF you read this grievance, and all written previously as well as my box @ 1-A, dental records 1992-present, and the 1-2-18 to Dr. Strow via the med.*

**Relief Requested:** *I need the dental care sought & am to super Needlessly & only get worse I seek please that the dental issues, needs, problems therein be addressed by Dr. STROW or I be sent to an outside dentist to do so (what he claims he cannot) & that appropriate "non-formularies" be given & that proper follow-up (not done) be done & from this 1-2-18 to the medical box.*

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Offender's Signature | B77152 ID# | 1/16/18 Date |
|---|---|---|

*(Continue on reverse side if necessary)*

---

**Counselor's Response** (if applicable)

Date Received: ____/____/____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: ____/____/____

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date |
|---|---|

Distribution: Master File; Offender                    Page 1                    DOC 0046 (8/2012)

p2/2   Kliner   B77152   **ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE** (Continued)   dated: 1/16/18

assistants, Robin immediately walked away, the other went to the dental chair/exam area to prepare to write in my medical chart record file, Strow said, "Happy Birthday" proceed to sit in the blue exam chair which I did. He then started feeling my throat & jaw area telling me, "to open & close my mouth." I did so & followed his instructions. I dont know what the hell he was doing & had my written list of dental problems, needs & care sought I wanted to present to him & seek help, address them & as I've tried to do -- seemingly to no avail. Yet, Strow then put his fingers in my mouth & telling the dental asst. to write this down saying something about "Receding gum ... @ tooth ..." I was barely able to say, "what about the calculus & plaque @ front teeth & my gums bleed" -- He says, "I don't have the instruments" -- yet & then proceeded to, with whatever instrument he then had in his hand, to push down with the instrument as hard as he could @ back of my front tooth that is a crown & stopped doing it saying, "there is some calculus keep brushing & flossing" -- I said, "I do but you won't give what I need nor is it sold on commissary, I brush & floss 2x day," ok, "we're done" -- he walks away quickly from me. The dental assistant is left sitting there & I tell her, "here this is what is wrong & I need help" I put my dated 1-2-18 I prepared (copy attached hereto) outlining things & she moves her hands away as if it was radioactive saying, "I cant take that" & "as to your dental problems place it in the medical box so its stamped" I said, "fine I'll do that" the medical box on I-A is where medical, dental, nurse sick call requests go. I then left & C/o Ralston signed me out @ 2:00. Upon arriving back @ I-A bldg foyer & to C/o Rush -- he says to me, "what he do your back so quick & he called here 3xs for you!" I explained how Strow wont help me with my dental needs, wont do anything to help you. C/o Rush was like & said, "All that for nothing he made it sound like he was doing something & called for you 3xs!". As you can see by the copy of the "seeking dental care/treatment from you or to be sent to outside dental (Cottage Hosp.) for same & that you issue needed non-formularies" 1-2-18 letter/sick call request, I outlined everything seeking help & placed same on 1-2-18 (& noted it on the request ✱) in the I-A medical box. To date I've heard nothing nor been called by Dr. Strow & suffer needlessly due to his unwillingness to help me. This grievance is "not" duplicative of any grievances of mine (though Strow will say so to ignore me & my dental problems & needs -- all incidentally supported by my dental records 1992-present) & is from seeing Strow 1-2-18 & my 1-2-18 to the medical box. Also see the HCUA letter (Lindor#) as to teeth cleaning & dentist capable, to do & c/'d to him, 12-20-16
Dr. Strow, DDS, is HCUA somehow not qualified to say whats in the memo?

Bruce Rauner
Governor




John Baldwin
Acting Director

*recd*
1-17-18

*x sent grievance via grievance box*

## The Illinois Department of Corrections

Hill Correctional Center
600 Linwood Road, P.O. Box 1327 • Galesburg, IL  61401 • (309) 343-4212 TDD: (800) 526-0844

### RETURN OF GRIEVANCE

Date:  01-17-2018

To:  KLINER     IDOC# B77152     H.U.: R1-A-55

From:  John Frost, Primary Grievance Officer

Subject:   Grievance Dated 01-16-2018   Date Received 01-17-2018

**The attached Grievance(s) / Correspondence is being returned for the reason(s) listed below:**

_____ Not Properly Filed; *Non-emergency* grievances are to be submitted in the Grievance Box located in your housing unit. *Emergency* grievances should be mailed directly to the Warden's Office.

_____ Not submitted in 60 day time frame outlined in DR 504, Subpart F; therefore issue will not be addressed. No justification for late consideration is found.

_____ Include copies of the Disciplinary Report and the Adjustment/Program Committee Final Summary when submitting a grievance on an IDR, as indicated on the DOC 0046.

_____ Issue has been addressed in a previous grievance you filed. Per DR 504, Subpart F, grievances that have previously been addressed *for which there is no additional information* are deemed without merit and may be returned as denied to the sender without further investigation.

_____ Per DR504 "The *original* grievance form shall be deposited in the...designated repository." Do not submit a photocopy.

__X__ The CAO has determined that the grievance you marked as an "Emergency" is not of an emergent nature. Submit the grievance in the Grievance Box if you wish to continue the process.

_____ Per A.D. 04.01.114, if you do not agree with the CAO determination that a grievance is not an emergency, you "must forward a copy of the grievance form that includes the Chief Administrative Officer's decision to the emergency request through the normal review process."

_____ Other: _____

---

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

Bruce Rauner
Governor



John Baldwin
Acting Director

Rec'd 12/14/17 —NK

## The Illinois Department of Corrections

Hill Correctional Center
600 Linwood Road, P.O. Box 1327 • Galesburg, IL 61401 • (309) 343-4212 TDD: (800) 526-0844

## M E M O R A N D U M

DATE:     December 13, 2017

TO:       Kliner, Ronald – B77152
          R1 – A55

FROM:     Stephanie Dorethy, Warden
          Hill Correctional Center

SUBJECT:  Dental Concerns

Your recent correspondence addressed to Governor Rauner's office regarding dental services at Hill Correctional Center has been forwarded to my office for a direct and final response.

You transferred to Hill Correctional on 11/11/2016. Since your arrival you have filed four (4) grievances related to dental issues raised in your letter to Governor Rauner:

- 17-0927 was denied by the CAO on 03/24/2017 based on the Grievance Officer's recommendation that no "documentary or other evidence" was provided to support your claims. Also in that grievance, Dr. Strow, Dental Director stated that the grieved dental issues were a duplicate of those in a prior grievance.
- 18-0357 was denied by the CAO on 10/17/2017 based on the Grievance Officer's recommendation that Dr. Strow stated the grieved dental issues were duplicate to a prior grievance and that HCU Administrator Lindorff stated that NP Vollmer had acted appropriately.
- 18-0371 was denied by the CAO on 10/11/2017 based on the Grievance Officer's recommendation that the service that the offender requested is not offered at Hill C.C. and that the remainders of the issues were duplicated from prior grievances.
- 18-0469 was denied by the CAO on 12/03/2017 based on the Grievance Officer's recommendation that the Dr. Strow was not responsible for the action that the offender was accusing him of, namely redirecting a grievance; this was done by HCUA Lindorff.

Please be reminded that, in accordance with Department Rule 415, all treatment and dental decisions must be ordered by the Dentist and is not a matter of inmate's preference or opinion. As advised by the Administrative Review Board (ARB) when your grievance(s) was denied, all medical and dental decisions are determined by IDOC medical professionals. In short, you do not meet the evidence based criteria for the specialized services and equipment you are requesting; there is no clinical indication for providing it.

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

You have been educated on proper personal oral hygiene practices with no apparent positive improvement. You have been verbally advised, and per the orientation manual, that if you experience dental issues you need to sign up with Nurse Sick Call. To date, no requests have been received. Proper policy and procedures are being followed.

I trust this has been responsive to your inquiry.



SD:ms

CC:     Governor's Office of Citizens Action
        Master File

Re-sent 11/23/17 ⑦

**ILLINOIS DEPARTMENT OF CORRECTIONS**

## Offender Request

Offender Name: RoN KliNeR                    ID #: B77152  Living Unit: 1A55

Job Assignment: _____    Shift: _____

Please refer to the directory located in your orientation manual and address proper personnel.

To: WardeN S. Dorethy @ Hill CC

I request ☐ interview ☐ cell assignment ☐ visit ☐ Trust Fund ☐ purchase ☒ other (specify) _Following up oN my_
_9-25-17 & 10/27/17_
_Letters to you._
for the purpose of (explain): Referenæ the above & my 2 letters with supporting documents I
Haven't heard from you & am writing seeking to learn, please, what has
transpired from my letter(s) with all sent to you with them & to hear
from you please. Thank you for your time & consideration,

                                                                    11-10-17
_____                                    _____
Offender's Signature                                              Date

**DO NOT WRITE BELOW THIS LINE**

Remarks by staff (if necessary) : _____   Remarks by supervisor (if necessary) : _____

_____   _____

_____   _____

_____                   _____
Print Staff Name                              Print Supervisor Name

_____                   _____
Staff Signature            Date              Supervisor Signature          Date

Distribution:  Affected Unit

*Printed on Recycled Paper*                              DOC 0286 (Rev. 4/2010)

Bruce Rauner
Governor



John Baldwin
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court. P.O. Box 19277 • Springfield. IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender: Pulliam, Dorian

ID# : Y21867

Facility: Hill

12/4/17
Date

This is in response to your grievance received on 11/30/17_____. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: 11/9/17_____ Grievance Number: hil-em-14_____ Griev Loc: Hill_____

☐ Transfer denied by the Facility

☐ Dietary _____

☐ Personal Property _____

☐ Mailroom/Publications _____

☐ Assignment (job, cell) _____

☐ Commissary / Trust Fund _____

☐ Conditions (cell conditions, cleaning supplies, etc.) _____

☐ Disciplinary Report: Dated: _____ Incident # _____

☒ Other   Medical Treatment/Dental-replace two front teeth

Based on a review of all available information, this office has determined your grievance to be:

☐ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____

☐ Denied, in accordance with DR504F, this is an administrative decision.

☒ Denied, this office finds the issue was appropriately addressed by the facility Administration.

☐ Other: _____

☐ Denied as the facility is following the procedures outlined in DR525.

☐ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.

☐ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

FOR THE BOARD: _____
Patty Thull
Administrative Review Board

CONCURRED: _____
John R. Baldwin
Acting Director

CC: Warden, Hill_____ Correctional Center
Pulliam_____, ID# Y21867

Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.

www.illinois.gov/idoc

To: Director Baldwin, IDOC Director / ARB-Spgfld.
AND: CAO/WARDEN STEPHANIE DORETHY & Grievance OFFC. FROST
    AT HILL CORR. CTR.

FROM: DORIAN PULLIAM # Y21867, Hill CC, 1-A-66

p1of2

RE: my 11-9-17 Emergency Grievance declared as such by
    CAO/Warden Dorethy 11-13-17, with Grievance officer
    JOHN FROST's 11-15-17 Review # hil-em-14, with
    CAO/WARDEN DORETHY's 11-16-17 "I CONCUR" for
    FROST's DENIAL OF THE GRIEVANCE

DATED:    11 / 23 / 17

Dear DIR. Baldwin, CAO/Warden Dorethy & Grievance OFFC. FROST-

      Reference the above I am appealing to your common
sense and attached is the 11-15-17 Review with hil-em-14,
my 2pg. 11-9-17 Emergency grievance, and as well a copy
of IDOC AD 04.03.102, a full & complete copy.
      This emergency grievance I filed, declared emergent shouldn't
of been denied, and certainly based on how it was, and
then the very same Warden who declared it emergent
to concur for said denial made so sense & in support
thereof please consider the following:
A. IN my grievance, and as well in "the "AD" itself, I cited
as to "psychosocial" (pg. 2 of grievance) (IN ATTACHMENT "A" under
category II C.) & how this is completely ignored, defies common sense
& its relevance ignored, impact to the grievance & relief sought
itself & by the CAO/warden who had to read it & take into con-
sideration in declaring the grievance an emergency & then
to concur in the denial is preposterous, and as well DDS.Strow
who conveniently ignores it & of course Grievance offc. FROST
who cites he is "reasonably satisfied" I have "access to
dental" and it "appears that policy & procedure was followed"
Appearances are deceiving & having access to dental doesn't
mean Dr. Strow is correct when he did what he did, now
& to deny me needed dental care & to my detriment under
a section "S" of the AD that doesn't exist -- even the
griev. offc. FROST was not able to locate it -- nor was
any documentation provided by STROW to show that -- Nor
any purported "directive" from Wexford "in keeping with the
mentioned "AD" -- STROW, I believe has provided NOT only
false information but misapplied & misinterpreted the AD
to deny my grievance & not provide me dental care I'm
entitled to unless the "ransom" of $150°° is paid & if
I cannot get this money, and the psychosocial impacts
ignored, I can't get the teeth I needed & suffer
preventable ridicule needlessly, why?
      ALSO CONSIDER PLEASE:
DR. STROW IN citing this section "S" claimed I must pay a
"lab fee for partials or dentures not present at time of incarceration"
I had no partial or denture at time of incarceration. I lost my
2 front teeth during incarceration & suffer the psychosocial problems
during this incarceration & from losing my 2 front teeth be it

during incarceration at Cook county JAIL or IDOC +
certainly psychosocial problems Now in IDOC + for
+ throughout my incarceration in IDOC. To deny me, as
Strew does is inexcusable and wrong and as in my grievance
I had No denture or prosthesis to lose & needing a replacement
I'd have to pay for -- I Need for 1st time, replacement
of my 2 front teeth - a distinction with a difference,
contrary to Strows false misrepresentations & misapplication
of a section "S" of the AD that doesn't EXIST Nor
a Wexford "directive" Strow doesn't cite by DATE OR #!

Proper policy & procedure is Not being followed
despite Strows assertions otherwise. The AD I've cited,
that exists, fully supports, and Why, I should be
provided with dental care by Dr. Strow + get the care
I Need.

Grievance offc. Frost misapplies A.D. 04.03.102's
II, F. 6, (a) -- I dont have, Nor had any prosthetic, that
of been given as I didnt lose my teeth until in-
carcerated + I have demonstrated, clearly the Necessary
reasons to Need my teeth fixed + replaced as well
as for the psychosocial reasons supported by the A.D,
+ No Anterior tooth was Extracted, Nor a prosthetic --
made before incarceration -- so grievants 'statement'
my teeth (I Never said they were Extracted) Extracted
during IDOC incarceration, etc. should somehow deny me what
I seek is completely misapplied + misdirected + contrary
to the facts of the situation!

I've made, NO "offenders preference" to get my teeth
fixed -- I sought, pursuant to the /an AD to do so
+ for reasons, ignored by dentist, warden ≠ CSL Frost,
& the psychosocial reasons & thats NOT my preference
but for all reasons cited + shown to do so + since I
dont have the $150.00 based on what this decision
made is, I cant ever get my teeth fixed?

I'm Not asking for luxury treatment, I'm seeking dental
care & to get my 2 front teeth fixed + for the
obvious reasons, the AD, stated do so, This dentist
doesn't want to comply with the A.D. + falsely
cited things that dont exist -- section S of the
AD + a so-called "directive" of Wexford. I ask you
please interpret your own A.D. + do what the warden,
dentist Strow + counselor Frost (who admits he has No
authority to evaluate, etc. but has common sense to read + see
what I've said, cited,) refused to do, How'd Frost deny my
grievance when, he admitted he had "no authority" to evaluate
Strow? He could evaluate what I said + the AD. THANK YOU.

Donte Pulli

w/enclosures

cc: ACLU ChGO.
Camille Bennett
CSL (S)
Lippert v. Baldwin
et.al.

⑨

RESPONSE TO OFFENDER'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|

Date Received: November 15, 2017    Date of Review: November 15, 2017    Grievance # (optional): hil-em-14

Offender: Dorian Pulliam    ID#: Y21867

Nature of Grievance: Other - Dental "Dr. Wallace Francis Strow, Jr. refusal to help me. Seeking to fix my upper front teeth."

**Facts Reviewed:** Offender Pulliam Y21867 (grievant) has filed this grievance dated 11/09/2017 regarding medical (dental) care and submitted it for emergency review. It was received and reviewed by the CAO on 11/13/2017, who determined that it was emergent in nature. There are no attachments to this grievance.

Grievant states that on 10/27/2017 he had a call pass to the Dental Department and spoke with a dental assistant, R. Randolph. He states that the dentist, Dr. Strow "would not see me." Grievant states that his two front teeth were knocked out when he was at Cook County Jail and that the loss of these teeth has made it difficult for him to bite into his food and has made him the subject of joking by other offenders. He states that Randolph told him that they would not be able to begin the process of fitting him for a partial until he was able to pay the $150 to cover the costs. Grievant's relief requested is that his teeth get fixed or he be sent to an outside facility to do so and that Dr. Strow be disciplined for misinterpreting the A.D. regarding dental care.

Dr. Strow responded on 11/15/2017 stating "The non-emergent grievance and dental record of Mr. Dorian Pulliam, Y21867, was reviewed on 11/15/2017 by this writer. According to A.D. 04.03.102 Section S, offenders are required to pay the lab fee for partials or dentures that were not present at time of incarceration. When Mr. Pulliam entered IDOC, the record shows that he meets this criteria. Proper policy an procedures are being followed in this matter. Dr. Wallace Strow, Dental Director"

This Grievance Officer was not able to locate Section S of A.D. 04.03.102 (effective 9/1/2002, amended 1/1/2012). It is noted that A.D. 04.03.102, II, F, 6, a, states "Removable dental prosthetics shall be provided on a case by case basis as determined clinically necessary by the dentist." The same A.D. further states under (1) that "If an anterior tooth is extracted during incarceration or prosthetics that were made before incarceration become nonfunctional, appropriate dental prosthetic devices shall be provided." By the grievant's own statements, the teeth were not extracted during his IDOC incarceration, nor did he have an existing prosthetic.

This Grievance Officer also spoke with Dr. Strow, who stated that his department would be happy to provide the requested prosthetic, once the grievant is able to provide the required lab fee. He states that the requirement for payment prior to service for prosthetics for teeth missing prior to incarceration is a directive from Wexford Health Source, Inc, in keeping with the mentioned A.D.

In accordance with Department Rule 415, all treatment must be ordered by the Dentist and is not a matter of offender's preference. This Grievance Officer has no authority to evaluate clinical decisions made by licensed physicians or dentists.

**Recommendation:** Based upon a total review of all available information, this Grievance Officer is reasonably satisfied the offender has access to Dental and recommends the grievance be denied, as it appears that policy and procedure were followed.

John Frost
Print Grievance Officer's Name                    Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|

Date Received: 11-16-17    ☒ I concur    ☐ I do not concur    ☐ Remand

Comments:

Chief Administrative Officer's Signature                    11-16-17
                                                            Date

| Offender's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Dorian Pulliam                    Y-21867    11/17/17
Offender's Signature                ID#        Date

Distribution: Master File; Offender    Page 1    DOC 0047 (Rev. 3/2005)

ATTN: [handwritten]
BY GRIEVANCE BOX

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**
EMERGENCY   I-A-66

| Date: 11-9-17 | Offender: (Please Print) Dorian Pulliam | ID#: Y21867 |
|---|---|---|
| Present Facility: Hill | Facility where grievance issue occurred: Hill | |

NATURE OF GRIEVANCE: P 1/2   HIL-EM-14-

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA   DENTAL
- [x] Other (specify): Dr. Wallace Francis Strow, JR.
- [ ] Disciplinary Report: ___/___/___ Date of Report  Facility where issued refusal to help me, seeking to fix my upper front teeth.

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): ON Friday, 10-27-17, by hospital pass, having put a "NSC" REQ. to see the dentist, I was allowed to go to the dentist. The dentist, Dr. Wallace Francis Strow, JR. would "not" see me though & instead I was talked to, only, by a WHT/F dental assistant "Robin" RANDOLPH. I do not & have not had my 2 large upper front teeth as they had been knocked out while at Cook County Jail. I was told by medical people at Cermak Hospital I'd get my teeth replaced when I went to IDOC. Since this has happened I have been the target of name-calling, ridicule, & being made fun of, "Hey no teeth" I've been constantly called and worse and everywhere I've gone & go this happens. Also, for me to bite into my food is very difficult and with confidence.

Relief Requested: This being on emergency & for the reasons given and as well because of the dentist Strow & assistant abrogating their duty as per IDOC AD 04.03.102 to help me, which they refuse unless I pay & have $150.00 on my books, as well as excuse of it didn't happen at Hill cc, etc that the extenuating circumstances I seek you intervene as CAO & warden to compel, direct that IDOC AD 04.03.102 be followed as well as proper protocols which are being circumvented by Dr. Strow & I being allowed to get my front teeth fixed or sent to cottage Hosp. to do it. AND this policy & practice being carried out by Dr. Strow to circumvent the dental AD stop & the be reprimanded for misapplying & misinterpreting it to my & others detriment.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Dorian Pulliam   Y21867   11/9/17
Offender's Signature   ID#   Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: ___/___/___
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: ___

Print Counselor's Name   Counselor's Signature   Date of Response

**EMERGENCY REVIEW**

Date Received: 11/13/17

Is this determined to be of an emergency nature?
- [x] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature   11/13/17 Date

Distribution: Master File; Offender   Page 1   DOC 0046 (8/2012)



to do so. And, I get made fun of by others in eating like "you can't eat that... give it to me... you got No 2 front teeth." Also, "who knocked your teeth out?" like because my teeth are missing guys take it as a sign of weakness & to bully me. It is terrible to say the least & effects me with my sense of well being, confidence & adjustment. I was told while I was at receiving NRC/STA-IDOC By medical & dental I'd get my teeth fixed when I get to where I'm going & arrived at Hill CC June 2nd 2017. This is an ongoing & continuing situation. My outdate pending any appeals, is 2042. I can't go on like this any longer, I don't smile, lack self esteem, + am afraid to look someone in their eyes & make eye contact--this leads to akward social interaction's / Per this "D.A." Robin, "... to begin any process of fitting you (me) for a partial, I have to have $150⁰⁰ on my books/trust account as I'm liable for the costs or it won't be done." She asked me where & when I lost my teeth? I told her at Cook County Jail & sue said, "Oh, we are not responsible then, to fix your teeth, and won't do it at Hill CC, you'll have to pay the $150⁰⁰ first, Dr. Strow will not fix your teeth without paying $150⁰⁰ first, let us know when you have the funds & we'll call you back." In reading the *IDOC A.D. 4.03.102 on "dental care for offenders" & my NOT ever having any partial made nor given to me & this being the most prominent 2 teeth, my front top/upper teeth missing, & my psychosocial problems shown, and in eating I believe it is incumbent on the dentist (Strow) to begin the process for me to get a partial & "NOT" at any cost to me of $150⁰⁰ whether the funds are or are not on my books. The cost should be $500, the co-pay. This is an emergency grievance + because of what I've outlined in support herein of it being so for the dentist & dental assistant are (+ have) with-held dental care to me & violating IDOC's "AD" whereas it clearly says in its ATTACHMENT "A" under category II C. "in physical problem with mastication (chew food, soften food) OR A PSYCHOSOCIAL PROBLEM WITH OFFENDER'S SENSE OF WELL BEING, CONFIDENCE AND ADJUSTMENT." (emphasis mine) This is on "emergency grievance" to you as CAO of Hill CC because I am NOT getting the dental care needed or required & your dentist is violating the IDOC's "AD" for same even ignoring under 04.03.102 5. Dental Requests to do what I need done (& for all reasons herein this grievance presented to you) + in any time frame whatsoever by the outright subterfuge of I must have $150⁰⁰ first + ' it happened at Cook County Dr Strow won't do it, we're not responsible? The outright obstinancy is outrageous & arrogance exhibited to even defy the IDOC AD! I seek your intervention so I can get the dental care I need please.

cc: ACLU, et.al. Lippert V. Baldwin Nov 4603 thankyou.

* I did not attach the "AD" as it is readily available to you and dental being your own directive you clearly be aware of and specific to the dentist.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 3-3-17 | Offender: (Please Print) John LaVelle | ID#: R58527 |
|---|---|---|

| Present Facility: Hill C.C. | Facility where grievance Issue occurred: Hill C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [X] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify):

- [ ] Disciplinary Report: ___/___/___
  Date of Report      Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): I am writing this grievance in an effort to get my teeth cleaned. On 2/14/17 I recieved a response to my inquiry dated 2/1/17. Dental's response was that Service I requested isnt available at this time. This is contrary to the Memo dated Dec. 20, 2016 by L. Lindorff, RN BS HCUA in which she responded to my inquiry letter dated 12-6-16 stating "the dentist is fully capable of providing teeth cleaning." Dental Hygiene Education does not clean plaque of your teeth.

Relief Requested: That Hill C.C. Dental Dept provide inmates with the opportunity to recieve teeth cleaning once a year as provided by other IDOC institutions & that grievant doesnt recieve any reprocussions by Staff →

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| John LaVelle | R58527 | 3/3/17 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 3/13/17

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Per Dr. Stein, DDS, "No contradiction exists between the memo he received & the conversations he requested. This IM is welcome to pursue a transfer to a facility, like Stateville CC which currently offers an established, dental hygiene services... Proper policy and procedures are being followed in this matter".

| J. Trischler cc | J. _____ cc | 3/13/17 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| | |
|---|---|
| Chief Administrative Officer's Signature | Date |

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO OFFENDER'S GRIEVANCE

| Grievance Officer's Report |
|---|

Date Received: April 4, 2017        Date of Review: April 6, 2017        Grievance # (optional): 17-0959

Offender: Lavelle, John        ID#: R58527

Nature of Grievance: Medical; dental

**Facts Reviewed:** The grievance is dated 3/3/17. The grievant states that he wants his teeth cleaned. He states that, on 2/14/17, he received a response (attached) to his 2/11/17 inquiry (attached) about this matter, and was told that dental cleaning services are unavailable at this time. He states that he received a memo dated 12/20/17 from HCUA Lindorff (attached), which stated that teeth cleaning services were provided at Hill C.C. As relief, he requests that Hill C.C. provide offenders with annual teeth cleaning services, as do other IDOC facilities, and that he suffers no repercussions from staff for filing the grievance.

Counselor Friend responded on 3/13/17, stating that, according to Dr. Strow, DDS, there is no contradiction, and the grievant is welcome to pursue a transfer to a facility that offers an established dental hygiene program. He stated that proper policies and procedures are being followed.

According to A.D. 04.03.102, an offender can request specific routine or non-emergency services, such as teeth cleaning. Such services may be scheduled, but are not required to be performed.

**Recommendation:** Based on Dr. Strow's review of all available information, it is the recommendation of this reviewing officer that the grievance be DENIED. It appears that the grievant's dental concerns have been, and are being, appropriately addressed.

Steve Gans, C.C 2
Print Grievance Officer's Name                   Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

Date Received: 4/9/19        ☒ I concur        ☐ I do not concur        ☐ Remand

Comments:

Warden Wright
Chief Administrative Officer's Signature                   4/9/19
                                                              Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Offender's Signature                   ID#                   Date

Bruce Rauner
Governor



12B

John Baldwin
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender Name: Pruvelle, John          Date: 7/25/17

Register # 1258527

Facility: HIL

This is in response to your grievance received on 4/18/17 . This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

**Your issue regarding: Grievance dated: 3/3/17** Grievance Number: 17-0959 Griev Loc: HIL

○ Transfer denied by the Facility or Transfer Coordinator

○ Dietary _____

○ Personal Property _____

○ Mailroom/Publications _____

○ Assignment (job, cell) _____

○ Commissary _____

○ Trust Fund _____

○ Conditions (cell conditions, cleaning supplies)

○ Disciplinary Report dated _____
    Incident # _____

○ Other Medical - dental

**Based on a review of all available information, this office has determined your grievance to be:**

○ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____.

