UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DON LIPPERT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 10 C 4603 |
| v. | ) |
| | ) Magistrate Judge Daniel G. Martin |
| JOHN BALDWIN, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Kenneth Burks, the plaintiff in *Burks v. Soto*, Case No. 15 C 00055, seeks to intervene in this case to modify Paragraph 1(b) of the Agreed Order Appointing Expert in this matter. (Docs. 244, 591). Plaintiffs and Defendants oppose the motion. (Docs. 601, 603). For the following reasons, Mr. Burks' motion (doc. 591) is granted to the extent he seeks to intervene and denied to the extent he seeks to modify Paragraph 1(b) of the Agreed Order Appointing Expert.

## STATEMENT

This is a class action on behalf of all prisoners in the custody of the Illinois Department of Corrections with serious medical and dental needs. Plaintiffs seek declaratory and injunctive relief to "force the State Defendants to fix a healthcare system which daily puts the Plaintiffs and class members at risk of pain, injury, and death." (Doc. 449 at 1). On December 19, 2013, in order to "assist the Court in determining whether the Illinois Department of Corrections ("IDOC") is providing health care services to the offenders in its custody that meet the minimum constitutional standards of adequacy," the district court entered the Agreed Order Appointing Expert, appointing Dr. Ronald M. Shansky as an expert in this case under Federal Rule of Evidence 706 (hereafter, the "Rule 706 Order"). [1] (Doc. 244 at 1).

---

[1] While Burks refers to the Agreed Order Appointing Expert (doc. 244) as a "protective order," that order is not a protective order. Rather, it is an order entered under Federal Rule of Evidence 706.

The Rule 706 Order provides certain restrictions on Dr. Shansky and his team as to disclosure of materials and information acquired in the course of their investigation of IDOC and testimony in cases other than this case. As to the scope of Dr. Shansky's duties, Paragraph 1(b) of the Rule 706 Order states that "[t]he Expert, his consultants and assistants shall not provide opinions and/or testimony in unrelated cases based on knowledge and/or information gained in the course of performing their services in this matter." (Doc. 244 at 2). Regarding documents, Paragraph 6 of the Rule 706 Order provides:

> 6a. The Expert and his consultants and assistants, and counsel for any party, shall maintain the confidentiality of all material obtained and reviewed pursuant to this Order, as if all material was marked "Attorneys Eyes Only" as set forth in the Protective Order entered by this Court on April 11, 2012.
>
> 6b. All drafts of and comments to any drafts of the Expert's Reports required by or produced pursuant to this Order and/or future Court Orders shall be treated as "Attorneys Eyes Only" material under the April 11, 2012, Protective Order.

*Id.* at 5. Dr. Shansky delivered the Final Report of the Court Appointed Expert ("Lippert Report") to the parties in December 2014. Plaintiffs' redacted version of the Final Report was filed on May 19, 2015. (Doc. 339).

Mr. Burks filed his first motion to intervene in this case in September 2017 seeking documents that Mr. Burks had attempted to subpoena in May 2017 from Dr. Shansky.[2] Mr. Burks' subpoena sought from Dr. Shansky documents and information that comprise the basis for certain findings and opinions in the Lippert Report. In November 2017, Plaintiffs' counsel informed Mr. Burks' counsel that Dr. Shansky had disposed of any potentially responsive documents to Mr. Burks' subpoena in October 2016 when Dr. Shansky moved from Illinois to Texas, long before Dr. Shansky received the subpoena from Mr. Burks. The parties and Mr. Burks agreed that Mr. Burks' motion to intervene to compel production of Lippert Report documents was moot at that point, and the Court denied the motion. (Doc. 590).

---

[2] Dr. Shansky has not been retained as an expert by any party in the *Burks* case.

