1                 **<u>TRANSCRIBED FROM DIGITAL RECORDING</u>**

2           IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS

3                EASTERN DIVISION

4   DON LIPPERT, et al.,             )   Docket No. 10 C 4603
                               )

5                  Plaintiffs,   )
                               )

6           vs.                  )
                               )

7   PARTHA GHOSH, et al.,           )   Chicago, Illinois
                               )   February 27, 2018

8                  Defendants.   )   9:56 o'clock a.m.

9           TRANSCRIPT OF PROCEEDINGS – STATUS HEARING
      BEFORE THE HONORABLE DANIEL G. MARTIN, MAGISTRATE JUDGE

10

11   APPEARANCES:

12

  For the Plaintiffs:      MS. CAMILLE E. BENNETT
13                      Roger Baldwin Foundation of ACLU, Inc.
                     150 N. Michigan Avenue, Suite 600

14                      Chicago, Illinois  60601

15   For the Defendants:     MR. MICHAEL C. STEPHENSON
                     Office of the Attorney General

16                      100 W. Randolph St., 13th Floor
                     Chicago, Illinois  60601

17

                     MS. KELLY PRESLEY
18                      Illinois Department of Corrections
                     100 W. Randolph St., 4th Floor

19                      Chicago, Illinois  60601

20   Transcriber:           MS. JOENE HANHARDT
                     Official Court Reporter

21                      219 S. Dearborn Street, Suite 1744-A
                     Chicago, Illinois  60604

22                      (312) 435-6874
           * * * * * * * * * * * * * * * * * *

23              PROCEEDINGS RECORDED BY
              DIGITAL RECORDING

24           TRANSCRIPT PRODUCED BY COMPUTER
     **\*\*\* PLEASE NOTIFY OF CORRECT SPEAKER IDENTIFICATION \*\*\***

25    **NOTE:  FAILURE TO STAND NEAR THE MICROPHONE MAKES PORTIONS
              UNINTELLIGIBLE AND INAUDIBLE**

```
 1              THE CLERK:  10 C 4603, Lippert vs. Ghosh.
 2              THE COURT:  All right.
 3              MS. BENNETT:  Good morning, your Honor, Camille
 4   Bennett -- B-e-n-n-e-t-t -- for the plaintiffs.
 5              THE COURT:  Ms. Bennett, good morning to you.
 6              MR. STEPHENSON:  Good morning, Judge Mike Stephenson
 7   -- S-t-e-p-h-e-n-s-o-n -- on behalf of the State defendants.
 8              THE COURT:  Mr. Stephenson, good morning to you.
 9              MS. PRESLEY:  Good morning, your Honor, Kelly Presley
10   -- P-e-r -- P-r-e-s-l-e-y -- on behalf of IDOC.
11              THE COURT:  I thought we were going to have a whole
12   new team of lawyers in here.  What is the story?
13              MR. STEPHENSON:  We do, your Honor.  We have -- one of
14   our terms members is sitting here.  Another one is covering for
15   me.  So, we have assembled some new lawyers.
16              THE COURT:  Okay.
17              Well, we really have got to move on this case.  And I
18   have got my marching orders and you all are going to get yours,
19   too.  Okay?
20              Per Judge Alonso's August 15th, 2017, order, fact
21   discovery on the class claims closes on March 2nd, 2018.
22              Plaintiffs' Rule 26(a)(2) disclosures and reports
23   shall be served by March 2nd, 2018.
24              Judge Alonso has a status hearing set for March 7th,
25   2018, at 9:30.
```

1           All right.  Yesterday, the district court granted

2    Attorney Kevin Lovellette's motion for leave to withdraw as

3    counsel for the defense.

4           We have a lot of issues, but let's first deal with on

5    February 14th, the State defendants asserted for the first time

6    that their hard copy production update need not include

7    documents from the Illinois River and Hill facilities.

