# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DON LIPPERT, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 10 CV 4603 |
| ) | |
| v. ) | Judge Jorge L. Alonso |
| ) | Magistrate Judge Daniel G. Martin |
| JOHN BALDWIN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF MOTION
## TO RECONSIDER DISCOVERY ORDER

Objector, Wexford Health Sources, Inc. ("Wexford"), by and through its attorney, ANDREW R. DEVOOGHT, pursuant to this Court's permission, hereby files this memorandum in support of its April 5, 2018 motion requesting that this Court reconsider a portion of the Court's March 22, 2018 order regarding various discovery matters.[1]

### I.  INTRODUCTION AND BACKGROUND

Wexford, a non-party, has demonstrated its willingness throughout the course of this litigation to work cooperatively with the parties to provide relevant documents and testimony. Indeed, as reported at last week's status hearing, Wexford has arranged for two separate Fed. R. Civ. P. 30(b)(6) witnesses to sit for depositions to address multiple topics Plaintiffs believe to be relevant to the case. Wexford respectfully submits, however, that Plaintiffs' request that IDOC be required to produce Wexford's responses to Requests For Proposals ("RFPs") IDOC published in 2016 and 2017 should be denied.

---

[1] This memorandum was technically filed on April 12, 2018, a handful of hours past the midnight deadline of April 11, 2018, due to an unforeseen technology issue. Counsel for Wexford apologizes for this slight delay and appreciates the Court's understanding.

As an initial matter, Wexford never submitted a response to IDOC's 2016 RFP because the RFP was cancelled before any such response was provided. *See* Exhibit A. As such, this request is moot. And while Wexford did submit a response to IDOC's 2017 RFP, that response is not discoverable pursuant to Fed. R. Civ. P. 26(b)(1).

Pursuant to the instructions included in IDOC's 2017 RFP, Wexford submitted a response consisting of six separate packets of information. One of these packets included Wexford's pricing proposal to provide IDOC's inmates with comprehensive medical and mental health services across a broad selection of facilities. Plaintiffs now seek to obtain this pricing information. According to Plaintiffs, they intend to compare the pricing information Wexford included in its response to IDOC's 2017 RFP with the monetary amounts IDOC spent to provide health care services during the same timeframe to try to demonstrate that IDOC provided constitutionally inadequate healthcare.

As explained below, the pricing information Wexford included in its response to IDOC's 2017 RFP is not relevant to Plaintiffs' "deliberate indifference" claim. This is particularly true here, where, because IDOC withdrew its 2017 RFP, ***IDOC never viewed, considered or implemented any aspect of the pricing proposal Wexford included in its response***. *See* Exhibit B.[2] Moreover, the remainder of Wexford's response to the 2017 RFP is comprised of information ***wholly unrelated*** to the pricing information Plaintiffs seek to discover.[3] Finally, given its irrelevance to Plaintiffs' claim, the threat of inadvertent disclosure of Wexford's highly

---

[2] Counsel for Defendants confirmed the procedural history included herein with respect to Wexford's response to IDOC's 2017 RFP. Wexford will happily provide further confirmation of this fact if the Court deems it appropriate.

[3] Indeed, as required by the instructions in IDOC's RFP, these packets include a technical proposal, standard forms eliciting information regarding Wexford, and other similar information.

confidential and proprietary information only further underscores the fact that Plaintiffs' request should be denied.

## II. Discussion

Fed. R. Civ. P. 26(b)(1) emphasizes that in order to be discoverable, information must be both "relevant" to a party's claim and "proportional to the needs of the case." Plaintiffs' request to obtain the pricing information Wexford included in its response to IDOC's 2017 RFP fails to satisfy either of these requirements.

### *Relevance*

Plaintiffs assert an Eighth Amendment-based claim of deliberate indifference against defendants as to the class members' medical and dental needs. *See, e.g.*, ¶ 160 of Plaintiffs' Fourth Amended Complaint. To determine if a lack of medical care violates the Eighth Amendment, the Court must determine if the record demonstrates **both** objective and subjective deliberate indifference: (1) Does the record show an *objective* risk of serious harm to the inmate population? (2) Does the defendant have actual *subjective* knowledge of that serious harm? and (3) Is the defendant subjectively "deliberately indifferent" to that harm? *Farmer v. Brennan*, 511 U.S. 825, 837 (1970); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*).

It is readily apparent that the pricing information Plaintiffs seek to obtain from Wexford's response to IDOC's 2017 RFP is irrelevant to questions 2 and 3 of the deliberate indifference analysis, which focus on defendants' alleged *subjective* knowledge and indifference. Simply put, as explained above, ***IDOC never viewed, considered or implemented any aspect of the pricing information Wexford included in its response*** because IDOC's 2017 RFP was withdrawn. Accordingly, the pricing information Wexford included in its response to IDOC's

3

2017 RFP could not have informed and is not relevant to any aspect of defendants' alleged *subjective* knowledge and/or indifference.

