1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4    DON LIPPERT, et al.,                    )
                                             )
5                   Plaintiffs,              )
                                             )
6                 vs.                        )  No. 10 C 4603
                                             )
7    PARTH GHOSH, M.D., et al.,              )  Chicago, Illinois
                                             )  December 12, 2017
8                 Defendants.                )  10:03 A.M.

9                 TRANSCRIPT OF PROCEEDINGS - Status
        BEFORE THE HONORABLE DANIEL G. MARTIN, Magistrate Judge
10

     APPEARANCES:
11

     For the Plaintiffs:        ROGER BALDWIN FOUNDATION
12                                 OF ACLU, INC.
                                 150 North Michigan Avenue
13                               Suite 600
                                 Chicago, Illinois  60601
14                               BY:  MS. CAMILLE E. BENNETT
                                      MS. LINDSAY STARK MILLER
15

     For the Defendants:        CITY OF CHICAGO, DEPARTMENT OF LAW
16                               30 North LaSalle Street
                                 Suite 900
17                               Chicago, Illinois  60602
                                 BY:  MR. KEVIN R. LOVELLETTE
18

     For Burks's Defendants:    CASSIDAY SCHADE LLP
19                               20 North Wacker Drive
                                 Suite 1000
20                               Chicago, Illinois  60606
                                 BY:  MR. JOSEPH JACK LOMBARDO
21

22                     PAMELA S. WARREN, CSR, RPR
                          Official Court Reporter
23                219 South Dearborn Street, Room 2342
                       Chicago, Illinois   60604
                            (312) 408-5100
24   **NOTE:  Please notify of correct speaker identification.**
     **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
25   **UNINTELLIGIBLE.**

1  **APPEARANCES:  Continued**

2  For the Intervenor:        MICHAEL P. MAZZA, LLC
                             686 Crescent Boulevard
3                            Glen Ellyn, Illinois  60137
                             BY:  MR. PAUL ROBERT HALE
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        (Proceedings held in open court:)

 2            THE CLERK:  10 C 4603, Lippert versus Ghosh.

 3            All right.  Come on in.  Gather around.

 4            All right.  We'll start with our plaintiffs, counsel

 5   for the plaintiffs.

 6            MS. BENNETT:  Good morning, your Honor.  Camille

 7   Bennett, B-e-n-n-e-t-t, for the plaintiffs.

 8            THE COURT:  Ms. Bennett, good morning.

 9            MS. MILLER:  Good morning, your Honor.  Lindsay

10   Miller, M-i-l-l-e-r, for the plaintiffs.

11            THE COURT:  Ms. Miller, good morning to you.

12            Okay.  Here's our intervenor.

13            MR. HALE:  Good morning, your Honor.  Paul Hale,

14   H-a-l-e, for intervenor Kenneth Burks, (unintelligible) Case

15   Number 15 C 55.

16            THE COURT:  Okay.  Mr. Hale, good morning to you.

17            MR. HALE:  Good morning, your Honor.

18            THE COURT:  Our AGs.

19            MR. LOVELLETTE:  Kevin Lovellette on behalf of the

20   defendants.  L-o-v-e-l-l-e-t-t-e.

