IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DON LIPPERT, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 10-cv-4603 |
| ) | |
| JOHN BALDWIN, et al., ) | Judge Jorge L. Alonso |
| ) | Magistrate Judge Susan E. Cox |
| ) | |
| ) | |
| Defendant. ) | |

## MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs move for a preliminary injunction requiring Defendants to work with the Second Court-Appointed Expert, Dr. Michael Puisis, to create a healthcare staffing plan for the Illinois Department of Corrections, as follows:

### Emergency

1. The Illinois Department of Corrections ("IDOC" or "Department") is currently soliciting bids for a new contractor to provide medical and dental care for the prison system for a five-year term. The current closing date for bids is in early January. The request for bids does not acknowledge or make any mention of the First or Second Court-Appointed Experts' reports in this case, which found that the Department lacked any kind of overall staffing analysis for the system which would be needed to prevent further harm to the class. (State of Illinois Invitation for Multi-Step Bid, Illinois Department of Corrections, attached as Exhibit 1, *passim*.) If the contract is let without appropriate credentialing requirements and a staffing analysis, the class will continue to suffer the harms detailed in the Shansky and Puisis Reports.

2. In 2013, the Court appointed its first expert, Dr. Ronald Shansky, to "assist the Court in determining whether [IDOC] is providing health care services to the offenders in its custody that meet the minimum constitutional standards of adequacy"; if the Expert found that there were "systemic deficiencies in IDOC health care," he was charged with proposing solutions to those deficiencies. Dkt. 244 ¶ 1a. In 2014, one of the first recommendations of the Shansky Report was that "IDOC . . .develop and implement a plan which addresses facility-specific critical staffing needs by number and key positions and a process to expedite hiring of staff when the critical level has been breached." Dkt. 339 p. 10.

3. In 2014, the Department stated that it "agree[d] with this recommendation." [D9 p. 7.][1] The critical nature of a staffing plan in litigation of this kind is reflected in the orders from Judge Mihm in the Central District of Illinois and Judge Thompson in the Middle District of Alabama. (May 25, 2018 Order, *Rasho v. Baldwin*, No. 07-cv-1298-MMM, U.S.D.C. C.D. Ill., Dkt. 2070, attached as Exhibit 2; November 3, 2017 Pretrial Order: Phase 2A Understaffing Issues, Braggs v. Dunn, No. 2:14cv601-MHT, U.S.D.C. M.D. Ala., attached as Exhibit 3.)

4. In late 2017, the Court appointed its second expert, Dr. Michael Puisis, to "determine whether any of the systemic deficiencies identified by [Dr. Shansky] currently exist," to report on any "additional systemic deficiencies" found, and also to "propose solutions" to these deficiencies. Dkt. 593 ¶ 1(a), (b). In 2018, Dr. Puisis concluded that a healthcare staffing analysis was urgently needed for IDOC, and that this analysis needed to include all levels of staffing as well as a relief factor. Dkt. 767 p. 122. Dr. Puisis regarded this as a reiteration of Dr. Shansky's 2014 recommendation designed to ensure that "medical programs can effectively and appropriately function." *Id*. p. 124.

---

[1] "D" refers to Defendants' Trial Exhibit.

5. The Puisis team also found that, despite the Department's agreement in 2014 with the Shansky Report's recommendation as to a staffing analysis, no such analysis had been performed. In fact, the Puisis Report concluded that, if *any* analysis of IDOC healthcare staffing had been performed at *any* time in the past, that analysis could not be identified, nor could anyone who was responsible for such an analysis be identified. *Id.* p. 30.

6. The current requests for bids for a comprehensive IDOC healthcare services contract references no staffing plan and on its face says that the prospective vendors will provide a staffing plan. (Exh. 1, p. 60.)

7. Without an independent staffing plan the IDOC cannot intelligently or sensibly evaluate the bids it is soliciting or whether those proposals will address the staffing deficiencies identified by the two Court-Appointed Experts in 2014 and again in 2018.

8. If the IDOC enters into a new contract with a bidding vendor, the Court's ability to fashion appropriate injunctive relief will be hindered or thwarted.

**Legal Standard**

9. In granting a recent preliminary injunction in a case involving the IDOC and its failure to provide constitutionally adequate mental health care, Judge Mihm described the legal requirements for issuing such an order:

> In order to satisfy the requirements for a preliminary injunction, at the onset, Plaintiffs must show: (1) without a preliminary injunction, they will suffer irreparable harm before the final resolution of his claims; (2) 'traditional legal remedies would be inadequate'; and (3) that they have 'some likelihood of succeeding on the merits of his claim.'" *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Farnam v. Walker*, 593 F. Supp. 2d 1000, 1004 (C.D. Ill. 2009). If the Plaintiffs establish the required showing, the Court then must balance the potential harms to the parties and, if appropriate, the public interest. *Id.*

(Exh. 2, p. 13.)

10. Here too, all of the elements are met. A continuation of the present system will cause the irreparable harm described by Dr. Puisis and Dr. Shansky. Damages could not cure this problem, thus there is no "legal remedy." That there is "some likelihood of success" on the merits is demonstrated by the reports of the Court's First and Second Experts. Finally, there is no harm to the Defendants in being ordered to create an independent staffing plan – a recommendation with which they agreed in 2014.

## Relief

11. For relief, Plaintiffs request that the Defendants be ordered to work with Dr. Puisis to create staffing plan which addresses the issues of nursing care, physician qualifications, and what would constitute adequate medical and dental staff, including relief factors.

12. This plan should be delivered with 90 days of this order as provided by the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(2).

13. There is no harm to the public from requiring a staffing plan and it is in the public interest that the IDOC system have adequate qualified medical personnel.

Dated: December 6, 2018

Respectfully Submitted,

DON LIPPERT, et al.

By: /s/ Harold C. Hirshman
*One of their attorneys*

Harold C. Hirshman (ARDC# 1226290)
DENTONS US LLP
233 S. Wacker Drive, Suite 7800
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
harold.hirshman@dentons.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on December 6, 2018, he caused a copy of the above and foregoing MOTION to be served on all counsel of record via the Court's electronic filing system (CM/ECF).

/s/ Harold C. Hirshman