```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3
        DON LIPPERT, et al.,              )  Docket No. 10 C 04603
 4                                        )
                        Plaintiffs,       )  Chicago, Illinois
 5                                        )  May 3, 2019
                   v.                     )  11:02 a.m.
 6                                        )
        JOHN BALDWIN, et al.,             )
 7                                        )
                        Defendants.       )
 8

 9              TRANSCRIPT OF PROCEEDINGS - Fairness Hearing
                 BEFORE THE HONORABLE JORGE L. ALONSO
10

11      APPEARANCES:

12
        For the Plaintiffs:   DENTONS US, LLP, by
13                            MR. HAROLD C. HIRSHMAN
                              233 South Wacker Drive
14                            Suite 5900
                              Chicago, IL 60606
15

16                            ROGER BALDWIN FOUNDATION OF THE ACLU, by
                              MS. CAMILLE E. BENNETT
17                            150 North Michigan Avenue
                              Suite 600
18                            Chicago, IL 60601

19
                              UPTOWN PEOPLE'S LAW CENTER, by
20                            MR. ALAN S. MILLS
                              4413 North Sheridan Road
21                            Chicago, IL 60646

22

23

24

25
```

```
 1    APPEARANCES (Continued):

 2    For the Defendants:    HONORABLE KWAME RAOUL
                             ATTORNEY GENERAL STATE OF ILLINOIS, by
 3                           MR. CHRISTOPHER R. FLETCHER
                             MR. MICHAEL D. ARNOLD
 4                           MR. NICHOLAS STALEY
                             Assistant Attorneys General
 5                           100 West Randolph Street
                             Suite 1300
 6                           Chicago, IL 60601

 7
      Also Present:          MS. CAMILE LINDSEY, General Counsel
 8                           MS. KELLY PRESLEY,
                             Deputy Chief Legal Counsel
 9                           Illinois Department of Corrections

10

11

12

13

14

15

16

17

18

19

20    Court Reporter:       LISA H. BREITER, CSR, RMR, CRR
                             Official Court Reporter
21                           219 S. Dearborn Street, Room 1902
                             Chicago, IL 60604
22                           (312) 818-6683
                             lisa_breiter@ilnd.uscourts.gov
23

24

25
```

1    (In open court.)

2         THE COURT:  Good morning, everyone.

3         ALL COUNSEL:  Good morning.

4         THE CLERK:  All rise.

5    (Call to order.)

6         THE CLERK:  10 C 4603, Lippert vs. Ghosh.

7         THE COURT:  Let's have the attorneys identify

8    themselves for the record.

9         MR. HIRSHMAN:  Certainly.  Harold Hirshman, Camille

10   Bennett, Alan Mills for the plaintiff class.

11        MR. FLETCHER:  Christopher Fletcher from the Office of

12   the Attorney General for defendants.  Along with me is

13   Mr. Nicholas Staley, Mr. Mike Arnold and representatives of the

14   Department of Corrections legal, and that is Camile Lindsay as

15   well as Ms. Kelly Presley.

16        THE COURT:  Okay.  Thank you.  And we are here for

17   final fairness hearing on the proposed consent decree in this

18   case.  I'll begin by granting Document No. 120.  That's

19   plaintiffs' unopposed motion to file an oversized brief.

20        I'm aware of the defendants' recently filed response.

21   This is a joint motion, but the defense filed their memorandum

22   in support of final approval of the consent decree.  That's

23   document 1232.  I've reviewed that.

24        Are both sides ready to proceed?

25        MR. HIRSHMAN:  We are, Your Honor.

1    MR. FLETCHER:  We are, Judge.

2    THE COURT:  Okay.  And it is 11:04, and are the

3    parties -- is the plaintiff aware of any objectors that are

4    present here in the courtroom here today?

5    MS. BENNETT:  Yes, Your Honor.  Dr. Pliura, who

6    represents the putative class in the *Bryant* case, is here, and

7    also attorneys for Mr. Willie Dixon.  And there may be one or

8    two others in the courtroom who we don't know about at the

9    moment.

10    THE COURT:  Okay.  Is the plaintiff taking a position

11    regarding whether members of the public have a right to

12    comment?

13    MS. BENNETT:  Your Honor, I think we feel that anyone

14    who wishes to speak should speak.

15    THE COURT:  Defense, any position on that?

16    MR. FLETCHER:  No position, Your Honor.

17    THE COURT:  Okay.  And plaintiffs, any position

18    regarding Doctor and Counsel Pliura and attorney for Mr. Dixon?

19    MR. HIRSHMAN:  We have no objection, Your Honor.

20    THE COURT:  Okay.  All right.  So regardless of

21    whether or not non class members and theoretically anyone who's

22    present here is not in the class, regardless of that, without

23    reaching the issue of whether the public or a non class member

24    has a right to speak, I will afford those individuals the right

25    to do that.

 1          I'll ask that whoever wants to comment step up to this

 2   podium here on my right and begin by stating your name and

 3   spelling your name for us.  Let's begin that process right now.

