IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Don Lippert *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Partha Ghosh, *et al.*, <br><br> Defendants. | Case No. 1:10-cv-04603 (N.D. Ill.) <br><br> Judge Jorge Luis Alonso |

## MOTION TO INTERVENE AND MOTION
## TO MODIFY PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 24 and 16, Movants Lennisha Reed and Lenn Reed, Jr., by and through their undesigned counsel, respectfully move this Court (1) for leave to intervene in this case; and (2) for modification of protective orders to permit class counsel in this case—the Uptown People's Law Center ("UPLC")—to respond to a subpoena that Movants have issued to the UPLC. In support of their motion, Movants state:

### BACKGROUND

Movants are plaintiffs in *Reed et al. v. Wexford Health Sources, Inc., et al.*, No. 3:20-cv-01139-SPM (S.D. Ill.), a case pending in the Southern District of Illinois before Judge Stephen P. McGlynn. *See Reed*, ECF 1, **Ex. 1**. Movants brought the *Reed* case asserting claims under 42 U.S.C. § 1983 and state law. They are co-administrators of the estate of Lenn Reed, Sr., who was imprisoned by the IDOC at the time of his death. The complaint in *Reed* alleges that Mr. Reed died from cancer after Wexford medical personnel ignored the signs of his disease for months, and then, once the cancer was discovered, proceeded in an unhurried manner regarding Mr. Reed's treatment until it was too late to save him. *See* Ex. 1 ¶¶ 10-31. The *Reed* complaint alleges, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that these

failures were the result of widespread practices that Wexford has allowed to flourish across the IDOC, in which its employees routinely fail to diagnose and treat patients suffering from cancer appropriately. *Id.* ¶¶ 61-65. In support of its *Monell* allegations, the *Reed* complaint points to two expert reports submitted in this case (*i.e.*, *Lippert*), *see id.* ¶¶ 41-45, that had been filed in 2014 and 2018 (these are also referred to as the "Shansky" and "Puisis" reports). In these reports, experts appointed by this Court pursuant to Fed. R. Evid. 706 identified numerous cases where Wexford medical personnel were slow to diagnose and slow to treat cancer, resulting in multiple unnecessary deaths. *Id*.

To gather information supporting their allegations, Movants (as plaintiffs, in *Reed*) served discovery on Wexford, asking it to produce documents in its possession regarding the care of certain patients identified in the 2014 and 2018 *Lippert* expert reports. *See* **Ex. 2** ¶¶ 47 (a)-(e); 54 (a)-(s), as well as related documents and communications.[1] *Id.* ¶¶ 48-53; 55-59. The *Lippert* reports themselves had anonymized each of these patients, so the discovery does not refer to the patients by name, but rather by their descriptions in the expert reports. *See id.* ¶¶ 47, 54. In response, Wexford asserted that it could not answer the discovery requests regarding the *Lippert* reports because it was "not in possession, custody, or control of documents that identify the persons described in Request for Production [47 or 54]." *See id*. ¶¶ 47, 54.

In light of Wexford's representation that it was unable to identify the patients described in the 2014 and 2018 *Lippert* reports, Movants served a subpoena on counsel for one of the *Lippert* litigants, the UPLC. *See* **Ex. 3**. The subpoena asks the UPLC to produce documents sufficient to identify the patients discussed in the 2014 and 2018 *Lippert* reports. It is Movants'

---

[1] A parallel subpoena has been served on the IDOC asking it to produce documents in its possession underlying the same selected patients discussed in the 2014 and 2018 *Lippert* reports. That subpoena remains pending.

intention to provide Wexford the responsive information produced by UPLC so that Wexford will be able to gather documents and information responsive to Movants' discovery requests to it, *i.e.* the discovery set out in **Ex. 2**.