○ Denied, in accordance with DR504F, this is an administrative decision.

○ Denied, this office finds the issue was appropriately addressed by the facility Administration.

○ Denied in accordance with AD05.03.103A (Monetary Compensation for Inmate Assignments)

○ Denied, as the transfer denial by the facility/TCO on _____ was reviewed in accordance with transfer procedures and is an administrative decision.

○ Denied as the facility is following the procedures outlined in DR525.

○ Denied as Cell Assignment/Housing is consistent with the Department's determination of the appropriate Operational capacity of each facility.

○ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.

○ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

Other: _____

FOR THE BOARD: Melissa Phoenix     CONCURRED: John R. Baldwin
        Melissa Phoenix                             John R. Baldwin
   Administrative Review Board                       Acting Director

CC: Warden, HIL _____ Correctional Center
    Pruelle John , Register No. R58527

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

(13)

To: Dental                                        2/11/17

From: John Lavelle  R58527  2B14

— Please put n on the list to get my teeth
Cleaned.

              Thank you,

                    John Lavelle
                    R58527                    2/14/17
                     2B14
Dental Dept. provides dental hygienist instructions
on intake. We're sorry that the services you are
requesting are not available at this time.
                              Dental Dept

12/20/16

To: Health Care Adminstrator Lindorff
From: John Lavelle #R58527  2B67  

Upon my arrival at Hill Correctional
Center during my dental check I was
told that they don't clean teeth here.
I was told by Med. director Batista that
they don't have physical therapy here.
At Stateville Med. director Obaisi put me
in for physical therapy and I was shipped
here after my first physical therapy appointment
Now that more inmates with 15+ years left
to do are arriving will dental cleaning &
physical therapy be made available in the
near future.
            Thank you in Advance for your
         help in this matter,
                        John Lavelle
                        #R58527
                        2B#67

Bruce Rauner
Governor



John Baldwin
Acting Director

### The Illinois Department of Corrections

Hill Correctional Center
600 Linwood Road • P.O. Box 1327 • Galesburg, IL 61401 • (309) 343-4212 TDD: (800) 526-0844

# MEMORANDUM



DATE: December 20, 2016

TO: Offender Lavelle, R58527
2B-67

FROM: L.Lindorff, RN,BS  $\partial \gamma$
HCUA

SUBJECT: Response

Per your letter dated 12-6-16 regarding services at Hill:
If your teeth require cleaning, the dentist is fully capable of providing teeth cleaning. Dental dept also
provides dental hygiene education.
As for PT, the doctor has requested a PT visit for you. PT training instructions will be provided and you can
perform PT either in our PT dept or in your cell depending on the instructions provided.

Lll
cc/file
Dr.Bautisa,Med.Dir
Dr.Strow,DDS
D.Dean,DON

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in
offender behavior, operating successful reentry programs, and reducing victimization.*

*www.illinois.gov/idoc*

TO: Grievance office @ Hill CC / CSL, FROST

FROM: JOHN LAVELLE, #R58527, 1-A-60

Re: Grievance dated 12-8-17 (from seeing the dentist
12-5-17) & with a dated received of 12-11-17
and a 'response' almost incoherent and without
any counselors name, signature or date; Appealing
to you for review & to seek an appeal to ARB
to exhaust the grievance process
dated: 12-16-17 & by 1-A grev. box

CSL FROST-

SENT
TO YOU
WITH
COPIES
OF 8
• 12-8-17
  griev.
• 12-20-16
  HCUA memo
• 2-14-17 with
  from
  dental
• 3-3-17
  griev.
• my 12-4-16
  TO HCUA.
• 17-0959
  Review 4-6-17
  griev. 3-3-17

CC:
Lippert V.
Baldwin
Judge
Alonso
10-CV-4603
ACLU
Committee
Bennett
Atty (s)
et. AL
-Jenelusville
UPTOWN
Man Mills
Atty (s)
H. AL.

1 wrote my 12-8-17 grievance from seeing the dentist as
I was called by him & by pass to do so & on 12-5-17,
It is purportedly 'deemed' a grievance that is a 'duplicate' to
the 3-3-17 one I'd written & by some UNKNOWN person
counselor who did not print his/her name, signed & dated.

Per Grrev.# 17-0959 (4-6-17 Review for/from the 3/3/17
grievance & to which my 12-8-17 is being deemed a duplicate to)
then G.O. Gans cited therein & from my 2-11-17 dental request
the fact it was said, "dental hygenist instructions on
intake. We're sorry that the services you are requesting
are not available at this time, Dental Dept."

Clearly my seeing the dentist 12-5-17 & by his calling me, is
another time & "NOT" a duplicate to at this time as then
I'd NOT seen the dentist per se, wrote the HCUA who
wrote me her 12-20-16 & I'd sought teeth cleaning which the
then 3-13-17 grievance was about whereas my 12-8-17 is from
seeing the dentist 12-5-17 & as another time, since I was
told "NOT available at this time" (per 2-14-17 by dental) & my
12-8-17 grievance from that is NOT duplicative to my 3-3-17.

While the 2 grievances are similar they are NOT, the 12-8-17 to
my 3-3-17 duplicative. Dr. Strow is using semantics to excuse his
not wanting to clean teeth as if it is beneath him, AND you'd think
from MAR. 2017 to now he'd of advocated to get someone to
clean teeth and cite his rediculous get a transfer excuse as
cited to CSL Friend 3-13-17, Does he expect IDOC to transfer I/ms
transfered to Hill by IDOC to, or back to, the facilities they were
at — to get teeth cleaned? theres a reason HCUA Lindorff wrote
the/her 12-20-16 -- she recognised Strow as "fully capable" of
providing teeth cleaning, He doesn't want to & declaring my
12-8-17 grievance as a duplicate as per this 3-3-17 is to deprive
me of due process & be able appeal this to the grievance process & also
as some counselor didn't sign or name themself. John Lavelle



17

| | | |
|---|---|---|
| OERCP101 | ILLINOIS DEPARTMENT OF CORRECTIONS<br>Offender 360<br>PRINTED SCHED. CALL PASS | PAGE: 45<br>RUN DATE: 12/4/2017<br>RUN TIME: 12:43:22 PM |

17

ILLINOIS DEPARTMENT OF CORRECTIONS - OTS

OFFENDER CALL PASS ISSUED

IDOC: R58527 LAVELLE,JOHN    Medium    A    Moderate    HIL:HIL:R1:A:60:L1

PRIMARY: UNASSIGNED ,PARTICIPANT-HIL710010009

DESTINATION: hcu    DAY: 12/5/2017    AT: 12:30:0 0 PM

PASS TYPE: DENTAL

COMMENTS: mandatory/detal

AUTHORIZED: ROBIN RANDOLPH

CELL HOUSE SIGNATURE: [signature]    TIME: 11:11

DESTINATION SIGNATURE: ______    TIME: ___:___

EXIT SIGNATURE: ______    TIME: N:A

RETURN SIGNATURE: ______    TIME: ___:___

**Wexford Health**
SOURCES INCORPORATED

*October 20, 2017*

Mr. Ronald Kliner #B77152
P.O. Box 1700
Galesburg, IL 61402

Subject:     Your Recent Letter

Dear Mr. Kliner:

We are in receipt of your recent FOIA request dated September 26, 2017. We received
your letter on October 19, 2017.

Wexford Health Sources, Inc. is a private entity and is therefore not subject to the Freedom
of Information Act.

Please be assured that the medical staff at Hill Correctional Center is comprised
of qualified and dedicated professionals who are there to assist your medical needs.

Very truly yours,

**Wexford Health Sources, Inc.**
**Risk Management Department**



ATTN. TO. JOHN M. Froehlich, Vice-President & CFO
WEXFORD HEALTH SERVICES
(20) 501 Holiday Dr. Pittsburgh PA 15220

FROM: RON KLINER B37152 P.O. 1700, Galesburg IL 61402

Re: my letters to you dated 9-26-17 and with FOI request
(and regarding your 9-20-17 from my 9-3-17 to Dr. Ritz
regarding thyroid/endocrinologist) F/u collegial review denial;
→ to your which is completely ignored by you/your company)
dated 10/29/17  10-20-17 to me, my response to you.

Dear Mr. Froehlich, to whom I wrote my 9-26-17 to° and to
whomever the UNKNOWN Nameless person/party that
sent me a 10-20-17 letter —

I got your letter & why do you NOT say "who" you are?
Why would a company, a "private entity" as you state,
remain Nameless? Its really cowardly to say the least.

As to your "excuse" of Not being subject to FOIA & IN
Illinois, I beg to differ, because despite being a
"private entity" you have a "contract" with the state
of Illinois & therefore, & as cited in my 9-26-17 to you,
you are subject to the State of Illinois FOIA!

Do you still take the position contrary to that? AND
"WHOM" is making this statement on behalf of Wexford?
You have a renewed, as of 4-29-16, contract with IDOC!
AND, Mr. Froehlich you signed it! (contract # 99110z)
AND regardless why would you not give me what I asked
for? AND, as to dental, as well as for the collegial
review of 7-26-17 I sought? Irrespective of the FOIA
itself I still seek all I sought, would you please
kindly send me what I asked for in my 9-26-17.
It is absolutely incredible for you to not do so.
Please respond & thank you for your time & attention to
this matter.
And as I tell you who I am & name why don't
you do the same,

cc et al. 9-26-17

CHICAGO   LOS ANGELES   NEW YORK   WASHINGTON, DC

JENNER&BLOCK LLP



January 11, 2018

Ron Kliner
IDOC #: B77152
Hill Correctional Center
P.O. Box 1700
Galesburg, IL  61402

Dear Mr. Kliner:

I co-chair the pro bono committee at Jenner & Block. I received a copy of your letter requesting pro bono representation.  However, after carefully reviewing your request, we have determined that Jenner & Block will not be able to represent you.

Each year Jenner & Block receives hundreds of requests for pro bono representation.  Unfortunately, because of the tremendous volume of requests we receive, we are simply not able to undertake each one.

Sincerely,

Andrew W. Vail
Co-Chair, Pro Bono Committee

## STATE OF ILLINOIS
## CONTRACT RENEWAL
Illinois Department of Corrections
Renewal of Healthcare Services
Contract #9911002



The undersigned Agency and Vendor, Wexford Health Sources, Inc., (the Parties) agree that the following shall renew the Contract referenced herein. All terms and conditions set forth in the original Contract, not amended herein, shall remain in full force and effect as written. In the event of conflict, the terms of this Renewal shall prevail.

IN WITNESS WHEREOF, the Agency and the Vendor cause this Renewal to be executed on the dates shown below by representatives authorized to bind the respective PARTIES.

**VENDOR**

| | |
|---|---|
| Vendor Name: Wexford Health Sources, Inc. | Address: 501 Holiday Drive; Pittsburgh, PA, 15220 |
| Signature: ▮ | Phone: 412-937-8590 |
| Printed Name: John M. Froehlich | Fax: 412-937-8599 |
| Title: Vice President and CFO | Email: jfroehlich@wexfordhealth.com |
| Date: 4/29/16 | |

**STATE OF ILLINOIS**

| | |
|---|---|
| Procuring Agency: Illinois Department of Corrections | Phone: 217-558-2200 |
| Street Address: 1301 Concordia Court | Fax: 217-558-2203 |
| City, State ZIP: Springfield, IL 62794 | |
| Official Signature: ▮ | Date: 4/29/2016 |
| Printed Name: Jared Brunk | |
| Official's Title: CFO | |
| Legal Signature: | Date: |
| Legal Printed Name: LaShonda Hunt | |
| Legal's Title: Chief General Counsel | |
| Fiscal Signature: | Date: |
| Fiscal's Printed Name: Jared Brunk | |
| Fiscal's Title: Chief Financial Officer | |

State of Illinois Chief Procurement Office
Contract Renewal
V 15.2

1

HILL CORRECTIONAL CENTER
BUDGET SCHEDULE E
5/1/2016 - 4/30/2017

| STAFFING POSITION | ANNUAL SALARY | FRINGE BENEFITS | ANNUAL HOURS | HOURLY RATE | FB HOURLY | Combined Rates | | |
|---|---|---|---|---|---|---|---|---|
| Dental Assistant | 94,726 | 26,343 | 4,160 | 22.77 | 6.33 | 29.10 | | |
| Dentist | 165,863 | 46,078 | 2,080 | 79.74 | 22.15 | 101.89 | | |
| Director of Nursing | 79,719 | 22,144 | 2,080 | 38.33 | 10.65 | 48.97 | | |
| Licensed Practical Nurse | 650,692 | 180,641 | 24,960 | 26.07 | 7.24 | 33.31 | | |
| On-Site Medical Director | 224,975 | 62,508 | 2,080 | 108.16 | 30.05 | 138.21 | | |
| Medical Records Director | 50,048 | 13,906 | 2,080 | 24.06 | 6.69 | 30.75 | | |
| Optometrist | 36,486 | 0 | 416 | 87.71 | - | 87.71 | | |
| Medication Room Assistant | 45,137 | 11,038 | 2,080 | 21.70 | 5.31 | 27.01 | | |
| Physical Therapist | 17,770 | 0 | 104 | 170.87 | - | 170.87 | | |
| Physical Therapy Assistant | 24,680 | 6,035 | 1,040 | 23.73 | 5.80 | 29.53 | | |
| Physician Asst/Nurse Practitioner | 99,843 | 27,743 | 2,080 | 48.00 | 13.34 | 61.34 | | |
| Psychiatrist | 803,910 | 223,487 | 4,160 | 193.25 | 53.72 | 246.97 | | |
| Qualified Mental Health Professiona | 268,929 | 74,762 | 8,320 | 32.32 | 8.99 | 41.31 | | |
| Staff Assistant - Mental Health | 44,325 | 12,322 | 2,080 | 21.31 | 5.92 | 27.23 | | |
| Radiology Technician | 19,046 | 4,654 | 832 | 22.89 | 5.59 | 28.49 | | |
| Registered Nurse | 561,014 | 154,940 | 16,640 | 33.71 | 9.31 | 43.03 | | |
| Staff Assistant I | 51,010 | 12,456 | 2,240 | 22.77 | 5.56 | 28.33 | | |
| Staff Assistant II | 94,726 | 26,343 | 4,160 | 22.77 | 6.33 | 29.10 | | |
| TOTAL | $ 3,332,898 | $ 905,401 | 81,592 | | | | | |

| TOTAL CONTRACT BUDGET | PERS SVS | FRINGE BENEFITS | NON CAP BASE | PER CAP BASE | ANNUAL PER CAP | PER CAP DAILY | PROGRAM ADJUST. | TOTAL CONTRACT |
|---|---|---|---|---|---|---|---|---|
| ADMIN SVS | | | | | | | | |
| OFF SITE ADM STAFF | | | 295,589 | | | | | |
| MGMT FEE | | | 383,616 | | | | | |
| INDIRECT ADMIN COSTS | | | 679,205 | | 371.96 | 1.0191 | 1.0191 | 679,205 |
| DIRECT CARE | 1,616,242 | 447,976 | 2,064,218 | 401,234 | 219.73 | 0.602 | 1.6211 | 2,465,452 |
| DENTAL | 260,589 | 72,421 | 333,010 | 186,703 | 102.25 | 0.2801 | 1.2992 | 519,713 |
| MENTAL HEALTH | 1,117,164 | 310,572 | 1,427,735 | 511,030 | 279.86 | 0.7667 | 1.7858 | 1,938,765 |
| PHARMACY | 45,137 | 11,038 | 56,175 | 598,367 | 327.69 | 0.8978 | 1.9169 | 654,542 |
| ANCILLARY | 42,450 | 6,035 | 48,485 | 208,818 | 114.36 | 0.3133 | 1.3324 | 257,303 |
| LABORATORY | 0 | 0 | 0 | 144,785 | 79.29 | 0.2172 | 1.2363 | 144,785 |
| RADIOLOGY | 19,046 | 4,654 | 23,700 | 47,369 | 25.94 | 0.0711 | 1.0902 | 71,069 |
| SUPPORT | 195,784 | 52,705 | 248,489 | 173,154 | 94.83 | 0.2598 | 1.2789 | 421,643 |
| OPTICAL | 36,486 | 0 | 36,486 | 46,676 | 25.56 | 0.07 | 1.0891 | 83,162 |
| NON-HOSPITAL SERVICES | 0 | 0 | 0 | 436,681 | 239.15 | 0.6552 | 1.6743 | 436,681 |
| TOTAL | 3,332,898 | 905,401 | 4,917,504 | 2,754,818 | 1,508.66 | 4.1333 | | 7,672,322 |
| POPULATION BASE | | | | | | | | 1,826 |

5/2/2016



ATTN: MARK THOMPSON, GEN. CSL, COR.

6-25-17

# Illinois Department of Financial and Professional Regulation

### Division of Professional Regulation

P1/5 +
WITH Exhibits
following.

James R. Thompson Cent.
Complaint Intake Unit
100 West Randolph Street
Suite 9-300
Chicago, Illinois 60601
312-814-6910

## COMPLAINT / CLAIM INTAKE REPORT #6-58

1. Please type or print clearly in dark ink.
2. Please attach copies of important papers concerning your complaint / claim.

DATED: 6/25/17
AND SENT Privileged MAIL.

## COMPLAINANT

| Your Name RONALD KLINER, #B77152 | Daytime Telephone Number NONE |
| Mailing Address P.O. BOX 1700 | Evening Telephone Number NONE |
| City/Town Galesburg IL 61402 | State IL | ZIP Code 61402 |

Email Address - Required for Internal Use Only
I do not have an email address, or internet, please Mail to me viA USPS.

## YOUR COMPLAINT / CLAIM IS AGAINST (RESPONDENT)

| Name of Provider of Services DR. WALLACE STROW, DDS & Robin Gillam, Nurse Asst | Profession Dentist & Nurse DENTAL Asst. | Telephone No. 309 343 4212 |
| Street Address 600 LINWOOD Rd. | | Date event Occurred As described herein |
| City/Town Galesburg | State IL | ZIP Code 61402 | County of Occurrence KNOX |

Briefly describe your complaint: PERTAINING TO DR. WALLACE STROW & Nurse DENTAL ASST. ROBIN GillAM:
Does a dentist have a duty to provide care & treatment to his patient + as
well, his dental assistant, irregardless if one is incarcerated (and as provided in
the wexford medical contract to do so) or is the standard + duty to examine, provide
treatment, clean teeth, + prescribe whats needed -- even at the minimal level --
change because you are incarcerated? And despite the state of Illinois + its tax-
payers paying for said care, some 1.5 Billion dollars, to be done? DR. STROW
abrogated his responsibilities + duty to care for his patient to the point of NOT
even performing an exam, or cleaning teeth, removing calculus, treating chronic
apthous stomatitis, treating peridontal disease, gingivitis + absolutely
refusing to prescribe medicines or provide basic needed dental care items of the
most basic kind to which for one situated as a captive patient as I am + having
No where else to go, or avail myself of, etc. Am left to suffer needlessly at the hands
of someone who is a dentist refusing to provide dental care by a level of
arrogance, omnipotence, stubborness + entitlement I've never seen in 25 yrs of being
in the IDOC (albeit + despite being innocent seeking exoneration) + availing myself
of dentists + dental care given completely contrary to DR. Strows philosophy, lack of
care + duty, + outright refusal to do what he does + seemingly get away with
it + thus 4 this complaint by me as to DR. STROW, Robin Gillam (spelled as best as I
cAN) with all likelihood He'll provide even less care to me, is that possible?
than whats transpired? Please consider the following + in my complaints: (All documents
cited are provided as exhibits Hereto + MADE A pArT Hereof)

## DEPARTMENT USE ONLY

Complaint / Claim Received By: _____ Date: _____

How Received: ☐ Phone   ☐ Letter   ☐ Walk-in

IL486-1717 PRO REG   10/15

*You will receive an acknowledgment letter via email only.

P2/5

G-1) I put in a sick call request, dated 2-23-17 to see the dentist & specifically cited, for:
- CHRONIC APHTOUS STOMATITIS & upper left gums painful
- gingivitis upper left gums & bleeds
- periodontitis from untreated gingivitis
- chronic placque/calculus buildup lower front teeth nothing sold on commissary to get it out & prevent it; I brush 3x daily & use dental loops
- I need a "soft" toothbrush (NOT sold on commissary)

H-2) On 2/27/17 I got a "pass" to go to the dentist

A-3) On 2-28-17 I wrote a grievance as to what transpired from doing so, what was NOT done, what was said & to see via IDOC grievance process (really a joke) seeking all cited be addressed & for prevention of further dental problems, get what needed to be prescribed & also needed & to be sold on commissary & for aphtous stomatitis, chronic calculus buildups, gingivitis, periodontitis, bleeding gums, soft toothbrush & teeth cleaning be done. And cited, as well Asst Robin's stmts.

A-4) The counselor counselor (Beams) 3-17-17 response avoiding the "Dentist" (Strow) & this to be, as if it matters or takes away my need for dental care as cited & substance, a "duplicate grievance from 9-24-0). (I was never at Hill in 2001). "Non-formulary prescriptions will not be authorized" (for items you can buy over the counter at any drugstore)

D-5) My 3-21-17 to "GANS" a purported counselor grievance offc. to appeal inane response to my dental problem(s) & needs.
F- I bought colgate sensitive toothpaste, all I could do, I cited as to "Perodontax" for bleeding gums. It be a "non-formulary". Also,
C&E - the pgs. 418-421 as to gum problems

I-6) On 3/23/17 I sent "GANS" the pertinent contract excerpts as to Dental & relevant. I- 1 thru 8.
Instead of this moron incorporating same, & as timely before his decision, see J, he returns it all to me.

K-7) Note my 3-26-17 to GANS, & his L 3/28/17 memo form.

B-8) GANS 3-24-17 (1 day after contract excerpts sent) review with ludicrous, but for seriousness of matter, recommendation.

9) Here is my 3-31-17 "Appeal" to ARB/IDOC seeking intervention so I can get dental care. (really a joke)

10) ARB ruling, "per Dental, proper policy & procedures followed" dated 6-5-17.
LET me ASK you, if I wasn't in this Hell & subject to what transpired, & I was free instead, would it be tolerated or allowed? And should it be regardless & standards of care any different?

P3 | 5

11) Consider the excerpt pages of final report of the Court Appointed Expert, IN Lippert V. Godinez, Dec 2014, + relevant hereto + as to Hill CC + dental care, pgs 3-6, 37-42, dental services, glaring ommissions --- lack of dental hygienists... Hill CC. Dental hygienists are an essential part of the dental team.

12) Israel Rutz wrote, 4-11-17, sick call request to dental seeking help + in Robin Gillam/dental Asst. to Dr. Strow, with NO nurse initials + only "Dental Dept" cited, "cleanings are not a mandate at this facility. You can always put in for a transfer to a facility that cleans teeth." Why cant the dentist, Strow, Do it?

13) John Lavelle wrote HCUA Lindorff as to getting teeth cleaned + her 12-2016 cited, "if your teeth require cleaning, the dentist is fully capable of providing teeth cleaning. Dental dept. also provides dental hygiene education."

14) IN "6ANS" Grievance Review dated 4-6-17 as to Lavelle's 3-3-17 grievance, he avotes, DDS Strow— "according to Dr. Strow, DDS, there is NO contradiction, + the grievant is welcome to pursue a transfer to a facility that offers an established dental hygiene program. He (Strow) stated that proper policies + procedures are being followed."

15) Here are / from my, dental chart with Strow's notations: "25% -50% horizontal bone loss evident x / fm."

16) I attempt to, see the dentist as I need to get help + am suffering needlessly with problems + thus write a 2 pg. 5-15-17 sickcall reavest to Dr. Strow + Nurse Gillam seeking to be seen + addressed:
- Chronic aphtous stomatis, and another breakout of it.
- Nothing sold on commissary to help me
- Seeking prescribed before by DDS/DRS @ Stateville + Pontiac Lidocaine, aclovir, orabase + expired meds of 12/2012 I have trying to use it. + dental paste expired 6/2015 + these were prescribed by DDS Mitchell, Garg + others @ STA. (NON formulary or NOT)
- Gingivitis, upper left gum + bleeding when brushing.
- seeking "Perodontax"
- periodonts left untreated + why?
- self removal chronic placave (no dental piks) calculus. + Dental Asst. to Dr. Strow Robin writes,

4/5   6-25-17

"NON Formulary prescription will NOT be authorized"
5/17/17 + The items available to — Dental Dept.
inmates in the facility commissary is administration
+ security issue.
This is a lie for if dentist writes a prescription its ok
+ NOT a security issue! But to blanketly refuse is barbarian
+ cowardly!

17) I write a 5-22-17 grievance, For/from the 2pg sick call request
dated 5-15-17 + having not Been called to or to be seen
by the dentist!
The Counselor, BEAMS, per "Dentist states this is
a duplicate grievance Response was done 3-13-17.
Again, inane + quite arrogant for it convenrently ignores
I need dental HELP, avail self for same to you, + you as
DDS deny it + for excuses that are borderline
malpractice + negligence + much more.

18) See my dental records written by W. Strow DDS + Robin
Gillam, DA, + Note notations "multiple complainer" 12-13-16
2/27/17 "multiple griever" + 3-13-17 9:20Am grievance response
"dupl. Re: items demanded to be available in commissary
Copy to file". DDS strow should NOT be a dentist + to
prisoners let alone the public with this dismissive
demeanor! wunt about helping me with my dental problems + needs?

19) I'd written a dentist, Dr. Lago as to my problems +
he wrote me a 5/4/17. This was addressing dental
problems I have + my 2/28/17 grievance. It is
fair to say Dr. Lago reviewed these matters as a
"dentist" said what needed to be done + contrary
to wuat was said + NOT done by Dn strow,

20) I included articles as to placave buildup, products that
could help by crest, all this was ignored.

21) Please see my 6-3-17 letter to CSL. Beams addressing my
grievance Not to be a duplicate, The arrogancy of these
people who use their positions to Not even be fair but to
the contrary. And, I wrote GANS a 6/6/17 + all this to
attempt to get the substance of my grievance + as to
needing dental care. To No avail.

5/5    6-25-17

It is a disgrace to the dental profession what Dr. Strow as a dentist has done + is doing, WITH his "BATMAN" with "Robin" Gillam or whatever her real name is with Wallace Strow as a DA dental assistant/nurse.

Strows actions + lack thereof are malpractice, negligence + with a dental license abrogating his duty to his patients of whom have no where else to go being captive + subject to him along with the co-conspirators of counselors foro a NON-existent grievance process nothing more than a rubber stamp for there is no way Strow's actions are acceptable to his patients + as a dentist ethically + morally so.

I seek appropriate disciplinary action be taken against Dr. Wallace Strow + his "DA" Robin and a permanent record be made + whatever you deem appropriate + Appropriate + proper dental care be administered. This complaint made under penalty of perjury by affirmation.

Sincerely

Please allow that a copy be provided of any response to this complaint + so a "Reply" can be made + due process be allowed.

Ron Kliben
#B77152

with exhibits as cited herein follow   pgs 6-58.

MAR 13 2017

ILLINOIS DEPARTMENT OF CORRECTIONS
**SICK CALL REQUEST** via med no.
Hill Correctional Center    C 1-A

NAME: _Ron Klnnrk_    #: _B7715L_    DATE: _2-23-17_

CELL HOUSE LOCATION: _1-A-53_

copy.