Mr. Burks then filed the present motion seeking to intervene and modify Subparagraph 1(b) of the Rule 706 Order to allow Shansky to appear at a deposition in Mr. Burks' case related to "the basis of his opinions regarding 1) deficiencies in medical record keeping and 2) deficiencies in the offsite referral process for medical treatment of IDOC prisoners." (Doc. 591 at 4). Mr. Burks states that his Section 1983 claim against Wexford "is based in–part upon the allegation that he has been intentionally denied adequate orthopedic treatment, including prescribed orthopedic surgery, for left-hand fractures he sustained on July 17, 2014, due to a written or unwritten widespread policy and practice of Wexford to deny necessary offsite referrals for IDOC prisoners." *Id.* at 3. Mr. Burks claims that deposing Dr. Shansky is "now critically important" because the disposal of the underlying documents that comprise Dr. Shansky's opinions in the Lippert Report "has created a situation where his testimony is likely the only readily available source of admissible evidence to explain the basis [of] his opinions." *Id.* at 2.[3]

## DISCUSSION

**A.  Permissive Intervention**

Mr. Burks seeks permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) in order to seek modification of Paragraph 1(b) the Rule 706 Order. Rule 24(b)(1)(B) allows for permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In arguing that he has a claim that shares a common question of law or fact with the main action, Mr. Burks asserts that "[a]ny testimony regarding Dr. Shansky's opinions in the Lippert Report would likely be relevant to Mr. Burks' allegation that Wexford intentionally denied Mr. Burks' prescribed orthopedic surgery pursuant to a written or unwritten widespread policy or practice because a *public portion of court documents in this case, regarding the Lippert Report*, states

---

[3] The Court disagrees with Mr. Burks' assertion. The originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim.

in-part the following: 1) Wexford fails to maintain organized medical records for IDOC prisoners; and 2) IDOC prisoners in need of offsite medical treatment that the prison cannot provide have access to the offsite treatment 'endlessly delayed or flat-out denied.'" (Doc. 591 at 4) (emphasis in original).

In response, the parties point out the factual and legal differences between the *Burks* case and the *Lippert* case. Defendants emphasize that while Mr. Burks' lawsuit is primarily based upon allegations that occurred at Western Illinois Correctional Center ("Western"), Western is not one of the eight (8) facilities that Dr. Shansky and his team visited in connection with preparing the Lippert Report. (Doc. 603 at 9). Defendants also highlight that there are no common defendants between the *Burks* case and the *Lippert* case. *Id.* As to the law, Plaintiffs stress that the *Burks* claims are not the same as the *Lippert* claims, as Mr. Burks alleges that he was injured in the past by these prison conditions and seeks money damages for these injuries, and the *Lippert* class asserts that the existence of these prison conditions puts class members at unreasonable risk of future harm and seeks injunctive relief to remedy these conditions. (Doc. 601 at 5).

The Seventh Circuit has held that the language of Rule 24(b)(1)(B) "is broad enough to encompass a third-party challenge to a protective order even though it is not a neat fit: The 'interest' being asserted by such an intervenor is not really a 'claim' or 'defense.'" *Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009); *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir. 1994) (recognizing that "intervention is the procedurally appropriate course for third-party challenges to protective orders."). "[C]ourts have been willing to adopt generous interpretations of Rule 24(b) because of the need for 'an effective mechanism for third-party claims of access to information generated through judicial proceedings.'" *E.E.O.C v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998). *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) (noting "the Supreme Court's admonition that [courts] should avoid rigid construction of Rule 24."). "[E]very court of appeals to have considered the matter has come to

4

the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders." *Jessup*, 227 F.3d at 997.

Also, where a nonparty seeks to intervene for the sole purpose of gaining access to documents subject to a protective order "no particularly strong nexus of fact or law need exist between the two suits." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (*cited in Jessup*, 227 F.3d at 997). A requirement that the intervenor's claim involve the same legal theory is not necessary "when intervenors are not becoming parties to the litigation. There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) (*quoted in Jessup*, 227 F.3d at 997). The Third Circuit has gone so far as to hold that any party challenging a confidentiality order "meet[s] the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action." *Pansy v. Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) (*noted in Jessup*, 227 F.3d at 997).