8           Plaintiffs disagreed.

9           I directed the parties to file position papers.

10          I received and reviewed the parties' position papers

11   regarding the issue of whether the State defendants' hard copy

12   production updates should include documents from the Illinois

13   River and Hill facilities.

14          I also reviewed the relevant portions of the docket

15   and listened to the audio recordings of the October 10th, 2017,

16   and November 21st, 2017, status hearings.

17          In short, I have found the defendants' position to be

18   untenable and I have overruled the defense objection.

19          I am prepared to issue the oral ruling at this time.

20          And should I or should we put this in printed form?

21          (No response.)

22          THE COURT:  I am going read it.  Okay.  Let's take a

23   breathe.

24          The State defendants claim in their position paper

25   that they operated under the impression that plaintiffs only

1   sought the hard copy production update for the six facilities

2   listed in plaintiffs' fifth request for production listed.

3          The State defendants' impression is incorrect.  The

4   record is abundantly clear that the parties agreed that the

5   State defendants would update their production of hard copy

6   documents from the original eight prisons, which includes the

7   Illinois River and Hill facilities.

8          In plaintiffs' counsel's e-mail to defense counsel

9   dated September 6th of 2017, plaintiffs' counsel indicated that

10  plaintiffs needed protection of the attached list of reports

11  and documents from fall 2015 forward for "All facilities, not

12  just the eight Shansky facilities or the six facilities to

13  which the fifth requests were forced to confine themselves, per

14  Judge Schenkier instructions."

15         "Absent the parties reaching fairly promptly some

16  agreement, now that the class is certified."

17         The eight Shansky facilities include the Illinois

18  River and Hill facilities.  It is my understanding that Judge

19  Schenkier did not permit the plaintiffs to pursue class-wide

20  discovery before the class was certified.

21         That restriction no longer applied after April 26th of

22  2017, when the district court granted plaintiffs' motion for

23  class certification.

24         The State defendants now contend in their position

25  paper that plaintiffs' September 6th, 2017, request for updated

1    hard copy documents as to all facilities was an improper new

2    request for documents that should have been included in a

3    formal Rule 34 request for documents.

4         On October 10th of 2017, counsel appeared for a status

5    hearing.  The State defendants' counsel reported that the

6    parties had agreed that the State defendants would use at least

7    the original eight prisons when updating their hard copy

8    documents kept at each separate prison location.

9         Again, the eight Shansky facilities include the

10   Illinois River and Hill facilities.

11        The State defendants did not state, as they do now,

12   that they would not produce updated hard copy documents from

13   Illinois River or Hill because it was a new request that should

14   be included in a formal Rule 34 request for documents.

15        The minute order from October 10th of 2017 confirms

16   the parties' agreement that the State defendants' update of

17   hard copy documents kept at separate prison locations would

18   include documents from the original eight prisons.

19        At the November 21st, 2017, status hearing, counsel

20   for the State defendants, again, asked to confirm that the

21   parties had agreed to use the original eight prisons for

22   purposes of the State defendants updating the hard copy

23   documents kept at separate prison locations.

24        The minute order from the November 21st, 2017, hearing

25   confirmed the parties' agreement that the State defendants

1    would update their hard copy document production with documents

2    from the original eight prisons.

3         The minute orders from the December 12th, 2017, and

4    January 18th, 2018, status hearings -- excuse me -- also

5    confirms that the State defendants were to produce hard copy

6    documents from the original eight prisons.

7         Given this record, the Court easily concludes that the

8    State defendants are obligated to produce updated hard copy

9    documents from the Illinois River and Hill facilities pursuant

10   to their agreement.

11        The State defendants have waived any argument that

12   plaintiffs' request for updated documents from Illinois River

13   and Hill should have been served in a formal Rule 34 request

14   for documents, by agreeing otherwise; and, then, waiting over

15   four months; and, after multiple production deadlines, to make

16   the current argument.