Wexford's pricing information in its response to IDOC's 2017 RFP is similarly irrelevant to the objective component of the deliberate indifference analysis. In cases alleging systemic violations of the Eighth Amendment, the objective test looks first to whether "systemic deficiencies at the prison's health care facility [have] rendered the medical treatment constitutionally inadequate for all inmates." *Cleveland-Purdue v. Brutsche*, 881 F.2d 427, 430–31 (7th Cir. 1989). In *Wellman v. Faulkner*, the court stated the test as whether "systemic and gross deficiencies in staffing, facilities, equipment, or procedures" are so great that "the inmate population is effectively denied access to adequate medical care." 715 F.3d 269, 272 (7th Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)); *Phillips v. Sheriff of Cook County*, 828 F.3d 541, 554 (7th Cir. 2016) (affirming decertification of class and remanding for individual detainees to present evidence as to whether they were denied constitutional access to dental services).

These cases demonstrate that the information relevant to the objective component of the deliberate indifference analysis focuses on the health care ***actually provided***, and whether or not that actual care is deficient. This analysis does ***not*** look to estimates of costs—***formulated in response to a new RFP as opposed to the existing contract***—associated with potentially providing health care services. Indeed, while Wexford vehemently disagrees with many aspects of Dr. Shansky's report, Plaintiffs' attempts to feature components of that report in their Fourth Amended Complaint only underscore the fact that the focus of the objective component of the deliberate indifference analysis is the actual care provided. And the same is true of the work Dr.

4

Puisis and his team are currently undertaking. Price estimates that were never viewed by IDOC, much less considered or implemented are simply not relevant to this analysis.

Moreover, Plaintiffs' intended use for Wexford's pricing information—to try to undercut the amount of money IDOC actually spent on care—highlights the apples to oranges nature of this information, thereby further demonstrating that Wexford's pricing information is not relevant. Indeed, to even begin to try to discern any comparative value from Wexford's pricing information, Plaintiffs would have to attempt to understand and account for myriad factors including, for example: (1) the difference between what IDOC is requesting in the 2017 RFP *as compared to the current* contract, and how one should go about accurately pricing those items; (2) the reconciliation process between IDOC and its outside healthcare providers; (3) the role of Adjusted Service Requests in the current contract; and (4) the impact union negotiations have in formulating pricing information. Thus, Plaintiffs cannot, even if it were relevant to the deliberate indifference analysis, simply look at a bottom line price estimate in a response to a completely different RFP and infer a conclusion regarding the adequacy of actual care being provided based on the relative amount of money spent to provide that actual care.

*Proportionality*

Plaintiffs' request also fails the proportionality requirement of Fed. R. Civ. P. 26(b)(1). Specifically, when one compares the lack of "importance of [Wexford's pricing information from its response to IDOC's 2017 RFP] in resolving the issues" associated with Plaintiffs' deliberate indifference claim, to the harm Wexford would face if any of its pricing information were inadvertently disclosed at any point during the course of the litigation, it is clear that the "burden . . . of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Indeed, such inadvertent disclosure of Wexford's pricing information would cause immediate

5

and tangible, competitive harm to Wexford. This pricing distinguishes Wexford in the extremely competitive marketplace of private healthcare companies that contract with States like Illinois to provide healthcare to inmates. Disclosing this information—even inadvertently—would immediately undercut Wexford's competitive position in the marketplace.

While there is obviously a protective order in place, this notion of inadvertent disclosure is particularly pertinent in a case like this one where (1) Plaintiffs appear intently focused on affirmatively employing this information to try to support their case and (2) Wexford is a non-party. As a non-party, Wexford does not enjoy the same opportunities as the parties to proactively ensure that such inadvertent disclosure does not take place at some point during the course of the proceedings in this case. Simply put, the stakes are too high for Wexford, and the information is of too little value to Plaintiffs' chosen legal claim to require production of this information.[4]

For the reasons stated herein, Wexford respectfully requests that the Court deny Plaintiffs' request that IDOC be ordered to provide Wexford's response to IDOC's 2017 RFP.

April 12, 2018

Respectfully submitted,

 s/Andrew R. DeVooght
Andrew DeVooght
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
Telephone: (312) 464-3100
Facsimile: (312) 464-3111
adevooght@loeb.com

*Attorney for Wexford Health Sources, Inc.*

---

[4] Much of the information Wexford provided in the other components of its response to IDOC's 2017 RFP is similarly highly confidential and proprietary. However, that information so clearly falls outside the scope of the pricing information Plaintiffs focus on such that Plaintiffs should not reasonably expect to be entitled to see such information.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 12, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                                  s/ Andrew R. DeVooght
                                                  Andrew R. DeVooght
                                                  LOEB & LOEB LLP
                                                  321 N. Clark St., Suite 2300
                                                  Chicago, IL 60654
                                                  Phone: (312) 464-3100
                                                  Fax: (312) 464-3111
                                                  adevooght@loeb.com