21            THE COURT:  Mr. Lovellette, good morning.

22            MR. LOMBARDO:  Good morning, your Honor.  Joe

23   Lombardo, L-o-m-b-a-r-d-o, on behalf of the defendants in the

24   Kenneth Burks case and, I guess, the dismissed defendant in

25   this case.
```

1          THE COURT:  Who is the dismissed defendant at this

2     point, Athena Rossiter?

3          MR. LOMBARDO:  Rossiter.

4          THE COURT:  Okay.  Good morning, Mr. -- why am I so

5     tongue tied today -- Lovellette.

6          MR. LOVELLETTE:  Lovellette.

7          THE COURT:  Lovellette.  You know, I'm -- you have

8     only appeared in front of me for years and years and years.

9     I'm sorry, Mr. Lovellette --

10          MR. LOVELLETTE:  It's quite all right.

11          THE COURT:  -- I'm sorry, I'm a little off my mark

12     today.

13          Mr. Lombardo, good morning also.

14          All right.  Class action referred for discovery

15     supervision.  We have some -- many items with which to deal

16     today.

17          The district court has certified a class of all

18     prisoners in the custody of the IDOC with serious medical or

19     dental needs on August 15th of 2017.

20          Judge Alonso set the following dates regarding the

21     class claims:

22          Your fact discovery on the class claims closes on

23     March 2nd of 2018.

24          Plaintiffs's Rule 26(a)(2) disclosures and reports are

25     to be served by March 2nd, 2018.

1          Depositions of plaintiffs's experts completed by April

2   2nd of 2018.

3          Defendants's Rule 26(a)(2) disclosures and reports

4   served by April 16th of 2018.

5          Depositions of defense experts completed by April

6   30th, 2018.

7          All expert discovery completed by April 30th of 2018.

8          And dispositive motions with supporting memoranda due

9   by May 30th of 2018.

10          Judge Alonso also has a status hearing set for May 2nd

11   of 2018 at 9:30 in the morning.

12          On December 8th of 2017, Judge Alonso entered a second

13   order appointing a second expert, Dr. Michael P-u-i-s-i-s, as

14   an expert pursuant to Rule 706 of the Federal Rules of

15   Evidence.

16          And that is the summary that I have of the case to

17   date.

18          Several issues we have to follow up on today.

19          First, the state defendants's privilege log remains

20   outstanding.  It was due long, long ago.  At our last status

21   hearing on November 21st, I directed the state defendants to

22   provide an update today regarding the progress of the privilege

23   log.

24          What is the status of the privilege log, and when will

25   it be completed?  The date?

1          MR. LOVELLETTE:  We will produce it in seven days,

2    your Honor.

3          THE COURT:  Seven days.  All right.  Thank you very

4    much.

5          Second, November 21st, 2017, status.  I gave the state

6    defendants an extension until December 4th to update their

7    production of the hard copy documents from the original eight

8    prisons.

9          Was that done?

10          MR. LOVELLETTE:  We missed the 4th, but it has been

11    produced to the plaintiffs.

12          THE COURT:  Done.  Okay.

13          MS. BENNETT:  Your Honor, we did receive documents

14    last Friday; however, we have not received them for all eight

15    facilities.

16          THE COURT:  Okay.  How many are missing?

17          MS. BENNETT:  Do you know how many are missing?

18          MR. LOMBARDO:  Your Honor --

19          THE COURT:  Hard copy documents from the original

20    eight prisons.

21          MR. LOVELLETTE:  Your Honor, this is the first I'm

22    hearing about this.  Perhaps we could have a 37 -- Rule 37

23    conference.

24          THE COURT:  A Rule 37 conference when?  Well, I want

25    to know what's still missing, at least.

1      MS. BENNETT:  Your Honor, the short answer is that a

2  number of the folders contain documents from six prisons.  They

3  are actually the six prisons where the named plaintiffs were

4  housed.

5      THE COURT:  Yeah.

6      MS. BENNETT:  So that means that we're missing three

7  of the Shansky eight prisons.

8      There is also one folder called budget, which contains

9  documents only from two prisons.

10     THE COURT:  Okay.  When can we have a conference and

11  get that taken care of?  Today before we leave the building?

12     MS. BENNETT:  I know that -- I don't know that

13  Mr. Lovellette actually knows the status of the contents of the

14  discovery.

15     MR. LOVELLETTE:  We thought we had produced

16  everything.  So I -- actually this might be better to do to go

17  back to our offices and --

18     THE COURT:  Fine.

19     MR. LOVELLETTE:  -- you can have the information right

20  in front of you, and then we can call.

21     THE COURT:  It sounds like a plan.  All right.  That

22  will be completed, let's say, at the very latest by the end of

23  the week.  Okay?

24     MR. LOVELLETTE:  Okay.