 4   Please raise your hand if you want to go first.

 5          MS. ST. CLAIR:  Good Morning, Your Honor.  Sylvia

 6   St. Clair, S-T period C-L-A-I-R, attorney of record for Willie

 7   Dixon, D-I-X-O-N.  Mr. Dixon has a case pending here in the

 8   Northern District of Illinois, Case No. 17-CV-07304 captioned

 9   Dixon vs. Dr. Salah Obaisi, et al., actually, before Your

10   Honor.

11          So I just want to make clear that I'm representing

12   Mr. Dixon in his pending case before Your Honor and not with

13   respect to his rights or obligations under the actual class

14   action suit.

15          But per my client's request, we are objecting on his

16   behalf, primarily because the pending action before Your Honor

17   in the other case alleges violations of his rights of his

18   Eighth and Fourteenth Amendments to the U.S. Constitution due

19   to defendants, which includes Wexford defendants as well as a

20   number of doctors, deliberate indifference to his serious

21   medical condition.

22          And specifically in his complaint, he is seeking

23   monetary damages and not equitable relief.  And due to those

24   reasons, he has requested that we do place an objection on

25   record to the actual consent decree that Your Honor is

1    determining today during the fairness hearing.

2            THE COURT:  Okay.  Anything else regarding the

3    substance of that proposed consent decree?

4            MS. ST. CLAIR:  No, Your Honor.

5            THE COURT:  All right.  And Ms. St. Clair, you have

6    made that objection on the record.

7            You're aware of the fact that the case you've

8    referenced is not up today.  The case that's up today is this

9    case Lippert.  Anything else?

10           MS. ST. CLAIR:  No, your Honor, I guess other than

11   just to clarify for the record that Mr. Dixon's position is

12   that the consent decree that could be approved by Your Honor in

13   this particular case could actually affect his relief, which

14   includes the monetary damages, as well as him continuing to

15   seek medical relief for the treatment that he did receive.

16           However, there has been and continues to be delay in

17   his particular case.

18           THE COURT:  Okay.  Thank you, Counsel.

19           MS. ST. CLAIR:  You're welcome.

20           THE COURT:  Okay.  Raise your hand, Counsel, Doctor.

21   State your name for the record.

22           MR. PLIURA:  Yes.  Attorney Tom Pliura, P-L-I-U-R-A.

23           Your Honor, we have filed a proposed class action down

24   in the Central District in Urbana in front of Judge Bruce.  We

25   have filed a motion for class certification.  The case name is

1    *Charles Bryant v. Wexford, et al.* It involves a class action

2    of inmates who have hernias or who had hernias and waited a

3    long time. We estimate the class to be about 4,000 inmates

4    inside the IDOC prison.

5           The reason I am here is because many of the inmates

6    received notice of this proposed settlement, and we wanted to

7    clarify that they oppose being held in any way or bound in any

8    way by this particular case. In that case in front of Judge

9    Bruce, the State, who is a defendant in this case, has filed a

10   motion to dismiss arguing that this proposed settlement would

11   bar our class action from proceeding down in the Central

12   District.

13          We disagree with that, but we think that there are

14   different legal issues. Certainly there's even a different

15   defendant. Wexford is a defendant in that case, not part of

16   this case. But we wanted to clarify that we do not believe

17   that our class of inmates with hernias would be bound or

18   affected by this particular case.

19          THE COURT: All right, Counsel. The motion before me

20   addresses your concerns. Any comment on the attorneys'

21   analysis or arguments regarding your objection?

22          MR. PLIURA: No, I don't think so.

23          THE COURT: Okay. And so you are objecting. You

24   don't believe the consent decree should be entered because of

25   the possible effect on your clients?

1    MR. PLIURA:  I think -- I think we agree that the

2    consent decree in this case, an agreed settlement should move

3    forward.

4         What we want to clarify is we don't believe that our

5    particular plaintiffs in the class action should be bound in

6    any way from proceeding on their own particular claims of not

7    getting surgery for their hernias.  So what we were requesting

8    both equitable relief down there, equitable remedies as well as

9    monetary damages in that case.

10        We support the proposed settlement in this case, but

11   we think that we would not be bound.  What we don't want to do

12   is see this proceed and then -- and go to settlement and then

13   have the State, as they've argued in their motion to dismiss

14   down there, argue that, no, you guys are precluded from

15   proceeding in this case should -- our case in Urbana should be

16   dismissed because it falls under the guise of the Lippert

17   settlement.  That's what we object to.

18        THE COURT:  But, Counsel, you are not under the

19   impression that I'm going to rule on your issue --

20        MR. PLIURA:  No.

21        THE COURT:  -- or address your concern today?

22        MR. PLIURA:  I'm not --

23        THE COURT:  And that motion --

24        MR. PLIURA:  -- not at all.

25        THE COURT:  -- has already been filed and is pending.

1           MR. PLIURA:  Not at all.

2           THE COURT:  Okay.

3           MR. PLIURA:  Thank you.

4           THE COURT:  Next?  Who wants to be heard?  Who wants

5      to comment?

6           Going once, going twice.  For the record, it's 11:12,

7      and no one else has stepped up to be heard from.  So we did

8      hear from counsels Ms. St. Clair and Mr. Pliura, and at this

9      point I will close the time for comment.

10          That does not mean that we don't have comments.  We

11     have plenty of comments and objections, and we will talk about

12     that within the framework of the motion that is pending, the

13     motion to grant the consent decree.

14          Ms. Bennett, any changes to the actual consent decree

15     that I was presented at preliminary approval?