Before Movants served the subpoena on the UPLC, they obtained a HIPAA-qualified protective order from Judge McGlynn in the underlying *Reed* case. *See* **Ex. 4**. That order, which was entered pursuant to 45 C.F.R. § 164.512, protects the private health information of parties and non-parties alike. It provides that all protected health information of both parties and non-parties must be maintained by the parties and their counsel in strict confidence, must be used only for purposes of the *Reed* litigation, and must be returned or destroyed at the conclusion of that litigation. *See id*. Plaintiffs sought entry of the HIPAA protective order so that they could conduct discovery regarding their *Monell* allegations, including the medical cases of other prisoners identified by the *Lippert* experts. In granting Plaintiffs' motion for the HIPAA protective order, Judge McGlynn noted that Plaintiffs' *Monell* claim against Wexford required "a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights," and that such discovery must be sufficiently broad that it permits a plaintiff to prove "systemic and gross deficiencies that have impacted others in IDOC custody, not just the plaintiff." *Reed* ECF 40 at 4 (**Ex. 5**) (quotations omitted). That scope of discovery, Judge McGlynn held, meant that "third party medical information is discoverable," and was "good cause for the entry of a . . . protective order governing the use of any third party protected health information produced" in the case. *Id*.

\* \* \*

The UPLC has responded to Movants' subpoena that while it possess documents responsive to the subpoena, it considers the information requested in the subpoena to be covered

3

by this Court's protective orders entered with respect to the Rule 706 experts and reports, and thus requires a court order to respond. *See* **Ex. 6**.[2]

Movants now bring the present motion and seek two items of relief: ***First***, they seek leave from the Court to intervene in this case pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). ***Second***, they seek an order permitting UPLC to respond to their subpoena (*i.e.*, **Ex. 3**), either by modification of the Court's protective orders or by way of other relief the Court may deem appropriate.

## ARGUMENT

In 2018, the Court in this case ruled on a motion to intervene in *Lippert* by the plaintiff in another case, called *Burks v. Soto*. *See Lippert*, ECF 653 (Mar. 9, 2018). That ruling, which was issued by Magistrate Judge Martin at ECF 653 in this case, serves as a useful guide for assessing Movants' present motion.

The *Burks* plaintiff sought to intervene in this case to seek modification of protective orders governing the *Lippert* report experts, in order to allow one of the *Lippert* report authors (Dr. Shansky) to produce documents and appear for a deposition in the *Burks* case. *See* ECF 653 at 1. Judge Martin first held that the *Burks* plaintiff was an appropriate intervenor under Rule 24(b)(1)(B). *See* ECF 653 at 3-7. On the merits, however, Judge Martin refused the *Burks* plaintiff's request to modify the protective orders to permit Dr. Shansky's deposition, holding that such discovery should not be allowed. *Id.* at 7-11.

---

[2] Additionally, after Movants served the UPLC subpoena, the *Reed* defendants (*i.e.*, Wexford and several of its employees) brought an action to quash. *See Reed v. Wexford*, No. 1:21-cv-05954-SJC ECF 1 (N.D. Ill.) (Coleman, J.) Upon being informed at a status hearing that UPLC considered itself bound by this Court's protective orders with respect to the subpoena, Judge Coleman entered and continued the motion to quash pending resolution of Movants' present motion to intervene in this case. *See id.* ECF 8 (Nov. 12, 2021).

4

The *Burks* motion is instructive for Movants' request, both as to Rule 24 intervention and as to the merits of Movants' subpoena. On the one hand, Movants' request to intervene is appropriate for the same reason as the intervention in the *Burks* motion: Rule 24(b)(1)(B) is the correct vehicle for a party who seeks to gather discovery available in a different matter. On the other hand, the merits of Movants' subpoena bears no resemblance to the discovery sought in the *Burks* motion—none of the concerns animating Judge Martin to deny the *Burks* plaintiff's deposition request exist here. To the contrary, multiple courts have held that the discovery Movants seek is appropriate in cases where plaintiffs have asserted *Monell* claims against Wexford, as Movants have in the underlying *Reed* case. Furthermore, any documents produced by UPLC will be protected from public disclosure by the HIPAA order governing discovery in *Reed*. In serving the UPLC subpoena in this case, Movants merely seek limited information that will help them gather appropriate discovery in their own underlying litigation.

### A. The request to intervene is appropriate under Rule 24(b)(1)(B).

Movants' request to intervene in this case pursuant to Rule 24(b)(1)(B) is appropriate for the same reasons as the *Burks* plaintiff in ECF 653. As summarized above, the *Burks* plaintiff sought to intervene so as to take discovery from Dr. Shansky (a document request and deposition) in his own case. Rule 24(b)(1)(B) allows for permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). And as Judge Martin observed, "'courts have been willing to adopt generous interpretations of Rule 24(b) because of the need for an effective mechanism for third-party claims of access to information generated through judicial proceedings.'" ECF 653 at 4 (quoting *E.E.O.C v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998)). Judge Martin noted that "where a nonparty seeks to intervene for the sole purpose of gaining access to

documents subject to a protective order[,] 'no particularly strong nexus of fact or law need exist between the two suits.'" *Id.* at 5 (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) and citing *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000)). In light of these and other authorities reviewed in the *Burks* opinion, Judge Martin held that the *Burks* plaintiff had an interest in gathering discovery from Dr. Shansky that met the requirements of Rule 24(b)(1)(B), making intervention appropriate under that rule. *Id.* at 6.