I wish to be seen on sick call for the following problem:

_____  1. **Nurse sick call for the following health care:**

_____

__X___  2. **Dental Problems** _Pan ± please see you for_
        Toothache lost filling, dentures, cavity.
                1) ± have severe chronic
                 aphthous stomatitis w/lesion ± is
        3. **Renew Medication**  _finds 1 ± viral_
                2) sores gums 3 upper left gums + I/cecls
        4. **Eye Doctor**  _3) p± gum this free from ± and_
                si ± 1's
        5. **Copies of Medical Records**  _4) chronic sinusitis /calculus_
           **List:**        _building sinus back teeth_
                _will my said can chew to ± also to_
                _get 1± pus ± area w/ ± ± ± brush_
                _± teeth ± use brush bleed in_
        6. **Mental Health Services**  _5) ± send in sores ± can spots_
                _(was send teeth ± )_
        7. **Other:**

_____

_____


---

### DO NOT WRITE BELOW THIS LINE

Date Received: _____    Nurse Initials _____

See progress notes for NSC
Date _____    Request slip sent to _____    Department

*HIL 0047*
*Revised 09/2008*



MAR 13 2017

Copy

OBXCP1C1

ILLINOIS DEPARTMENT OF CORRECTIONS
Offender 360
PRINTED SCHED. CALL PASS

PAGE: 37

RUN DATE: 2/24/2017

RUN TIME: 1:58:44 PM

ILLINOIS DEPARTMENT OF CORRECTIONS - DTE

OFFENDER CALL PASS ISSUED

IDEN: B77192 KLINER, RONALD

PRIMARY: UNASSIGNED , PARTICIPANT-HIL71GS1000@     Medium     A     Moderate     HIL/HIL:K1:A:55-L1

DESTINATION: hcu

DAY: 2/27/2017     AT:     9:30 AM
                                    AM

PASS TYPE: DENTAL                                      DDS
COMMENTS: mandatory/deral                             MON.
AUTHORIZED: ROBIN RANDOLPH

CELL HOUSE SIGNATURE:     JB
DESTINATION SIGNATURE:              TIME: 9 43        930
      EXIT SIGNATURE:              TIME:              AM!
    RETURN SIGNATURE:              TIME: 10·18
                                   TIME:

*8*

ATTN TO. CSL. Beams    Via grievance box @ 14:35

| Date: 2/28/17 | Offender: Ron Kliner (Please Print) | | ID#: B77152 |
|---|---|---|---|
| Present Facility: Hill | | Facility where grievance issue occurred: Hill | MAR 1 0 2017 |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility

- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator

- [ ] Restoration of Good Time
- [ ] Medical Treatment

- [ ] ADA Disability Accommodation
- [ ] HIPAA  *dental treatment lack, thereof +*
- [X] Other (specify): *inadequate*

- [ ] Disciplinary Report: _____  _____
  Date of Report                            Facility where issued

Note:  Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
  Chief Administrative Officer, only if EMERGENCY grievance.
  Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
  administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
  Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information
for each person involved): I put in a sick call request on 2-23-17 to see the dentist for the following:
1) I have CHRONIC "aphtous stomatitis" (this is documented in my medical files + records with
even the medical directors involvement Dr emails GSTA witness) was prescribed sinc 500 mg,
and via the dentist Dr. Mitchell, Dr. Gary prescribe as dentists orabase, dental paste + even
lidocaine) this breakout was on my upper left gums + very painful; 2) gingivitis upper left gums
and bleeds when brushing teeth 3) periodontis from untreated gingivitis 4) chronic plaque
calculus" buildup lower front teeth [nothing sold on commissary to get it out + attempt
to prevent it; 3x daily + use the commissary sold dental loops; The tooth paste
sold does not prevent gum disease that I have to use by buying it + no "state" toothpaste is
passed out on a weekly basis nor state soap or toothbrushes as is atypical at other IDOC
facilities (eg. STA, Menard) The dental loops break + are inadequate.) 5) No "soft" toothbrush is
offered, given, or sold either.
I got a pass to the Hill Hosp. [at 930 am on 2-27-17 + went, the dental office is a dental
nurse] + the dentist + there is [no dental] hygienist to clean teeth. The nurse had my
pass + I never got to sit in the dental chair, or be examined by the dentist who was
nearby listening to the conversation that ensued. The nurse said there was "nothing
they could do as to my chronic "aphtous stomatitis" + that at Hill here," we dont do
that" as to my request for orabase, dental paste, + "cannot give you that" I have
showed her my expired 2012 orabase tube + explained this had been prescribed (CONT

Relief Requested: THAT WHAT is cited herein please be addressed + for prevention of further
dental problems; what is needed be prescribed (as well as WHAT can be sold on
commissary) for my chronic aphtous stomatitis, chronic calculus buildups, gingivitis,
periodontis, bleeding gum(s), No soft toothbrush, dental picks, plaque rinse, dental
floss, orabase, dental paste, be prescribed and available for sale on commissary
THAT my dental issues be properly addressed + teeth cleaning be done!
- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ Offender's Signature    B77152 (ID#)    2, 28, 17 (Date)

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: 3 / 3 / 17    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to
Administrative Review Board, P.O. Box 19277,
Springfield, IL 62794-9277

Response: The Dentist states this is a duplicate grievance
from 9/24/01. The items available at the commissary
is an administration and security issue. Non-formulary
prescriptions will not be authorized. Proper policy +
procedures are followed in this matter.

C. Kay Beams (Print Counselor's Name)    _____ (Counselor's Signature)    3/7/17 (Date of Response)

**EMERGENCY REVIEW**

Date Received: ____ / ____ / ____    Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated.
Offender should submit this grievance in the normal manner.

_____ Chief Administrative Officer's Signature    ____ / ____ / ____ Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

pg. 2 2-28-17 Grievance, Kliner B77152 1-A-55 Hill

when I was at STA & by dental & how is it possible that with this shown & in my medical records, the dentist here couldn't give me what I needed? Her reply was, "we don't do that here" I explained nothing is sold on commissary to address these needs & even if it was the Wexford contract allowed for doctors to prescribe things needed regardless. The dentist said we don't do that here & I appealed to common sense as to what could I do if you won't give me & prescribe what's needed? I cited no dental floss is sold, placque rinse, dental picks as is sold & available at Dixon CC IDOC (& served by same "WEXFORD" as is at Hill & throughout all IDOC facilities) the dentist said "maybe you should transfer there" & nurse said how long have you been here" (4 months) I asked why can't dental floss, placque rinse, dental picks, toothpaste that supports stopping gum disease be sold & why can't you ask, as dental, that commissary sell these items? The nurse said, "we tried but they don't listen to us" & I cited I'd wrote a Ms. Millard in Commissary appx 2-4-17 (never heard back nor for size 6 1/2 boots to be ordered & sold to me as my size not available) & sought these items (& others) be sold to no avail. I asked the nurse & dentist why can't you at least use your utensil to pick out the "calculus deposits," "we can't do that / don't do that here" the atypical seemingly boilerplate reply. How can bleeding gums be ignored? No exam either! As to the need (due to my obvious ailments & conditions) of a soft toothbrush the nurse said, "we can't give you one". It is apparent the mentality, for unknown reasons, is to do nothing, give nothing and attribute it to "we don't do that here" -- what is truly the difference of what care, services, what is & can & should be prescribed by dental because its here, as said, when its Wexford none the less & the same Wexford as throughout Illinois IDOC, & when supported by your dental & medical records? There are, as I, those with long sentences (despite my being innocent) and need of dental care, etc. No examination was done for had it there'd of been no "plausible deniability" because without the cursory exam necessary & if done it would be incumbent on the dentist to do something, prescribe whats needed & address my needs & concerns but regardless my medical records & whats been done do so & cannot be ignored. The nurse had in her hands my request listing my needs & what was wrong & the dentist looked at it yet did nothing echoing what the nurse was saying & citing "transfer to Dixon", etc. As to getting my teeth cleaned -- nurse cited "not doing it here & we have no dental hygienist. Why not? Per nurse "by a mandate from 1997"

All cited herein is truthful & accurate as best as I can recollect & under penalties of perjury. I'm also attaching a copy of the "request form" & "pass" itself. FYI As to all else cited same can be confirmed in my medical records you have access to & via HCUA Lindorff.

Also, in discussing the cited items needed & not sold nor offered, & the nurse saying what she did, I cited, if "security concerns" (i.e. "dental floss" cutting thru bars, etc. fallacy & no bars here!) they sell "shaving Bic Razors" on commissary! Surely the dental items could be sold -- & or dentist prescribe whats needed!

[signature] B77152

Distribution: Master File; Offender Page 2 DOC 0046 (8/2012)

9

From: Ron Kliner # B77152, I-A-55 Hill

Re: Griev. dated 2/28/17, & CSL Beams 3-7-17 response
Dated: 3/21/17 via Griev. Box I-A

Dear Mr. Gans—

Reference the above & for your review
(and ultimately the ARB & therefrom) please
consider the following:

D) CSL "Beams," per him the "_Dentist_" (Dr. Strow
+ Robin Gillam the Nurse / dental asst.)
States my grievance is a "_Duplicate_" from
9-24-01 (or even if its 9-24-11)? And, I can assure
you, what is in my grievance of 2-28-17 & from the
9:30 am 2-27-17 'encounter' with DDS Dr. Strow & Ms.
Gillam is NOT a "Duplicate" because I never filed
a grievance concerning what was wrong, that I
sought HELP for & ON 2-27-17 by my s/c Reg. of 2-23-
ON 9-24-01 or 9-24-11 & wasn't even here @ Hill )))

w/Griev
& comments
hereto

2) the substance of whats in the grievance is "NOT"
addressed & those issues remain (despite fact I did
what I could & purchased "Colgate _sensitive_" toothpaste on
3-2-17)

SC 2-2-17
& pass

3) As to items at the commissary & it being an administrative &
security issue, etc. Nurse Gillam had cited "we tried, they don't listen,
but I wrote appropriate parties as cited in grievance & it makes
no sense to be a security issue for plaque nonalcoholic rinse,
dental pics, floss, or even newly sold "Periodontax" toothpaste
for prevention of bleeding gums! And the assertion of
"non formulary prescriptions will not be authorized", why? If
justified & previously given thats the point of non-formular
scripts, but to say NOT here, we dont do it is ridiculous as
my medical bile supports it! I had expired 2012 orabase
for Gods sake, chronic "injurious stomntis" & chronic placave!
Bleeding gums, receding & peridental & gingivitis & you
wont do anything—nor teeth cleanings? Rediculous

2-27-17
& 9:30
am.

& pgs. 41, 42!
gum
problems

4) the substance of whats in this grievance was _not_ disputed & Beams
response only corroborates, & dental Dr. Strow's attitude /philosophy
WHAT the problems are & saying proper policy & procedure
are followed in this matter is a joke by/for seriousness of it!



**TIME LIFE BOOKS**

**TIME-LIFE BOOKS**
**IS A DIVISION OF TIME LIFE INC.**

TIME-LIFE CUSTOM PUBLISHING

*Vice President and Publisher:*
Terry Newell

*Associate Publisher:*
Teresa Hartnett

*Director of Editorial Development:*
Jennifer Pearce

*Director of Sales:*
Neil Levin

*Director of Special Sales:*
Liz Ziehl

*Director of New Product Development:*
Quentin McAndrew

*Production Manager:*
Carolyn Bounds

*Quality Assurance Manager:*
James King

Books produced by Time-Life Custom Publishing
are available at special bulk discount for promo-
tional and premium use. Custom adaptations can
also be created to meet your specific marketing
goals. Call 1-800-323-5255.

---

HOME EDITION

# The Medical ADVISOR

**PROJECT EDITOR**
Robert Somerville

*Senior Art Director:* Tina Taylor

*Deputy Editors:*
Kristin Baker Hanneman, Tina S. McDowell

*Administrative Editor:* Judith W. Shanks

**EDITORIAL STAFF**
*Text Editors:* Glen Ruh, Jim Watson

*Associate Editors / Research and Writing:*
Nancy Blodgett, Kristin Dittman,
Stephanie Summers Henke,
Jennifer I. Vermillion

*Technical Art Assistant:* Dana R. Magsumbol

*Copyeditors:*
Mary Beth Oelkers-Keegan (principal),
Claudia S. Bedwell, Donna D. Carey

*Editorial Assistant:* Katrina Barnes Johnson
*Picture Coordinator:* Paige Henke

**SPECIAL CONTRIBUTORS**
Alan H. Anderson, Charlotte Anker,
Adrianne Appel, Jamie Baylis, Celia Beattie,
Angela Burbage, Nancy Cardwell, Leslie Carper,
Lisa Ann Clark, Mary E. Collins,
George Constable, Margery A. duMond,
Juli Duncan, Phyllis A. Friedemann,
Ruth Goldberg, Debra S. Greinke, Peter Gwynne,
Harriet Harvey, Lydia Preston Hicks, Silvia Hines,
Donald E. Holmes, Judith Klein, Sarah Labouisse,
Jeffrey Laign, Amy McGoldrick, Elizabeth Moore,
Narisara Murray, Ann Perry, Susan Perry,
Barbara Fairchild Quarmby,
Eugenia S. Scharf, Jacqueline L. Shaffer,
Colette Stockum, Janet Barnes Syring,
Michael Tenneson, Monika Thayer,
Susan Gregory Thomas, Victoria Valentine,
Mary Weideman, Jayne Rohrich Wood

John Drummond, Robert Herndon (design),
Barbara L. Klein (index)

**CORRESPONDENTS**
Maria Vincenza Aloisi (Paris),
Christine Hinze (London),
Christina Lieberman (New York)

---

Library of Congress Cataloging-in-
Publication Data
The medical advisor home edition,
by the editors of Time-Life Books.
p. cm.
Includes bibliographical references
and index.
ISBN 0-7835-5250-5 (softcover)
ISBN 0-7835-5301-3 (hardcover)
1. Medicine, Popular—Encyclopedias.
2. Alternative medicine Encyclopedias.
I. Time-Life Books.
RCB1.A2M38 1997
616—dc21          97-10717 CIP

©1997 Time Life Inc.
All rights reserved.
No part of this book may be reproduced
in any form or by any electronic or me-
chanical means, including information
storage and retrieval devices or sys-
tems, without prior written permission
from the publisher, except that brief
passages may be quoted for reviews.

First printing. Printed in U.S.A.
School and library distribution by
Time-Life Education.
P.O. Box 85026, Richmond,
Virginia 23285-5026.

TIME-LIFE is a trademark of
Time Warner Inc. U.S.A.

The textual and visual descriptions of medical
conditions and treatment options in this book
should be considered as a reference source only;
they are not intended to substitute for a health-
care practitioner's diagnosis, advice, and treat-
ment. Always consult your physician or a quali-
fied practitioner for proper medical care.

Before using any drug or natural medicine
mentioned in this book, be sure to check with
your healthcare practitioner, and check the prod-
uct packaging or other reliable source of infor-
mation for any warnings or cautions. You should
keep in mind that herbal remedies are not as
strictly regulated as drugs.

# GUM PROBLEMS

## SYMPTOMS

- swollen, red gums that may bleed easily
- localized pain, loose teeth, and bad breath, which suggest **periodontitis**; x-rays may reveal some bone loss in the jaw area
- extremely painful, inflamed gums coated with a gray-white mucus; sometimes accompanied by a mild fever, malaise, bad breath, excess saliva, and painful swallowing. These are signs of **Vincent's angina**.
- sudden and unexplained severe bone loss around molars and incisors, especially in young African American girls; this is indicative of **juvenile periodontitis**.
- extremely sore, swollen gums that bleed easily; perhaps accompanied by earaches, sinuslike infection, nosebleeds, fever, weight loss, and malaise. You may have **Wegener's granulomatosis**, a rare but potentially fatal disease.

## CALL YOUR DENTIST IF:

- you have any of the groups of symptoms listed above; timely treatment can help prevent the spread of infection and potentially save teeth.

---

**Periodontal disease** (gum disease) is one of the most prevalent chronic diseases, with an estimated 98 percent of Americans over 60 affected by some form. A diet rich in refined sugars is largely to blame, but modern dentistry and good toothbrushes and toothpastes have helped offset some of the pernicious effects of our eating habits; as a result, just 8 percent of adults ever develop severe gum problems. That rate would be even lower if people made an effort to cut back on highly processed foods—notorious for the quantities of refined sugars they contain—and took dental hygiene more seriously. As it is, though, fewer than half of Americans see a dentist every year.

## CAUSES

Periodontal disease is an infection of the gums and other tissues that support the teeth. The stage is set for problems when food particles, saliva, and bacteria are allowed to accumulate around the gum line, which encourages the formation of a soft bacterial mass known as plaque. Pockets can form as increasing amounts of plaque push between teeth and the surrounding membranes; these pockets and the decayed material in them create a good breeding ground for the bacteria already present. Excess sugar in the diet decreases saliva production (the body's best defense against bacteria in the mouth) and impairs disease-fighting white blood cells. The earliest stage of the resulting infection, known as gingivitis, is marked by painless inflammation, swelling, redness, and possibly bleeding. Certain vitamin deficiencies, medication, glandular disorders, and blood diseases may make you more susceptible to gingivitis, but in general, poor dental hygiene is the primary cause.

If the pockets around your teeth deepen and your gums turn an intense red, the problem may have become **periodontitis**, an inflammation of the periodontal ligament, which helps hold your teeth in their sockets or bone. If the infection worsens, it can cause bone and tooth loss. Periodontitis progresses slowly, and often imperceptibly. Dentists used to think that bleeding gums

---



### PERIODONTAL DISEASE

A bacterial film called plaque can accumulate along the gum line at the base of the teeth if not brushed away. Plaque hardens into calculus, which irritates the gums and causes them to recede. Pockets that form between the gums and teeth collect more plaque and calculus, causing destruction of the bone and ligament supporting the tooth, eventually resulting in tooth loss.

---

were a reliable indicator of periodontitis, but current research suggests this is not the case. You are at no greater risk for periodontitis if routine brushing causes your gums to bleed than if your gums almost never bleed.

In those rare instances when periodontitis comes on suddenly, it may be another form of the disease—either **juvenile periodontitis** or **Vincent's angina**. Juvenile periodontitis, which can lead to severe bone loss around the permanent molars and sometimes the incisors, occurs most often in African American girls, for reasons that are not entirely clear for researchers but that suggest some sort of genetic link. As in other gum problems, poor dental hygiene seems to be a contributing factor.

Vincent's angina (also known as trench mouth, because a large number of World War I soldiers fighting in the trenches contracted it) is caused by a combination of poor diet, stress, and of course, bacteria. Particularly common in teenagers with poor dental hygiene and a high-sugar diet, Vincent's angina is characterized by extreme pain, some bleeding, and a distinctive gray-white mucus that covers the gums. It is

---

sometimes accompanied by a mild fever, malaise, bad breath, excess saliva, and painful swallowing.

A condition known as strawberry gingivitis—in which the gums become inflamed to the point of looking like overripe strawberries—can be the earliest sign of an uncommon though potentially fatal disease called **Wegener's granulomatosis**. The gums will be extremely sore and swollen, and they will bleed easily. Other symptoms include earaches, a sinuslike infection, nosebleeds, fever, weight loss, a cough, and malaise. Although the exact cause of the disease remains unknown, it progresses like a bacterial infection. It affects all ages and both sexes, although it is more prevalent in men; if left untreated, it can eventually damage the heart, lungs, and kidneys and cause renal failure.

In general, smokers are more than twice as likely to develop some kind of gum disease as nonsmokers. Other at-risk groups include people with diabetes, leukemia, and Crohn's disease, and pregnant women. Studies have shown that certain bacteria thrive on elevated hormone levels, which spells trouble not only for pregnant women but also for women taking oral contraceptives.

Chemotherapy and radiation treatments can also increase your risk for gum problems, as can exposure to toxic heavy metals such as mercury.

## TREATMENT

The best treatment for periodontal disease is prevention. If you do develop gum problems, seek professional treatment and advice.

### CONVENTIONAL MEDICINE

A proper daily dental regimen of thorough brushing and flossing—supplemented by regular trips to the dentist, who will clean areas you miss or perhaps can't reach—is the best way to prevent and to address most gum problems. Occasionally **gingivitis** is aggravated by an external factor that a dentist or orthodontist may be able to correct, such as poorly aligned teeth, excessive grinding, or ill-fitted crowns or bridges.

"THE MEDICAL ADVISOR" TIME/LIFE BOOKS HOME EDITION

OVER pg(s) 4 20-21

For aggressive forms of gingivitis, the dentist would first remove all plaque and calcified plaque (calculus) and then, perhaps, prescribe a chlorhexidine-based mouthwash. More effective than common commercial brands, such a mouthwash may have some unwelcome side effects, including staining the teeth or bringing on an allergic reaction.

Dentists typically follow a similar routine to treat periodontitis, though in some cases surgery is required to clean out the pockets of infection and to remove damaged bone. It's up to the patient to follow through with solid brushing, flossing, and rinsing.

For Vincent's angina, the dentist or periodontist will clear out damaged or dead tissue and usually also prescribe a painkiller. Occasionally an antibiotic is also necessary, but in most cases, a good diet, high fluid intake, plenty of rest, and good oral hygiene (including no smoking) should suffice.

In those rare instances when Wegener's granulomatosis develops, immediate treatment is crucial. Cytotoxic agents such as cyclophosphamide, when combined with corticosteroids, have dramatically cut the fatality rate (as high as 90 percent if left untreated) for this disease.

Some of the latest advances in technology have made dental visits a lot less painful and noisy, and more effective. Ultrasound lasers have not yet completely replaced scrapers and picks and other such implements, but they are more and more often the preferred cleaning tool for removing plaque and other material. And in the past, dentists often had difficulty identifying the exact bacteria responsible for any given case of periodontitis, but improved testing methods have made precise diagnosis and more effective treatment possible.

## ALTERNATIVE CHOICES

Many alternative therapies exist for gum problems, including rinses and pastes that will reduce plaque, fight infection and inflammation, and slow bleeding. But these therapies are no better than conventional commercial products at reaching below the gum line to areas where periodon-

A L T E R N A T I V E

## HEART DISEASE AND PERIODONTITIS

Young men who don't take care of their teeth and gums may be slipping into a lifestyle that places them at greater risk for heart disease. A 1993 study of nearly 10,000 subjects (men and women) found a 25 percent increase in heart disease among those with periodontitis. The connection was most remarkable in men under 50 with periodontitis, who had nearly double the risk of coronary heart disease as men who had little or no periodontal disease. Researchers could not determine if the gum problems were just a general indicator of poor hygiene and diet that led to other health problems or whether some direct correlation exists between heart problems and periodontitis. Either way, gum disease is a red flag.

## ACUPUNCTURE

A professional acupuncturist could seek to stimulate energy in the gum area.

## AYURVEDIC MEDICINE

Massage bleeding gums with a combination of herbs.

## HERBAL THERAPIES

Massage gums with goldenseal. Echinacea can also help to fight infection.

of the mix in 1 cup of water; strain for 10 minutes, then drink three times a day. Or you can use 1 to 4 ml in tincture form. Or you can drink Roman chamomile (Anthemis nobilis) or myrrh (Commiphora molmol) tea to fight inflammation in the gums. CAUTION: Do not use myrrh if you are pregnant.

## HOMEOPATHY

For tender, bleeding gums and excessive salivation try Mercurius vivus; take orally twice a day for three days. If you continue to have problems, see a professional homeopath.

## MASSAGE

Massaging the gums can improve circulation and speed healing. Use the rounded part of your fingertips and move along the gum line on the outside of your gums or use a soft dental rubber tip. A toothbrush, which has only two rows of bristles and is used without toothpaste, can also do this approach.

## NUTRITION AND DIET

Crucial for healthy gums is a diet low in refined sugars and high in fiber. Fiber works much like a deep brush on hard-to-reach teeth. Other important nutrients are vitamin C as well as zinc. Take supplements in moderate doses, particularly for pregnant women and women for oral contraceptives, since zinc is essential in many processes, and folic acid plays a vital role in maintaining healthy gums.

## AT-HOME REMEDIES

You can make a wide assortment of mouthwashes and toothpastes at home. Some of the most effective ingredients include:

- a combination of baking soda and hydrogen peroxide; for brushing your teeth or as a mouth rinse.
- a mixture of bayberry and pinkroot for a gargle.
- cashew oil, vitamin C oil, or poultices of goldenseal or myrrh massaged into the gums to speed healing and protect against infection.

## PREVENTION

Prevention of periodontal disease begins at home, with good routine dental hygiene. Too many of us give our teeth a quick brush once a day and only occasionally a good flossing. For really proper care you need to floss daily, brush longer, rinse with a mouthwash, and massage your gum line. Always floss first, to loosen food particles and plaque, then brush your teeth gently but thoroughly with a soft brush using a circular motion. Rigorous horizontal brushing with hard bristles can cause your gums to recede. Mouthwashes combat bacteria, but they should not be substituted for brushing, which can also dislodge bacteria.

The American Dental Association (ADA) recommends that you visit your dentist once or twice a year to get rid of extra tartar buildup and calculus, but some dentists believe that a cleaning at-home dental hygiene keeps the plaque and calculus from ever forming. To achieve a cavity-free you have to spend at least 15 minutes twice a day working on your teeth, and another 15 minutes a day massaging your gums. If you don't find time to follow this routine, twice take the ADA's advice.

It can pay to get pregnant, see a dentist for a good cleaning first. Women who have little or no plaque during their pregnancy rarely develop gum problems, other associated with routine hormone levels.

Diabetics and anyone undergoing chemotherapy or radiation treatments should see a doctor or dentist every three months, or as needed to keep the condition under control and prevent recurrences.





Hill Correctional Center
Inmate Commissary Fund

Date: 3/2/2017    Time:   08:22am
                  Ticket: 717855
                  Batch:  0617113

Thumb Print



B77152    Kliner, Ronald

| 1  | Stamps                   | .47  |
|----|--------------------------|------|
| 1  | Greeting Cards           | .92  |
| 24 | Noodles, Oriental        | 5.76 |
| 2  | Fiesta Mix               | 3.82 |
| 1  | Moon Lodge The Whole     | 1.19 |
| 3  | Soda-RC Cola             | 2.13 |
| 1  | Tortillas                | 1.29 |
| 1  | Wylers Peach Tea Single  | 1.25 |
| 1  | Hawaiian Punch Juicy R    | 1.25 |
| 1  | Peanut Butter Pouch      | 3.63 |
| 1  | Crackers - Snack         | 2.71 |
| 2  | Pink Salmon              | 6.00 |
| 4  | Chili W/Beans            | 5.40 |
| 1  | Rice - White             | .86  |
| 1  | Cheesy Rice              | 1.35 |
| 1  | Toaster Pastries Blueb    | 1.56 |
| 4  | Beef Stew                | 6.04 |
| 2  | Spam Single Classic      | 2.50 |
| 2  | Beef Summer Sausage      | 4.50 |

14

TO: G.O. GAINS / CSL @ Will CC - I DOC

FROM: Ron Kliner, B-77152, 1-A-8, Hill

RE: my grievance dated 2/25/17 & W/CSL BEAM's
3.17.17 response sent to you 3-2-17 via
Griev. Box @ I-A. for DENTAL

ANTED: 3/23/17 & to you via "Griev. Box @ I-A."

Dear Mr. GANS—

I am sending to you, reference the above,
"newly-obtained documents" in support of my
grievance & as swell for your consideration
please, the following:

1) pg.11, Zoll Contract signature page

2) pg.12, 2.3.12.13 as to vendor dentist providing
items ____ order ____ State ____ reimbursing.