Like a third-party challenge to a protective order, Mr. Burks' challenge to Paragraph 1(b) of the Rule 706 Order lacks a clear fit with the literal terms of Rule 24(b). Mr. Burks does not seek to resolve an issue on the merits that is in common with the claims or defenses of the parties. Instead, Mr. Burks seeks to intervene for the sole purpose of modifying the Rule 706 Order to permit him to seek to depose Dr. Shansky regarding his completed report on the topics of IDOC medical record keeping and offsite referrals for use in the *Burks* case. Mr. Burks' interest in modifying the Rule 706 Order to permit him to seek to depose Dr. Shansky in the Burks case is not a claim or defense to be asserted in this case.

Nevertheless, similar to permissive intervention for the purpose of challenging a confidentiality order, the Court cannot find that permitting intervention in this case for the limited purpose of deciding the modification issue "impermissibly stretches the wording of the Rule." *Jessup*, 227 F.3d at 998. Mr. Burks asserts an interest directly related to this litigation. Subject

5

to Federal Rule of Civil Procedure 45(d)(3)(B)(ii), Mr. Burks has an interest in seeking to depose Dr. Shansky about his expert work in this case in the *Burks* case as there is no federal privilege against compelled expert testimony. *Kaufman v. Edelstein*, 539 F.2d 811, 818 (2d Cir. 1990).[4] The Rule 706 Order implicates Mr. Burks' right to seek to depose Dr. Shansky in the *Burks* case, and he should be allowed to intervene for the limited purpose of challenging the Rule 706 Order's prohibition on testimony in unrelated cases. *Jessup*, 227 F.3d at 998 (noting in a challenge to a closure order that the "public and the press must have 'an adequate opportunity, under the circumstances of the case, to challenge [the] limitation by stating to the court the reasons why the material should remain subject to public scrutiny.'"). Mr. Burks' interest in seeking to depose Dr. Shansky in the *Burks* case therefore provides the "necessary legal predicate for intervention." *Id*. Similarly, the parties' interest in prohibiting Dr. Shansky from providing testimony in an unrelated case based on the knowledge and information he gained during the course of performing his expert work in this matter is a sufficient question of law between the parties and Mr. Burks. *See Id.* at 998-99 (holding that the intervenor and the parties' different view of the matter of confidentiality of the settlement agreement is a "question of law . . . in common" between the parties and the intervenor). Given the courts' flexible construction of Rule 24(b), the Court finds that Mr. Burks' challenge to Paragraph 1(b) of the Rule 706 Order meets the requirement of Rule 24(b)(1)(B) that his claim have a question of law or fact in common with the main action.[5]

---

[4] A court's discretion in deciding whether to quash or modify a subpoena directed to an unretained expert should be informed by "the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and the degree to which the witness is able to show that he has been oppressed by having continually to testify. . . ." *Kaufman*, 539 F.2d at 822 (*cited in* 1991 Advisory Committee Notes to Fed. R. Civ. P. 45).

[5] Defendants also argue that Mr. Burks does not have standing to intervene pursuant to Rule 24. In the Seventh Circuit, there is no clear requirement that Article III standing must be established for permissive intervention in an ongoing case where an intervenor seeks to

Under Rule 24(b), courts should also consider whether permissive intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Mr. Burks argues that there will not be undue delay or prejudice to the adjudication of the original parties' rights because the Lippert Report is done and discovery is ongoing in this case. The parties' responses improperly focus on the delay and prejudice that would result if the Rule 706 Order is modified to allow Mr. Burks to seek to depose Dr. Shansky—not the delay and/or prejudice they would suffer because of intervention. (Docs. 601 at 5-6, 603 at 4-6). The delay or prejudice that will be caused by modifying Paragraph 1(b) of the Rule 706 Order is not the appropriate focus of the Court's inquiry under Rule 24(b)(3). The relevant inquiry focuses on whether intervention itself will cause undue delay or prejudice to the adjudication of the original parties' rights. Any delay or prejudice to the adjudication of the original parties' rights will be negligible as the purpose of intervention here is not to become a party in the action in order to litigate a claim or defense on the merits. Because Mr. Burks seeks to litigate only the issue of the modification of Paragraph 1(b) of the Rule 706 Order and not to intervene on the merits, the Court finds that permitting intervention will not unduly delay this case or prejudice the adjudication of the rights of the original parties. Accordingly, Mr. Burks meets the requirements for permissive intervention under Rule 24(b).