17        If the State defendants wanted to argue that

18   plaintiffs needed to serve a Rule 34 request for updated

19   documents from the Illinois River and Hill facilities, they

20   should not have raised that argument in September, 2017, in

21   response to plaintiffs' counsel September 6th, 2017, e-mail,

22   and should not have agreed in October, 2017, to produce those

23   documents without a formal Rule 34 request for documents.

24        It is too late now to raise that argument.  The State

25   defendants' objection to producing updated hard copy documents

1   from the Illinois River and Hill facilities is, therefore,

2   overruled.

3         Before filing their position paper, plaintiffs offered

4   the State defendants a chance to withdraw their position paper.

5         Because defendants did not withdraw their position

6   paper, plaintiffs indicate now that they intend to file a

7   motion for sanctions.

8         No motion is necessary.  The State defendants have

9   failed to produce updated hard copy documents from the Illinois

10   River and Hill facilities, in violation of their own agreement

11   to do so in October of 2017.

12         The State defendants' position paper fails to provide

13   a reasonable, legal or factual basis supporting their current

14   objection to producing updated hard copy documents from the

15   Illinois River and Hill facilities.

16         Under these circumstances, this Court agrees that some

17   sanction is appropriate.

18         For the State defendants' failure to provide any

19   reasonable, legal or factual justification supporting their

20   current objection to producing updated hard copy documents from

21   the Illinois River and Hill facilities, I am considering

22   recommending that the district court order the State defendants

23   to reimburse the plaintiffs for the reasonable attorneys' fees

24   incurred in filing their position paper.

25         I will first allow the State defendants an opportunity

1  to be heard; and, I will direct that the State defendants may

2  file its brief in opposition to sanctions by March 6th of 2018.

3          Let's now set a deadline for the State defendants to

4  produce the updated hard copy documents from the Illinois River

5  and Hill facilities.

6          State defendants, how quickly can you produce updated

7  hard copy documents from the Illinois River and Hill

8  facilities?

9          And unlike many, many, many statuses before, my man,

10  Mr. Stephenson, is in the hot seat now.  So, you have inherited

11  this position.

12          How quickly can you produce those updated hard copy

13  documents from the Illinois River and Hill facilities that are

14  long, long, long, long, long, long overdue?

15          MR. STEPHENSON:  Yes, Judge.  The State defendants

16  request four months in order to produce those documents.

17          THE COURT:  No, I don't think your opponent is going

18  to agree with that four months.  It was supposed to have been

19  produced more than four months ago.

20          Ms. Bennett, what is your position?

21          MS. BENNETT:  They should produce them by the end of

22  the week, Judge.  This has just gone on too long.

23          THE COURT:  Yes.  The whole thing --

24          MS. BENNETT:  We were forced yesterday to file a

25  motion in front of Judge Alonso asking for two more months to

1    complete the discovery that is already outstanding.

2              THE COURT:  Okay.

3              MS. BENNETT:  As your Honor has repeatedly said, this

4    is just going on too long.

5              THE COURT:  It really is.

6              MS. BENNETT:  And another thing about defendants'

7    position is that that agreement was for their benefit.  We

8    could have asked for hard copy documents for every one of the

9    27 facilities in the system, as we have class members in every

10   one of those facilities.  We were trying to help.  And for them

11   to repudiate it and, then, claim that that list -- which is a

12   perfectly clear list --

13             MR. STEPHENSON:  Your Honor has already issued an

14   order --

15             MS. BENNETT:  -- doesn't comply with Rule 34, is

16   ridiculous.

17             THE COURT:  Right.

18             MS. BENNETT:  It's -- it's -- offensive.

19             MR. STEPHENSON:  You have entered an order, Judge.

20             THE COURT:  Let's not talk over each other.  I will

21   let her speak; and, then, you can respond to this.

22             Go ahead, Ms. Bennett.

23             The plaintiffs' people need to be heard.

24             Go ahead.

25             (No response.)