25     THE COURT:  All right.  Third, last status hearing I

1    gave the state defendants until December 4th to provide updated

2    responses to plaintiffs's second interrogatories, which were

3    originally answered in 2013.

4            Was that done?

5            MR. LOVELLETTE:  That has not been done.

6            THE COURT:  Okay.  You have got till Friday to do

7    that.  Okay?

8            MR. LOVELLETTE:  Yes.

9            THE COURT:  What is that, the 15th, this Friday?

10           THE CLERK:  Yes.

11           MS. BENNETT:  Yes.

12           THE COURT:  Okay.  December 15th that's due.

13           Okay.  Fourth, parties were to meet and confer by

14   November 29, 2017, on all other outstanding discovery issues,

15   including, number one, a reasonable date for the defendants to

16   update their discovery production, including emails, before

17   trial; and, number two, the issues raised by plaintiffs's 11th

18   motion to compel.

19           What is the status of these matters?  Did you meet and

20   confer November 29th, 2017?

21           MS. BENNETT:  We did have a phone call to discuss

22   these issues.

23           THE COURT:  Okay.

24           MS. BENNETT:  So we did learn that DOC has run some

25   updated ESI searches, but they informed us that it is going to

1    take about three months to finish reviewing and getting those

2    documents to us.  And as your Honor noted, our --

3            THE COURT:  Hurry up and wait.

4            MS. BENNETT:  -- discovery cutoff is March 2nd.  And

5    we have -- we're also informed that DOC needs to schedule

6    depositions for the month of February.

7            So we need these updated documents prior to being able

8    to take these depositions.

9            THE COURT:  When is a reasonable time within which to

10   order them and take -- get them to you and to have them?

11           Give me a date that conforms with all these other

12   dates.  Thirty days?

13           MS. BENNETT:  Thirty days would be fine, your Honor.

14           MR. LOVELLETTE:  Can I ask --

15           THE COURT:  Forty-five?

16           MR. LOVELLETTE:  Forty-five because of the Christmas

17   holiday.

18           THE COURT:  Forty-five.

19           MR. LOVELLETTE:  Thank you.

20           THE COURT:  Forty-five days to update discovery

21   production, including emails, before trial, and any issues

22   raised by plaintiffs's 11th motion to compel.  Forty-five days

23   due.

24           Fifth, on November 28th intervenor Burks filed his

25   alternate motion to intervene to modify a protective order in

1    this case seeking an order allowing Dr. Shansky to testify in

2    Mr. Burks's case.  Okay.  Defendants's joint response is not

3    due yet.  It is due on the 19th.

4            But Mr. Burks, I'm asking Mr. Hale, and the former

5    Mr. Burks, if the order in this case was modified to allow

6    Dr. Shansky to testify in Burks's case, who is it who would pay

7    Dr. Shansky's fees?

8            Step up and let me know.

9            MR. HALE:  Ummm --

10           THE COURT:  You didn't address that issue in your

11   motion, Mr. Hale.

12           Step up so we can hear your response.

13           MR. HALE:  My firm would be happy to assume the costs

14   if they are -- if they are reasonable, your Honor.

15           We are considering expert discovery on another matter.

16   Judge Andrea Wood has -- is about to enter a discovery

17   schedule.

18           So there is expert discovery contemplated in this

19   case.  If Dr. Shansky's testimony seems relevant, as it seems

20   to based upon his writings in his published report, my firm

21   would be interested in paying, your Honor.  I don't think there

22   is any sort of Northern District of Illinois disbursable funds

23   available to my firm at this point because --

24           THE COURT:  I don't think so.

25           MR. HALE:  -- we're appointed counsel.  So short

1    answer, we're happy to pay.

2         THE COURT:  Okay.  Is there a motion hearing set for

3    12-28 on the motion?

4         MR. HALE:  Your Honor, I accidentally -- I, in error,

5    noticed --

6         THE COURT:  Okay.  Why don't we strike that day, and

7    we'll just take the responses, and we'll issue an --

8         MR. HALE:  Yeah.

9         THE COURT:  Pardon?

10         Do you want to file a reply after they file their

11    joint response?

12         MR. HALE:  Yes, please, your Honor.

13         THE COURT:  Okay.

14         MR. HALE:  Short date.  Whatever works for you.

15         THE COURT:  Well, what works for you, a week later?

16    Seven days after 12-19 on a response day?

17         MR. HALE:  That would be great, your Honor.  Thank

18    you.

19         THE COURT:  Where does that put us?

20      (Discussion off the record.)

21         THE COURT:  All right.  We'll the get these dates

22    entered.

23      (Discussion off the record.)

24         THE COURT:  12-26.

25         MR. LOMBARDO:  Your Honor, may I raise an issue