16          MS. BENNETT:  Your Honor, I actually unfortunately

17     have not had a chance to discuss this with defendants, but I

18     did notice one typographical error in a footnote.

19          THE COURT:  The best kind of error, but an error

20     nonetheless.

21          And the final paragraph no longer is relevant

22     regarding efforts to resolve --

23          MS. BENNETT:  Yes, Your Honor.

24          THE COURT:  -- attorney dispute, attorney's fees.

25          MS. BENNETT:  As the Court knows, we have reached

1    agreement, pending the Court's approval, on both the amount of

2    fees and of expenses and costs.

3            It's on page 8, Your Honor.  It's footnote 1, and it

4    says the provisions of 3, that is, Section 3, which is

5    healthcare-specific provisions, are not intended to limit the

6    obligation expressed heretofore in Section 2, and it should be

7    "obligations" plural, rather than "obligation."

8            THE COURT:  So I will at the end of the hearing, if

9    the motion's granted, I'll ask the plaintiff to present me with

10   an order, a more accurate and updated consent decree for me to

11   enter.

12           And any objection to including that change in

13   footnote No. 1 on page No. 8?

14           MR. FLETCHER:  No, Judge.

15           THE COURT:  Okay.  The motion that is before me does a

16   good job of structuring the argument and laying out the

17   elements that I've got to consider under recently amended

18   Rule 23(e).

19           Ms. Bennett, are you going to take up the argument?

20           MS. BENNETT:  Yes.  I believe that what our plan is is

21   that I'm going to start.  Mr. Hirshman and Mr. Mills are also

22   going to say a few words in support of the settlement and in

23   response to some of the other class member objections that

24   we've received.

25           Your Honor, the question before you is whether the

1    settlement is fair, reasonable and adequate under the rule, and

2    that really can only be considered in relation to what the

3    claims were in the case that it's settling and whether it

4    offers appropriate relief for the class members.  We obviously

5    believe that it does.

6         The claims in this case have always been claims for

7    broad systemic reform, about broad systemic problems.  And the

8    settlement is structured to address those claims and those

9    problems on the basis of quite a lot of information in this

10   case.  It's been pending as a class action since the putative

11   class complaint was filed in 2011.

12        Probably the most important part of the settlement is

13   the structural changes that are supposed to be taking place at

14   the beginning.  Some of the class members objected and, as did

15   Mr. Lippert himself, that the settlement has a time limit of 10

16   years.  And that's a compromise obviously.  We would have

17   preferred a longer time.

18        But in return for that, what the class gets is some

19   broad systemic changes that are supposed to start happening now

20   that are the foundation on which the settlement is going to

21   have to rest.  The case in both of the Court-appointed experts

22   identified as one of the critical problems staffing, vacancies

23   and turnover.

24        The second Court-appointed expert said that there

25   wasn't even really a staffing analysis that he could find in

1    the Department of Corrections.  So one of the things that

2    starts right now -- and, in fact, has already started -- is an

3    analysis of a staffing by the Department that is supposed to be

4    a foundation for this decree.

5              That actually is tied to the date of the appointment

6    of the monitors.  Since Your Honor has already appointed the

7    monitor, that analysis is due in July.

8              Another thing that is supposed to happen at the outset

9    is, you know, attention to the physician credentialing.

10   Because the system can't function without doctors who are the

11   most critical healthcare providers in the system, who know, you

12   know, what they are seeing when a patient presents with a

13   problem and what the diagnosis should be and what the treatment

14   should be.

15             And both the person -- the Court-appointed and second

16   Court-appointed experts again identified that as a critical

17   problem.  That problem is addressed up front with new physician

18   credentialing requirements that are effective as soon as the

19   decree is approved, if the Court approves it.

20             Other things that are structural that are happening at

21   the outset are attention to the medical records system.  You

22   can't run a system like this without proper records and proper

23   data.  There's a requirement in the decree that the defendants

24   must sign a contract for an electronic medical record.  And

25   then within three years of that, they must have implemented it.

1          So that the disorganization of the medical records

2     that both of the Court-appointed experts spoke about over and

3     over again will finally be addressed.  And indeed, defendants'

4     own expert, in the course of the case, had identified that as

5     the source of many of the problems that he saw.

6          Another thing which doesn't sound very glamorous but

7     which is critically important is a quality improvement system.

8     Again, both of the experts found that the system failed to

9     identify its problems, failed to correct its problems, didn't

10    even know about how to go about collecting the data to address

11    its problems.

12         There's now a contract in place between the Department

13    and the University of Illinois at Chicago Nursing School to

14    develop a quality -- a robust quality improvement system for

15    the Department that is supposed to be in place and to start

16    working soon, and there are many other requirements actually

17    within the consent decree pertaining to quality improvement.

18         So with all of these things and one more, which is a

19    system for review of the utilization management process which

20    determines what kind of outside specialty care the patients

21    get, that process to date has been solely within the control of

22    Wexford.

23         The consent decree puts oversight over that process.

24    Within six months, the Department is either supposed to

25    contract with an outside independent provider to review all of

1    those decisions, if they are denials of care or delays of care.

2            If they don't do that, then the monitor and his

3    consultants take over that job until two new State positions

4    are filled, which are Deputy Chiefs of Health Services, which

5    are supposed to undertake that review.  So the kinds of

6    problems, for instance, that Mr. -- Dr. Pliura's patients are

7    facing should be addressed within the broad contours of the

8    settlement.