The discovery that Movants seek is different in its particulars from the discovery at issue in the *Burks* motion, as Movants explain below. But their intervention interest is identical with the *Burks* plaintiff for purposes of Rule 24(b)(1)(B). Like the *Burks* plaintiff, Movants have an interest in gathering the information generated in the *Lippert* for discovery in their own underlying case. *Cf.* ECF 653 at 4-5.[3] The Court should permit Movants to intervene.

**B.      The Court should permit UPLC to respond to the subpoena.**

Whereas Movants' motion is similar to that of the *Burks* plaintiff for purposes of assessing intervention under Rule 24(b)(1)(B), on the merits, the UPLC subpoena raises none of the concerns that caused Judge Martin to reject the *Burks* plaintiff's request. To the contrary, the discovery sought by Movants has repeatedly been recognized as appropriate in other courts, and it follows the course of discovery endorsed by Judge Martin in the *Burks* opinion itself.

The *Burks* plaintiff had sought two different pieces of discovery: he asked Dr. Shansky to produce the documents Dr. Shansky had relied upon to prepare his opinions in the *Lippert* report, *see* ECF 653 at 2-3, and he sought Dr. Shansky's deposition about the conclusions Dr. Shansky had reached in his *Lippert* report. *Id.*

---

[3]     The UPLC's position that the information sought in the subpoena cannot be released under the protective orders in this case also presents a common "question of law" that generates the "necessary legal predicate for intervention" under Rule 24(b)(1)(B). *See* ECF 653 at 6 (quoting *Jessup*, 227 F.3d 998).

6

Judge Martin held that on their merits, both requests were not appropriate. As to the request for documents, Judge Martin observed: "The originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim." ECF 653 at 3 n.3. As to the request for deposition, Judge Martin held that "the modification [to the *Lippert* protective orders] Mr. Burks seeks would retroactively undo the terms on which Dr. Shansky consented to perform his work," noting that Dr. Shansky's declaration (submitted in opposition to the *Burks* motion) stated that "[Dr. Shansky] 'would not have accepted the appointment in this case if I had believed that, in spite of the clear language of the [protective] Order, I could be subpoenaed for documents or testimony in the hundreds of individual health care cases against IDOC or its contractor, Wexford Health Services, Inc.'" ECF 653 at 9 (quoting Shansky declaration). Judge Martin further held that permitting the deposition of experts appointed pursuant to Rule 706 was contrary to the rule, and would make it harder for courts to recruit Rule 706 experts in the future. *Id.* at 8-10. Judge Martin therefore denied the *Burks* plaintiff's request to modify the protective order to permit Dr. Shansky's deposition. *Id.* at 11.

The discovery sought through the UPLC subpoena does not implicate any of the concerns raised by the *Burks* discovery. As an initial matter, Movants served the UPLC subpoena only after first attempting to gather documents underlying the *Lippert* reports from Wexford itself, in the underlying *Reed* litigation. It was only when Wexford represented that it was unable to identify patients referred to in the *Lippert* reports—and thus was unable to respond to the discovery—that Movants served the UPLC subpoena, which will allow Wexford to identify patients responsive to the underlying discovery in the *Reed* case. Second, the UPLC subpoena does not seek a deposition, and does not require anything from any of the *Lippert* report authors

7

at all. It merely seeks production of a handful of documents that Movants anticipate will permit them to gather discovery in the underlying *Reed* litigation. The UPLC subpoena presents none of the burdens on the Rule 706 expert witnesses that were at issue in the *Burks* opinion, nor does it run afoul or Rule 706 itself.