3) pg.16, 2.2.6 "Dental Program"
& 17, cont'd thru 2.2.6.7

4) pg. 102, W9, 704 & 103 showing "invoices for services"
& ____ payment, ____ & ____ ____ scales

5) pg. 92-93 w/v 194, "Chief Dentist" citing "shall"
1. provide preventive-restorative dental services to all inmates.
5. supervise dental ____ ____ ____ ____ properly maintaining
____ ____ ____ programs, etc., etc.
7. ____ ____ staff providing adequate preventive practices
____ ____ ____ ____ ____ ____ ____
" 93 "preventive dentistry" & pg. 94 "Dental Hygienist"

6) pg. 74 & pg. 104 (CC for Recent Post, Diagnosis & dentist.
(pg. 70 & 105, w/v 172)

7) pg.4 W9, 106, showing the ____ ____ 2.2 & 2.2.3
citing ____.

8) pg.12, Sec. 2.2.3.3 showing ____ ____ and termly requests"

At these documents further support my grievance &
the 3-03-17 to you for [de]novo et same, thank you.
— Ron k____



EX. I #1

## CONTRACT

The Parties to this contract are the State of Illinois acting through the undersigned Agencies, Illinois Department of Healthcare and Family Services and Illinois Department of Corrections (collectively the State) and the Vendor (Wexford Health Sources, Inc.). This contract, consisting of the signature page and numbered sections listed below and any attachments referenced in this contract constitutes the entire contract between the Parties concerning the subject matter of the contract and supersedes all prior proposals, contracts and understandings between the Parties concerning the subject matter of the contract. This contract can be signed in multiple counterparts and signature may be electronic or digital upon agreement of the Parties.

1. TERM AND TERMINATION
2. DESCRIPTION OF SUPPLIES AND SERVICES
3. PRICING
4. STANDARD BUSINESS TERMS AND CONDITIONS
5. STANDARD CERTIFICATIONS
6. DISCLOSURES AND CONFLICTS OF INTEREST
7. SUPPLEMENTAL PROVISIONS

9911002

In consideration of the mutual covenants and agreements contained in this contract, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the terms and conditions set forth herein and have caused this contract to be executed by their duly authorized representatives on the dates shown below.

**VENDOR**
Wexford Health Sources, Inc.
Signature _Daniel Conn_
Printed Name _DANiel CONN_
Title _EVP & COO_    Date _05/06/2011_
Address _425 Holiday Dr. Foster Plaza Two_
_Pittsburgh, PA 15220_
Phone _412-937-8590_   Fax _412-937-8599_
E-mail _dconn@wexfordhealth.com_

**STATE OF ILLINOIS**
IL Department of Corrections
Official Signature ____
Printed Name _S.A. Godinez_
Title _Director_   Date _5/9/11_
Designee Signature ____
Printed Name ____
Title ____
Address ____
Phone _217/558-2200_ Fax _217/522-7072_
E-mail ____

**STATE OF ILLINOIS**
IL Department of Healthcare & Family Services
Official Signature _Julie Hamos_
Printed Name _Julie Hamos_
Title _Director_   Date _5/6/11_
Designee Signature ____
Printed Name ____
Title ____
Address _201 S. Grand Ave. E._
_Springfield, IL 62763_
Phone _217-782-1200_ Fax _217-524-7979_
E-mail ____

HFS# 2010-05-008

Case: 1:10-cv-04603 Document #: 650 Filed: 03/05/18 Page 50 of 113 PageID #:10311

EX I #2



16

2.3.12.12  **Forms.** Vendor shall provide all forms necessary for ordering, controlled drug log or inventory, patient profiles, prescriptions and other pharmacy forms identified by the HCUA.

2.3.12.13  **Over-the-Counter Products.** Vendor shall not be responsible for providing any products to the commissaries. Vendor shall supply all over-the-counter products that are utilized in the healthcare unit. <u>Vendor shall provide an item that is requested for an inmate by a physician, physician assistant, nurse, dentist or medical technician, even if that product is available to the inmate from the commissary.</u>

2.3.12.14  **Back-up Plan.** Vendor shall maintain a system for ensuring the retention of all computer-stored data, and a back up system for the delivery of services during computer "down time", including, but not limited to accepting call-in orders from a registered nurse, physician or dentist to a pharmacist.

2.3.12.15  **Pharmaceutical Agreement.** At such time as HFS participates in a statewide pharmaceutical purchasing agreement, Vendor shall utilize that agreement to obtain all pharmaceuticals.

2.3.13  Laboratory Services

2.3.13.1  **Laboratory Services.** Vendor shall arrange for routine laboratory services and may not change laboratory providers without the consent of the IDOC Medical Director. Vendor shall ensure that all subcontracted laboratory services meet state licensure requirements. The laboratory service shall provide documentation of routine quality control activities when requested by the IDOC Medical Director. Routine laboratory services shall include:
a. Laboratory Supplies;
b. Pick-up and delivery on a daily basis, Monday through Friday;
c. A printer connected to the laboratory for test results to be received at each Center;
d. Reporting capability within 24 hours; and
e. Phlebotomy services as currently provided and specified.

2.3.13.2  **Emergency Laboratory Services.** Vendor shall arrange for all emergency laboratory work to be performed at the hospital or qualified laboratory that is nearest to the Center, and for results to be telephoned immediately to the requesting physician, with a written report to follow.

2.3.13.3  **Physician Review.** Vendor shall ensure that a physician reviews, initials and dates all laboratory results to assess the follow-up care indicated and to screen for discrepancies between the clinical observations and the laboratory results. This review shall be performed within 72 hours for Adult Centers and within 5 business days for Juvenile Centers. In the event the laboratory report and the clinical condition of the patient do not correlate, the physician shall re-order the lab test or determine the next appropriate diagnostic step.

2.3.14  **EKG Services.** Vendor shall arrange for EKG Services, and shall not change EKG providers without the consent of the IDOC Medical Director. EKG services arranged by Vendor shall include all equipment and supplies, on-site orientation, a cardiologist over-read with immediate response, a printed report of the EKG with a strip within 10 minutes, and equipment maintenance and service within 24 hours after such is requested by the Center.

2.3.15  Dialysis.

12

WEX114



EX-1 #3 CONT'D to 1917

2.2.5.10.2 Vendor shall have the pharmacy provide all medications upon receipt of a facsimile of a written order or a call-in order from the Center's registered nurse, physician or dentist.

2.2.5.11 **Ordering and Delivering:** Subject to the approval of the IDOC Medical Director and HCUA, Vendor shall establish a system of ordering and delivering medications, and of verifying the delivery of the original order.

2.2.5.11.1 **On-site**

a. Vendor shall provide all medications upon a written order or a call-in order from the Center's registered nurse, physician or dentist. The written order may be in the form of a facsimile with the original prescription to be maintained on-site.

b. Vendor shall provide a facsimile (FAX) machine for transmission of the hard copy of orders, or a commercial courier or delivery system, if the pharmacy is local for off-site services.

c. Vendor shall have the pharmacy supply all medications within 24 hours of the order submission, Monday through Saturday excepting holidays, and be able to have the pharmacy deliver all emergency orders within four (4) hours after the called-in order.

d. Vendor shall have the pharmacy arrange for Sunday and holiday delivery within a specified time to be established by each Center.

e. When making deliveries, Vendor must ensure that the pharmacy's staff complies with all sign-in and sign-out procedures, rules and regulations of the Center.

f. The Center's nursing staff, pharmacy technicians and medical technicians may distribute all medications. The Center's nursing staff shall administer medications.

2.2.5.11.2 **Off-site**

a. For off-site services, Vendor shall provide a pharmacy technician to deliver and verify orders per delivery, 6 days per week, at agreed upon days and time or times. In the absence of a pharmacy technician, a certified medical technician or a nurse may deliver and verify orders.

b. Vendor shall provide a facsimile (FAX) machine for transmission of the hard copy of orders, or a commercial courier or delivery system, if the pharmacy is local.

c. The pharmacy shall provide a computer-generated packing slip with each delivery of medication from an off-site pharmacy. The packing slip shall provide detail of doses by offender name, number, date, medication, number of doses, prescription number, and stop date to be verified by the medical and mental health staff assigned to the pharmacy. The packing slip shall also itemize what items were sent, any items that are missing, and an explanation of why the missing items were not included.

d. When making deliveries, the pharmacy's staff shall comply with all sign-in and sign-out procedures, rules and regulations of the Center.

2.2.5.12 **Forms:** Vendor shall provide all forms necessary for ordering, controlled drug log or inventory, offender profiles, prescriptions and other pharmacy forms identified by the HCUA.

2.2.5.13 **Over-the-Counter Products:** Vendor shall not be responsible for providing any products to the commissaries. Vendor shall supply all over-the-counter products that are utilized in the health care unit. Vendor shall provide an item that is requested for an offender by a physician, physician assistant, nurse, dentist or medical technician, even if that product is available to the offender from the commissary.

2.2.5.14 **Back-up Plan:** Vendor shall maintain a system for ensuring the retention of all computer-stored data and a backup system for the delivery of services during computer "down time", including, but not limited to, accepting call-in orders from a registered nurse, physician or dentist to a pharmacist.

2.2.6 **Dental Program:** All dental services must be provided under the direction of licensed dentists and in accordance with IDOC ADs on dental care. Vendor shall provide dentists that are licensed in the State of Illinois.

2.2.6.1 **Routine Services:** Vendor shall provide dental checkups to offenders every two years, or more often if clinically indicated, and evaluations must be provided within 14 days after the offender's request for routine care treatment.

2.2.6.2 **Emergency Services:** Vendor shall respond to dental emergencies within 24 hours after occurrence with a dentist or suitable healthcare staff. Urgent-painful cavities hindering an offender's ability to eat must be treated within three (3) business days.

2.2.6.3 **Dental Prosthetics:** Vendor shall provide dental prosthetics to offenders when the dentist and On-site Medical Director determine that the offender's health would be adversely affected if a dental prosthesis was not provided. The IDOC Medical Director, in consultation with the IDOC-designated dental consultant, shall resolve disputed cases. Replacement of dental prosthetics that were lost or damaged through the offenders' negligence or abuse is at the discretion of the dentist based on priority of need, and may be charged to the offender.

2.2.6.4 **Dental Laboratory Services:** Vendor shall provide dental laboratory services to the Centers under a subcontract. The dental laboratory subcontractor shall not be changed without the consent of the IDOC Medical Director.

CONT'D to 17



**2.2.6.5** **Extractions:** If a front tooth or a series of front teeth are extracted while the individual is in IDOC custody, or a prosthetic that was made before entering IDOC custody is broken or lost through no fault of the offender, Vendor shall supply the dental prosthesis at Vendor's expense. If the missing tooth is non-visible, the prosthesis need not be made, unless there are three or more missing teeth needed for mastication in the judgment of the dentist.

**2.2.6.6** **Edentulous:** If the offender was edentulous before entering the custody of IDOC, then the dentist shall determine whether the offender requires dentures or dental prosthetics for this condition.

**2.2.6.7** **Oral Surgery:** Vendor shall provide oral surgery services on an as-needed basis. Vendor may provide such services on-site or with an off-site oral surgeon.

**2.2.7** **Vision Program**

**2.2.7.1** **Services:** Vendor shall provide optical services from a qualified optometrist who shall examine offenders who present with a complaint. Vendor shall arrange for the provision of eye examinations, which shall be performed in accordance with ACA Standards and IDOC performance-based audit standards. Vendor shall secure any necessary ancillary site-specific licenses required by law for the optometrist to provide on-site services.

**2.2.7.2** **Eyeglasses/Prosthetics:** Vendor shall provide eyeglasses through Illinois Correctional Industries and must provide other prosthetics when an Ophthalmologist clinically indicates such.

**2.2.8** **Implementation and Administration**

**2.2.8.1** Vendor will provide a detailed implementation timetable which identifies the Contract implementation work plan, appropriate staffing with required licenses and/or certificates, functions, responsible parties, and beginning and completion dates. Certain administrative and systems functions must be completed prior to the effective date of the Contract. The timetable should serve as an actual work plan and should include, but not be limited to: initial planning meetings, implementation/development of on-site/off-site comprehensive medical and mental health services for offenders, appropriate staffing for account administration including on-going staffing to maintain required service levels, coordination with Agency staff, periodic update meetings, communications development, contract development and execution, transition of active cases, coordination with the current Vendor, systems development, and staff training schedule. The Vendor's timetable is attached to this contract as Exhibit XII.

**2.2.8.2** By June 1, 2011, Vendor will submit a detailed implementation work plan for the four (4) Centers it will begin to deliver services on September 1, 2011 (see Section 2). This work plan will identify the tasks to be completed, responsible parties, and beginning and completion dates and serve the same purpose and contain the same information as the implementation work plan identified in 2.2.8.1.

**2.2.8.3** Vendor will ensure that there will be no interruption in offender health services when the Contract commences.

**2.2.9** **Additional Facilities:** Should additional IDOC Center(s) be opened during the term of the contract, Vendor agrees to provide the identified medical and mental health services to the additional IDOC Center(s) at the rates in accordance with the contract and any amendment(s) thereto in effect at the time medical and mental health services are needed. This provision of additional services is subject to the review and approval of HFS and IDOC.

**2.2.10** **Effective Communications with Offenders:** Vendor is financially and procedurally responsible for providing effective communications during the delivery of medical and mental health services to an offender, including the use of qualified sign language interpreters, foreign language translation services, and other auxiliary aids and services that meet the effective communication needs of each individual offender.

**2.3** **MILESTONES AND DELIVERABLES**

**2.3.1** Unless otherwise specified, beginning May 16, 2011 Vendor shall perform all functions and services described in Sections 2 and 7, which includes fulfilling any deadlines and time parameters set forth in said sections.

**2.3.2** **On-Site Specialty Clinics:** For all specialty clinics in place when this contract commences, Vendor will conduct a thorough analysis of the clinic's utilization and off-site referral volume to determine if changes will improve cost or clinical efficiency. A report of the analysis will be given to the IDOC Medical Director no later than December 31, 2011. For those Centers which come under this contract on September 1, 2011, the Vendor will perform the same analysis of the specialty clinics at those Centers and provide the IDOC Medical Director with a report by February 29, 2012. See Section 2.2.3.4.1.2.

**2.3.3** **Subcontracts:** Within 20 days after the effective date of this contract or within 20 days of the execution of a subcontract, whichever is later, Vendor shall provide IDOC and HFS with copies of all its executed subcontractors including, but not limited to, those with hospitals, physicians, and dentists. See Sections 2.5.3.1 and 2.5.4.

19

EX I #4

Contract for Services
2006-05-001
102 of 105

| Title | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Medical Records Director | $18.04 | $18.40 | $18.77 | $19.14 | $19.53 | $19.92 | $20.32 | $20.72 | $21.14 |
| Nurse Practitioner/Physician Ass't | $32.22 | $32.86 | $33.52 | $34.19 | $34.86 | $35.57 | $36.28 | $37.01 | $37.75 |
| Pharmacy Tech | $14.87 | $15.17 | $15.47 | $15.78 | $16.10 | $16.42 | $16.75 | $17.08 | $17.42 |
| Physical Therapy Assistant | $18.15 | $18.51 | $18.88 | $19.26 | $19.65 | $20.04 | $20.44 | $20.85 | $21.27 |
| Radiological Technician | $16.50 | $16.83 | $17.17 | $17.51 | $17.86 | $18.22 | $18.58 | $18.95 | $19.33 |
| RN | $24.04 | $24.52 | $25.01 | $25.51 | $26.02 | $26.54 | $27.07 | $27.61 | $28.17 |
| Social Worker/Counselor | $20.51 | $20.92 | $21.34 | $21.77 | $22.20 | $22.64 | $23.10 | $23.56 | $24.03 |
| Staff Assistant | $14.40 | $14.69 | $14.98 | $15.28 | $15.59 | $15.90 | $16.22 | $16.54 | $16.87 |
| Dental Hygienist | $22.74 | $23.19 | $23.66 | $24.13 | $24.61 | $25.11 | $25.61 | $26.12 | $26.64 |
| Staff Psychologist | $33.11 | $33.77 | $34.45 | $35.14 | $35.84 | $36.56 | $37.29 | $38.03 | $38.79 |
| Sr. Staff Psychologist | $35.30 | $36.01 | $36.73 | $37.46 | $38.21 | $38.97 | $39.75 | $40.55 | $41.36 |
| Physicians | $56.70 | $57.83 | $58.99 | $60.17 | $61.37 | $62.60 | $63.85 | $65.13 | $66.43 |
| Psychiatric Nurse | $25.10 | $25.60 | $26.11 | $26.64 | $27.17 | $27.71 | $28.27 | $28.83 | $29.41 |
| Recreational Therapist | $19.42 | $19.81 | $20.20 | $20.61 | $21.02 | $21.44 | $21.87 | $22.31 | $22.75 |

Physical and Medical Records Director positions are not currently covered under the AFSCME Contract. However, AFSCME is considering inclusion of these positions.

AFSCME Wage Scale

Effective January 2, 2006 to January 1, 2007

| Title | New Hire | 1 Year | 2 Year | 3 Year | 4 Year | 5 Year | 6 Year | 7 Year | 8 Year |
|---|---|---|---|---|---|---|---|---|---|
| Certified Nursing Assistant | $12.57 | $12.82 | $13.07 | $13.34 | $13.60 | $13.87 | $14.15 | $14.43 | $14.72 |
| Dental Assistant | $15.32 | $15.62 | $15.93 | $16.25 | $16.58 | $16.91 | $17.25 | $17.59 | $17.95 |
| Laboratory Technician | $16.02 | $16.34 | $16.66 | $17.00 | $17.34 | $17.68 | $18.04 | $18.40 | $18.77 |
| Licensed Practical Nurse | $18.58 | $18.95 | $19.33 | $19.72 | $20.11 | $20.52 | $20.93 | $21.34 | $21.77 |
| Medical Records Director | $18.58 | $18.95 | $19.33 | $19.72 | $20.11 | $20.52 | $20.93 | $21.34 | $21.77 |
| Nurse Practitioner/Physician Ass't | $33.19 | $33.85 | $34.53 | $35.22 | $35.92 | $36.64 | $37.37 | $38.12 | $38.88 |
| Pharmacy Tech | $15.32 | $15.62 | $15.93 | $16.25 | $16.58 | $16.91 | $17.25 | $17.59 | $17.95 |
| Physical Therapy Assistant | $18.69 | $19.07 | $19.45 | $19.84 | $20.24 | $20.64 | $21.05 | $21.47 | $21.90 |
| Radiological Technician | $17.00 | $17.33 | $17.68 | $18.04 | $18.40 | $18.76 | $19.14 | $19.52 | $19.91 |
| RN | $24.76 | $25.26 | $25.76 | $26.28 | $26.80 | $27.34 | $27.89 | $28.44 | $29.07 |
| Social Worker/Counselor | $21.31 | $21.55 | $21.98 | $22.42 | $22.87 | $23.32 | $23.79 | $24.27 | $24.75 |
| Staff Assistant | $15.32 | $15.62 | $15.93 | $16.25 | $16.58 | $16.91 | $17.25 | $17.59 | $17.95 |
| Dental Hygienist | $23.88 | $24.35 | $24.84 | $25.34 | $25.85 | $26.36 | $26.89 | $27.43 | $27.98 |
| Staff Psychologist | $34.10 | $34.79 | $35.48 | $36.19 | $36.91 | $37.65 | $38.41 | $39.17 | $39.96 |
| Sr. Staff Psychologist | $36.36 | $37.09 | $37.83 | $38.58 | $39.36 | $40.14 | $40.95 | $41.77 | $42.60 |
| Physicians | $58.40 | $59.57 | $60.76 | $61.98 | $63.22 | $64.48 | $65.77 | $67.08 | $68.43 |
| Psychiatric Nurse | $25.85 | $26.37 | $26.90 | $27.44 | $27.98 | $28.54 | $29.11 | $29.70 | $30.29 |
| Recreational Therapist | $20.00 | $20.40 | $20.81 | $21.23 | $21.65 | $22.08 | $22.53 | $22.98 | $23.44 |

Physical and Medical Records Director positions are not currently covered under the AFSCME Contract. However, AFSCME is considering inclusion of these positions.

AFSCME Wage Scale

Effective January 2, 2007 to January 1, 2008

| Title | New Hire | 1 Year | 2 Year | 3 Year | 4 Year | 5 Year | 6 Year | 7 Year | 8 Year |
|---|---|---|---|---|---|---|---|---|---|
| Certified Nursing Assistant | $12.88 | $13.14 | $13.40 | $13.67 | $13.94 | $14.22 | $14.51 | $14.80 | $15.09 |
| Dental Assistant | $15.70 | $16.01 | $16.33 | $16.66 | $16.99 | $17.33 | $17.68 | $18.03 | $18.39 |
| Laboratory Technician | $16.42 | $16.75 | $17.08 | $17.42 | $17.77 | $18.13 | $18.49 | $18.86 | $19.24 |
| Licensed Practical Nurse | $19.05 | $19.43 | $19.82 | $20.21 | $20.62 | $21.03 | $21.45 | $21.88 | $22.32 |
| Medical Records Director | $19.05 | $19.43 | $19.82 | $20.21 | $20.62 | $21.03 | $21.45 | $21.88 | $22.32 |
| Nurse Practitioner/Physician Ass't | $34.02 | $34.70 | $35.39 | $36.10 | $36.82 | $37.56 | $38.31 | $39.07 | $39.86 |
| Pharmacy Tech | $15.70 | $16.01 | $16.33 | $16.66 | $16.99 | $17.33 | $17.68 | $18.03 | $18.39 |
| Physical Therapy Assistant | $19.16 | $19.55 | $19.94 | $20.33 | $20.74 | $21.16 | $21.58 | $22.01 | $22.45 |
| Radiological Technician | $17.42 | $17.77 | $18.12 | $18.49 | $18.86 | $19.23 | $19.62 | $20.01 | $20.41 |
| RN | $25.38 | $25.89 | $26.41 | $26.93 | $27.47 | $28.02 | $28.58 | $29.15 | $29.74 |
| Social Worker/Counselor | $21.65 | $22.09 | $22.53 | $22.98 | $23.44 | $23.91 | $24.39 | $24.87 | $25.37 |
| Staff Assistant | $15.70 | $16.01 | $16.33 | $16.66 | $16.99 | $17.33 | $17.68 | $18.03 | $18.39 |
| Dental Hygienist | $24.47 | $24.96 | $25.46 | $25.97 | $26.49 | $27.02 | $27.56 | $28.11 | $28.68 |
| Staff Psychologist | $34.96 | $35.66 | $36.37 | $37.10 | $37.84 | $38.59 | $39.37 | $40.15 | $40.96 |
| Sr. Staff Psychologist | $37.27 | $38.01 | $38.77 | $39.55 | $40.34 | $41.15 | $41.97 | $42.81 | $43.67 |
| Physicians | $59.86 | $61.06 | $62.28 | $63.52 | $64.80 | $66.09 | $67.41 | $68.76 | $70.14 |
| Psychiatric Nurse | $26.50 | $27.03 | $27.57 | $28.12 | $28.68 | $29.26 | $29.84 | $30.44 | $31.05 |
| Recreational Therapist | $20.50 | $20.91 | $21.33 | $21.76 | $22.19 | $22.64 | $23.09 | $23.55 | $24.02 |

Physical and Medical Records Director positions are not currently covered under the AFSCME Contract. However, AFSCME is considering inclusion of these positions.

WEX204

Contract for Services
2006-05-001
103 of 105

## AFSCME Wage Scale

Effective January 2, 2008 to December 31, 2008

| Title | New Hire | 1 Year | 2 Year | 3 Year | 4 Year | 5 Year | 6 Year | 7 Year | 8 Year |
|---|---|---|---|---|---|---|---|---|---|
| Certified Nursing Assistant | $ 13.14 | $ 13.40 | $ 13.67 | $ 13.94 | $ 14.22 | $ 14.51 | $ 14.80 | $ 15.09 | $ 15.39 |
| Dental Assistant | $ 16.01 | $ 16.33 | $ 16.66 | $ 16.99 | $ 17.33 | $ 17.68 | $ 18.03 | $ 18.39 | $ 18.76 |
| Laboratory Technician | $ 16.75 | $ 17.08 | $ 17.42 | $ 17.77 | $ 18.13 | $ 18.49 | $ 18.86 | $ 19.24 | $ 19.62 |
| Licensed Practical Nurse | $ 19.43 | $ 19.82 | $ 20.21 | $ 20.62 | $ 21.03 | $ 21.45 | $ 21.88 | $ 22.32 | $ 22.76 |
| Medical Records Director | $ 19.43 | $ 19.82 | $ 20.21 | $ 20.62 | $ 21.03 | $ 21.45 | $ 21.88 | $ 22.32 | $ 22.76 |
| Nurse Practitioner/Physician Ass't | $ 34.70 | $ 35.39 | $ 36.10 | $ 36.82 | $ 37.56 | $ 38.31 | $ 39.07 | $ 39.86 | $ 40.65 |
| Pharmacy Tech | $ 16.01 | $ 16.33 | $ 16.66 | $ 16.99 | $ 17.33 | $ 17.68 | $ 18.03 | $ 18.39 | $ 18.76 |
| Physical Therapy Assistant | $ 19.55 | $ 19.94 | $ 20.33 | $ 20.74 | $ 21.16 | $ 21.58 | $ 22.01 | $ 22.45 | $ 22.90 |
| Radiological Technician | $ 17.77 | $ 18.12 | $ 18.49 | $ 18.86 | $ 19.23 | $ 19.62 | $ 20.01 | $ 20.41 | $ 20.82 |
| RN | $ 25.89 | $ 26.41 | $ 26.93 | $ 27.47 | $ 28.02 | $ 28.58 | $ 29.15 | $ 29.74 | $ 30.33 |
| Social Worker/Counselor | $ 22.09 | $ 22.53 | $ 22.98 | $ 23.44 | $ 23.91 | $ 24.39 | $ 24.87 | $ 25.37 | $ 25.88 |
| Staff Assistant | $ 16.01 | $ 16.33 | $ 16.66 | $ 16.99 | $ 17.33 | $ 17.68 | $ 18.03 | $ 18.39 | $ 18.76 |
| Dental Hygienist | $ 24.96 | $ 25.46 | $ 25.97 | $ 26.49 | $ 27.02 | $ 27.56 | $ 28.11 | $ 28.68 | $ 29.25 |
| Staff Psychologist | $ 35.66 | $ 36.37 | $ 37.10 | $ 37.84 | $ 38.59 | $ 39.37 | $ 40.15 | $ 40.96 | $ 41.78 |
| Sr. Staff Psychologist | $ 38.01 | $ 38.77 | $ 39.55 | $ 40.34 | $ 41.15 | $ 41.97 | $ 42.81 | $ 43.67 | $ 44.54 |
| Physicians | $ 61.06 | $ 62.28 | $ 63.52 | $ 64.80 | $ 66.09 | $ 67.41 | $ 68.76 | $ 70.14 | $ 71.54 |
| Psychiatric Nurse | $ 27.03 | $ 27.57 | $ 28.12 | $ 28.68 | $ 29.26 | $ 29.84 | $ 30.44 | $ 31.05 | $ 31.67 |
| Recreational Therapist | $ 20.91 | $ 21.33 | $ 21.76 | $ 22.19 | $ 22.64 | $ 23.09 | $ 23.55 | $ 24.02 | $ 24.50 |

Physical and Medical Records Director positions are not currently covered under the AFSCME Contract. However, AFSCME is considering inclusion of these positions.

WEX205



Contract for Services
2006-05-001
92 of 105

3. Participate in treatment/habilitation team meetings with pertinent personnel such as social workers, physicians, psychologists, nurses, vocational rehabilitation counselors, and educators regarding recipient treatment and programming.