**B.      Modification of Paragraph 1(b) of the Rule 706 Order**

Having found that permissive intervention is permitted for the purpose of deciding the modification issue, the Court considers whether Paragraph 1(b) of the Rule 706 Order should be modified to allow Mr. Burks to seek to depose Dr. Shansky in the *Burks* case regarding the

---

challenge a court order. *Bond*, 585 F.3d at 1071 n. 7 (stating "we do not decide whether a permissive intervenor needs independent standing to intervene in a live controversy for the purpose of challenging a protective order."). In any event, Mr. Burks' right to seek to depose Dr. Shansky in the *Burks* case, subject to the requirements of Federal Rule of Civil Procedure 45(d)(3)(B)(ii), is enough to give him standing to challenge Paragraph 1(b) of the Rule 706 Order that prohibits Dr. Shansky's testimony in unrelated cases. *Id.* at 1074 (holding that the "general right of public access to judicial records is enough to give members of the public standing to attack a protective order that seals this information from public inspection.").

7

basis of his opinions pertaining to offsite referrals for specialized medical treatment and medical record keeping.

Federal Rule of Evidence 706 governs court-appointed expert witnesses.[6] The plain language of Rule 706 compels denial of Mr. Burks' request to modify Paragraph 1(b) the Rule 706 Order. By its terms, Rule 706(a) requires experts to expressly consent to act as a court-appointed expert witness pursuant to the terms provided by the court. Federal Rule of Evidence 706(a) provides:

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. *But the court may only appoint someone who consents to act.*

Fed. R. Evid. 706(a) (emphasis added). Rule 706(b) requires the court to "inform the expert of the expert's duties … in writing … or orally at a conference in which the parties have an opportunity to participate." Fed. R. Evid. 706(b).

In accordance with Rule 706(b), the district court included descriptions of the scope of Dr. Shansky's duties in its Rule 706 Order. (Doc. 244 at ¶¶ 1(a), 1(b)). The Rule 706 Order required Dr. Shansky to investigate the health care services provided by the IDOC with the exception of mental health services, and, "if systemic deficiencies in IDOC health care" were identified, to "propose solutions for consideration by the parties and the Court." *Id.* at ¶ 1(a). Dr. Shansky's proposed solutions (if any) were to be used to "form the bases for future

---

[6] Mr. Burks claims that as a "harmed private citizen and a Section 1983 litigant, [he] has a common law and First Amendment right [to] depose Dr. Shansky to assess the veracity of his opinions in the Lippert Report." (Doc. 591 at 4). Mr. Burks has not developed this argument in any meaningful way so the Court need not address it. *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (stating "[w]e need not address those arguments which are undeveloped."). In any case, a litigant's First Amendment rights do not include "the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965). As a litigant, Mr. Burks right to depose an unretained expert is subject to Federal Rule of Civil Procedure 45(d)(3)(B)(ii). Moreover, "the public has no constitutional, statutory (rule-based), or common law right of access to *unfiled* discovery." *Bond*, 585 F.3d at 1073. Mr. Burks is not even seeking access to unfiled discovery materials. The information Mr. Burks seeks does not exist at all as there has been no deposition of Dr. Shansky in this case.

negotiations between the parties in an effort to craft a final settlement of this matter, or, alternatively, may be offered into evidence in the trial of this matter." *Id.* The Order also prohibited Dr. Shansky from providing "opinions and/or testimony in unrelated cases based on knowledge and/or information gained in the course of performing [his] services in this matter." *Id.* at ¶ 1(b). Based on these terms, Dr. Shansky accepted the expert appointment in this case.