1          THE COURT:  Are you done?

2          MS. BENNETT:  I am done, your Honor.

3          THE COURT:  Okay.

4          What were you going to say?

5          MR. STEPHENSON:  Your Honor, there was a fundamental

6     under- -- misunderstanding -- as to what "updated" meant.

7     There was no wrongful --

8          THE COURT:  You are digging yourself in deeper.  I

9     have referenced four specific issues that are very clear --

10    very clear -- Mr. Stephenson, that lend themselves to no

11    ambiguity as to what "updated hard copy documents" mean.  Okay?

12    Please.

13         You have 30 days to produce these or you are looking

14    at additional potential requests for sanctions.  Okay?

15         We have got to move on this case.  This has been going

16    on long enough and it has been one month after another of all

17    sound and fury signifying almost nothing.

18         (Brief pause.)

19         THE COURT:  We have to take a break.  We will get back

20    to it.

21         But we have dealt with the big issue here.  So, if the

22    parties can be seated, we will re-call the case.  We have got

23    to call somebody in a prison.

24         (Whereupon, the Court gave its attention to other

25     matters, after which the following further proceedings were

 1    had in open court, to wit:)

 2              THE CLERK:  10 C 4603, Lippert vs. Ghosh.

 3              MS. BENNETT:  Good morning, Judge, Camille Bennett --

 4    B-e-n-n-e-t-t -- for the plaintiffs, your Honor.

 5              THE COURT:  Ms. Bennett.

 6              MR. STEPHENSON:  Good morning, again, Judge, Mike

 7    Stephenson -- S-t-e-p-h-e-n-s-o-n -- on behalf of the State

 8    defendants.

 9              THE COURT:  Okay.

10              Mr. Stephenson, okay.

11              That line, for the State defendants to produce updated

12    hard copy documents from Illinois River and Hill facilities,

13    thirty days from today.

14              As to remaining documents on plaintiffs' updated list,

15    by 2-21-2018.

16              The State defendants were to produce additional

17    responsive documents or confirm by affidavit if no additional

18    responsive documents exist.

19              Was that done, Ms. Bennett?

20              MS. BENNETT:  Your Honor, the defendants contend that

21    they have done that.  We don't believe they have.

22              THE COURT:  Okay.  What does that mean:  "The

23    defendants contend they have done that.  We don't believe they

24    have"?  Help me out here.  I don't know how to interpret that.

25              MS. BENNETT:  Your Honor, we do not have the documents

1   on that list.

2           THE COURT:  So, you didn't receive it?

3           MS. BENNETT:  No.

4           THE COURT:  Okay.

5           Mr. Stephenson, can you shed some light here?

6           MS. BENNETT:  And we do not have additional

7   affidavits.

8           MR. STEPHENSON:  I think the confusion, your Honor, is

9   that during the meet and confer, there were some documents that

10  were produced.  They did not have the identity of the actual

11  facility.  And I think that created the confusion.

12          The documents, to my understanding, have been

13  produced, with the exception of Hill, Illinois River and the

14  NRC.  That was subject to the position papers.  Your Honor has

15  already entered a ruling on that.

16          THE COURT:  Okay.

17          MR. STEPHENSON:  The defense explained that they are

18  going to assist and we are going to reproduce those documents

19  with the proper identity of the facilities.  And that should

20  resolve that issue, your Honor.

21          THE COURT:  Ms. Bennett?

22          MS. BENNETT:  Your Honor, there are three categories

23  of documents at the end of that list, which were facility

24  specific.