```
 1   regarding the response?

 2           THE COURT:  Let's get that -- let's get that date

 3   first, and then we can raise the issue.

 4           Okay.  What's the issue regarding the response?

 5           MR. LOMBARDO:  Speaking to Ms. Bennett, who has been

 6   in contact with Ms. Shansky or Dr. --

 7           THE COURT:  Ms.?

 8           MR. LOMBARDO:  Dr. Shansky.  Excuse me.

 9           THE COURT:  Okay.

10           MR. LOMBARDO:  It appears that Dr. Shansky is willing

11   to sign it or is under the impression that he would have never

12   gone or been willing to get this appointment had he known that

13   he would be susceptible to depositions in other IDOC and

14   Wexford cases.  And I'll let Ms. Bennett correct me if I am

15   wrong because I did not speak to him.

16           So I guess we made -- we may need a declaration or

17   affidavit from Dr. Shansky to support our motion.  Or, I mean,

18   if the Court is just willing to take Ms. Bennett at her word,

19   that's -- that's Dr. Shansky's stance on the matter, that would

20   be fine too.  And we can get it -- a response on file by the

21   19th.

22           However we do need his declaration.  We're probably

23   going to need some additional time.

24           THE COURT:  What kind of a declaration are you

25   referring to?
```

1          MR. LOMBARDO:  It would be Dr. Shansky, affying to the

2    fact that had he known he would ever have to be appointed -- or

3    be giving depositions in other Wexford, IDOC cases, he would

4    not have agreed to become a court-appointed expert in this

5    matter.

6          And I think Dr. Puisis -- I haven't spoken with him.

7    I don't know if Ms. Bennett has -- but I think that -- there

8    would be an argument there that he was not going to be willing

9    to accept the appointment had he known he is going to have to

10   give depositions in other Wexford, IDOC cases.

11         Or the Court --

12         THE COURT:  Nothing I can do about that right now.

13   But go ahead, Mr. Lombardo.

14         MR. LOMBARDO:  So I would say that if the Court is not

15   willing just to accept, you know, Ms. Bennett's word that

16   that's Dr. Shansky's opinion, then I think I would need a

17   couple more weeks for Ms. Bennett to obtain a declaration on

18   that issue.

19         THE COURT:  Let's hear from Ms. Bennett.

20         What's your take?

21         MS. BENNETT:  Your Honor, first of all, we have no

22   idea what Dr. Puisis would say about this.

23         Here is what Dr. Shansky told me when I spoke to him

24   back in early October.  As I reported last time, that was when

25   I discovered he didn't have any documents, having disposed of

 1   his files when he moved --

 2           THE COURT:  Right.

 3           MS. BENNETT:  -- in October of 2016, well before the

 4   Burks's subpoena was served.

 5           But he -- what is at issue that concerns the Lippert

 6   parties in particular in this case is the order that appointed

 7   him in the first place, which is Docket 244 in this case, the

 8   agreed order appointing the expert.

 9           And there are two paragraphs in there that restricted

10   Dr. Shansky from doing what the Burks's plaintiffs want him to

11   do.

12           One, he was supposed to retain all materials that were

13   given to him by the Department of Corrections in the course of

14   his investigation as confidential.

15           And also he was not permitted to testify in any other

16   cases.

17           THE COURT:  Okay.

18           MS. BENNETT:  And those are both provisions of the

19   order.

20           And that is the -- why we are here because that order

21   has to be undone for Dr. Shansky to do what the Burks's

22   plaintiffs want.

23           The other -- so as long as I was talking to

24   Dr. Shansky that day, I asked him about the deposition

25   provision because I anticipated that that might come up down

1    the line.

2            And what he told me was this.  He said, I have been

3    doing this for 30 years.  The provisions that are in the agreed

4    order are extremely standard provisions.  I have never had to

5    turn over documents or give a deposition in an unrelated case

6    where I have been performing the kind of consultant or expert

7    analysis that I did here in Lippert.

8            And, moreover, I wouldn't have agreed to take -- take