9            Now, this isn't to say that his clients don't have

10   other particular problems or that they should be precluded from

11   proceeding with their cases about their hernias.  This isn't a

12   case about hernias.  But there are structures in place at the

13   outset of the settlement to address the most severe

14   foundational problems that face the system here.

15           Now, we had an objection from Mr. Lippert, which the

16   Court may have seen.

17           THE COURT:  10 pages, yes.

18           MS. BENNETT:  And he's -- I think one of the things

19   that shows he's really a very good class representative because

20   he's avidly followed the case, he's very familiar with the two

21   expert reports, and he's concerned about the settlement.

22           And I actually went down to see him at Lawrence

23   Correctional Center and asked him if he wanted us to try to

24   make him a bit -- you know, make it possible for him to speak

25   today.  What he told me was that he thought that really his

1    objection was well laid out in those -- in those 10 pages.

2          His objection was that there are a couple hundred

3    specific recommendations in both the first and the second

4    expert reports, and those really should be all in the

5    settlement in detail, in specific detail.

6          And so, you know, the question is from -- you know, as

7    to Mr. Lippert, why isn't that a good idea?  Why would we agree

8    to something that doesn't include that?  And, you know, part of

9    that is simply that I don't think the defendants would have

10   agreed to that.  I don't think they would have thought that

11   they could do all of those things right now.

12         There's a section of 68 of these specific requirements

13   that are in the settlement which they did agree to, which, you

14   know, are things that we believe that they believe that they

15   can immediately implement.  But the more important reason it

16   isn't structured this way is that it's a system reform case.

17         And if you have a laundry list of 200 things, the

18   question is where to start and what's most important.  And what

19   the consent decree here does is start with some critically

20   important foundational things that are going to get moving now.

21   It also has the 68 requirements in the healthcare-specific

22   provisions that are also, for the most part, to start now.

23         And then there are a host of broad areas in the

24   healthcare general provisions, which are going to be worked out

25   in the implementation plan which the Department is going to

1    develop with the help of the monitor, who is also, of course, a

2    very important part of the settlement here.

3            And in this way, the reform here which is -- has to be

4    profound because the problems are profound can be sort of

5    staged over time and done in a way that is actually, from the

6    point of view of the agency that has to do it, sustainable and

7    workable.

8            And so that's why we don't have a laundry list of 200

9    things.  We have a staged process of critical elements at the

10   start, some specific elements, and broad commitments that are

11   to be undertaken and spelled out in the implementation plan,

12   which is going to become part of the consent decree.

13           So that -- that is how the settlement will address the

14   profound systemic problems that were identified in the course

15   of this case and by the experts.

16           THE COURT:  All right.  Thank you, Ms. Bennett.  I'll

17   take that as an opening statement.  I do want to at some point

18   get back to addressing the requirements of 23(e), and I think

19   that the plaintiff has done a good job of structuring their

20   argument.  So I'm going to use that to make sure that I address

21   all of the factors that I have to address.  I will try to keep

22   us organized in that fashion.

23           That being said, Ms. Bennett raised a couple of issues

24   that I want to address right now.  One is the sunset provision,

25   the 10-year limit, and the objections dealing with that.  Those

1   go to the substance as opposed to many of the objections which

2   don't go to what we actually have to decide today.  That does

3   go to the substance of the consent decree.

4          And I will say that I believe that that 10-year limit

5   is consistent with our authority, our limited authority under

6   the PLRA, which those objectors did not take into account.  But

7   I will say that there is a mechanism in place to extend it.

8          But just as importantly, I will say that I think it's

9   a good idea.  It's a good idea to have this time limit.  I

10  think it is a good idea in terms of an incentive for the agency

11  to get done what it needs to get done with an eye towards

12  wrapping the case up as opposed to having a case that goes on

13  for decades, and there are multiple cases that have taken that

14  track.

15         And I think it's counterproductive, as the government

16  doesn't see the end of it, and is therefore not incentivized to

17  move forward and to wrap up the case, which is, of course,

18  something I want to do and the plaintiffs want to do, also.

19         MR. HIRSHMAN:  I should add one point, Your Honor,

20  which is that was a heavily negotiated provision of the

21  settlement agreement.

22         So it was not originally 10 years, and the defendants

23  insisted on a sunset.  We agreed to a sunset.  And so I think

24  that it serves the very functions Your Honor has just

25  articulated.

1          THE COURT:  All right.  So I agree, and again, it's

2    consistent with 18 U.S.C. 3626 and a good idea.

3          Ms. Bennett also mentioned Mr. Lippert.  Mr. Lippert

4    filed one of many written objections, longer than most.  He, of

5    course, is a named plaintiff in the case.  I've considered his

6    objection.  And I agree with the plaintiff.  I agree with

7    Ms. Bennett's argument.

8          There is no need for the consent decree to

9    specifically enumerate every possible problem or every specific

10   problem that the experts found in the two reports, and I

11   believe that to do that could be counterproductive.  It would

12   make this consent decree much more difficult to administer, and

13   it would give the parties much less flexibility going forward.

14         So as Ms. Bennett described it, we have a consent

15   decree that envisions staged relief, and I think it makes

16   perfect sense.  I think it's as specific as it needs to be and

17   must be and should be on the front end, but it envisions

18   evolution and flexibility going forward, specifically with the

19   creation and the addition of the implementation plan.