The purpose of the UPLC subpoena thus is not to gather any discovery from the Rule 706 experts themselves but rather to enable the gathering of documents *underlying* the *Lippert* reports. In multiple decisions, district courts have recognized that the documents underlying the *Lippert* reports are an appropriate subject of discovery relating to *Monell* claims like the ones that Movants have brought in the *Reed* case. In *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at \*3 (N.D. Ill. Nov. 24, 2020), for example, a plaintiff sought "the documents underlying the *Lippert* reports" to support his "*Monell* claim against Defendant Wexford[.]" In opposition Wexford cited the order protecting the *Lippert* Rule 706 experts from discovery, but the *Lymon* court rejected that argument as irrelevant, holding that Wexford had already produced much of the underlying material and as such production was not prohibited. *Id.* at \*6. The court reached the same conclusion in *Wilkerson v. Chamberlain*, No. 3:17-cv-50046, ECF 206 (N.D. Ill. Mar. 29, 2021), granting the plaintiff's motion to compel Wexford to produce "documents underlying the *Lippert* Reports, together with documents [Wexford] and third parties provided to the *Lippert* Reports' authors and documents referenced in the reports," *Wilkerson*, No. 3:17-cv-50046, ECF 206 at 1, 3. In doing so, the *Wilkerson* court recognized that such discovery was appropriate because "[e]vidence that [Wexford] was on notice of this issue may be found through sources including the documents underlying the *Lippert* Reports." *Id.* at 2. In *Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-cv-50044, 2021 WL 5232733, at \*6 (N.D. Ill. Nov. 10, 2021), another court permitted a plaintiff to gather information underlying the *Lippert* reports

8

over Wexford's objection, holding that this information was relevant to the plaintiff's *Monell* claims against the company. In doing so, the *Arsberry* court rejected Wexford's contention that ordering production would "'encroach on the authority of the *Lippert* court and raise a concern about duplicitous litigation.'" *Id.* at 8 (quoting defense brief). To the contrary, *Arsberry* held, the documents underlying the *Lippert* reports would allow the plaintiff to "support his *Monell* claims in this case," which the plaintiff could do by "either identifying other similarly situated plaintiffs who were subjected to the same policies he alleges in his complaint or by providing the documents produced by Wexford and the IDOC to his own experts to opine on the policies or practices that they disclose." *Id.* Movants here have served the UPLC subpoena for the purpose of gathering similar *Lippert* information from Wexford, and have done so for the very purposes identified as appropriate in *Arsberry*. Indeed in issuing the HIPAA order covering third-party health information in the underlying *Reed* case, Judge McGlynn noted that such a scope of discovery was entirely appropriate in light of the Movants' *Monell* claims. *See* **Ex. 5** at 4.

      Movants respectfully submit that the foregoing is good cause to modify the existing protective orders in this case or for the Court otherwise to issue an order permitting UPLC to respond to Movants' subpoena. *See* Fed. R. Civ. P. 16(d) (permitting modification of pretrial orders). Movants, of course, take no issue with the existing protective orders covering information relating to the *Lippert* reports as generally applied. Movants submit, however, that modification is appropriate for the limited purpose of permitting UPLC to respond to Movants' subpoena. Movants have served the subpoena in order to further *Monell* discovery in their own case against Wexford; that discovery has been recognized as appropriate and legitimate by multiple courts, including *Lymon*, *Wilkerson*, and *Arsberry*, and by Judge Martin in the *Burks* decision itself; and any responses to the UPLC subpoena will not be disclosed publicly, but

9

rather will be held in confidence pursuant to the HIPAA-qualified protective order that has been entered in the underlying *Reed* litigation.

\* \* \*

**WHEREFORE**, Movants Lenn and Lennisha Reed respectfully request that the Court:

**(1)** grant Movants leave to intervene in this matter pursuant to Rule 24(b)(1)(B) for the limited purpose of seeking modification of the protective orders in this case to permit a response to the UPLC subpoena, and

**(2)** issue an order modifying the existing protective orders or otherwise permitting the UPLC to respond to the subpoena issued to it by Movants.

November 29, 2021

Respectfully submitted,

/s/ Stephen H. Weil
Stephen H. Weil
Attorney for Plaintiff

Jon I. Loevy
Sarah C. Grady
Stephen H. Weil
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
weil@loevy.com

**CERTIFICATE OF SERVICE**

    I, Stephen Weil, an attorney, hereby certify that on November 29, 2021, I filed a copy of the foregoing via the CM/ECF system, which effected service on all counsel of record.

                                              /s/ *Stephen Weil*
                                              Stephen Weil
                                              Attorney for Plaintiff