4. Provide clinical services for specialized populations such as recipients with dual diagnosis of mental illness and mental retardation, mental illness, and substance abuse or individuals with developmental disabilities, mental illness, multiple treatment issues, physical handicaps, and/or medical problems.

5. Participate in the preparation of or prepare documentation relating to a recipient's treatment or habilitation plan and participate in the preparation of regular, annual, quarterly and special reports of activity therapy services.

6. Provide professional direction and counseling to students assigned for internship training and clinical practicum; provide professional direction to other staff and volunteers.

7. Develop and conduct programs designed for either group or individual participation; collect and analyze data to evaluate progress toward treatment objectives; develop recommendations for the treatment/habilitation team as to the recipient's continuation or change in specific programs.

8. Based on professional training, conduct recreational therapy and/or drama therapy that meet the needs of the recipients served; participate in the development and facilitation of facility wide therapy programs.

9. Perform other duties as required or assigned which are reasonably within the scope of the duties enumerated above.

## CHIEF DENTIST

Provides overall supervision of the dental department and provides direct dental services to inmates utilizing Department's A.P.H.A Dental Classification System.

The Chief Dentist shall:

1. Provide preventive and restorative dental services to all inmates.

2. Perform and interpret radiographic examinations as indicated.

3. Perform operative dentistry including appropriate repair of caries.

4. Repair/fit proper prosthetic devices.

5. Supervise staff in: cleaning teeth, making impressions for prosthetic devices, planning and maintaining oral hygiene program, completing appropriate records accurately, and all procedures associated with the provision of dental care.

6. Arrange proper referral for procedures that cannot be performed on-site at facility.

7. Provide supervision of staff in instruction of residents in preventive practices for maintaining proper oral hygiene.

8. Submit monthly report of Dental Department activities.

9. Attend Medical Audit Committee meetings, as requested.

10. Participate in staff development program.

11. Develop and update departmental policies and procedures.

12. Supervise and evaluate all assigned dental staff.

13. Review all outside referrals of staff dentist to assure the necessity for such referrals.

WEX194



Contract for Services
2008-05-001
93 of 105

## DENTIST

Provides on-site dental care to inmates of Department of Corrections facilities.

The Dentist shall:

1. Provide preventive and restorative dental care to all inmates.

2. Supervise while on duty all assistants involved in dental care to inmates.

3. Comply with all established policies of the dental service.

4. Work closely with Chief Dentist to comply with established protocols, policies and procedures.

5. Maintain dental records in accordance with established procedures and policies, utilized by the Department's A.P.H.A. Dental Classification System.

6. Refer oral surgery recommendations to Chief Dentist for consultation.

## DENTAL ASSISTANT

Under immediate supervision, performs nonprofessional work assisting a dentist in the routine handling of patients, instruments, and supplies; maintains records of treatment, supplies, and materials.

The Dental Assistant shall:

1. Set up instruments, equipment, and supplies as directed by the dentist or dental hygienist.

2. Assist the dentist, as directed, in providing dental care to the residents.

3. Prepare the patient for treatment.

4. Ensure proper clean up, packaging, and sterilizing of instruments.

5. Assist dentist in completing dental X-rays.

6. Assist in instruction of residents in proper dental hygiene.

7. Accurately record services in the resident's medical record, as directed by the dentist.

8. Receive instructions from the dental hygienist and provide assistance when requested.

9. Assist in screening for dental emergencies and sick call.

10. Maintain a clean and orderly work environment.

11. Maintain adequate dental supplies.

12. Maintain inventory of dental supplies and equipment.

cont'd to pg. 94

## DENTAL HYGIENIST

Under supervision of the Dentist, performs technical and advisory service in oral or dental hygiene involving oral prophylaxis under supervision of a registered dentist; may perform educational and organizational work in promoting oral hygiene.

The Dental Hygienist shall:

1. Set up clinic as assigned by supervisor.

WEX185



Contract for Services
2006-05-001
94 of 105

*From pg. 93*

*EX I #5*

2.    Complete oral prophylactic care including set up of instruments, equipment and supplies.

3.    Ensure proper cleanup, packaging and sterilizing of instruments.

4.    Assist dentist in administering fluoride treatments.

5.    Assist dentist in completing dental X-rays.

6.    Instruct residents in proper dental hygiene.

7.    Accurately record services in the medical record of the resident and classify dental conditions utilizing APHA standards.

8.    Screen for dental emergencies and sick call.

9.    Check and maintain instruments, equipment, and supplies including ordering replacements and submitting work orders.

10.    Maintain a clean and orderly working environment.

11.    Instruct dental assistant in proper techniques and other training as directed.

12.    Develop oral hygiene education program for residents.

13.    Participate in in-service education.



## PSYCHIATRIST

Provides psychiatric consultation, evaluation, diagnosis, and treatment to inmates of Illinois Department of Corrections facilities.

The Psychiatrist shall:

1.    Provide on-site psychiatric assessment, diagnosis, and treatment of those inmates referred by the medical or clinical services staff.

2.    Provide written summaries of history, diagnosis and treatment course.

3.    In addition, duties shall include screening of inmates prior to Community Correctional Center placement and evaluation of inmates for possible transfer to the psychiatric treatment facility.

4.    Where applicable, provide psychiatric services for inpatient Mental Health Unit, to include assessment and diagnostic, staffing, treatment planning, regular review of all inmates assigned.

5.    Where applicable, provide psychiatric services for all inmates referred by Mental Health Unit for those inmates in the general population who need regular psychiatric/mental health follow up.

## PSYCHOLOGIST

The Psychologist provides a broad range of services to the facility including evaluation and diagnosis, crisis intervention services, group and individual therapy, consultation services, and training.

The Psychologist shall:

WEX196





Contract for Services
2006-05-001
70 of 105

| Facility | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Shift Weekly Hours | Shift FTE | Option A Weekly Hours | Option A FTE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hill | | | | | | | | | | - | |
| *Day Shift* | | | | | | | | | | | |
| Dental Assistant | | 16.00 | 16.00 | 16.00 | 16.00 | 16.00 | | 80.00 | 2.00 | 80.00 | 2.00 |
| Dental Hygienist | | 10.00 | | 10.00 | | | | 20.00 | 0.50 | 20.00 | 0.50 |
| Dentist | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Director of Nursing | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Licensed Practical Nurse | 16.00 | 24.00 | 24.00 | 32.00 | 24.00 | 24.00 | 16.00 | 160.00 | 4.00 | 400.00 | 10.00 |
| Medical Director | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Medical Records Director | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Optometrist | | 3.69 | | | | | | 3.69 | 0.09 | 3.69 | 0.09 |
| Pharmacy Technician | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Physical Therapist | | | | | | | | 0.00 | 0.00 | - | - |
| Physical Therapy Assistant | | | | | | | | 0.00 | 0.00 | - | - |
| Physician Asst/Nurse Practitioner | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Psychiatrist | | 10.00 | | | | | | 10.00 | 0.25 | 10.00 | 0.25 |
| Psychologist | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Radiology Technician | | 8.00 | | | 8.00 | | | 16.00 | 0.40 | 16.00 | 0.40 |
| Registered Nurse | 16.00 | 16.00 | 16.00 | 24.00 | 16.00 | 16.00 | 16.00 | 120.00 | 3.00 | 280.00 | 7.00 |
| Staff Assistant | | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | | 20.00 | 0.50 | 20.00 | 0.50 |
| Staff Assistant II | | 16.00 | 16.00 | 16.00 | 16.00 | 16.00 | | 80.00 | 2.00 | 80.00 | 2.00 |
| Subtotal | 32.00 | 163.69 | 132.00 | 158.00 | 140.00 | 132.00 | 32.00 | 789.69 | 19.74 | | |
| *Evening Shift* | | | | | | | | - | - | | |
| Registered Nurse | 8.00 | 8.00 | 16.00 | 16.00 | 16.00 | 8.00 | 8.00 | 80.00 | 2.00 | | |
| Licensed Practical Nurse | 16.00 | 24.00 | 24.00 | 32.00 | 24.00 | 24.00 | 16.00 | 160.00 | 4.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| Subtotal | 24.00 | 32.00 | 40.00 | 48.00 | 40.00 | 32.00 | 24.00 | 240.00 | 6.00 | | |
| *Night Shift* | | | | | | | | - | - | | |
| Registered Nurse | 8.00 | 8.00 | 16.00 | 16.00 | 16.00 | 8.00 | 8.00 | 80.00 | 2.00 | | |
| Licensed Practical Nurse | 16.00 | 8.00 | 16.00 | 8.00 | 8.00 | 8.00 | 16.00 | 80.00 | 2.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| Subtotal | 24.00 | 16.00 | 32.00 | 24.00 | 24.00 | 16.00 | 24.00 | 160.00 | 4.00 | | |
| Hill Total | 80.00 | 211.69 | 204.00 | 230.00 | 204.00 | 180.00 | 80.00 | 1,189.69 | 29.74 | 1,189.69 | 29.74 |

WEX172



Contract for Services
2006-05-001
71 of 105

| Facility | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Shift Weekly Hours | Shift FTE | Option A Weekly Hours | Option A FTE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Illinois River | | | | | | | | | | | |
| *Day Shift* | | | | | | | | | | | |
| Dental Assistant | | 16.00 | 16.00 | 16.00 | 16.00 | 16.00 | | 80.00 | 2.00 | 80.00 | 2.00 |
| Dental Hygienist | | 10.00 | | 10.00 | | | | 20.00 | 0.50 | 20.00 | 0.50 |
| Dentist | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Director of Nursing | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| ENT Clinic | | | | | | | | 0.00 | 0.00 | - | - |
| Gen Sugery | | | | | | | | 0.00 | 0.00 | - | - |
| Licensed Practical Nurse | 16.00 | 16.00 | 24.00 | 24.00 | 24.00 | 24.00 | 16.00 | 144.00 | 3.60 | 304.00 | 7.60 |
| Medical Director | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Medical Records Director | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Optometrist | | | 3.69 | | | | | 3.69 | 0.09 | 3.69 | 0.09 |
| Orthopedic | | | | | | | | 0.00 | 0.00 | - | - |
| Pharmacy Technician | | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | | 20.00 | 0.50 | 20.00 | 0.50 |
| Physician | | | | | | | | 0.00 | 0.00 | - | - |
| Physician Asst/Nurse Practitioner | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Psychiatrist | | 6.00 | | | | | | 6.00 | 0.15 | 6.00 | 0.15 |
| Psychologist Administrator | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 40.00 | 1.00 | 40.00 | 1.00 |
| Radiology Technician | | 4.00 | | 4.00 | | 4.00 | | 12.00 | 0.30 | 12.00 | 0.30 |
| Registered Nurse | 16.00 | 16.00 | 16.00 | 24.00 | 16.00 | 16.00 | 16.00 | 120.00 | 3.00 | 280.00 | 7.00 |
| Staff Assistant | | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | | 20.00 | 0.50 | 20.00 | 0.50 |
| Staff Assistant II | | 16.00 | 16.00 | 16.00 | 16.00 | 16.00 | | 80.00 | 2.00 | 80.00 | 2.00 |
| Subtotal | 32.00 | 140.00 | 131.69 | 150.00 | 128.00 | 132.00 | 32.00 | 745.69 | 18.64 | | |
| *Evening Shift* | | | | | | | | | | | |
| | | | | | | | | - | - | | |
| Registered Nurse | 8.00 | 8.00 | 16.00 | 16.00 | 16.00 | 8.00 | 8.00 | 80.00 | 2.00 | | |
| Licensed Practical Nurse | 16.00 | 16.00 | 16.00 | 24.00 | 16.00 | 16.00 | 16.00 | 120.00 | 3.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| Subtotal | 24.00 | 24.00 | 32.00 | 40.00 | 32.00 | 24.00 | 24.00 | 200.00 | 5.00 | | |
| *Night Shift* | | | | | | | | | | | |
| | | | | | | | | - | - | | |
| Registered Nurse | 8.00 | 8.00 | 16.00 | 16.00 | 16.00 | 8.00 | 8.00 | 80.00 | 2.00 | | |
| Licensed Practical Nurse | 8.00 | 8.00 | | 8.00 | | 8.00 | 8.00 | 40.00 | 1.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| | | | | | | | | 0.00 | 0.00 | | |
| Subtotal | 16.00 | 16.00 | 16.00 | 24.00 | 16.00 | 16.00 | 16.00 | 120.00 | 3.00 | | |
| Illinois River Total | 72.00 | 180.00 | 179.69 | 214.00 | 176.00 | 172.00 | 72.00 | 1,065.69 | 26.64 | 1,065.69 | 26.64 |

WEX173



Contract for Services
2006-05-001
4 of 105



2.1.15 **IDOC:** the Illinois Department of Corrections and any successor agency.

2.1.16 **IDOC Medical Director:** the individual, or his or her designee, who oversees this Contract for the IDOC and provides direction to healthcare vendors and IDOC healthcare staff.

2.1.17 **ILCS:** Illinois Compiled Statutes. An unofficial version of the ILCS can be viewed at http://www.legis.state.il.us/legislation/ilcs/ilcs.asp.

2.1.18 **On-site Medical Director:** the Vendor employee at each Center who provides services as a lead worker for staff in the Center health care unit.

2.1.19 **Parties:** the State of Illinois and Vendor.

2.1.20 **State:** the State of Illinois, as represented through any agency, department, board, or commission, including HFS and IDOC.

2.1.21 **Transfer Coordinator:** the IDOC employee who coordinates inmate transfers from one Center to another Center.

2.1.22 **Vendor:** Wexford Health Sources, Inc., the company providing health care services to IDOC inmates under this Contract.

## 2.2 TERM OF CONTRACT AND GENERAL SPECIFICATIONS:

2.2.1 The term of the contract shall be for two years, beginning on December 15, 2005 or upon execution by HFS whichever is later. The State reserves the right to renew the contract on the same terms and conditions for three additional one-year terms, or for terms of a length lesser than the initial term.



2.2.2 This contract is between the Illinois Department of Healthcare and Family Services, Illinois Department of Corrections, and Vendor to provide health and mental health services to IDOC inmates in order to maintain the health status of inmates, establish innovative and cost effective medical and administrative programs, improve the quality of care, provide acceptable, cost effective levels of staffing, positively impact the purchasing of pharmaceutical or medical supplies and improve the overall contract performance.

2.2.3 Vendor shall arrange for the provision of the identified health care services to inmates assigned to Stateville Correctional Center, Stateville R & C, Sheridan Correctional Center, Dixon Correctional Center, East Moline Correctional Center, IYC Kewanee, Hill Correctional Center, Dwight Correctional Center, Pontiac Correctional Center, Illinois River Correctional Center, Western Correctional Center, Lincoln Correctional Center, Logan Correctional Center, Decatur Correctional Center, Danville Correctional Center, Jacksonville Correctional Center, Graham Correctional Center, Robinson Correctional Center, Lawrence Correctional Center, Menard Correctional Center, Pinckneyville Correctional Center, Big Muddy Correctional Center, IYC Harrisburg, Vienna Correctional Center, Shawnee Correctional Center, Tamms Correctional Center & MSU. Should additional IDOC Center(s) be opened in the vicinity of these facilities during the term of the contract, Vendor agrees to provide the identified health care services to the additional IDOC Center(s) at the rates in accordance with the contract and any amendment(s) thereto in effect at the time health care services are needed. This provision of additional services is subject to the review and approval of HFS and IDOC.

2.2.4 **Performance Guarantee.** In accordance with 730 ILCS 5/3-2-2(3), Vendor shall provide documentation of an established line of credit that meets the approval of HFS and IDOC. This performance guarantee shall be submitted to the State on or before the effective date of the Contract. This performance guarantee shall be forfeit in the event Vendor fails to perform under this Contract and such failure results in termination of this Contract by the State, under Section 4.8.1 or 4.8.2.

4

**2.2.5** **Pharmaceutical Program:** Vendor shall provide a 24 hour/7 day a week comprehensive pharmaceutical program in compliance with all current and future court orders, laws, regulations and provisions of the Illinois Pharmacy Practice Act, including, but not limited to, prescription drugs and over-the-counter medications utilized to treat all medical and mental health conditions and emergency needs.

**2.2.5.1** **Licensure:** Vendor shall ensure that the pharmacy is licensed to provide all pharmacy services for medication distribution at the Center.

**2.2.5.2** **Staffing:** Vendor shall arrange for an on-call pharmacist to be available 24 hours a day, for each day of the year, to cover all the centers covered in this contract.

**2.2.5.3** **Duties:** Vendor shall provide a Chief Pharmacist to serve as chairman of the Pharmacy and Therapeutics Committee. The Chief Pharmacist shall consult on-site and by telephone with the On-site Medical Director and staff. Vendor shall arrange for a licensed pharmacist, who shall participate every other month with the Quality Improvement Committee, perform third party drug utilization review as requested by the Quality Improvement Committee, and conduct monthly inspections to include, but not limited to, the expiration dates, security, storage and a periodic review of medication records at all of the Centers' areas where medications are maintained.

**2.2.5.4** **Packaging:** Vendor must package all medications in light-resistant and humidity-resistant containers, as appropriate, and furnish and supply pharmaceuticals and drugs utilizing a unit of use method of packaging. If each dose is individually labeled and packaged, the label shall include, at a minimum, the drug name, strength, lot number, expiration date and manufacturer. If a modified unit of use system, such as a card or blister pack, is utilized, each card or pack must be labeled as a prescription as required by law. The pharmacy shall label each prescription container, including the offender name, number, location, date, medication name, strength, instructions, prescription number, warnings, prescribing physician, quantity given and pharmacist's initials as required by law. The pharmacy shall package non-controlled, non-abusable medications in no more than a month's supply as allowed by the On-site Medical Director.

**2.2.5.5** **Liquid and Injectable Medications:** Vendor shall provide the following:
   a. liquid psychotropic medications in unit of use, individually labeled and packaged, as specified by the On-site Medical Director or psychiatrist;
   b. other medications in liquid unit of use as specified by the On-site Medical Director;
   c. injectable medications as requested by the On-site Medical Director; and
   d. hypodermic supplies, including needles, syringes and disposal containers that are tamper proof and puncture resistant, and appropriately dispose of or destroy needles, syringes and medically-related infectious or hazardous waste.

**2.2.5.6** **Emergency Stock:** Vendor shall provide on-site emergency dose capability for emergency stock of drugs in unit of use packages to be used in emergency situations or until regular delivery of medications. The IDOC Medical Director shall determine the specific drugs and quantities. Vendor shall provide emergency drugs in sealed emergency kits as requested by the On-site Medical Director.

**2.2.5.7** **Discharge:** Vendor shall have the pharmacy fill all prescriptions for a period of two weeks, or in a sufficient quantity to complete the current prescription, whichever is less, when offenders leave the Center on writ or discharge. In addition for those who are discharged, Vendor shall provide a 2-week prescription. Vendor shall provide a 2-week supply of prescription medications for work release or Adult Transition Center transfers in accordance with the ADs.

**2.2.5.8** **Formulary:** Vendor shall use the approved formulary issued and distributed by the IDOC Medical Director. The Vendor shall adhere to all procedures that accompany implementation of the IDOC formulary, such as non-formulary requests. Non-formulary requests from site providers will require Vendor approval. Denied non-formulary requests that remain in dispute will be decided by the IDOC Medical Director.

**2.2.5.9** **Records**

   **2.2.5.9.1** **General:** Vendor shall maintain copies of all prescriptions issued to offenders in a permanent file for a period of five (5) years, and provide copies to the Center within 24 hours after the Center's request. Vendor shall maintain appropriate documentation including, but not limited to, inventory records, controlled drug perpetual inventory, and offender profiles. All documentation shall be open for review by the CAO.

   **2.2.5.9.2** **Psychotropic Medications:** Vendor shall maintain records on each offender who is treated with psychotropic medications, whether on a voluntary or involuntary basis, including the diagnosis and types of drugs used. This information shall be maintained in the offender's medical chart and transferred with the offender.

**2.2.5.10** **Medication Administration Record**

   **2.2.5.10.1** Vendor shall provide a pre-printed monthly computerized Medication Administration Record (MAR), which shall include all information contained on the prescription label and the name of the practitioner who prescribed the medication. The MAR shall be provided to the HCUA on a monthly basis and as otherwise indicated. The initial MAR must be computer generated with only add-on prescriptions during the month being added to the MAR with a printed label being affixed to the MAR.

26

Reid
3/24/17
Via Mr. Stevens
@ I-ASS
~R12

GANS Handwriting /
printing

J

KL/NER B77/52
IA SS

FROM G.O GANS WITH HIS Return of MY 3-23-17 letter and all exhibits therein!

27

To: G.O. GANS / CSL. @ HILL CC — IDOC

From: RON KLINER B77152 1-A-55

Re: Your return to me, on 3-24-17, of
Exhibits thereto & for my grievance dated
2-28-17, to which You did NOT yet review
or Rule, Nor did I receive any from you,
whereas said documentation, sent to you by
cover letter dated 3/23/17 & via grievance
box @ 1-A, supported my cover letter of
3-21-17 for my grievANCE dated 2-28-17
@ to dental
_____
dated: 3/26/17 via Grrev. Box 1-A to you


MR. GANS—

    Reference the above, & for you to please
place this letter with The 2-28-17 grievance
& appeal to you dated 3-21-17 whereas as of
3/26/17 I have not received any Review or ruling
from you yet as I tried to send you
documents I obtained of which directly
Contradicted DDS Dr. STROW's comments to CSL.
BeAns & supported my assertions (in & for
& from ) made in the 2-28-17 grievance,
to which you as the grievance officer
then *returned them to me, (hopefully you
copied them & placed them with This
matter ???) thereby subverting the grievance
process I am availing myself of & to you as
the grievance officer.  Respectfully  Ron/ili—

*evident
by your
addressing,
on the
reverse
side of
of pg.15
with
2.2,5,8
"@ to formulary"
to me, name
by ID#
& cell
#

*Returned to many 3-26-17 6.0.6xxx -RK on 3/28/17*
*to 6.0.6xxx* *griev dated 2-28-17*

*74*

DATE: 3/28/17 NAME: KLINER         #: B77192 CELL: 1A55

FROM: Steve Gans, CC2, Primary Grievance Officer

The attached grievance(s)/correspondence is being returned to you because:

___ The CAO has determined that the grievance is not emergent. File as a normal grievance.

___ The issue is not grievable, or the grievance was not filed within the 60 day timeframe.

___ You didn't attach the disciplinary & Final Summary reports you are grieving. Attach and return.

___ The grievance is a duplicate. Per D.R. 504, Subpart F, duplicate grievances are not answered.

___ You failed to include specific information (dates, names, etc.). Add these & re-file the grievance.

___ Not properly filed. File in grievance box in your living unit.

_X_ OTHER:
   THE 2/28 GRIEVANCE WAS ANSWERED BY THE CAO AND
RETURNED TO YOU ON 3/27/17. YOU HAVE 30 DAYS TO APPEAL
TO THE ARB.

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

*29*

### Grievance Officer's Report

Date Received: March 22, 2017    Date of Review: March 24, 2017    Grievance # (optional): 17-0937

Offender: Kliner, Ron    ID#: B77152

Nature of Grievance: Medical; dental

*COPY*

Ⓑ

**Facts Reviewed:** The grievance is dated 2/28/17. Inmate Kliner states that he signed up to see the dentist on 2/23/17 for chronic conditions that are documented in his records. He states that Hill C.C.'s Commissary doesn't sell soft toothbrushes, or toothpaste that prevents gum disease. He states that he went to the HCU on 2/27, and observed that there is no dental hygienist on staff. He states that he never sat in the dental chair and wasn't seen by the dentist, who merely listened to his conversation with the dental nurse. He states that he was told that nothing could be done for his "aphtous stomatitis" and that Hill C.C. wouldn't honor his request for Orabase dental paste, even though he showed proof that it was prescribed at Stateville C.C. He states that he was told "we don't do that here". He states that he pointed out that no "pleavare rinse", dental floss or floss picks are sold in the Commissary here, but are provided at Dixon C.C., to which the dentist replied, "maybe you should transfer there". He states that the nurse told him that they tried to ensure that these things are sold in the Commissary but 'they don't listen to us". He states that he wrote to CSS Millard on 2/4/17 (no reply given) about these items, to no avail. He states that he asked dental staff if they could at least use their instruments to pick up his "calculus deposits" but they said they couldn't. He states that he received no examination. The grievant states that his records will verify his statements and that this reviewing officer can access those records through HCUA Lindorff. He attached copies of his call pass, request to be seen, and two pages from aan unidentified book explaining periodontal disease. As relief, he requests that these issues be addressed and that his teeth be cleaned.

Counselor Beams responded on 3/17/17, stating that, according to the dentist (Dr. Strow), the grievance is a duplicate of a prior grievance, and that administrators decide what is and isn't sold in the Commissary. He stated that non-formulary prescriptions are not authorized, and that proper policy and procedure were followed in this matter.

The grievant attached a response to the counselor's response, stating that the grievance is not a duplicate, and that his Orabase expired in 2012. He voiced the same complaints about HCU staff and his medical condition, but, again, attached no documentation, such as copies of his medical records, in support of his allegations. The grievant is reminded that the grievance form itself states that offenders are to "Attach a copy of any pertinent document". The grievant instead chose to remind staff that they can obtain access through other means, which is common knowledge.

According to A.D. 04.03.102, an offender can request specific routine or non-emergency services, such as teeth cleaning. Such services may be scheduled, but are not required to be performed.

The Hill C.C. Commissary sells dental floss loops, mouthwash, two kinds of toothbrushes and found kinds of toothpaste.

**Recommendation:** Based on Dr. Strow's review of all available information, it is the recommendation of this reviewing officer that the grievance be DENIED. The grievant attached no documentary or other evidence in support of his contentions. If the grievant chooses to forward this grievance to the ARB for further consideration, he is advised to attach any such documents to the grievance.

Steve Gans, C.C.2
Print Grievance Officer's Name    Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

### Chief Administrative Officer's Response

Date Received: 3/24/17    ☒ I concur    ☐ I do not concur    ☐ Remand

Comments:

Chief Administrative Officer's Signature    3/24/17
Date

### Offender's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Offender's Signature    B77152    3-31-17
ID#    Date

*Handwritten left margin:*

Rec'd
3/31/17
PK

From 60 Days
Rec'd WITHOUT
my letter 3-23-17
to him & as
to the OTHER
* "exhibits"
supporting
my grievance
& disputing
DDS STMTS
TO CSL
Beams!

* the WEXFORD
CONTRACT
EXCERPTS
as cited
in the 3-23-17 to GANS

30

COPY

TO: Director BALDWIN, IDOC   ATTN: ARB/IDOC- Springfield
FROM: RON KLIMPER # B77152, P.O. 1700, Galesburg IL 61402
RE: my GRIEVANCE DATED 2-28-17 with G.O. review 3-24-17, #17-0927
+ CAO's "CONCUR" of 3-24-17, my APPEAL TO you please

pg 1/2

DATED: 3-31-17 + sent "PRIV. MAIL"

Reference the above + for your review of same please find the
following d/o support thereof:

1) I filed the 2/28/17 grievance as to "dental care" + matters thereof
from my request to see the Dentist 2-23-17 + being called to
do so on 2-27-17. Attached, as (EX. A) is the grievance. I
reiterate all therein + per purposes of this Appeal + to "exhaust."