The Court agrees with the parties that the modification Mr. Burks seeks would retroactively undo the terms on which Dr. Shansky consented to perform his work. By the terms of the Rule 706 Order, Dr. Shansky is prohibited from providing the deposition testimony Mr. Burks seeks. Dr. Shansky would not have agreed to be appointed as an expert in this case if his expert duties exposed him to subpoenas for documents and/or testimony in individual health care cases against the IDOC and/or Wexford. (Doc. 601-1 at ¶ 6). In his declaration, Dr. Shansky states that he "would not have accepted the appointment in this case if I had believed that, in spite of the clear language of the Order, I could be subpoenaed for documents or testimony in the hundreds of individual health care cases against IDOC or its contractor, Wexford Health Services, Inc." *Id.* Dr. Shansky explains that without a prohibition on providing opinions and/or testimony in unrelated cases, in cases in which systemic inadequacies of a jail, prison, or larger correctional system are being investigated, his "work would become unmanageable and overwhelming." *Id.*

The statements in Dr. Shansky's declaration are sufficient to deny Mr. Burks' request to modify Paragraph 1(b) of the Rule 706 Order. Modifying Paragraph 1(b) to allow Mr. Burks to seek Dr. Shansky's testimony in the *Burks* case is in violation of Rule 706, which requires consent of Dr. Shansky concerning his expert duties. Dr. Shansky did not, and has not, consented to testify in the *Burks* case or any other case about his expert work in this case. Court-appointed experts have a right to rely on the plain language of Rule 706 and a court's definition of the scope of the expert's duties in agreeing to act as an expert in federal court. Modification of Paragraph 1(b) of the Rule 706 Order would prejudice that right in this case and

have potential repercussions outside this case if courts cannot find neutral experts because those experts will not consent to appointment. The failure of Dr. Shansky to consent to testify in the *Burks* case requires denial of Mr. Burks' modification request under Rule 706.

The plain language of subsection (b) of Rule 706 also supports the denial of Mr. Burks' request to modify the Rule 706 Order. As a non-party, Mr. Burks is not entitled to depose Dr. Shansky in the *Burks* case as to Dr. Shansky's expert work in this case. The language of Rule 706 makes clear that "any party" may depose the court-appointed expert and either "the court or any party" may call the court-appointed expert to testify. Fed. R. Evid 706(b)(2)-(3). The rule does not state that a non-party may depose the expert or call the expert to testify in another case. Rule 706(b) therefore prohibits a non-party from seeking to depose a court-appointed expert in an unrelated case. To conclude that Dr. Shansky should be allowed to be deposed by a non-party in an unrelated case would be contrary to the plain language of the rule, and this Court has no discretion to ignore the plain language of Rule 706.

In addition to the plain language of Rule 706, the purpose of the rule supports denying Mr. Burks' request to seek to depose Dr. Shansky in the *Burks* case. The purpose of Rule 706 is to appoint a neutral expert to assist the court or finder of fact in making an informed decision, not to assist a litigant in proving his case. "The policy goal of Rule 706 is to promote accurate factfinding," 29 Charles Alan Wright & Victor Gold, *Federal Practice and Procedure* § 6302 (2[d] ed. 2016), "by authorizing a court to appoint neutral expert witnesses where expert testimony can help the trier of fact understand evidence critical to accurately deciding a serious dispute." *Norwood v. Liping Zhang*, 2013 WL 5162202, at *2 (N.D. Ill. Sept. 13, 2013). Rule 706 is not used "to appoint an expert for a party's own benefit." *Turner v. Cox*, 569 Fed.Appx 463, 468 (7th Cir. 2014). The purpose of Rule 706 would not be served by allowing Mr. Burks to seek Dr. Shansky's deposition testimony in the *Burks* case. Mr. Burks seeks expert testimony from Dr. Shansky solely to aid in the presentation of his individual case for damages. The *Burks* court has not indicated that a neutral expert is required to assist the trier of fact in evaluating

conflicting evidence in that case. Accordingly, Mr. Burks' modification request is additionally denied as contrary to the policy behind Rule 706.

## CONCLUSION

For the reasons set forth above, Kenneth Burks' Motion to Intervene to Modify a Protective Order (DKT. 244) in this Case [591] is granted in part and denied in part. The motion is granted with respect to Mr. Burks' request to intervene for the limited purpose of challenging Paragraph 1(b) of the Rule 706 Order. The motion is denied as to his request to modify Paragraph 1(b) of the Rule 706 Order. Plaintiffs' request that Document 591 be stricken from the record and replaced with an entry with the contents as in Exhibit 4 attached to Document 601 is denied.

**E N T E R:**

*/s/ Daniel G. Martin*

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: March 9, 2018**