25          Late on Friday evening, we got a production of one of

```
 1   those categories of documents, but two of them --

 2           THE COURT:  If you can refer me to a section of the

 3   list, we can make sure --

 4           MS. BENNETT:  I apologize.

 5           THE COURT:  -- because I have it here.

 6           MS. BENNETT:  I did not bring the list with me --

 7           THE COURT:  Well --

 8           MS. BENNETT:  -- this morning.

 9           THE COURT:  -- go ahead.

10           MS. BENNETT:  The bottom of the list --

11           (Brief pause.)

12           THE COURT:  Which list, though?  The bottom of the

13   list, Page 2, "Reports Generated By" --

14           MS. BENNETT:  The updated list.

15           THE COURT:  Yeah, I have got that.  That is here.

16           MS. BENNETT:  The bottom of Page 2.

17           MR. STEPHENSON:  Your Honor --

18           THE COURT:  You tell me on mine and we'll read it.

19           MS. BENNETT:  Okay.

20           B, C and D.

21           (Brief pause.)

22           THE COURT:  Okay.  I have circled those.

23           I have circled those specifically, B, C and D.  Okay?

24           "Reports generated by/for 0HS Fall Season of Fall 2015

25   forward.  OHS Quarterly Meeting Reports.  Regional Health
```

1    Services Coordinated Monthly Activity Reports and Year-End

2    Review Reports."

3          Okay.  So, what is going on with respect to this?

4          MR. STEPHENSON:  Yes, Judge.  We have produced the OHS

5    Quarterly Meeting Reports 3 and 4.  They might have a different

6    enumeration on your copy.  But the Regional Health Services

7    Coordinated Monthly Activity Reports and the Year-End Review

8    Reports, we are not entirely sure what those are.

9          Over time, due to the fact that we have health

10   coordinators that change over time, they call things

11   differently.  They re-label the documents.

12         So, if plaintiffs could assist and send a copy of that

13   document, I can then look at the document and perhaps we're

14   still able to use that document.  We may not.  Or maybe it has

15   a different title to it.

16         THE COURT:  Ms. Bennett, what is going on?

17         MS. BENNETT:  Your Honor, I will send them copies of

18   the documents we have, with the caveat that these were old

19   production documents.  But they are not going to have the name

20   they use on them now.

21         And we can't figure out, if they have changed the

22   name, what the new name is.  So, they are going to have to

23   undertake some effort.

24         THE COURT:  Yes.  That is incumbent upon the party in

25   possession of the documents.

1        If the name has changed and you know what it is, you

2   have got to produce whatever it is called now.

3        MR. STEPHENSON:  Absolutely, Judge.

4        And if we provide a copy to the current Medical

5   Director, he can then analyze that document and make a

6   determination whether they, in fact, still do that -- perform

7   these documents; or, if they do, do the documents, if it is

8   just called something different.

9        THE COURT:  However you do it, I want it done.

10        MR. STEPHENSON:  Yes, Judge.

11        THE COURT:  All right?

12        MR. STEPHENSON:  Your Honor, if the Court permits, I

13   do seek clarification on your Honor's most recent ruling on the

14   scope and time of the production from Illinois and -- Illinois

15   River and Hill Correctional Center.

16        THE COURT:  What do you mean?

17        MR. STEPHENSON:  In the lists that were sent to the

18   defendants, there was Illinois River and Hill Correctional

19   Center.  And I understand that your Honor has entered a ruling

20   that we need to produce those hard copy records.

21        In the list, the plaintiffs also identify NRC.  And I

22   was asking the Court to clarify its order, to see whether NRC

23   was also included in conjunction with Illinois River and Hill

24   Correctional Center in its production within thirty days.

25        THE COURT:  "NRC" stands for?

1    MR. STEPHENSON:  Northern Reception and Classification

2    Center, your Honor.

3    THE COURT:  Okay.

4    MR. STEPHENSON:  It is adjacent to Stateville

5    Correctional Center.  It is, in some part, a different

6    facility, though.

7    THE COURT:  Ms. Bennett?

8    MS. BENNETT:  Your Honor, Northern Reception Center

9    was one of the eight Shansky facilities.  It is the major

10   intake center for the Department of Corrections.