9    on this work.  And I don't think anybody else would if they

10   were going to be exposed to being deposed in hundreds of cases.

11           I think that the Court should not simply take my word

12   for this.  I mean, this is an important matter.  And I -- I

13   actually suggested to Mr. Lombardo that this being what

14   Dr. Shansky's position was, it probably would be a good idea to

15   get a declaration from him and --

16           THE COURT:  Absolutely.  We're going to go through the

17   entirety of the process.  And your joint response is due on

18   12-19.  And if you need more time within which to get a

19   declaration, you can do that.  All right?

20           I want to examine everything that's relevant to all

21   sides of the issue, and then we'll give you a ruling with

22   respect to the present motion that's pending before the Court

23   to modify the protective order in the case allowing Dr. Shansky

24   to testify in Burks's case.  That's at the center of it all.

25   I'm not going to make a ruling from the bench.

1        So let's get online with whatever the dates are.

2    Right now the 19th and the 26th.

3        If someone needs more time to obtain a declaration,

4    that's not going to be a glitch, you know.  It is not going to

5    be an impediment.  I mean, this is a case about -- about

6    allowing the parties to fully explain and air their positions,

7    and then considered and thoughtful rulings.

8        All right.  So I think we're jumping the gun a little

9    bit here.

10        MR. LOMBARDO:  Well, I think -- I think it is due in

11    one week, your Honor.  So I think we definitely would need more

12    time for the declaration.  I'd prefer --

13        THE COURT:  Make a note of that.  And as I have said

14    to you, I'm not going to bar you from filing that.  Okay?

15        MR. LOMBARDO:  So you want us to re- -- just file a

16    motion and come back?

17        THE COURT:  Right.

18        MR. LOMBARDO:  That's fine.

19        THE COURT:  What do you want?

20        Let me confer with my boss here.  Thanks

21    (Discussion off the record.)

22        THE COURT:  Okay.  All right.  I haven't been

23    overruled but I have conferred --

24    (Laughter.)

25        THE COURT:  -- with the highest authority available to

1    me at this time.

2         What would you need in order to file a joint response

3    that includes the declaration or whatever else you believe is

4    important or essential to your adequate response?

5         MR. LOMBARDO:  I would defer to Ms. Bennett on that.

6         THE COURT:  All right.

7         MR. LOMBARDO:  I would notice it for -- I don't think

8    it is going to be fully a joint response because I don't think

9    Ms. Bennett is joining all of the reasons why I'm opposing this

10   motion.  I think she's just going to file a brief response that

11   includes the declaration.

12        THE COURT:  I thought it was defendants's joint

13   response.  And --

14        MR. LOMBARDO:  We're (unintelligible).

15        THE COURT:  -- now you're telling me that they are

16   going to be individual responses?  That's a different issue.

17        So what do we have here?

18        MR. LOMBARDO:  Well, I'll just defer to Ms. Bennett.

19        How long do you need for the declaration?

20        MS. BENNETT:  Your Honor, when the defendants had

21   previously briefed the Burks's previous motion, they did

22   get -- give us, the plaintiffs, an opportunity to review it

23   before they filed it.  And it was apparent to us there were a

24   number of issues in this case that are Burks specific that

25   really are not things that we would join in.  So we would have

1    only joined in part of the response anyway.

2         What I had suggested to Mr. Lombardo today was that we

3    would submit -- I would do my best to get the Shansky

4    declaration in time, and we -- we would likely deliver -- the

5    Lippert plaintiffs would likely submit that as our --

6         THE COURT:  Okay.

7         MS. BENNETT:  -- contribution to the briefing as it

8    were.

9         THE COURT:  Joint and several responses.

10        MS. BENNETT:  Right.

11        THE COURT:  When do you want -- what time do you want?

12        MR. LOMBARDO:  I would suggest January 9th in lieu of

13   the holidays.

14        THE COURT:  Okay.  That sounds reasonable to me,