20         And Ms. Bennett also mentioned that, and I think it's

21   important, as the plaintiff argues that the agency that's going

22   to be in charge of administering this process have an

23   opportunity to craft it for many reasons including their

24   expertise.

25         Of course, it's going to be with the help and the

19

1     direction of Dr. Raba.  Raba or Raba?  I forget.

2              MR. HIRSHMAN:  Raba.

3              THE COURT:  Raba.

4              But I think it's important in terms of buy-in, also.

5     It's important that they create it, they craft it with help, so

6     that there immediately is buy-in, that they believe this is a

7     good idea.  And if we don't have that buy-in, we will have a

8     frustrating and adversarial application of the consent decree

9     going forward, which, of course, we do not want.

10             Okay.  Anything from the defense, Mr. Fletcher, before

11    we get more specific about the rule and the requirements of the

12    rule?

13             MR. FLETCHER:  Not at this time, Judge.  Thank you.

14             THE COURT:  All right.  Mr. Hirshman?

15             MR. HIRSHMAN:  Yes, Your Honor.  Turning to 23(e)(2),

16    a settlement is to be -- the Court may approve a settlement

17    only after a hearing, which is what we're here for today, and

18    only with a finding on fair, reasonable and adequate is made.

19             I don't think that there's any doubt that there has

20    been adequate representation of this class over the

21    approximately 10 years the case has been pending.

22             THE COURT:  The case -- the case is not the typical

23    case, and many of the requirements of 23(e) don't fit our fact

24    scenario here and the specifics of this very complex action.

25    But we're going to address all of them, and you are addressing

1  class representatives and class counsel representation, the

2  adequacy of it?

3          MR. HIRSHMAN:  Yes, Your Honor.

4          And I think that, you know, the evidence in the record

5  is that there were numerous depositions.  There were days of

6  negotiations.  There were two expert reports based on orders of

7  Your Honor.

8          And so the allegations of the original complaint and

9  the original class action complaint were plumbed to reach a

10  conclusion.  We filed more than 200 pages of proposed findings

11  and based on our review of numerous documents and the

12  depositions that were taken.

13          So as to the class representatives, you know, they

14  paid attention, as you can see from Mr. Lippert.  And so we

15  believe that that is -- that provision (a) is fully met.

16          THE COURT:  Mr. Ruffin also exhibited proof that he

17  was following, right?  He filed an objection, then he withdrew

18  the objection?

19          MR. HIRSHMAN:  Yes.

20          THE COURT:  Okay.  I agree that this factor weighs in

21  favor of approving the consent decree.  As counsel writes,

22  counsel have spent thousands of hours investigating the facts

23  of the case, conducted extensive other factual and legal

24  research, propounded discovery requests, drafted pleadings,

25  motions and brief -- briefs and deposed numerous IDOC and

21

1    Wexford personnel.

2            And as you suggest, Mr. Hirshman, perhaps the issue of

3    the opinions of counsel should be wrapped up in this -- in this

4    factor also regarding your knowledge and experience --

5            MR. HIRSHMAN:  Yes.

6            THE COURT:  -- of the attorneys?

7            MR. HIRSHMAN:  Yes, Your Honor.

8            Mr. Mills, Ms. Bennett, me and the ACLU itself has had

9    a great deal of experience with class action -- class actions

10   of this kind and settlements.  And we are all uniformally of

11   the view that the speediest way and the surest way to attempt

12   to achieve a change in the system was through a settlement and

13   that this settlement, while like all settlements, not

14   everything that the plaintiffs might have wanted or even might

15   have achieved after trial is a better way to resolve the claims

16   here than to go through the trial process.

17           Simply, Your Honor was going to have trial at the end

18   of December, then in January.  And in my judgment, we would

19   still be briefing the results of the hearings at this time.  We

20   would not be near a resolution or a final order, and, of

21   course, that order would be subject to appeal.

22           So the delivery of real change would be delayed a

23   minimum of a year or so.  Then that assumes, of course, that we

24   would prevail.

25           THE COURT:  The defense still denies that there were

1    Constitutional violations.

2              MR. HIRSHMAN:  Yes.

3              THE COURT:  So even if you were successful, this has

4    taken years off of the --

5              MR. HIRSHMAN:  Correct.

6              THE COURT:  -- delivery of these services and these

7    reforms.

8              MR. HIRSHMAN:  And so the class would continue to

9    suffer the injuries we believe they're suffering, and this is a

10   way to speed up the alleviation of those injuries.

11             And I think profoundly it permits, as Your Honor said,

12   for the Department to have a kind of buy-in to the solution

13   that might not come in a litigated situation.  So for all of

14   those reasons, we firmly support the settlement as an optimum

15   resolution of this situation.

16             THE COURT:  All right.  So I believe that the approach

17   that's been adopted recently by some of the judges here that is

18   suggested in the brief is a persuasive one; that is, to fold

19   this factor, opinions of competent counsel, into the adequacy

20   of representation requirement.  And it weighs, again, in favor

21   of approving the consent decree.

22             Moving on to the next factor, the proposed settlement

23   was negotiated at arm's length.  I think an understatement in

24   this case, Mr. Hirshman.  How many days before trial?