2) Here is the 3-24-17 by G.O. GANS + CAO Dorothy's "concur" of 3-24-17
It is (EX. B). GANS re-states, "WHAT IS IN 'my grievance + does so
in "a way to belittle what you say + act as if it means Nothing for the
lack of something; eg: I provided pgs. 419-20-418-421 from a "medical
book" addressing EXACTLY WHAT I complained of + needed to see the
dentist + As to GUM problems + WHAT NEEDS TO BE DONE + instead of
GANS Addressing the substance of WHAT IT SAYS + WHY I provided
it, he instead, says, "two pgs from aun (sic) unidentified book
explaining peridontal disease" AS somehow because I haven't identifi
the book makes WHAT IS STATED from it makes it less so?
Is it his job as G.O. to belittle whats said? OR, seek TRUTH + resolution?
Had he fairly done his review I may have gotten the dental car
needed vs. the delay with pursuit for appeal to ARB + to
exhaust + ultimately sue to get the care I need (
(EX. C) shows the title of the * book" pgs 418-19, 20-21 are from it.

3) IN EX. B, GANS, instead of determining the truth of the matter, as
to DR. STROW citing my grievance as a "Duplicate" ignores it
Despite my explaining in my 3-21-17 to GANS how it cannot be a
duplicate as I'm NOT @ Hill 9-24-0! or even if 9-24-11 / see (EX D)
this 3-21-17 please.

4) I do a "bit more", THAN WHAT GANS says IN EX. B, saying, as relie
"in these issues be addressed + that his teeth be cleaned" see EX. A + as
to relief I seek, what is herein grievance be addressed AND FOR
PREVENTION OF FURTHER dental problems -- ie: peridontal, gingivitis
bleeding receding gums, CHRONIC plaque, APHTOUS STOMATITIS
(documented in my medical files, + what needed to be prescribed
NON-formulary OR NOT! AND, as to WHAT SHOULD either be pre-
scribed for sold on commissary /

5) (EX. E) is pgs. 418-19, 20-21 of the BOOK", (two sided copy)
These pgs. + whats in them describe / appropriate + proper
dental care + Actions "OPPOSITE" of DDS STROW's which are de-
scribed in EX. A

6) (EX. F) shows my purchase of "Colgate Sensitive Toothpaste" of * y o
on 3-2-17 in my efforts to avail myself of WHAT I provide as
Dr. STROW WON'T prescribe things needed (eg: "PeridoNTAX" tooth paste
for bleeding gums) formulary or NON- formulary
Note my efforts to get (expired 2012) Orabase renewed + given + strow
Refused citing NOT Authorized, etc. Rediculous.

7) (EX. G) my 2-23-17 SICK CALL Req to Dental, of all sought help for from Dr

(cont'd to pg. 2)

(left margin notes:)
all cited
Herein
Attached
Hereto
(EX. C(2), E(3)

(EX. C(2), E(3)
et al, + D)
(dent/dental
uptown)

31

pg. 2/2   DIr. Baldwin / I Doc & MRB,  (Minor 3-31-17)

8) EX. H the pass to "Denial" 2/27/17 930 AM.

9) (EX I) my 3/23/17 letter to GANS / GO sending him copies of pertinent excerpts of WEXFORD CONTRACT RELEVANT to this GRIEVANCE + note sent & rec'd by GANS Before his 3-24-17 Review! I reiterate, for purposes of this appeal, all cited in this letter + here is what I sent to GANS "1 thru 8" as cited in the EX. I & #'d same as follows EX. I: (#1) + so forth coinciding with exactly as #'d in the letter! + FYI.

10) NOTE: (EX. J) is GANS "HANDWRITING" where He returned to me, without ANY "GANS MEMO preprinted form" All I'd sent him including EX. I + All EX I 1-8 sent to GANS! He abrogated his duty as G.O. in doing this & circumvented my Availing to him as G.O + to do this Review fully & fairly & consider All supporting my grievance & disputing Dr. Strow's Assections reiterated by CSL BEAMS + rubber-stamped by G.O. GANS evident by his Actions & review decision arrived at by him.
EX. J was written on "backside" of the pg. 15 for "2,2,5,8 Formulary" by GANS (your EX I #8)

11) (EX K) my 3-26-17 telling GANS as to THE ABOVE!

12) (EX L) GANS 3/28/17 Returning to me my 3-26-17 (Ex K) citing what he did but ignoring what the substance of my 3-26-17 said as its more convenient to do so & place the responsibility on some one else & Avoid GANS making a favorable warranted decision on behalf of me & my grievance!
It is absolutely incredible, but for the serious nature of this grievance, for G.O. GANS to conclude as he did/does in his "recommendation." As to my not documenting to support my contentions is ludicrous AS All sent to ARB is SAME GANS had opportunity to do something.
Can you please Allow me to see a dentist at cottage Hosp. to get what is sought done + addressed & that the NON-formulary or Not prescriptions be issued + all in my grievance be addressed + followed up on. GANS should be reprimanded for his actions + lack thereof furthering delay of needed dental care & suffering due to same n.l.

Bruce Rauner
Governor



John Baldwin
Acting Director

3v

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender Name: KLINER, RONALD    Date: 6/5/17

Register # B 77152

Facility: HILL

This is in response to your grievance received on __4/10/17__. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: 2/28/17    Grievance Number: 17-0927    Griev Loc: HILL

O Transfer denied by the Facility or Transfer Coordinator

O Dietary

O Personal Property

O Mailroom/Publications

O Assignment (job, cell)

O Commissary

O Trust Fund

O Conditions (cell conditions, cleaning supplies)

O Disciplinary Report dated _____ Incident #

☒ Other MEDICAL - WANTS TREATMENT FOR PERIODONTAL DISEASE

Based on a review of all available information, this office has determined your grievance to be:

O Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____.

O Denied, in accordance with DR504F, this is an administrative decision.

☒ Denied, this office finds the issue was appropriately addressed by the facility Administration.

O Denied in accordance with AD05.03.103A (Monetary Compensation for Inmate Assignments)

O Denied, as the transfer denial by the facility/TCO on _____ was reviewed in accordance with transfer procedures and is an administrative decision.

O Denied as the facility is following the procedures outlined in DR525.

O Denied as Cell Assignment/Housing is consistent with the Department's determination of the appropriate Operational capacity of each facility.

O Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.

O Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

Other: PER DENTAL, PROPER POLICY AND PROCEDURES WERE FOLLOWED.

FOR THE BOARD: Ann Lahr, Administrative Review Board

CONCURRED: John R. Baldwin, Acting Director

CC: Warden, HILL Correctional Center
KLINER, RONALD , Register No. B 77152

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

www.illinois.gov/idoc

# Final Report of the Court Appointed Expert

33

## Lippert v. Godinez

December 2014

Prepared by the Medical Investigation Team

Ron Shansky, MD
Karen Saylor, MD
Larry Hewitt, RN
Karl Meyer, DDS



# Contents

Introduction................................................................................................................3
   Leadership and Staffing.........................................................................................5
   IDOC Office of Health Services Staffing Recommendations.............................10
Overview of Major Services.....................................................................................10
   Clinic Space and Sanitation...............................................................................10
   Reception.............................................................................................................12
   Intrasystem Transfer...........................................................................................14
   Medical Records..................................................................................................15
   Nursing Sick Call................................................................................................16
   Chronic Disease Management.............................................................................19
   Pharmacy/Medication Administration................................................................23
   Laboratory...........................................................................................................24
   Unscheduled Onsite and Offsite Services (Urgent/Emergent)..........................25
   Scheduled Offsite Services (Consultations and Procedures)..............................28
   Infirmary.............................................................................................................32
   Infection Control.................................................................................................34
   Dental Program...................................................................................................38
   Mortality Reviews...............................................................................................42
   Continuous Quality Improvement.......................................................................43
Conclusions...............................................................................................................45



# Introduction

Towards the end of 2013, Dr. Ronald Shansky was nominated by the parties and appointed by the court in the Lippert matter as an expert pursuant to Rule 706 of the Federal Rules of Evidence. The order appointing him lays out the scope of the duties.

> "The expert will assist the court in determining whether the Illinois Department of Corrections ("IDOC") is providing health care service to the offenders in its custody that meet the minimum constitutional standards of adequacy."

It further goes on to say that the expert "will investigate all relevant components of the health care system except for program services and protocols that relate exclusively to mental health." Furthermore,

> "If systemic deficiencies in IDOC health care are identified he will propose solutions for consideration by the parties and the court. These proposed solutions, if any, will form the bases for future negotiations between the parties in an effort to craft a final settlement of this matter or alternatively, may be offered into evidence in the trial of this matter. Furthermore, the expert will not recommend specific treatment for individual offenders unless those recommendations relate to systemic deficiencies in the health care provided to offenders in IDOC custody."

The parties have also accepted Karen Saylor, M.D., Larry Hewitt, R.N. and Karl Meyer, D.D.S. as additional team members. The expert met with the parties in late 2013 and a second time in April of 2014. The first meeting focused on the methodology to be used as well as questions that either of the parties had with regard to the process. The April meeting was intended to be an update, having visited by that time approximately half of the facilities to be reviewed. The expert thought this would be valuable because the confidential draft report was not due until the site visits and mortality reviews had been completed and therefore there would have been no opportunity to jointly update the parties until they actually received the confidential draft report. Both parties have been extremely supportive of this process. We received full cooperation at each of the prisons we visited and are extremely appreciative of the local efforts to facilitate the process.

The investigative team was assigned an explicit task, "To assist the Court in determining whether the state of Illinois was able to meet minimal constitutional standards with regard to the adequacy of its health care program for the population it serves." In order to reach this conclusion, the parties determined that we should visit at least eight facilities, six of which were jointly selected by the parties. The investigative team concurs with the parties' selections, in that those six facilities have special responsibilities within the system and are critical to a determination as to whether, when the health care systems are most challenged, they are able to adequately meet that challenge. Three of the institutions reviewed functioned as reception centers. These facilities are critical in that they perform the initial evaluation upon entry into the system. Problems that they fail to identify are much more likely to either not be addressed or sometimes at a minimum, the identification and the interventions are significantly delayed. Three facilities were maximum-security facilities which house the most challenging of populations for



which to provide health care services. Finally, one of the six houses the system's special geriatrics unit, which also creates health care challenges. It has been our experience that when a system is able to meet constitutional standards at the most challenged institutions, it is very likely to meet constitutional standards at the less challenging facilities. The converse, however, in our experience has not proven to be true.

The State indicates that the investigation team should have utilized standards such as the National Commission on Correctional Health Care or the American Correctional Association as the basis for both our investigation and our recommendations. The leader of the investigative team served on the board of the National Commission on Correctional Health Care for 10 years. He has also been involved with the development of the standards for the last 20 years, serving on three of the task forces and advising the most recent task force. In addition, he has also been requested and has provided training to all of the NCCHC surveyors with regard to the quality improvement standard and how to survey it. He himself has done surveys in each of the last three years. All of the members of the investigative team believe that the National Commission on Correctional Health Care, through its standards, its surveys and its training, have contributed substantially over the past three to four decades in helping facilities improve the quality of health care. When the survey process occurs, about 80% of that process is focused on administrative matters; policies, procedures, contracts and other administrative matters. Approximately 20% of the survey process is focused on clinical care, and during that process the lead investigator has recently been asked to help redesign the methodology used to assess care issues. Investigations that are part of litigation and assist the court in determining whether and the extent to which "deliberate indifference to serious medical needs" may exist requires that the focus be overwhelmingly on clinical care issues. Thus, virtually all of the time that we spent, other than understanding how services are provided at each facility, dealt with interviewing staff and inmates, observing processes and reviewing medical records. For the purposes of the court, clinical care is of overwhelming importance and administrative issues, though important, are much, much less important.

A recent article by Alex Friedmann published in *Prison Legal News*, October 2014, describes with specific citations about how the courts view specifically ACA accreditation, but also how the courts view accreditation in general. More commonly the courts have said that they do not rely in their determinations of constitutionality on the presence or absence of accreditation. We believe that this is based on the fact that the focus in constitutional disputes is overwhelmingly on clinical care matters, whereas in accreditation the focus is overwhelmingly on administrative issues. The wording of the constitutional definition of an Eight Amendment violation forces investigators, whether they be plaintiffs or defendants or working for both parties, to heavily focus on clinical care issues. Having said this is not meant in any way to diminish the value of the accreditation process, specifically with the National Commission on Correctional Health Care.

Having received the comments from both plaintiffs and defendants, it has been a challenge to integrate some of the comments into the final draft. The State has indicated it has done several things which are consistent with the investigative team's recommendation. Since we cannot verify where things are in the process, we are not addressing those things in the final report. Rather, any of the updates will be available to the Court in an appendix which includes both



plaintiff's and defendant's responses. On the other hand, where there are clarifications requested or alternatives proposed, we have attempted to be responsive. In some instances, the original paragraphs we feel were clear enough; in other instances, we have modified the original draft. We feel we have made a sincere effort to be responsive to the parties.

In order to perform such a review, it is necessary to utilize a variety of investigative strategies. We interviewed staff, we have interviewed inmates, we have observed care provided, we have reviewed policies and procedures and compared practice to the policies and procedures, we have reviewed minutes of meetings and we have reviewed selected records, including death records. In order to best describe a correctional health care program, we have found it useful to organize the institutional reviews along the lines of major services provided. This listing of services is not exhaustive; however, it enables a fairly comprehensive snapshot of how the program is functioning. The critical services begin with medical reception, which is designed to create an awareness and understanding of the medical needs of patients on entry to the system. We visited three reception centers; the main reception center, which is the Northern Reception Center, which receives inmates from Cook County; the reception process at the Logan Correctional Center, the major women's prison; and the Menard Correctional Center, which receives far fewer new inmates, especially those from Southern Illinois. An adjunct to the reception process for when patients are transferred from one facility to another is the intrasystem transfer process. Both reception and intrasystem transfer processes are designed to identify problems and insure continuity of care despite the potential disruption during a transfer. Other major services include nurse and provider sick call (primary care services), chronic care services, medication management services, scheduled offsite services (specialty consultations and procedures), unscheduled onsite and offsite services (urgent/emergent responses), infirmary services (onsite inpatient care), infection control services and dental services. All of these major service areas must be supported by an effective quality improvement program that not only self-monitors but also effectively identifies performance improvement needs and implements strategies that facilitate performance improvement. It is these services for which we will provide an overview in this confidential draft report and for which we will attach institutional appendices in which our specific findings within each institution are detailed. Finally, the report includes a review of 63 deaths by Dr. Saylor and Dr. Joe Goldenson, who was added to the team with the agreement of the parties in order to facilitate completion of the mortality reviews. In order to discuss services, we are forced to address both leadership issues as well as staffing issues, and the degree to which leadership or staffing were significantly problematic varies by institution. In the institutional appendices, we describe shortcomings in some detail.

## Leadership and Staffing

Leadership is a problem at virtually all of the facilities we visited. The question varied only with regard to degree. The reason why leadership is so important to a correctional health program is because they are responsible for setting the tone with regard to both structure and professional performance as well as insuring that the program effectively self-monitors and self-corrects so that problems are identified, addressed and ultimately eliminated. Through this self-correcting process potential harm to patients is continually mitigated. Without a strong and effective leadership team a program is much less able to identify the causes of systemic problems and to effectively address those problems by implementing appropriate targeted improvement



    j. Interface with the County Department of Health and Illinois Department of Health and provide reporting as required by each.

    k. Develop and implement a plan for the proper sanitizing of health care unit linens.

2. The Office of Health Services to fill the position of statewide Communicable and Infectious Diseases Coordinator.

## Dental Program

While an executive summary is available for individual institutions, this report addresses the program weaknesses of the IDOC program as a whole. Concerns emerge when a majority of the institutions are deficient in the standard reviewed. Especially egregious practices and/or omissions are also mentioned in this report.

### Access to Care
#### Orientation and Access to Care
Access to care was inadequately detailed or not mentioned at all in the majority of the orientation manuals reviewed. Inmates do not receive adequate instructions on how to access urgent or routine care.

#### Dental Sick Call Procedures
The lag time between an Inmate Request Form for pain and alleviation of the pain was unacceptable. It often took four or more days for urgent care patients to be seen. Patients who are in pain should be able to access care within 24-48 hours.

#### Broken Appointments
The broken appointment rate was above 10% at several institutions and as high as 40% at three institutions. The latter are alarming rates.

### Quality of Care
#### Screenings and Examinations
Although a review of records revealed that the IDOC was in compliance with its screening examination policy, oral health instructions are omitted as part of the process. Rather egregious deficiencies were observed at the NRC during the screening exam. The exam was extremely cursory and did not include an adequate head and neck and soft tissue examination. The health history was sketchy and poorly documented. Radiology safety protocols were non-existent. Area disinfection and clinician hygiene between patients was very poor. Inappropriately, most dentists use this exam, the panoramic radiograph and the charting as a treatment plan from which to deliver routine care.

#### Routine Care
A review of records at each institution revealed that routine care was almost always provided without a comprehensive examination, a treatment plan, a documented periodontal assessment, a documented soft tissue examination, and without bitewings or other radiographs diagnostic for caries. Also, there was seldom a dental prophylaxis or oral health instructions provided prior to restorative care. Without these basic elements in place, quality routine care is almost impossible. As such, there is no real system in place to provide routine comprehensive Category 3 dental care.



It was observed at several facilities that infirmary mattresses, examination tables and other equipment was in poor repair, in that the plastic protective covering was cracked or torn, making it impossible to properly sanitize the items between patients. These items need to be repaired or taken out of service, but no one is monitoring equipment to insure it is in good condition. Additionally, it was observed at several facilities that there was either no use of a paper barrier on examination tables which could be easily changed between patients or cleaning of table surfaces between patients. Again, this would be a part of the infection control nurse's duties to monitor and provide corrective action when needed.

These are just a few examples of the systemic issues due to the lack of central office oversight and management of an infection control program and which resulted in the infection control recommendations.

**Recommendations:**
1. Each facility is to do the following:
   a. Develop a position description and name an Infection Control (IC)/Quality Improvement (QI) registered nurse (IC/QI-RN) and provide training on communicable and infectious disease recognition, monitoring and reporting, and the Quality Improvement process.
   b. Develop and implement a plan for the IC/QI-RN to conduct monthly documented safety and sanitation inspections focusing at a minimum on the health care unit, infirmary and dietary department with monthly reporting to the Quality Improvement Committee (QIC).
   c. Develop and implement a plan for the IC/QI-RN to monitor food handler examinations and clearance for staff and inmates.
   d. Develop and implement a plan for the IC/QI-RN to monitor compliance with initial and annual tuberculosis screening, with monthly reporting to the QIC and facility administration as needed.
   e. Develop and implement a plan to aggressively monitor skin infections and boils and work jointly with security and maintenance staff regarding cell house cleaning practices with monthly reporting to the IC/QI-RN, QIC and facility administration as needed.
   f. Develop and implement a plan to daily monitor and document negative air pressure readings when the room(s) is occupied for respiratory isolation and weekly when not occupied.
   g. Develop and implement a training program for health care unit porters which includes training on blood-borne pathogens, infectious and communicable diseases, bodily fluid clean-up, proper cleaning and sanitizing of equipment, infirmary rooms, beds, furniture, toilets and showers.
   h. Monitor all sick call areas to insure appropriate infection control measures are being used between patients i.e., use of paper on examination tables which is changed between patients or a spray disinfectant is used between patients, examination gloves are available to staff and hand washing/sanitizing is occurring between patients.
   i. Develop and implement a plan to monthly monitor all patient care associated furniture, including infirmary mattresses, to assure the integrity of the protective outer surface with the ability to take out of service and have repaired or replaced as needed.



Most staffing was adequate and in compliance with Administrative Directive 04.03.102, Section 9, a. b. c. Glaring omissions were the lack of dental hygienists at Dixon CC and Henry Hill CC. Dental hygienists are an essential part of the dental team.

## Safety and Sanitation
In several institutions, proper sterilization flow was not in place. At one institution, spore testing of the autoclaves was being performed monthly rather than weekly. At another institution, bulk storage of biohazardous waste was maintained in the dental clinic proper in open, large cardboard boxes on palates. In none of the clinics were the sterilization area and the radiology area posted with proper hazard warning signs. Safety glasses were seldom worn by patients.

## Dental Program Management
The Administrative Directives are insufficient. They do not address quality of care issues, clinic management, record management or staff oversight and responsibilities. Dentist are provided no orientation to the IDOC dental program or training on how to manage their institution programs. This, in conjunction with inadequate quality assurance and peer review, suggests a lack of oversight on the part of the IDOC. There is not an administrative dentist to oversee and manage the IDOC dental program.

The policy mandating biennial routine examinations does not seem beneficial. It takes up a great deal of administrative time. Inmates have full access to dental care. Dentists should use their time providing this care, especially in light of the dental staffing guidelines.

## Dental Care Recommendations:

### Orientation and Access to Care
1. The IDOC develop a policy to insure that each institution has a meaningful orientation manual to instruct inmates how to access acute and routine care.

### Dental Sick Call Procedures
1. Insure that inmates with urgent care needs be provided care within 24-48 hours.
2. That the SOAP format be used to document emergency and urgent care contacts.

### Broken Appointments
1. The IDOC develop policies and oversight to address broken appointment rates over 10%.

### Screening Examinations
1. Screening examinations at the reception center include a thorough, documented intra and extra-oral soft tissue examination.
2. The health history be more comprehensive and appropriate conditions red flagged.
3. Proper area disinfection and clinician hygiene be implemented.
4. Proper radiology hygiene be put in place
5. That this screening exam not be used to develop treatment plans.

### Routine Care



## Removable Partial Dentures

A review of records revealed that prior to construction of removable partial dentures, oral hygiene education and dental prophylaxis were seldom provided, the periodontium was not documented to be stable and restorative care was provided from inadequate treatment plans. Proper radiographs were seldom present. The radiographs and examinations/treatment plans were so incomplete or vague that it could not be determined if all necessary care was completed prior to impressions.

## Dental Extractions

Although the number was relatively small, adequate radiographs were at times not available. A few records had no pre-extraction radiographs at all. A proper diagnostic reason for extraction was seldom part of the dental record. Documentation was, overall, very poor. In one institution, consent for treatment forms were not in use. Antibiotics were provided routinely after dental extractions at a couple of institutions.

## Continued Quality Improvement

The dental contribution usually was limited to monthly statistics. Most dental programs had no studies, assessments or subsequent improvements in place. There is no peer review process in place within the IDOC dental program. There is little direction or meaningful oversight of the IDOC dental program to insure that proper policies and protocols are in place and followed, and that dental standards of care are practiced.

## Health History Documentation

The medical health history section of the dental record was sketchy and incomplete. Conditions that require medical attention were not red flagged. Medical consultations were not documented in the dental record. The quality and consistency of the medical history in the dental record was inadequate. Blood pressures were not being taken on inmates with a history of hypertension.

## SOAP Format

The SOAP format was not being used to document Category 1 and 2 patient encounters.

## Dental Policy and Protocol Manuals

Institutional Policy and Protocol Manuals were usually very incomplete, outdated, or not present at all. Dental programs were implemented and managed with few guidelines and little oversight. The IDOC Administrative Directives are incomplete and provide little in the way of guidance on developing and managing a successful dental program.

## Physical Resources
## Adequacy of Equipment

Much of the equipment was old, corroded and badly worn. Cabinetry and countertops were usually badly worn, corroded or rusted, broken and not up to contemporary standards for disinfection. Non-functional equipment was not out of the norm.

## Human Resources
## Dental Clinic Staffing



Dental Clinic Staffing

    1. Dental hygienists be hired ASAP at Henry Hill CC and Dixon CC.

Safety and Sanitation

    1. The IDOC insures that all dental programs follow current infection control guidelines as well defined by the Center for Disease Control, to include documented weekly spore testing of autoclaves.

    2. Bulk biohazardous waste be properly stored outside the dental clinic.

    3. Biohazard and radiology warning signs be in place.

    4. Patients wear protective eyewear during treatment.

Dental Program Management

    1. The IDOC evaluate its Administrative Directives and develop policies and protocols that provide meaningful guidance and oversight to the field on how to run and manage a successful dental program, to include all of the issues discussed in the body of this report. These policies should be guided by a risk assessment process that insures safe and well equipped clinics, adequate and well trained dental staff, treatment provided consistent with professional standards of care and in a timely manner, and thorough and complete record documentation.

## Mortality Reviews

The taxonomy used for the mortality reviews is described in detail in the attached Appendix B. It outlines 14 distinct types of lapses in care, with each lapse representing a serious deviation from the standard of care. Many cases had more than one lapse in care, and these are specified in the case descriptions. We chose to use this methodology which was developed by the California Prison Receivership because it has been certified by the Federal Court in *Plata v. Brown*, a case involving adequacy of medical care in the California Department of Corrections and Rehabilitation.

There were 127 deaths within IDOC between January 1, 2013 and June 1, 2014, 10 of which were violent deaths (suicides or homicides) and were therefore not reviewed for the purposes of this report. Of the remaining 117 mortalities, we reviewed 61 cases (52%), plus an additional two cases of patients who died in 2010, for a total of 63 cases. The details of each case are described in the attached Appendix B. There were one or more significant lapses in care in 38 cases (60%). This is an unacceptably high rate of deviations from the standard of care. Of those cases with significant lapses, 34 (89%) had more than 1.

The internal IDOC mortality review process is seriously flawed, in that the reviews are, for the most part, performed by the doctor most closely involved in the care of the decedent. This arrangement effectively precludes an objective review by definition. This is indeed what we found when we reviewed 20 (52%) of the death review summaries of the problematic deaths (listed in Appendix B); in none of them were any of the lapses in care identified.

Only a few deaths are reviewed by the Office of Health Services; and these are selected on the basis of lapses in care identified by the local review. As just stated, in none of the problematic



1. Routine comprehensive care be provided from a thorough comprehensive exam and treatment plans.
2. That the exam includes radiographs diagnostic for caries, a periodontal assessment, a soft tissue exam and accurate charting of the teeth.
3. That hygiene care and oral health instructions be provided as part of the treatment process.

## Removable Partial Dentures
1. That removable partial dentures be provided as the last step in the comprehensive care process.
2. That all teeth are restored and the periodontium stable before impressions are taken.

## Dental Extractions
1. Current diagnostic radiographs be present for every extraction.
2. A diagnosis or reason for extraction be part of the record entry.
3. A consent for care form be used for every extraction.
4. Antibiotics be prescribed only from an appropriate diagnosis.

## Continued Quality Improvement
1. Every dental program develop a robust and meaningful CQI program to include ongoing studies and corrective measures that address identified program weaknesses.

## Peer Review
1. The IDOC develop a clinically oriented peer review system and that dentists be available to provide these reviews, such that deficiencies in treatment quality or appropriateness can be corrected.

## Health History Documentation
1. The IDOC develop a thorough and well documented health history section in the dental record.
2. That appropriate medical conditions be red flagged and that medical consultations and precautions be documented in the dental record.

## Dental Policy and Protocol Manuals
1. That IDOC dental policy insures that all institution dental programs have well developed and thorough policy and protocol manuals that address all areas of the dental program. That all dental staff be familiar with these policies and protocols.
2. Policies are reviewed annually and amended as necessary.
3. An administrative dentist be available to oversee the IDOC dental program as a whole. This person could remain in the field as a part-time practicing dentist.

## Equipment Condition
1. A system wide evaluation of existing equipment be performed and that unduly old, badly worn, rusted, corroded and non-functional units, equipment and cabinetry/countertops be replaced.