11   THE COURT:  Okay.  The order includes NRC.

12   All right.

13   MR. STEPHENSON:  The other clarification, if the Court

14   permits, it is just the timing on the documents.

15   Now, in the list that -- which, in the request to

16   produce, that -- were attached to plaintiffs' e-mails, there is

17   two separate lists.  There is one list that identifies dates as

18   2015 forward; and, then, for other documents, it says 2010

19   forward.

20   The second list, however, doesn't identify dates.  And

21   I was wondering if, perhaps, we could seek some clarification

22   on the dates?

23   THE COURT:  Ms. Bennett, clarify.

24   MS. BENNETT:  Your Honor, from 2015 forward will be

25   fine for everything.

1          THE COURT:  Okay.

2          2015 forward on everything -- the fall 2015 forward.

3          MR. STEPHENSON:  Thank you, Judge.

4          THE COURT:  Don't split hairs.  Okay?

5          By 2-15-2018, counsel for both sides and the IDOC reps

6     were to have met and conferred regarding Ms. Bennett's February

7     13th, 2018, e-mail outlining all remaining outstanding

8     discovery and plaintiffs' questions in Paragraph 6 of their

9     eleventh motion to compel, which I read in their entirety at

10    our last status hearing.

11         What was the result of the meet and confer session?

12         MS. BENNETT:  Your Honor, we did have a meet and

13    confer on February 16th.

14         There is some outstanding issues as to which the

15    defendants have not responded.

16         As I understand, it is due to the change in personnel.

17         We have a request for a 30(b)(6) deposition, that they

18    have not yet responded to.

19         However, your Honor, we are at odds as to a category

20    of documents that date back to the eleventh motion to compel.

21    And we will be filing a motion today as to those documents.

22         THE COURT:  All right.  File the motion.

23         And you will have three days to respond.

24         And we will deal with it at our next status hearing,

25    which is going to be -- when are you going to file the motion?

```
 1              MS. BENNETT:  We are filing it today --

 2              THE COURT:  Okay.

 3              MS. BENNETT:  -- and noticing it up for next Tuesday,

 4    Judge.

 5              THE COURT:  All right.

 6              Well, we are probably going to be meeting every

 7    Tuesday.  So, it's sort of a little peek into the future.

 8              Here, I have got a few more matters.  You file that

 9    and we will deal with it as quickly as possible.

10              Defendant John Baldwin's motion for a protective order

11    seeking to strike the Notice of Deposition, which scheduled

12    this deposition, is noticed for presentment today.

13              Yesterday, the plaintiffs filed their response brief.

14              MR. STEPHENSON:  Yes, Judge.

15              If the Court permits, we would just ask seven days for

16    a reply.

17              THE COURT:  All right.  Done.

18              And the motion -- plaintiffs' motion -- for leave to

19    file a portion of exhibits, in response, under seal, is

20    granted.

21              The motion hearing date of March 6th, 2018, is

22    stricken, because you have got seven days for your filing.

23              So, we will talk about the hearing date or ruling date

24    when we meet next week.

25              Okay, here is a scheduling issue.  And it is running
```

1   into some of the deadlines that each side of us are going to

2   set here.

3          Fact discovery on the class claims closes this Friday,

4   March 2nd, 2018.  Yesterday, the plaintiffs filed a motion to

5   extend or revise the case schedule before the district court.

6   The motion is noticed for hearing before Judge Alonso this

7   Thursday at 9:00 a.m.

8          The plaintiffs are seeking a two-month extension of

9   the fact discovery cutoff, to May 2nd, 2018, solely for the

10  purpose of completing discovery that has already been timely

11  requested or served.

12         As detailed in plaintiffs' motion, there is a

13  tremendous amount of work to be accomplished before May 2nd, if

14  the extension is granted.

15         I don't even know how it is going to take place by May

16  2nd.