15   January 9th.

16        And January 16th for a reply.

17        MR. LOMBARDO:  Thank you, your Honor.

18        THE COURT:  Does that sound fine?

19        And if you -- you know, if you need a little extra

20   time, if you're running up against it, file an agreed motion.

21   All right?

22        And I -- and I'm always pleased when parties cooperate

23   with each other on things like agreed motions to extend time

24   for relatively short periods.  Okay?  Obstreperous conduct is

25   always viewed with great disdain by me.

1              Cooperate with each other.  Okay?  I mean, you know

2    you could have just said, we need more time, and I -- I am not

3    the toughest guy in the building with respect to that.  Okay?

4              January the 9th, January 16th.

5              And that should do it?

6              MR. LOMBARDO:  That will do it.

7              THE COURT:  All right.  And if you think it is not

8    going to -- yes, Ms. Bennett, you're raising your hand.

9              MS. BENNETT:  I -- I am, Judge, but it is a different

10   matter.

11             THE COURT:  All right.  Let's wait until we have

12   resolved this.

13             So the 9th and the 16th are good dates?

14             MR. LOMBARDO:  Yes, your Honor.

15             THE COURT:  Okay.

16             MS. BENNETT:  Yes, your Honor.

17             THE COURT:  So let me know ASAP if you need a little

18   more time, if Dr. Shansky's out of the country or something.

19   Okay?

20             I don't want to engage in any kind of (unintelligible)

21   form over substance.  All right?  And then I have said all I'm

22   going to do on that.

23             Go ahead.

24             MS. BENNETT:  It is taking your Honor's caution about

25   obstreperousness with some seriousness.  We did gloss over one

1    issue earlier, which is the documents in the 11th motion to

2    compel.

3              THE COURT:  Okay.

4              MS. BENNETT:  We still don't have those, and I don't

5    --

6              THE COURT:  I know.

7              MS. BENNETT:  -- believe that the defendants claim to

8    have produced them.

9              THE COURT:  The issues raised by plaintiffs's 11th

10   motion to compel are due and owing.  I had three months set

11   out, and that seems like a long time because that's been

12   pending for quite some time.  Now what do you want us to do?

13             Your opponents have said three months.  It

14   is -- they're culling through.  They're doing -- I mean, this

15   has been a very, very slow and tedious discovery process for

16   everyone, you know.

17             In fact, I think -- what happened to Duran?  Did he

18   leave?  Is he not going to show up?  I thought we had a really

19   good thing going, Duran and I, you know.  Remember, we had a

20   settlement conference, Mr. Lombardo, and we all --

21             MR. LOMBARDO:  I wasn't there.

22             THE COURT:  You weren't there for that one?

23             MR. LOMBARDO:  (Unintelligible) was on the underlying

24   (unintelligible).

25             THE COURT:  All right.

1          MR. LOMBARDO:  (Unintelligible).

2          THE COURT:  You know, I hope it wasn't something I

3     said, you know?  He's not obstreperous, he just kind of smiles

4     and says, we'll do the best we can.

5          What do you propose, Ms. Bennett?

6          MS. BENNETT:  Judge, the documents at issue in the

7     11th motion to compel aren't update documents, they date back

8     to the 5th request for production --

9          THE COURT:  All right.

10         MS. BENNETT:  -- which was served in May of 2016, and

11    we have been trying to get them ever since.

12         And the defendant (unintelligible) enormous amount of

13    back and forth about these over time, and I would -- you know,

14    could review it for the Court, but I don't have to depending

15    on --

16         THE COURT:  Mr. Lovellette, can we really put some

17    emphasis on that and get that taken care of?

18         MS. BENNETT:  And the -- in the meet and confer that

19    we had on November 29th, Mr. Lovellette wasn't able to

20    participate, so his younger colleague Mr. Stephenson

21    participated.  And Mr. Stephenson --

22         THE COURT:  A fine young man.

23         MS. BENNETT:  -- (unintelligible).

24         THE COURT:  I want the --

25         MS. BENNETT:  He did nothing --