25             MR. HIRSHMAN:  Yes, Your Honor.  And I think that

1    Magistrate Judge Cox certainly opined to us that it had been

2    a -- as she had actually at one point in October given up on

3    the idea that this case could be resolved through settlement,

4    ended the -- what's wrong with me? -- the referral to her and

5    sent the case back to Your Honor.

6         We stood here, and the defendant said that they

7    thought it might be useful to renew the settlement discussions.

8    I was pessimistic, but Your Honor accepted the proposition that

9    it might be returned to Magistrate Judge Cox for further

10   effort, and that effort turned out to be fruitful.

11        I don't think there's any -- anyone who can say that

12   these negotiations weren't at arm length, and there's no

13   evidence of it and it is simply counterfactual.

14            THE COURT:  Mr. Fletcher, anything regarding that?

15            MR. FLETCHER:  No.  I echo the sentiment that these

16   negotiations were at arm's length, and I appreciate that the

17   Court recognizes that we continue to deny that we have provided

18   Constitutionally inadequate care.

19            THE COURT:  All right.  Again, as I stated, this is an

20   understatement in this case.  The case is docketed as a 2010

21   case.  The class complaint was filed in 2011, and the parties

22   have spent countless hours on the case, including countless

23   hours negotiating the case itself.

24        It was not settled until a handful of days before the

25   trial was to commence.  And I would be remiss if I didn't

1     acknowledge the hard work of Judge Cox, without whom I don't

2     believe the case would have been settled.  She put a lot of

3     work into it.  And it's important to mention in a different

4     context Judge Martin, who spent many, many years on this case,

5     perhaps not directly in the settlement context, and

6     unfortunately, he wasn't with us at the end.

7              But he, of course, is responsible to a large degree

8     with getting us to where we are today, and I would be remiss if

9     I didn't mention that for the record, also.

10             MR. HIRSHMAN:  Absolutely, Your Honor.

11             THE COURT:  Okay.  So this obviously is a factor that

12    weighs in favor of approving the consent decree.  Another way

13    to put it, as we say these days, no collusion, right?

14             The next factor, you skipped one to -- you skipped the

15    adequacy, which is arguably the more important or the most

16    important of the factors to address, the proposed settlement

17    treats class members equitably with respect to each other.  And

18    this is one of the factors that is clumsy in the context of the

19    specific facts of this case.

20             MR. HIRSHMAN:  Yes, Your Honor.  Obviously the purpose

21    of the settlement is to achieve a system, and the system is

22    available to all prisoners who are ill.  And so there won't be

23    any kind of special -- special care given to, for instance, the

24    named plaintiffs or anyone else, for that matter.  And so I

25    don't think that that factor is really relevant in this

1    analysis.

2         THE COURT:  All right.  Regardless of whether that's

3    the correct analogy or not or the correct approach, that it's

4    not relevant, I think it's clear here, as you write, that the

5    same injunction is applicable to all class members.

6         The class was defined as all prisoners in the custody

7    of IDOC with serious medical or dental needs.  And so again, an

8    awkward fit with our case, but a factor that does weigh in

9    favor of approval and entry of the consent decree.

10        And now regarding adequacy, the relief granted by the

11   proposed settlement is adequate in your opinion, and there are

12   multiple factors here including the old, if you will, Seventh

13   Circuit factors.

14        MR. HIRSHMAN:  Yes, Your Honor.  I mean, one way to

15   look at adequacy is to look at the original complaint and look

16   at the problems that were posed and to ask yourself whether the

17   settlement consciously addresses those issues and has a method

18   or methodology for resolution.

19        And I think the answer, as Ms. Bennett pointed out,

20   tees off of the fact-finding of the two experts that Your Honor

21   appointed.  So we're not in a situation where the system itself

22   hasn't been examined.  It has been examined.  And then there

23   was a systematic attempt to create a structure which would

24   solve or address the problems of healthcare.

25        And so in that sense, we are addressing the notion of

1   adequacy.  Obviously, this isn't a monetary damage case, and

2   the proof will be in the eating; that is to say, as the system

3   evolves under the guidance of the Court-appointed expert and

4   with the cooperation of the State.

5        But the plan, the method you set out in the agreement,

6   the goals are set out in the agreement, and I think under those

7   circumstances, we have what has historically been a more than

8   adequate solution to a problem.  Many, many solutions that are

9   less comprehensive have clearly been approved as adequate.

10       THE COURT:  So in the big picture, basically from the

11  plaintiffs' standpoint, you were able to get a commitment for a

12  plan of comprehensive reform that addresses the concerns of the

13  experts?

14       MR. HIRSHMAN:  Yes.

15       THE COURT:  Okay.  And in terms of the specific

16  factors, the strength of the class' case, Mr. Hirshman, we

17  talked about that a little bit.  No guarantees, but you feel

18  that the class did have a strong case.

19       You touched on the complexity and the expense of

20  further litigation, at least on the issue of how much time and

21  how many resources that would entail, and that is assuming that

22  you were successful.

23       We talked about the opinions of competent counsel.  We

24  talked about the stage of the proceedings and the amount of

25  discovery that was completed.  One way to encapsulate that

1    again was the number of pages that were prepared in terms of

2    statement of facts.