44

ILLINOIS DEPARTMENT OF CORRECTIONS

**SICK CALL REQUEST**
Hill Correctional Center

NAME: Israel Ruiz  #: K83131  DATE: 4/11/17

CELL HOUSE LOCATION: 11A - 57

I wish to be seen on sick call for the following problem:

_____ 1. **Nurse sick call for the following health care:**

_____
_____
_____

_____ 2. **Dental Problems**
Toothache lost filling, dentures, cavity.

_____ 3. **Renew Medication**

_____ 4. **Eye Doctor**

_____ 5. **Copies of Medical Records**
**List:**

_____

_____ 6. **Mental Health Services**

X        I would like my teeth to be cleaned.
_____ 7. **Other:** By contract, Wexford is supose to provide
this dental service here at Hill just like they provide it
at other institutions such as Stateville CC, Menard CC etc.
Wexford is denying this service here in violation of its contract
with the state of Illinois in order to save money and being
deliberate indifferent. I have alot of plaque on my teeth.

### DO NOT WRITE BELOW THIS LINE

Date Received: 4/12/17          Nurse Initials [signature]
                                             Clefto

See progress notes for NSC 2 2017
Date _____ APR Request slip sent to _____ Department

Cleanings are not a mandate at        HIL 0047
this facility. You can always         Revised 09/2008
put in for a transfer to a facility that
cleans teeth.

Bruce Rauner
Governor



John Baldwin
Acting Director

## The Illinois Department of Corrections

Hill Correctional Center
600 Linwood Road • P.O. Box 1327 • Galesburg, IL 61401 • (309) 343-4212 TDD: (800) 526-0844

# MEMORANDUM

DATE:    December 20, 2016

TO:      Offender Lavelle, R58527
         2B-67

FROM:    L.Lindorff, RN,BS  2 2
         HCUA

SUBJECT: Response

Per your letter dated 12-6-16 regarding services at Hill:
If your teeth require cleaning, the dentist is fully capable of providing teeth cleaning.  Dental dept also
provides dental hygiene education.
As for PT, the doctor has requested a PT visit for you.  PT training instructions will be provided and you can
perform PT either in our PT dept or in your cell depending on the instructions provided.

Lll
cc/file
Dr.Bautisa,Med.Dir
Dr.Strow,DDS
D.Dean,DON

Mission: To serve justice in Illinois and increase public safety by promoting positive change in
offender behavior, operating successful reentry programs, and reducing victimization.

www.illinois.gov/idoc



46

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO OFFENDER'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|

Date Received: April 4, 2017        Date of Review: April 6, 2017        Grievance # (optional)  17-0959

Offender: Lavelle, John                                    ID#: R58527

Nature of Grievance: Medical; dental

**Facts Reviewed:** The grievance is dated 3/3/17. The grievant states that he wants his teeth cleaned. He states that, on 2/14/17, he received a response (attached) to his 2/11/17 inquiry (attached) about this matter, and was told that dental cleaning services are unavailable at this time. He states that he received a memo dated 12/20/17 from HCUA Lindorff (attached), which stated that teeth cleaning services were provided at Hill C.C. As relief, he requests that Hill C.C. provide offenders with annual teeth cleaning services, as do other IDOC facilities, and that he suffers no repercussions from staff for filing the grievance.

Counselor Friend responded on 3/13/17, stating that, according to Dr. Strow, DDS, there is no contradiction, and the grievant is welcome to pursue a transfer to a facility that offers an established dental hygiene program. He stated that proper policies and procedures are being followed.

According to A.D. 04.03.102, an offender can request specific routine or non-emergency services, such as teeth cleaning. Such services may be scheduled, but are not required to be performed.

**Recommendation:** Based on Dr. Strow's review of all available information, it is the recommendation of this reviewing officer that the grievance be DENIED. It appears that the grievant's dental concerns have been, and are being, appropriately addressed.

Steve Gans, C.C.3
Print Grievance Officer's Name                              Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|

Date Received: 4/9/19        ☒ I concur        ☐ I do not concur        ☐ Remand

Comments:

Chief Administrative Officer's Signature                              4/9/19
                                                                        Date

| Offender's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Offender's Signature                              ID#                              Date

Offender/Student Name _Kliner_

Offender/Student I.D.# _B 77152_

Reception Facility _____

Panorex _____

Screening
DDS sig _____

Existing Restorations and Missing Teeth



☐ Schedule immediately at R&C

☐ Schedule routine exam at receiving institution

☐ Schedule immediately at receiving institution

Pathology

**Public Health Classification Screening Dates**

| | | | | | |
|---|---|---|---|---|---|
| Endodontics | | | | | |
| Oral Surgery | | | | | |
| Periodontics | | | | | |
| Operative | | | | | |
| Prosthetic | | | | | |

Treatment Needed and Completed Restorations



Receiving Inst. _____

Dentist _____

Date _____

**MEDICAL HISTORY AND REMARKS**

| | Yes | No | Current Medication |
|---|---|---|---|
| Cardio Vascular Disease | | | |
| Pulmonary Disease/Asthma | | | |
| Diabetes | | | |
| Epilepsy | | | |
| Hepatitis | | | |
| V.D. (Type _____) | | | |
| Allergies (Type _____) | | | |

**ADULT**

**EXISTING RESTORATIONS & MISSING TEETH**



≈ 25-50% horizontal bone loss evident on x/R.

TREATMENT NEEDED - COMPLETED RESTORATIONS

JUVENILE

## STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

Inmate/Student Name ___KLINER, Ronald___

Inmate/Student I.D.# ___B77152___

Reception Facility _____

Panorex _____

_____

Screening
DDS sig _____

**Existing Restorations and Missing Teeth**

R _____ L

☐ Schedule immediately at R&C

☐ Schedule routine exam at receiving institution

☐ Schedule immediately at receiving institution

### Public Health Classification Screening Dates

**Pathology**

| | | | | |
|---|---|---|---|---|
| Endodontics | | | | |
| Oral Surgery | | | | |
| Periodontics | | | | |
| Operative | | | | |
| Prosthetic | | | | |

**Treatment Needed and Completed Restorations**

R _____ L

Receiving Inst. _____

Dentist _____

Date _____

≈ 25 - 50 % horizontal bone loss evident on x/R -

### MEDICAL HISTORY AND REMARKS

**TREATMENT NEEDED - COMPLETED RESTORATIONS**

| | Yes | No | Current Medication |
|---|---|---|---|
| Cardio Vascular Disease | | | |
| Pulmonary Disease/Asthma | | | |
| Diabetes | | | |
| Epilepsy | | | |
| Hepatitis | | | |
| V.D. (Type _____) | | | |
| Allergies (Type _____) | | | |

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16

32  31  30  29  28  27  26  25  24  23  22  21  20  19  18  17

PFM

### ADULT

**EXISTING RESTORATIONS & MISSING TEETH**

1  2  3  4  5  6  7  8  9  10 11 12 13 14  15  16

R _____ L

32  31  30  29  28  27 26 25 24 23 22 21  20  19  18  17

49

VIA 1A    ½    ILLINOIS DEPARTMENT OF CORRECTIONS    attn:
Med Bx           **SICK CALL REQUEST**    DDS DR. Strow
                    Hill Correctional Center    Nurse Gillam

NAME: Kliner, R    #: B77/52    DATE: 5/15/17

CELL HOUSE LOCATION:  1 A 55

I wish to be seen on sick call for the following problem:

_____ 1. **Nurse sick call** for the following health care:  [6] 2017

_____

_____

[X]    2. **Dental Problems**  I wrote you 2-23-17 + saw
       Toothache lost filling, dentures, cavity.  you 2-27-17 though you did
       Nothing and
       My dental records + medical show I have

_____ 3. **Renew Medication**  CHRONIC APHTOUS Stomatis +
       I'm going turough another bout of this +

_____ 4. **Eye Doctor**  upper lip (left) + yet nothing sold
ON     commissary for this, Relief + It hurts eating
       I've been prescribed lidocaine in the past

_____ 5. **Copies of Medical Records** @ STA + Pontiac + it coats
       List: the sores + Alleviates pain, ALSO pre-
       scribed "Aclovir" (sic), the "orabase" I have
       is turning to yellow (prescribed @ STA) + expired

_____ 6. **Mental Health Services**  (as I told you) 12/2012 +
I need a New tube or something from you to

_____ 7. **Other:**  deal with this rebeetrring problem
that won't go away. The triamcinolone dental
PASTE I have EXPIRED 6/2015 (prescribed @ STA)
+ WHY CAN'T YOU Help me + issue prescriptions
(NONformulary or NOT) especially with NOTHING sold
ON commissary. I have No one else to turn to:
                                        please HELP
           **DO NOT WRITE BELOW THIS LINE**    me!

Date Received: _____    Nurse Initials _____

See progress notes for NSC
Date _____    Request slip sent to _____    Department

HIL 0047
Revised 09/2008



50

Via 1A
med BX

2/2

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**SICK CALL REQUEST**
Hill Correctional Center

AHN.
DDS Dr. Strow
Nurse Gillam

NAME: Kliner, R.    #: B77152    DATE: 5/15/17

CELL HOUSE LOCATION: 1 A 55

I wish to be seen on sick call for the following problem:

MAY 16 2017

_____ 1. **Nurse sick call for the following health care:**

_____

_____

X    2. **Dental Problems** From my 2-23-17 to you; the gingivitis
upper left gums + bleeding
Toothache lost filling, dentures, cavity. + when brushing
still happens + Nothing sold on commissary

_____ 3. **Renew Medication** like "Perondontax" can
you prescribe it please? And perledontitis

_____ 4. **Eye Doctor** being left untreated + why?
Also, I cant be expected to remove the

_____ 5. **Copies of Medical Records** chronic placque
**List:** buildup, + "calculus" (cited in my
dental records) in back of my front
teeth + in front of my teeth

_____ 6. **Mental Health Services** for Nothing is sold
in commissary to do this + can you

_____ 7. **Other:** prescribe accordingly please?
Dental "Loops" are inadequate + do not work
Nor toothpastes sold, None are for placave
And No SOFT toothbrushes dental picks/piles
or placave rinse. Please exercise 'your
dental authority to write a Nonformulary prescription
help me.

**DO NOT WRITE BELOW THIS LINE**

Non-formulary prescription will not be.
Date Received: 5/17/17    Nurse Initials _authorized_
Dental Dep

See progress notes for NSC
Date _____ Request slip sent to _____ Departmer

The items available to inmates
in the facility Commissary is
administration and sea...the spec...

HIL 0047
Revised 09/2008

ILLINOIS DEPARTMENT OF CORRECTIONS
# OFFENDER'S GRIEVANCE

FA-55

-A GrieVANCE BOX
5-22-17

**Offender:** (Please Print) RON Kliner    ID#: B77152

**Present Facility:** Hill

**Facility where grievance issue occurred:** Hill

## NATURE OF GRIEVANCE:  5/23/17

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA  DENTAL
- [X] Other (specify): DENTAL

- [ ] Disciplinary Report: ____/____/____  
  Date of Report                    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): I wrote A 2 pg SickcAll request dated 5-15-17 to the dentist, (Rec'd stamped 5-16-17, & 5-17-17 by "Dental Dept" & with no "Nurse initials" (likely Robin G. dental)). I cited my previous s/c Req of 2-23-17 where I was called to dental & never even examined. (2-27-17). In my 5-15-17 I complained of the chronic Aphtous Stomatis (canker sores) + going thru another bout (upper lip left + Also inside left side of my tongue) than nothing sold on commissary for this + sought help by dentist as it hurts when eating + how I'd been prescribed by dentists lidocaine, Acyovir, orabase + dental paste to deal with it, the pain + while eating. I cited how the orabase I had from SFA expired 2012 + triamcinolone 6/2015. Not only was I not called by PDS Strow -- Nor to address complained of bleeding gums, upper left side, chronic placave, gingivitis or periodontal disease in my s/c request -- Nurse Robin G. (her handwriting) cited as to my request: Non formulary prescriptions needed + to exercise your authority as dentist to do them. "Non Formulary prescription will not be authorized" + "return to sender", this is ludicrous as is Dr. Strows Notations in my dental Records citing: "multiple complainer" "multiple grever" "dupl. grievance" (I wrote 2 grievance dated 2-28-17 only) As to cleaning teeth + placave removal Dr. Strow refuses Robin G. citing: "Not Available" this is illegal! "Not mandated" "transfer to another facility"

**Relief Requested:** Clearly Dr. Strow does not want to see a dentist Nor do what he can to alleviate pain + address my problems + concerns, Nor even clean teeth -- can I be sent to cottage Hospital, to see a dentist who will please + get the help I need, and address my problems, prescribe what's required irrespective of Non-formulary Nor if or Not sold on / commissary. If Dr. Strow won't do his job -- what can I do to get help?

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Distribution: Master File; Offender    Page 2    DOC 0046 (8/2012)

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|---|---|---|---|---|---|
| 9/7/16 | Medical / Dental record unavailable | are | 11/15/16 | 2 Year Exam | R. Guillam DA |
| N/C | Pt. had # 30 Amalgam restoration done recently, felt high spot. Compressor not functional. Occl. adjusted with lightening strip. Nv adj occl. # 30 9/16/16. instructed patient not to chew heavy on # 30 - may fracture the tooth, large Amalgam restoration. | | 11/16/A | OD 2 E OS III B OS II Guien Schedule per request N. Brown. D.D. | |
| | | | 12/19/16 12/20/F | Sent request "my R. Guillam gums are receding on lower front teeth, and it feels like I got something stuck between my teeth" (see history) # 25 - Restoration appears intact. gingival recession evident. No foreign object to be noticed. Schedule per request. PEM in Annual Pt. notices. floss check ok. N. Brown. D.D. | |
| 9/16/16 | # 30 Amal - occlusion adjusted and polished flossed OHI discussed | arm | 2/27/19 10/10/A | Sent request multiple R. Guillam DA complaints: wants soft toothbrush, wants rinse teeth scraped. lower front and thing added over in commissary" advised pt. we have no input to what is sold in commissary. Pt. reports he is going to write a grievance. Nothing against us multiple complaints. Schedule per request. multiple griever. N. Brown. D.D. | |
| 9/23/16 | | | | | |
| 11/14/2016 6:49A | Chart & X-Ray Reviewed Await Request | N. Brown DDS | | | |

DC 7126 (Rev. 10/87)
IL 426-0018



| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|------|------------------|------------------|------|------------------|------------------|
| 3/13/2017 9:20A | P: Grievance response - dupl. RE: Items permitted to be available in commissary. Copy to file  ~Straw, DO | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |



DC 7126 (Rev. 10/87)
IL 426-0018



54



**DR. LAGO & ASSOCIATES**
3 S. Prospect
Park Ridge, Il 60068
847-823-3441

Rec'd
5/30/17

05/04/2017

Re: Ron Kliner #BFN152
To Ron Kliner and Illinois Dept of Corrections

Having reviewed the grievance dated 2/28/2017 but not having viewed any records nor having seen the patient in person, I have formed an opinion.

My professional opinion is based on over 25 years in hospital and private practice; on the editorial board of 2 medical magazines and having been an expert witness in the past, just to name a few.

To begin with, current ADA standard of care recommends full mouth x-rays (ADA.org page 1 table 1) or bitewings with Pan-x, for a complete initial evaluation. This procedure has been the standard since the beginning of my career in 1984. In addition, if a patient comes to my office demonstrating/complaining of bleeding gums when brushing or flossing we perform a periodontal evaluation complete with periodontal probings, to evaluate any damage to the periodontal ligaments and or osteogenic bone loss. This is to be preformed together with a full mouth debridement. Further treatment is then based upon our findings to prevent more serious problems requiring possible surgery. Soft tooth brushes have always been a very strong recommendation, and the only ones dispensed in my office.

With regards to the chronic aphthous stomatitis, the repeated sloughing of necrotic tissue, is painful and can be debilitating in some cases. Over the counter topical agents, (ie Orabase) have proven very successful in treatment rather than systemic medications. "American family physicians (7/1/2000) 62 (1): 149-54." This topical agent combined with a topical anesthetic is non habit forming. "Journal of Family Practice (2011) 60 (10): 621-32."

Should you have any more questions please E-mail me @ drjlago@gmail.com.

Sincerely,

Dr. J. Lago

# Ask Men's Health

*Ken Flaxman atty.*



The key to mixing brown and black: Step forward with confidence.

Northwest [illegible vertical text]

## HEALTH

### I never liked flossing—and recently heard that I don't have to bother. Really?
DAVE, PHILADELPHIA, PA

The controversy about flossing stems from the fact that studies haven't proved the habit helpful. But that could simply be due to a dearth of research. Floss is an inexpensive product that scientists don't have much incentive to study, says Soo-Woo Kim, D.M.D., of Harvard's School of Dental Medicine. Dr. Kim sees clear benefits when he checks the choppers of faithful flossers. Guys who rarely floss have plaque buildup between their teeth, which can lead to gum disease, cavities, and bad breath. If you truly despise flossing, Dr. Kim recommends the Philips Sonicare AirFloss Ultra ($90, usa.philips.com). A burst of water and air dislodges the gunk between your teeth.

## FITNESS

### Pushups hurt my shoulders. What am I doing wrong?
CHRIS, MOBILE, AL

It's probably your elbow and hand positions, says *MH* fitness advisor Ben Bruno. "Flaring your elbows or having them in too close to your body stresses your shoulders," he says. Keep your elbows at a 30- to 45-degree angle. Then flare your hands out—your index fingers at 1 and 11 o'clock—which reduces torque on your shoulder joint.

 Have a question? We've got answers! Ask at MensHealth.com/experts.

## STYLE & GROOMING

### Please resolve this dilemma once and for all: Can I wear black with brown?
NICK, IOWA CITY, IA

The short answer is yes. The injunction against combining these colors is antiquated. That said, you can still look like a chump if you don't do it right. "It should be apparent that you paired the colors on purpose," says Manhattan-based fashion stylist Seth Howard. "That's why the correct proportions and tones are so important." Howard likes the 80-20 rule: If your shirt or pants are one color, the other color should be more of an accent (like a brown shirt with a black suit, or tan shoes with black jeans). When picking your browns, Howard says, go dark brown or light tan; anything else makes you look like you dressed in the dark. "When done correctly, combining the two hues shows your personality and tells the world you're savvy enough to know that the old rule is BS."

## NUTRITION

### Why do I crave foods that are sweet and salty?
JON, MINNEAPOLIS, MN

It's a Cro-Magnon combo your brain can't resist. Over the millennia, our ancestors came to learn that sweet meant a food was high in calories, while salty signaled a food that might replenish electrolytes. Today, the combination of different flavors and textures perpetuates snacking via something called "sensory-specific satiety," says Julia Hormes, Ph.D., a psychologist who studies food cravings at SUNY's University at Albany. Take chocolate-covered pretzels (but not the whole bag!). If you eat just chocolate, your tastebuds will eventually tire of sweet. Same goes for pretzels and salt. But when you merge sweet and salty, your brain has a harder time reaching the point of flavor fullness. So try peanut butter and celery: This combo delivers the same sweet-salty pleasure without weighing on your waistline.





## THE GIRL NEXT DOOR

Ali Eaves takes your questions on sex, love, lust, and relationships.

### What's the best text to send a woman after a hot one-night stand?
MIGUEL, DALLAS, TX

"Free for dinner Friday?" Simple words can say a lot. You're casually making it known that you'd like to see her again—and soon. That's all she probably wants to hear after a passionate fling. The subtext is that you had an amazing time with her. Being asked out on a date will pique her interest a lot more than a three-paragraph text about how awesome the sex was. Less creepy too. She'll peg you as a confident, stand-up guy who's into more than just sex. And you have every reason to believe she'll say yes. After all, she knows you know how to push her buttons, right?

### I work 60-hour weeks and earn twice what my wife does. Do we really have to split the chores?
TOM, CHARLOTTE, NC

I'm going to save you a lifetime of arguing, Tom. Take that fat paycheck of yours, peel off a hundred bucks or so, and call a cleaning service. Either that or learn to tolerate a little mess around the house. Look, of course it makes sense for the partner who has more free time to do more of the home-fire tending. But the way you're using math to calculate who does what is bound to breed resentment. If you bring in outside help, you're not only shutting down the chore debate once and for all but also providing employment for someone who probably cleans better than the both of you combined.

Follow Ali on Facebook at MHGirlNextDoor, and on Twitter at @MHGirlNextDoor.







**HELP KEEP YOUR TEETH**

# 97% AS CLEAN

**AS A DENTAL CLEANING.***




Help keep your teeth 97% as clean as a regular dental cleaning* with Crest Pro-Health Clinical Rinse, Clinical Plaque Control Toothpaste, and Oral-B Pro-Health Clinical Pro-Flex Toothbrush. Used together, these products not only reduce plaque, they also help keep it from coming back, so you can have a clean, healthy mouth at home.



life opens up when you do 

**PRO·HEALTH CLINICAL**

*1 month later. Results based on plaque imaging immediately after brushing.

© Procter & Gamble, Inc., 2012 ORAL-1252

51

T: 3.0 Gaus @hill co / IDOC

copy

mom. A. stir... L7713?

No: my 1-3-17 to CSL Beams, circumvented by
you, my 5-22-17 grievance @ to dental & from
my 5-15-17 sick call request, 2 pgs & I'd
sought CSL Beams to re-view his misdirected &
inaccurate Ch-117 response citing duplicate by
the pethod

date: 5/b/17 via LA Box

Dear Mr. Gans—

Regarding the above, you sent me your "title
non-ghe butter-plate form", citing your Zuther
grievances dated 5/22 & 4/24 (1) I checked off
duplicate, contains ... that ... information"
found ... have been ... by ... previous
grievance responses, the grievances are about
the issues raised, not ... received" (gee,
where does it say that?)

My 4/3/17 was sent to CSL Beams yet you think it &
circumvented the grievance process & abrogated your
duty to reutral fairly & respond thereby personally under
(acting) color of state law denying me due process &
ultimately to get the dental treatment & care I
need & seek,

My grievance is not & was not any duplicate, I reiterate
all in my 4/3/17 hereof to you also, these are duplicate
... Please. It was ... ... (we send my
grievance to ... & ... ... & ... 5-22-17 or 4-24-17
5-15-17 is separate ... ... ... ... ... get
dental care / Radiations. ... ...

54.

TO: GARETH BEAMS CSL @ Hill CC / IDOC

FROM: RON Kliner B77152 1-A-55

RE: My grievance dated 5-22-17 with your 6-2-17 response
& citing "duplicate grievance" as per "Dentist"
dated: 6/3/17 & via 1-A Box

Reference the above, Respectfully CSL. Beams,
my grievance IS NOT A DUPLICATE & I ASK
you to, as counselor, please to RE-REVIW this
& IN support state the following so you can
"fairly" adjudicate this matter as is, I presume
your job to do so, right? And, regardless of whom
is correct or not, in a fair & balanced way:

1) I sought WHOM & title of Dentist, name & of
Robin G please, surely this easily could've
been given, can you provide this please?

2) What "Dentist" "states this is a duplicate
grievance response was done 3-13-17"?

3) The 5/22/17 grievance is "NOT" a duplicate of
my 2-28-17 grievance & #17-0927 where I saw
the dentist (STROW) on 2-27-17. The 5/22/17
grievance is from sick call req dated 5-15-17 (2 pgs)
& NOT being seen or called to the dentist! (note
when called to dentist 2-27-17 I got to sit in the chair yet
wasn't seen by DDS Strow!)

4) It should also be noted in the response STROW gave
to my 2-28-17 & his (strows) 3-13-17 response he cited
"duplicate" citing a 9-24-01 or 9-24-11 grievance & I
was never @ Hill CC on those dates (arrived 11-11-16 from
STA) so the dentist citing duplicates is questionable/
Mr. Beams, ATTACHED with my grievance is the 2 pg "(copy)
OF my 5-15-17 request, a copy of HCUA 12-20-16 citing dentist
can "clean teeth & is "Fully capable", A 5-4-17 from Dr. Lago citing
care I should be given. With respect I ASK you to re-review
your response & help me get dental care I need. Thank

(left margin notes:)
CC: KEN FIXMAN, Atty.
JON Loevy
MATT Atty(s)
et.al.
w/ enclosures(s)
- 5-22-17 grievance
- 5-4-17 letter
Dr. Lago
5-15-17
- 2 pg req DDS
s/c req 12-20-16
- HCUA letter
- Articles
Flossing buildup
placaue
+ products
+ what can
that help



# Illinois Department of Financial and Professional Regulation

## Division of Professional Regulation

**BRUCE RAUNER**
Governor

**BRYAN A. SCHNEIDER**
Secretary

**Jessica Baer**
Director
Division of Professional Regulation

October 12, 2017

Ronald Kliner #B77152
PO Box 1700
Galesburg, IL 61402

Re: Case No. 2017-08578

Dear Mr. Ronald Kliner:

The Illinois Department of Financial and Professional Regulation attempted to reach you by telephone. Please contact Investigator Leon Stockstill, Illinois Department of Financial and Professional Regulation, 8620 South Pulaski Road, Chicago, IL 60652, 773-838-5715, leon.stockstill@illinois.gov, within the next ten (10) days.

Thank you in advance for your cooperation.

Sincerely,

Investigator Leon Stockstill
Division of Professional Regulation

9511 W Harrison Street, Suite LL50, Des Plaines, IL 60016
Phone: 847-294-4900 Fax: 847-294-4905
Internet: www.idfpr.com

TO IDFPR @ 8620 S. Pulaski Rd, Chg. IL 60652
ATTN: INV LEON STOCKSTILL, Div of Prof Reg.
FROM RON KLINER, #B77152, P.O 1700, Galesburg IL 61402
RE* your dated 10-13-17 letter to me, postmarked
10-13-17 and received by me on 10/24/17 by
"Regular" mail with Case NO. 2017-08578;
my immediate response thereto upon receipt
dated 10/24/17 & sent "legal mail" to you

Dear Mr Stockstill-

Hello, got your letter, but NOT within
10 days as it is impossible as I got it
10/24/17.

Dont know how I was attempted to be reached
by phone as I'm incarcerated & obviously have
NO phone or # to call by you!

And, you can initiate a call by contacting
the prison + due to nature of this case.

What is the date of the complaint
you reference to, I made, & corresponding
to 08578 + as to whom?

I will cooperate with you 100% & share
all documentation with you also,

KNOW I wrote a Richard Wilk of Enforcement
a 10/9/17 letter responding to his 9-29-17 to
me for 2017 06289 + 08544 (Lindorff) +
Have NOT heard back from him -- can you
get him to respond please.

Thankyou your time & effort.

[signature]

3RD X
SENT
TO
YOU!

10/24/17
12/1/17
1/4/18

CAN YOU
Kindly
RESPOND
to
this?

(25)

L
O
R
Y

CC: GOV
RAUNER's
OFFC.
* w/enclosure

TO: ACLU-CHGO. ATTN: CAMILLE BENNETT, Senior CSL / ATTY.

FROM: RON KLINER B77152 P.O. 1700, Galesburg IL 61402

RE: Your 11-17-17 to me (to which I rec'd 11-21-17 and after sending you my 11-16-17) ¿ Following up ¿ seeking clarification dated: 11/22/17 ¿ By "legal mail"

pg. 2

Dear Ms. Bennett

Hello ¿ first thank you to of written me back, obviously my 11-16-17 letter was sent having not gotten your 11-17-17 yet. I look forward to hear from you, I wanted to respond to your letter please.

Enclosed herewith please find a copy OF, what you cite as the 10/17/17 having the 'right hand margin cut off', (FULL) please confirm, indeed this is what your deeming to be that 10/17/17, ¿ thank you.