17         I understand that defendants' attorney team is in a

18  state of transition.  They are well-represented, but this is a

19  state of transition.  But we need to make this case our first

20  priority between now and May 2nd.

21         There is much, much, much to do between now and March

22  2nd and beyond.  This case needs to be prioritized by everyone

23  in that office, because we have gone on and on and on.  And I

24  have found myself repeating the same requests and the same

25  orders for months and months and months and months at the

1    status hearing.  And, then, different attorneys show up and I

2    repeat the same thing.

3         And there is this whole notion of who the heck is

4    minding the store.  And I have never at the point been able to

5    glean that.

6         Mr. Stephenson, I really -- this has got to take

7    priority.  I have got my marching orders, too.  Okay?

8         MR. STEPHENSON:  Yes, Judge.

9         THE COURT:  So, I expect all attorneys assigned to

10   this case to adjust the responsibilities in other cases

11   accordingly, and arrange additional help, as necessary, now to

12   complete this aspect of this 2010 case.

13        You know, it is going on eight years now.

14        Between now and May 2nd, I intend to hold, more or

15   less, weekly status hearings.  And, so, to that end, we are

16   going to come back for a status hearing Tuesday, March 6th, at

17   10:00 a.m.

18        It has got to move, move, move.  The party is over.

19        MS. BENNETT:  Your Honor, what you just said is of

20   concern to us, also.  Some of the positions that we have been

21   seeing in the past few weeks seem even more precariously

22   founded than usual.  These have to be coming from somewhere.

23        I understand Mr. Stephenson is signing the briefs and

24   having the meet and confers; but, there is a boss somewhere.  I

25   don't know whether it is DOC legal.  I don't know whether it is

1   some very high-up person in the Attorney General's Office.

2   But, at some point, I think it would be worth considering

3   asking who is in charge and --

4           THE COURT:  Well, at some point I am going to sit down

5   with Judge Alonso and we are going to have a judicial

6   conference over the issue.

7           Mr. Stephenson is an officer of this court and I am

8   not going to put his feet to the fire with respect to any of

9   these other notions right now.  I just want these issues

10  accomplished fully and satisfactorily.  That is what we are

11  dealing with now.

12          Larger issues may arise; but, as my father used to say

13  to me, sufficient unto today are the troubles thereof.  And we

14  have dealt with them, I believe, sufficiently for both sides to

15  know what we have got to do.

16          Let's get out and do it.

17          We will see you folks next Tuesday at 10:00 o'clock.

18          Anything else?

19          (No response.)

20          THE COURT:  Plaintiff, anything else?

21          MS. BENNETT:  No, your Honor.

22          THE COURT:  Defense?

23          MR. STEPHENSON:  The only other thing, your Honor,

24  your remarks are heard and I will communicate this to the

25  powers that be.

1          THE COURT:  Please.

2          MR. STEPHENSON:  The second comment, your Honor --

3    this is the only other outstanding issue -- I just want to

4    bring it to the Court's attention, is just the settlement

5    response from plaintiffs to the defendants' settlement offer.

6          THE COURT:  All right.

7          MS. BENNETT:  Your Honor, given what the defendants

8    have been doing recently, we haven't had time --

9          THE COURT:  Okay.

10         MS. BENNETT:  -- to make progress with that.

11         THE COURT:  Let's enter and continue on the response.

12         MR. STEPHENSON:  Yes, Judge.

13         THE COURT:  All right?

14         MR. STEPHENSON:  Thank you.

15         THE COURT:  Keep the lines of communication open

16   between and among the parties.  That is my cautionary advice.

17   Okay?

18         MR. STEPHENSON:  Yes.

19         THE COURT:  All right.

20                    *   *   *   *   *

21   I certify that the foregoing is a correct transcript from the
     digital recording of proceedings in the above-entitled matter,
22   to the best of my ability, given the limitations of using a
     digital-recording system.

23

24   /s/ Joene Hanhardt                March 5, 2018
     Transcriber

25