```
 1              THE COURT:  -- A troops on this.

 2              MS. BENNETT:  He knew nothing about this.

 3              THE COURT:  All right.

 4              MS. BENNETT:  He would report back to the higher ups.

 5    But that's where this --

 6              THE COURT:  Mr. Lovellette is going to be in on this

 7    one.  Let's do it according to your schedule.  Okay?  I don't

 8    call you the A troops for nothing.  Okay?  And Stephenson is a

 9    wonderful young lawyer, and it is not to disparage him, but

10    come on, guys.

11              There is a new year coming up.  And I would really

12    like to, at our next status, like in January, whenever it will

13    be, to say that a lot of these issues have been resolved, and

14    we can move forward with this litigation.  This is one of the

15    first cases I -- that I had as a Judge, and it is still here.

16              So let's set a status.

17              THE CLERK:  January 18th.

18              THE COURT:  All right.  Well, I'm going to put that to

19    Mr. Lovellette.

20              When can we get the documents?

21              MR. LOVELLETTE:  I honestly --

22              THE COURT:  The issue is raised.  Eleventh motion to

23    compel.  You have got to give me a time, and I'm going to

24    enforce it, and then there is going to be some teeth behind it.

25    I mean --
```

1          MR. LOVELLETTE:  I don't know exactly what those

2     documents are.  I don't know where they are located.

3          THE COURT:  Okay.

4          MR. LOVELLETTE:  I have to talk to DOC in order to

5     answer that question.

6          THE COURT:  Yeah.  You're going to talk with them by

7     the close of business Friday.  And you have three months max.

8          You said three months.  What do you want me to do --

9          MS. BENNETT:  Your Honor --

10          THE COURT:  -- three weeks?

11          MS. BENNETT:  Your Honor, three months would take us

12     past the close of fact discovery --

13          THE COURT:  All right.  Give me a date, Ms. Bennett.

14          MS. BENNETT:  -- in this case.

15          THE COURT:  What's reasonable?

16          MS. BENNETT:  Thirty days.

17          THE COURT:  Thirty days.

18          MR. LOVELLETTE:  We -- we have got to object, Judge.

19     I don't even know what these documents are.

20          MS. BENNETT:  Your Honor --

21          MR. LOVELLETTE:  They are --

22          THE COURT:  They have sent them forth in a 5th motion

23     to compel and an 11th motion to compel.  You have had notice of

24     them at least in two motions to compel, and you keep saying you

25     don't know what the documents are.

1    What do you want me to do?  Every time you come in

2  say, have a meet and confer, tell them again what the documents

3  are that you have been seeking for all these months?

4    Okay.  Talk about it.  Get it straight.  We'll have a

5  status next Tuesday morning, and I want to know that you know

6  and everybody knows what the documents are in their entirety so

7  that I don't have to mess around with this on a 14th or 15th

8  motion to compel.  Okay?

9    MS. BENNETT:  Your Honor, I was actually going to

10  suggest, given the circular nature of the conversations that I

11  have been having with the defendants about this every time,

12  Mr. Duran has told me he doesn't know where the documents are.

13    THE COURT:  I know.

14    MS. BENNETT:  That Kevin and Mike are dealing with

15  this.  Mr. Stephenson said he didn't know what they are.  And

16  Mr. Lovellette has now said he doesn't know what they are.

17    I -- it would -- might advance this if someone from

18  the legal department in the Department of Corrections were on

19  the phone for the status next Tuesday since Mr. Lovellette has

20  said that they are the ones who would know what these documents

21  are.  And then perhaps we could get to the bottom of this

22  because it doesn't seem as if, you know, they have been asked.

23    THE COURT:  All right.  Well, let's do this.  You're

24  going to meet and confer and determine with absolute precision

25  what each and every one of these documents are by Friday.

1          And on Tuesday, if there is an individual with whom

2    the Court should speak, I want you to have that individual

3    ready and have that phone number ready, and we'll get that

4    person on the line.

5          I don't want that issue to be raised now.  I do want

6    to anticipate that it might come up at our status next Tuesday

7    and to have someone we can reach out to.  We have conference

8    call, telephone, speakers, recording devices.  We're fully

9    equipped.  Okay?

10          We're sort of done with this issue.  And it is about

11    time that we just really march forward or I'm going to start

12    considering harsher measures.  Okay?

13          Seriously, let's get it done.  We have been dragging

14    and dragging.  I know there is always something that is

15    (unintelligible).  I'm not accusing anyone of bad faith.  But,

16    you know, I really need to see some resolution to this.  Okay?

17          Friday, meet and confer by Friday.

18          Make sure they know all of the documents that are the

19    subject.  Maybe just print it out.  Okay?  And if there is a

20    difficulty with respect to that, you better raise it with me

21    Tuesday because I'm going to expect a full compliance with this

22    long overdue discovery.  Okay?

23          MS. BENNETT:  Your Honor, I have sent emails.  I have

24    sent --

25          THE COURT:  I understand.

1          MS. BENNETT:  -- lists.

2          THE COURT:  Let's --

3          MS. BENNETT:  I -- they should know what these are.

4          THE COURT:  Well, let's start a new day today.  Okay?

5    And we'll proceed as positively as we can from there.

6    Everybody onboard?

7          All right.  See you next Tuesday, 9:30?

8          MR. LOVELLETTE:  Yes.

9          THE COURT:  Okay.

10         MS. BENNETT:  Thank you, your Honor.

11         MR. LOVELLETTE:  Thank you, your Honor.

12       (Which concluded the proceedings.)

13                         CERTIFICATE

14         I certify that the foregoing is a correct transcript

15   from the digital recording of proceedings in the above-entitled

16   matter to the best of my ability, given the limitation of using

17   a digital-recording system.

18

19

20   */s/Pamela S. Warren*                    March 5, 2018
     Official Court Reporter                    Date
21   United States District Court
     Northern District of Illinois
22   Eastern Division

23

24

25