3              MR. HIRSHMAN:  Yes, Your Honor.

4              THE COURT:  And now is a good time to talk about the

5    amount of the opposition and the reaction of the class.  And I

6    should state that notice to the class, you have used the figure

7    of approximately 40,000 inmates --

8              MR. HIRSHMAN:  Correct, Your Honor.

9              THE COURT:  -- in IDOC.

10             And in terms of notice, I don't believe that there

11   were any restrictions.  Obviously those 40,000 are not our

12   class, but you made no attempt to limit notice.

13             MR. HIRSHMAN:  No, your Honor.  We actually I think

14   provided a notice structure that was more than called for.

15   Each prisoner was delivered an individual sheet describing the

16   settlement.  In addition, the dayrooms in the various prisons

17   had the notice posted.

18             And I think if Your Honor went through the various

19   objections, we could see that there were objections, I believe,

20   from every prison or at least almost every prison, which is a

21   way to test whether the whole class of prisoners received

22   notice.

23             THE COURT:  That is a good point.

24             MR. HIRSHMAN:  So, you know, in addition, you know,

25   that --

1    THE COURT:  Again, when you say to all of them, what I
2 was trying to express was that you were not trying to restrict
3 notice to only people who were inmates with serious medical or
4 dental needs.  All 40,000 were aware.  All 40,000 were free to
5 object.
6    And all of those objections have been considered by me
7 and addressed by you in your admittedly imperfect attempt to
8 categorize and sort those objections.
9    MR. HIRSHMAN:  Yeah.  And I really think that without
10 casting aspersions on the objectors themselves, they really do
11 not bring forward the kind of objections which are called for
12 under Rule 23 and which would cast doubt on this settlement.
13    Mostly they are either individual complaints about
14 concerns about their own cases or saying we should have
15 negotiated a different settlement than we were able to achieve.
16 But that isn't the test of a complaint.  Instead, it's the
17 factors that we're talking about and we've just addressed about
18 about reasonableness, fairness, adequacy and risk.
19    And of course, none of the objectors assess anything
20 with respect to risk.  So from a kind of a 30,000-foot view of
21 all of the objections, they are simply not legally cognizable
22 as objections.
23    That doesn't mean we didn't address them.  We did.
24 But I do not believe that they would stand as an impediment to
25 Your Honor's approval of the class, of the settlement.

1       THE COURT:  And, Mr. Hirshman, you also write that

2  despite the fact that we've got admittedly a lot of objections,

3  we've got about 400 objections, that still speaks to support

4  from the class.

5       MR. HIRSHMAN:  Yes, it does, Your Honor.  I predicted

6  a thousand, so I was surprised that we only reached 400.  It

7  sounds like a lot, but it is 40,000 class members.

8       And in addition, we know that at least some of the

9  class members do spend some time tending to legal affairs.  So,

10  you know, the idea that it's only -- it's less than or

11  approximately one percent of the class is -- has historically

12  been looked at as evidence that it is a fair settlement as

13  well.

14       THE COURT:  All right.  Anything, Mr. Fletcher, from

15  the defense regarding the objections?

16       MR. FLETCHER:  No, your Honor.

17       THE COURT:  All right.  I will -- let me talk about

18  those a little bit here.  We've got all of those objections.

19  Again, the plaintiff did an admirable job of imperfectly

20  sorting and organizing those and sticking them into or placing

21  them into different buckets.

22       I believe you came up with 13 broader categories.

23  Most of those are clearly not relevant to today's task.  Those

24  that were looking for financial compensation, clearly not

25  relevant.  Others who were pursuing individual cases, including

1    Mr. Dixon, again, not any reason to cast doubt on the

2    appropriateness of entering the consent decree.

3           I did address the issue regarding the sunset

4    provision, which is relevant but not persuasive.  I've

5    considered those.  I'll note that there was no need for those

6    objections to be filed as motions, but we have about 20 motions

7    which I'll deal with now.  20 motions that were given different

8    names, when in reality they're objections.  I'm going to

9    construe them as objections.

10          They are labeled alternatively motions to withdraw,

11   motions to opt-out, motions to object, motions for certificate

12   of opt-out, a couple of motions for extensions of time.  Again,

13   they're going to be deemed as objections, and they have been

14   considered and reviewed.

15          And for the record, those are 816, 831, 832, 980, 981,

16   983, 1031, 1032, 1084, 1093, 1109, 1111, 1114, 1135 and 36,

17   1165, 1171, 1221, 1223 and 1226.  They are being construed as

18   objections and are, therefore, being denied as moot.  In fact,

19   those individuals did not have standing to file motions, but

20   again, they were considered, but considered as objections.

21          So whether they are on point, whether they provide a

22   basis to deny the motion or not, many of them were thoughtful

23   and insightful, and they did raise important issues.  But

24   ultimately, I agree with the analysis that is contained in the

25   motion and find that most of them are not relevant, and none of

1    them provide a basis to cast doubt on the appropriateness of

2    entering the proposed consent decree.

3              MR. HIRSHMAN:  Your --

4              THE COURT:  And I will agree with the plaintiff that

5    ultimately, despite the high number of objections, it still

6    represents only one percent of the 40,000, approximately 40,000

7    prisoners who received or who were the targets of notice, and

8    we did receive objections from all over the state.

9              Some of the objectors raised concern about these

10   changes not happening sooner, but I believe that the structure

11   of the consent decree makes perfect sense based upon the

12   incredibly broad and complex nature of the reform and agree

13   that there are strong considerations here of comity and a need

14   to provide the State and the agency with an opportunity to

15   craft the implementation plan and that that staged approach to

16   reform is necessary and appropriate in this case.