Please confirm, the "DKT. 589" you cited ¿ apprised me of as "filed" IN the Lippert record" (thankyou) is indeed the/a 6 pg. cover letter with those 54 pages ¿ was dated 11-1-17 to Judge Alonso, et. al. (as well as to you same also). The documents I sent you via my 11-16-17, please, feel free to put in the record, use, utilize, any way you deem appropriate ¿ however you see fit -- I'll sign any release(s) necessary, This is no time for shyness or privacy as I gave that up a long time ago being wrongfully convicted ¿ having sentenced to die for what I'm innocent of. I will be exonerated God willing ¿ Be compensated ¿ I will provide funds to you for what your doing. I will never be happy to just be free -- they took 26 years from me ¿ I cannot ever, nor will, forget what IDOC does ¿ to so many ¿ wrongfully ¿ needlessly. I enclose 2 recent articles from the Herald 6-30-17 ¿ 7-1-17. DNA testing is ongoing by ISP ¿ for March grid.

Ms. Bennett you will, or have, be/been getting mail from many (I hope ¿ God willing) @ Hill ¿ this is by my design, instruction ¿ doing, I will, single handedly inspire the population @ Hill + revolt (legally of course) against this moron of a 'dentist' strow + an inept figurehead of a 'warden'. This dentist has never dealt with inmates writing him + insisting for teeth cleanings ¿ dental care. The audacity, displayed IS only greater than his/their arrogance ¿ to put IN writing what they do ¿ have as to "not" providing care! I've done my best to provide you with all I can to give you / anything you can use. Please do so! He just denied (and lrd) to replace Dorian's two front teeth / READ this ¿ it is outrageous! I wrote everything for him. What they ignore is wrong -- you MUST do something now ¿ NOT wait. Please consider!

You cite, in your pg. 1 & par. 3, as to an injunction, etc "will only happen if we win at trial" & while I don't hav your knowledge or experience in civil & my love to (s) is (criminal & innocence, dna, appeals, etc, respectfully beg to differ -- because while the class as a whole suffering from lack of dental care & the injunc you cite, to be gotten upon winning @ trial or if a binding settlement embodied in a court order would ad. that, and be appropriate --- How can it be an inju can not be sought now -- when you have class memb suffering now & presently so if you sought injun now & within your/the suit -- I & class members get needed care now & by seeking these injunc (I believe you'd get) you'd bolster your being not only to win at a trial but corroborate now why you thereby pressuring IDOC & scumbags to that bargain to the for settlement & the judge would know it al see for himself, If you wont do this can you please me why? And, if you wont or dont why can't I member of the/this "class" in this suit seek a junction or "declatory judgement" -- I mean it makes n for each "purported" member of the class, I, to be multiple separate civil suits ms, Bennett, paying fi we dont have when there is a suit (yours from 2010) pending for this class to which can be the vehicle I ask you please address this & would you s to the plate? Honestly, I see no reason what I'm saying become reality -- theres nothing that cant be do one tries, And, while a class action filed -- you exhausted grievances for dental right, for named plaint or, How was class action for dental given/sought? I meticulously exhausted, documented grievances you c have advantage of, In reading the suit wheres the examples? you cite them for medical. why not add Name as a plaintoff & use all my grievances, & exhausted and pursue an injunction?

Note: in my 11-16-17 to you, at pg. 2/3, par1, I cited suit "Cooper" & here is the information for same I tained, FYI. & he's pursuing the money, you'd be an at the arguments I Have & had with guys who the # but I'm Not intimidated & upon common sens vailing dental care is more impr. than # & I c "Plata v. Calif." & if IDOC cant provide constitutionally medical & dental care or make welford do it (what then inmates should be released -- think about it. Hope y thallysavina was good -- it is Horrendous at this place-I US blind. -- Now lo

w/each
cited

ET. AL
ATTY(s)
media

TO: ACLU- CHGO. ATTN: CAMILLE BENNETT, SR. CSL/ATTY.
FROM: RON KLINER B77162, P.O.1700, Galesburg IL 61402
RE: My 11-22-17 to you, awaiting a response please; and
the 12-13-17 I rec'd from Warden Dorethy as her response,
("recent correspondence addressed to Gov. Rauner") cc'd to
Gov's Office of Citizens Action) Lippert V. Baldwin
dated: 12/17/17 & by "LEGAL MAIL" to you

Dear Ms. Bennett-

May this find you well. I haven't heard back from
you from my 11-22-17 & hope to hear from you please as it
is imperative. I & others in need of dental care -- NOW --
are strongly contemplating seeking an INJUNCTION NOW as it is
plainly obvious without it & based on the Warden here
(Dorethy) & the dentist & the absolute joke the grievance system
is here & in IDOC & evident by the 12-13-17 from the Warden
(in response to my writing the Gov. but "NOT" identifying as
to my / the 11-1-17 OR 9-21-17 ( DOC# 589 pg.1 or pg. 52)
& the atypical bullshit reasoning given (I enclose a copy Fyi)
without an injunction -- NOW -- I & others will suffer needlessly.

w/enclosures

I need to hear from you & NOT a boilerplate letter please.
I/we need action NOW & that can be easily & readily
done & not to wait for a settlement or trial.

If you read what I've written & all as in Doc.# 589
you can see how rediculous & full of baloney the Warden's
12-13-17 is. It makes me sick. Instead of doing what's
right let's continue the lies! Unbelievable. My grievance
(s) were NOT duplicates & I repeatedly availed myself of the
Nurse Sick Calls! You have it all too! Lastly, here is a
copy of Pulliam's ARB 12/4/17 response & I sent you copies of
all as to his emergency grievance. Sincerely

TO: ACLU-CHGO. ATTN: CAMILLE BENNETT, SR. CSL/ATTY.

FROM: RON KLINER #B77152 P.O. 1700, Galesburg IL 61402

RE: MY 11-22-17 to you, 12-17-17, unanswered by you, &
11-6-17; seeking an answer please as you represent
me as a member of the class in LIPPERT V. BaldWin
SEEKING you pursue an INJUNCTION NOW For dental care
@ Hill CC

dated: 1/8/18 + by "legal MAIL"

Copy.

Dear Ms. Bennett—

Hello + may this find you well. Can you get back
to me please & reference the above. I need to
hear from you + get my letters answered. And, not
a "boilerplate" obviously.

What a shame, Weishman, Sittul, other firms, CSL(s)
as attorney(s) for the class not ever writing back.
They shouldn't be on the suit then. I am strongly
contemplating writing the judge & seeking these firms
+ attorneys be taken off as class action counsel
+ objecting due to many reasons, inactions + NOT
communicating. It's wrong & to ignore NEEDING IN-
JUNCTION(S) NOW. This is a disgrace but they'd all
be there for sharing in the atty. fees I bet +
likely inflated @ that -- hours + $.

I saw DDS Strow @ Hill for like, literally, 2 mins.
+ here is the pass showing it. From the Bldg I'm at,
to the hosp, seeing DDS + back -- in 8 mins! AT
Hosp + back in 3 mins! Here's a copy of my letter
to this moron. I need Dental care NOW, can't get
it by seeing another dds, + he won't help me -- only
checked my jaw, neck, + looked in my mouth -- got 0
Ar utensils to remove calculus then tried + almost
broke my tooth but. The css? wouldn't accept my letter
& I had to send it via med box on unit. HELP.

✱ AND Still nothing! ✱        —Var/K—

w/enclosures

CC: CHIEF
Judge PLINZO
CSL(s)
ET AL.

(26)

THE
ROGER
BALDWIN
FOUNDATION
OF ACLU,
INC.

SUITE 600
150 NORTH MICHIGAN AVENUE
CHICAGO, IL 60601
T: 312-201-9740
F: 312-288-5225
WWW.ACLU-IL.ORG



**ROGER BALDWIN FOUNDATION
of ACLU OF ILLINOIS**

November 17, 2017



*Via US Mail*

Ronald Kliner, #B77152
Hill Correctional Center
P.O. Box 1700
Galesburg, IL 61401

Dear Mr. Kliner,

We received the copy of your letter dated October 17, 2017 and sent to Judge Alonso and Magistrate Judge Martin concerning the *Lippert* case. (This letter is a two-page document and does not appear to be part of the 54-page document you also recently sent to the court, which has been filed as Dkt. 589 in the *Lippert* court record.) We also received a letter dated October 11, 2017 from you concerning the same issues. We are sorry to read of the abysmal dental care at Hill CC and grateful for the information you provide.

In the copy of your October 17 letter we received, the right hand margin is cut off and some words are missing. However, it appears that you are requesting the court to direct us to "pursue an injunction to get the care needed for me and others." Please know that an injunction to improve medical and dental care in IDOC is exactly what we are seeking in the *Lippert* case. However, you should also know two other things.

First, *Lippert* is still in active litigation. The court has given us a trial date in September 2018. Currently, we are working to collect the remaining documents and information we need to make our case at trial. An injunction to improve medical and dental care in IDOC will only happen if we win at trial, or if we reach a binding settlement with IDOC which is embodied in a court order.

If we succeed in obtaining an injunction or binding settlement to improve the system, we will push as hard as we can to make the changes happen fast; however, inevitably, change will take time. In other words, nothing is going to happen immediately, even if we succeed.

Also, the changes we will be asking for in IDOC medical and dental care are changes to the overall system, along the lines described in Dr. Shansky's report, with which you are apparently familiar. Although these changes should address the problems you currently complain of at Hill CC, we cannot assure that any particular class member's problems will be solved, or fully solved, by these system-wide changes.

To: ACLU / ROGER BALDWIN FOUNDATION   ATTN: CAMILLE E. Bennett, ATTY(S)
BENJAMIN S. WOLF
LINDSAY S. MILLER

@ 150 N. MICHIGAN AV. ST. 600, CHG. IL. 60601   COPY

FROM: RON KLINER, #B17132, P.O. 1700, Galesburg IL 61402

p.1/3

sent by two (2) 9x12 Brn envlps

RE: Your/an "unsigned" WITH NO NAME (only 'intake dept')
dated 11-3-17 to my letter(s) to Camille Bennett & information
SENT, please, for the love of GOD, decency & fairness can
I get a "real" response with a NAME & maybe GOD-willing
some genuine, sincerity As you represent # ME as a
member of the 'class' in the Lippert (and the rest
of US suffering like animals @ HILL CC / IDOC) 10 CV 4603,
right, purportedly so + NOT JUST 'saying' class

dated: 11/16/17 & by "legal mail"                    (28)

Dear Camille, Benjamin & Lindsay -
Hello + got the 'intake response' to what I've written
to you & the problem with "boilerplates" is they are
so impersonal + especially when I wrote you, and
the B-plate is inaccurate in what it says, cause I
clearly cited, pg. 1 bottom, (highlighted) & pg. 2 top
'I am not interested in getting money - I want to get
the dental care I & others need...' (copy enclosed
FYI) Your b-plate is as if I wanted money damages
while I didn't say that ) (copy enclosed just 1s/1/2)
It says your seeking only declaratory & injunctive
relief for class members. I'm asking, you as to -
declaratory true for injunctive relief & why not a suit
(if you) within 10 CV 4603? For me & others? AND
NOT only broad sweeping 'agreements' years later
with 'nary a fix'! ? That will save - with you
I & others SUFFER - surely you can't say so some-
thing, NOW -- & support your case too -- if you wanted to
+ NOT be IN " regret that we cannot be of further assistance"

p 2|3 dated 11-16-17   ACLU / Kliner   (28)

So, my letter, again to you, with hope, prayer & plea
you'll do so, not be in regret & ACT!

   What is going on & at Hill Corr. Ctr. is so
outrageous in a recently filed "civil suit" (for money
damages) "Cooper" as plaintiff for dental care &in central
Dist. the Federal Judge told the Att'y Gen Don't
BOTHER to file a motion to dismiss because there's too
many complaints at Hill + regarding dental -- file
an answer! CAN you get me / this "order"? I know
Cooper's will try a get a "heavy" or it

   I am enclosing to you the following documents,
For your use "AND" "with hope, within the "class action +
as I'm a "member" of it you'll seek "injunctive relief"
for me + others especially with exhausted grievances
& documentation supporting same + all exhibits cited
there to I within said grievances & appeals, etc. reading
available, I have put this all together ridiculously
+ to document what I'm saying. How can you NOT
Help me + others seek no money dem. get sought,
the suit filed + ongoing?

   Please find: (Note: I also wrote you 11-1-17 + the Fed.
Judge Alonso (+ others) + cited therein seeking "dental care")
1. copy my 9-24-17 to you, ACLU. "seek no money"
2. 12-20-16 HSVP Linda/PT's memo @ Hill CC
   "dentist (straw) is fully capable of providing teeth cleaning"
3. IDOC AD 4.03.102 w/ Attachment A
4. Letter Gov. Rauner (ignored) 9-28-17
5.   "   Wexford V.P.        9-26-17
6. grievance 2-28-17 #17-0957; Review 3-2-17; PR + trustee Dr. Lg.;
   letter R-4-17 as b.r.; 2-28-17 NSC APR DDS; 3-10-17 griev memo
7. 5-13-17 grievance; APR 7-8-17; 5-16-17 NSC res 5-18 2,gs;
   grievance memo 5-28-17
8. 9-10-17 grievance res; APR Alonzo 9-18-3e?; memo 9-9-17
9. 9-22-17 grievance 3gs; Review 10-3-17 9-20-37?; 9-8-17 NSC DDS;

p5/3    dated 11-1-17   Acc0 / Kliner    (28)

9 cont'd: AuB 10/23/17 ; *++61 Memo ; 8 30 01 Grievance
(Escalas "appeal rebut") ; 3/00-17 Grievance Memo; Rec'd 10-2-17
2kg straw  Griev. Response ; my 10-3-17 9pg. response with
"Appendicum" - 4pgs ;

10.  9-26-17 to warden Stephanie writing A/w(s) williams
+ A/g(laughter

11. ID'PR w/ ccc straw ; w/5/17 to IDFPR INV.
Stockstill ; ID'PR's 10-12-17 #2017-13578 ; the G-23/17
IDFPR complaint 3-95

12. letter to Judge Alonso, + sent to you + all parties
(Alan Mills/Uptown - was sent - copied by them  Rec'd)

13. letter to Judge Alonso Dated w/13/17 + w/copy Rec'd
from him

14. Makini (pts #848998 letter (5) @ to DOS Straw @ hih ;
Oliver Crawford # 888947 ; Dar. Sims #M30126 &
10/26/17 pass to DOS ; Israel Ruiz, NOS 917 with
Dental notes "un needed/ transfer" ; J. Smith #R28075
@ to DOS + pass w/26/17; Ray Chambers S 08996 ; Luis Rey
# Y10842 (2pg.) + w/26/17 pass

15. Kliner  8-31-17  copies dental records (+ printed FN)
with all due respect, it took me great time,
expense + effort to compile, do, get all this I
have met, ... to I can't think of a more
solid reason for my family "class action" suit,
pleading w/you to help + Do something that benefit
of I + states relation of you class. There I do so.
Please do not send + both these letter + copy + hear
from you at your convenience as I have time/loss +
I have / DDL Snow/Pain meds, Hgbs/Hep/... Prostate/...
I sent no money Damages, just begging/pleading help Ϙ    Ron Kliner



**ROGER BALDWIN FOUNDATION**
**of ACLU, INC.**

November 3, 2017

Ron Kliner #B77152
Hill Correctional Center
P.O. Box 1700
Galesburg, IL 61402



Dear Mr. Kliner:

Thank you for contacting the American Civil Liberties Union of Illinois. We received your letter seeking information about the *Lippert* class action lawsuit. The *Lippert* class was certified under Federal Rule of Civil Procedure 23(b)(2), and therefore seeks only declaratory and injunctive relief for class members. This means that the case is seeking improvements in medical and dental care in the Illinois Department of Corrections – changes to the system – and not money damages for the members of the class.

If you are currently a prisoner in an IDOC facility with a serious medical or dental need, you are automatically a member of the *Lippert* class. However, since the lawsuit does not seek money damages for past injury on behalf of the class members, it does not prevent individuals who are *Lippert* class members from pursuing their own lawsuits seeking damages for inadequate medical or dental care received in IDOC prisons. Most important, if you want money damages for injury suffered as a result of inadequate medical or dental care in IDOC, you must pursue that case independently of *Lippert*.

We hope this information is helpful. We regret that we cannot be of further assistance.

Sincerely,

The Intake Department

To: ACLU - 180 N. Michigan Ave., Chicago IL 60601
From: Ron Kliner B77152 PO 1700, Galesburg IL 61402
RE: Seeking information & your assistance on my behalf
and as well many others similarly situated

dated: 9/24/19 + sent "legal mail"

Dear ACLU / Chicago / legal — (30)    Copy.

Hello & may this find you all well & in the
work you do + are for so many who are helpless,
indigent, poor & incarcerated (as I am wrongfully con-
victed).

Enclosed please find a copy of an 8-31-17 I
rec'd from Sigtarin + Shain in response to
my 4/6-17 to them + note they are citing
your currently pursuing a putative class action
against IDOC + dental care. To say I/we
need your help is an understatement.

I ask, please, that we kindly apprise
me of what your doing in this regard & that you've
filed thus? I am yet a copy of your suit?
I have exhausted grievances, many, as to medical,
dental, mental health + much more + would
gladly share all with you + for your use. I
seek no money only that proper, real, care
be provided which is not — It is a disgrace &
the dentist @ HillCC, neither staff with clean
new, treat catering/favoring years, pulls teeth, gum
truths, bleeding, pain, infection, my rights etc. me,
crooked, dental health issues, etc. me, etc., I +
others desperately need your help

FROM: RON KLINER, B77152, P.O. 1700, Galesburg IL 61402

RE: DENTAL CARE CRISIS @ Hill CC / IDOC, FOR ME & ALL
INMATES, COMPLETE ABROGATION & DERELICTION BY DDS
WALLACE FRANCIS STROW, JR, TO PERFORM DENTAL CARE,
SEEKING YOUR HELP <u>IN WHATEVER CAPACITY YOU DEEM</u>
Appropriate – <u>PLEASE RESPOND</u> -- METICULOUS DOCUMENTED AND
FULLY EXHAUSTED GRIEVANCES! Use WHAT I Have iN your suit!

DATED:

(31)

I have been wrongfully convicted for almost 26 years and
have been incarcerated at Pontiac on deathrow & Stateville &
while pursuing my innocence & exoneration have made every effort
to try & maintain to keep my health & get dental care for:
1) APTHOUS stomatitis/CHRONIC  2) plaave/calculus  3) bleeding gums
4) MOUTHguard for temporalesis  5) periodontal disease  6) gingivitis
and dental paste, orabase, lidocaine, soft toothbrush, plaave rinse
Not sold oN commissaries & needing "non-formulary" (per Wexford K)
prescriptions, and more --- like <u>NO</u> teeth cleanings!
AND <u>Not</u> until arriving @ Hill CC 11-11-16 did I ever encounter or
experience the utmost arrogance, omnipotence, resistance, contempt
to HeLP me for my dental needs, what I need done, and
to be given & continued to be evident by my dental records,
than due to Dr. Wallace Francis Strow, JR, and his dental
assistant RobiN Gillam. It is remarkable to say the least
& lengths Strow will go to so as to <u>NOT</u> provide dental
care & simply because he doesn't want to, can & I
have Nowhere else to go & am suffering needlessly
because of it & will NOT be able to ensure any minimum
level of care & for my long-term dental future.

I Need your help, the inmates @ Hill CC Need your help
& iN whatever way you deem appropriate by iNjunction, law-
suit & so dental care needed be provided, please!

p/p2

I am not interested in getting money -- I want to get the dental care I + others need + obviously teeth cleanings Strow refuses to do. My gums bleed, there is calculus + plaave buildup -- He wont remove it. He wont prescribe perondontax tootupaste, I Have "apthous stomatis" + it Hurts + is painful to eat + I get outbreaks + He refuses to give me dental paste, orabase, or lidocaine -- he wont issue soft toothbrush as I Have abrasion. He refuses to Re-issue a mouthguard as I Had one + orange crush took it 9-7-17. He wont treat periodontal + gingivitis.

He circumvents the IDOC's dental AiD. 04.03.102

When I got Here he stuck his finger in my mouth + said no mouth cancer, your good. He saw a large tooth Dr. Mitchell fixed + saved when at STA + remarked - who did that? I told him + his dental asst. + "we don't do that here". I'd of lost the tooth. We don't clean teeth here, not mandated! If you don't help I + others are screwed + this (dentist) will prevail + 100's will suffer + long after He is gone because if we don't get the care needed things will get worse. I fear if I need a filling + need Help. I've wrote Wardens, Governor, wexford, grievances --multiple, documented + no one cares!

I wrote a grievance, in 2001, as to Sensodyne tooth paste + is not given due to not in a clear container. So, when I wrote my Feb. 2017 grievance, @ Hill, strow cited it was a "duplicate" to the 2001! And wrote in my dental records I'm a "multiple griever" + "complainer" -- in doing so + citing Duplicate, He, Counselors, IDOC/ARB All ignored addressing Substance AND DENTAL NEEDS/CARE + rubberstamped what He Did. my Bleeding gums, plaque, canker sores -- are NOT Duplicates except cited in my dental records strow ignores!

AND, strow refers those, like me, who have the audacity to file grievances + pursue dental care, to the psychiatrist! I'm not kidding! AND, mental Healthy as malingering + Hypochondrialis! This man should not be the dentist at an IDOC facility! Please -- I'd cooperate, get others, provide all I Have to you. Please Help me + However you see fit. Use my documentation in your class action I beg of you! Sincerly Ron Johnes B77152

write BACK please!

(left margin, rotated) P.S. I'm also Hypothyroid + Have the outside endocrinologist + HAD shoulder surgery + why I'D get the physical/cat surgery + not grievances due to lack of care + physical/cat therapy was needed/denying many others + my "Followup" @ Hill is a joke too!

(circled) 31



**UPTOWN PEOPLE'S LAW CENTER**
4413 NORTH SHERIDAN • CHICAGO, IL 60640
PHONE: 773.769.1411 • FAX: 773.769.2224

November 8, 2017

PRIVILEGED LEGAL CORRESPONDENCE

Dear Friend;

We would like to thank you for the material and/or information that you have shared we us. We are always searching for information and material about what you are experiencing and enduring in Illinois Department of Corrections. The more material that we have the better we can grasp and understand the problems you face daily and put together the facts about what is really happening at the Institution you are held at. Again we thank you for the information.

Sincerely yours;
Brian Nelson
Prisoner's Rights Coordinator
UPTOWN PEOPLE'S LAW CENTER

ALAN MILLS, ATTY.

To: UPLC  Attn: BRIAN NELSON, Prisoner's Right Coordinator
4413 N. Sheridan, CHG IL 60640

FROM: RON KLINER B17152 P.O. 1700 Galesburg IL 61402

RE: YOUR 11-8-17 to WHAT I SENT YOU 10-29-17 from
your 10-18-17 (dated 10-24-17), seeking clarification
please!

dated 11/16/17 & by "legal mail"    (33)    COPY

Dear Mr. Mills & Mr. Nelson—

Hello & trying to follow up & get an understanding
as you sent me back all I compiled, as per your
10-18-17 to me from what I wrote you initially, I'm
confused --- you copied it all, didn't + that's why you
returned it?

Your one of the firm(s) / atty(s) in + on the
Lippert v. Baldwin + I'd sought to get your
response to my questions / inquiry as to "injunctive relief"
being sought within the "class" action by you / atty(s) ET
AL. (I've wrote them all FYI.) as I'm a member of it + in
need of dental care (and others / many @ IYC) or,
"declatory judgement"? It is a valid question + can you
tell me why not? OR, it's inappropriate why? OR,
other recourse? WHAT? Can my claim seek it as a
member of the "class" + within the already filled
suit? I attach a copy of your 10/18/17 + with
my (messy) writing + points / inquiries, etc. FYI +
can you "respond" + not by boilerplate, please? Also my
P.S. sought info on "censorship" issue + does you'd
"scanned" etc. [illegible] + endorse [illegible] +
p.I. issues (with medical [illegible] ). Don't want I
sent you to used in support of Lippert / so appeal with
other M'gys (by you) on it? please get back
                        to me & thanks  —Ron Kl—

[left margin notes:] + enclosure your 10-18-17 sent 10/24/17 w/my notes.

United States DISTrICT COURT
Northern District EASTERN COURT

IN THE ~~CIRCUIT COURT OF THE~~ _____ ~~JUDICIAL CIRCUIT~~

OF ~~COUNTY,~~ ILLINOIS

Lippert, Rice, Martin, et.al. class,
~~Plaintiff/Petitioner~~ Plaintiffs

Vs.

Baldwin, Schicker, Rauner, et.al.

Defendant/Respondent

CASE No. 10 CV 4603

JUDGE Jorge L. Alonso

PROOF/CERTIFICATE OF SERVICE

TO Gov. Bruce Rauner / State of Illinois
207 State Capitol
Springfield IL. 62706

Louis Shicker
TO: Dir. Baldwin, IDOC / Dr. ARThur FuNK
P.O. Bx 19277, Springfied IL. 62794

1. Warden/CAO Stephanie Dorethy P.O.Bx 1700, Galesburg IL 61402
2. JOHN M. Froehling V.P. & CFO Wexford 501 Holiday Dr. Pittsbursh P.A. 15220
3. Camille Bennett, ATTY, ACLU 180 N. Michigan Av. ste 2300 Chg 60601
4. Alan Mills ATTY, Uptown Peoples Law CtR 4413 N. Sheridan, Chg IL 60640
5. Harold Hirshman ATTY, Dentons US LLP 233 S. Wacker Dr. ste 5900, Chg, IL 60606
6. JASON Stiehl / Ryan Williams, ATTY (5), Akerman LLP, 71 S. Wacker Dr, 46th Fl. Chg. 60606
7.

PLEASE TAKE NOTICE that on **3-1**, 20 **18**, I placed the attached or enclosed documents **as a
member of the "class" IN Lippert v. Baldwin, et al. and IN**
the institutional mail at **the Hill / IDOC** Correctional Center, properly addressed to the parties listed above for 1-24-18
mailing through the United States Postal Service, legal mail one original copy of the ^letter
to Judge Alonso and 33 Exhibits for Placement W/ + with Supplementing
DOCUMENT #589 page ID#(S) 9775-9780
(filed 11-13-17) (54 pgs); and 1 copy to
each of the above named parties
there to.

/s/ _(signature)_
Name RON KLINER
IDOC #: B77152
Address: P.O. BOX 1700
Galesburg IL
61402

~~Subscribed and sworn to before me this ___ day of _____, 20 ___.~~

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I
declare, under penalty of perjury, that I am a named
party in the above action, that I have read the above
document(s) & letter to Judge ALONSO, & that the information
contained therein is true & correct to the best of my
knowledge, belief + recollection & as a
"member" of the class action Lippert v. Baldwin,
et al.

Notary Public

Ron Kliner
B-77152
Hill Correctional Center
P.O. Box 1700
Galesburg IL. 61401

1A55



03/05/2018-103

RECEIVED

MAR 06 2018

JUDGE JORGE LUIS ALONSO
United States District Court

LEGAL

SENT: 2/1/18

MAIL

BY "UPS" WITH
TRACKING #

ATTN
TO:
HONORABLE
Judge Jorge L. Alonso
@ 219 S. Dearborn ST.
Normern District EASTERN COURT
CHG. IL. 60604



**UPS Ground**

1Z 645 153 03 1012 316 5
TRACKING NUMBER



LEGAR

MALL

219 S DEARBORN ST
CHICAGO IL 60604

P: RED ____ S: BEMER    I: 319

336 — RDL    3165

UPS GROUND

TRACKING #: 1Z 645 153 03 1012 3165

IL 606 9 — 04

(420) 60604-0000

RECEIVED

MAR 06 2018

JUDGE JORGE LUIS ALONSO
United States District Court