17             All right.  Mr. Hirshman, anything else today, sir?

18             MR. HIRSHMAN:  I think that, you know, one of the

19   factors under (c), the effectiveness of any proposed method of

20   distributing relief to the class here is not germane because,

21   you know, this is an equitable class.  And we have a structure

22   for delivering the relief, and there are no individual class

23   claims.  So that would be more germane to a damage class, which

24   obviously we don't have.

25             The proposed award of attorneys' fees, the attorneys'

1  fees were capped by the Prison Litigation Reform Act so that

2  the rates are significantly below the rates that would be

3  common in the marketplace for lawyers of the caliber of my

4  colleagues.  And, of course, there was agreement from the

5  defendants that the fees were reasonable, and we actually

6  reduced them somewhat in the course of negotiation.

7       And the same with the costs.  We provided support for

8  both the fees and the costs, and we reached agreement on that.

9  None of that was negotiated until after the terms of the

10 settlement were worked through.  So there was no inducement to

11 abandon the class' interests in the interests of the lawyers

12 which is --

13      THE COURT:  It was a totally separate issue, and it

14 was dealt with after all of the other agreements were reached?

15      MR. HIRSHMAN:  Correct.

16      And I don't know of any other agreements that were

17 necessary to consider under 23(e)(3).  So in my judgment and

18 certainly in my opinion, the settlement is fair, reasonable and

19 adequate under Rule 23.

20      THE COURT:  All right.  Mr. Fletcher, Mr. Staley

21 writes that, "Defendants do agree that it is in the best

22 interests of the parties and the class members that this matter

23 be resolved by the entry of the consent decree that has been

24 proposed to the Court."

25      Also you write that, "All of the factors to be

1   considered under FRCP 23(e) favors settlement in this

2   instance."

3           MR. FLETCHER:  Yes, Judge.

4           THE COURT:  Anything else from the defense?

5           MR. FLETCHER:  No, Judge.

6           THE COURT:  All right.  The joint motion is going to

7   be granted.  I'm going to grant final approval of the consent

8   decree.  I do find that all of the factors that I have to

9   consider under Rule 23(e) favor settlement in this instance and

10  favor entry of the consent decree as proposed.

11          So accordingly, I will grant final approval of the

12  consent decree and hereby find that the consent decree is a

13  fair, reasonable and adequate resolution as required under

14  23(e) of the Federal Civil Rules of Procedure.  I will grant

15  the unopposed motion and enter the proposed consent decree

16  that, as amended, will be presented to me.

17          I believe that the consent decree represents a

18  sweeping overhaul.  It's a real accomplishment.  It's a very

19  important day.  It's been a long day coming.  I commend the

20  parties.  I commend the attorneys from both sides for their

21  hard work over many years and believe that this is nothing

22  short of a commitment for comprehensive reform.  It's an

23  important day.

24          And, of course, even though it's been a long time

25  coming, it is just the beginning.  So it is a beginning of what

 1    will also be a long-term project, an ongoing project, but I

 2    believe that this consent decree is specific enough, but

 3    flexible enough regarding the substance and regarding the

 4    structure.

 5          Of course, one important component here is the

 6    monitor, and I have no doubt that he is up to the task.  So

 7    thank you to everyone who's involved in this process.  Thanks

 8    for your hard work and your cooperation and your willingness to

 9    continue to work towards this resolution.  I will enter that

10    order, and from the plaintiffs' perspective, Mr. Hirshman, what

11    is next in terms of --

12          MR. HIRSHMAN:  I believe Your Honor has to enter an

13    order with respect to costs and fees.

14          THE COURT:  That motion is No. 1228.  That motion is

15    granted.  That also is an unopposed motion to award fees and

16    costs.

17          I find, as the defendant does, that these are

18    reasonable and that they have all been documented.  And again,

19    it was an agreement that was reached apart -- fully apart from

20    the settlement and the consent decree, and it is reasonable in

21    all respects.

22          MR. HIRSHMAN:  Thank you, Your Honor.

23          THE COURT:  Thank you for the sacrifices of

24    plaintiffs' counsel on that end.

25          MR. HIRSHMAN:  And we appreciate the Court's time in

1    all aspects of this matter.  Thank you.

2              THE COURT:  Thank you.  Do we need a next court date

3    at this point?

4              MR. HIRSHMAN:  I don't think so, Your Honor.

5              THE COURT:  I'll ask the plaintiff to -- after

6    conferring with the defense to submit an updated consent decree

7    for me to enter on Monday.

8              MR. HIRSHMAN:  Certainly.

9              THE COURT:  All right.  Anything else today?

10             MR. FLETCHER:  Nothing from the defendants.  Thank

11   you, Judge.

12             THE COURT:  Thank you.  All right.  Court is in

13   recess.

14        (Concluded at 12:01 p.m.)

15                       * * * * * * * * * *

16                    C E R T I F I C A T E

17        I certify that the foregoing is a correct transcript of the

18   record of proceedings in the above-entitled matter.

19

20   */s/ LISA H. BREITER*                    *June 3, 2019*
     LISA H. BREITER, CSR, RMR, CRR
21   Federal Official Court Reporter

22

23

24

25