**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DON LIPPERT, et al.,

               Plaintiffs,

v.

PARTHA GHOSH, et al.,

               Defendants.

Case Number  10 cv 4603

District Judge Jorge L. Alonso

Magistrate Judge Susan E. Cox

**AMENDED RESPONSE OF WEXFORD HEALTH SOURCES, INC., TO LENN REED, JR.'S AND LENNISHA REED'S, MOTION TO INTERVENE TO MODIFY PROTECTIVE ORDER**

**TABLE OF CONTENTS**

TABLE OF AUTHORIES…………………………………………………………………iii

I.  Introduction…………………………………………………………………………1

  A.  The Procedural Setting for the Motion to Intervene to Modify the Protective Orders……...1

  B.  The Stipulated Protective Order……………………………………………………..3

  C.  The Orders Appointing Experts Dr. Shansky and Dr. Puisis………………………….4

II.  Argument…………………………………………………………………………...6

  A.  The Court Should Not Permit the Reeds to Use Fed. R. Civ. P. 24 as a Basis to Intervene in the Present Lawsuit……………………………………………………………..6

  B.  The Jurisprudence Does Not Support Modifying the Protective Order……………………11

III.  Conclusion…………………………………………………………………...17

# TABLE OF AUTHORITIES

**Cases**

*Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-cv-50044, 2021 WL 5232733, at *6 (N.D. Ill. Nov. 10, 2021) ................................................................................................................ 17

*Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, __ F.4th __, 2021 WL 5230855 (7th Cir., Nov. 10, 2021) ........................................................ 11, 14, 15, 16

*Griffith v. University Hospital, L.L.C.*, 249 F.3d 658 (7th Cir. 2001) ............................................ 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ................................................................................................................................... 9

*Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985 (N.D. Ill. Nov. 24, 2020) ..... 12, 13

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976) ....................................................................................................................................... 9

*Spring Commc'ns Co. v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2535, 171 L. Ed. 2d 424 (2008) .... 9

*Wilkerson v. Chamberlain*, No. 3:17-cv-50046, ECF 206 (N.D. Ill. Mar. 29, 2021) .................. 17

*Wilson v. Wexford*, 932 F.3d 513, 522 (7th Cir. 2019) .................................................... 11, 14, 16

**Rules**

Fed. R. Civ. P. 24(b)(1)(B) ......................................................................................................... 8

NOW COMES Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Cassiday Schade, LLP, and for its Amended Response to LENN REED JR.'s and LENNISHA REED's Motion to Intervene and Motion to Modify the Protective Order (Court Doc. #1484) (the "Motion to Intervene"), states as follows:

## I.   **INTRODUCTION**

### A.  **The Procedural Setting for the Motion to Intervene to Modify the Protective Orders**

Lenn Reed, Jr. and Lennisha Reed ("the Reeds") have brought a claim in a separate lawsuit pending in the Southern District, Docket No. 20-cv-01139, against three physicians, Dr. Stephen Ritz, Dr. Vipin Shah, and Dr. Faiyaz Ahmed, and Wexford Health Sources, Inc. ("Wexford"), a private entity that has contracted to provide medical services to IDOC inmates.  In their Motion to Intervene, the Reeds request that this Court modify the April 11, 2012, Stipulated Protective Order entered in this case in order to strip anonymity from the inmate patients examined and reported upon by the Court's appointed expert witnesses as afforded by the Stipulated Protective Order. *See* Motion to Intervene, Doc. 1484; Stipulated Protective Order, Doc. 111.

The Motion to Intervene arises in the context of the Reeds' discovery requests in the underlying *Reed* litigation.  The Reeds issued discovery to Wexford and other defendants in *Reed* seeking documents related to preparation of the 2014 and 2018 expert reports in this case which were subject to extensive protections under the Protective Order issued in this matter.  *See* Doc. 1484-2.  Defendants in *Reed, et al. v. Wexford, et al.* objected to those discovery requests.  The Reeds then issued two subpoenas to third parties to the *Reed* matter that also sought production of information of several types that was ordered to be confidential in the *Lippert* matter; one to the Uptown People's Law Center ("UPLC") (Doc. 1484-3), and one to the Illinois Department of Corrections ("IDOC").

The subpoena that the Reeds issued to UPLC requests production of: "All documents sufficient to identify by name and IDOC # all patients discussed in the 2014 (Shansky) and 2018 (Puisis) court-appointed expert reports submitted in Lippert v. Godinez, No. 1:10-cv-04603 (N.D. Ill.)" There is no limitation on this request in definitions or instructions attached to that request that corresponds to the terms of this Court's Protective Order. *See* Doc. 1484-3. The subpoena issued to the IDOC sought similar disclosures, but it included several other requests as well.[1]

Both the UPLC and the IDOC responded to the Reeds' subpoena with objections, including objecting to producing documents when doing so would violate this Court's Protective Order. (*See* UPLC Objections, Doc. 1484-6; November 3, 2021, Correspondence from Eric Rieckenberg stating objections of IDOC to Subpoena, Doc. 1486-2.)

Before receiving UPLC's objection to the Reeds' subpoena, Wexford and co-defendants in *Reed, et al. v. Wexford, et al.* opened a miscellaneous action in the Northern District of Illinois and filed their Motion to Quash the subpoena. *See Reed v. Wexford*, No. 1:21-cv-05954-SJC (N.D. Ill.) (Coleman, J.).

Judge Coleman conducted a telephonic hearing on Defendants' Motion to Quash on November 12, 2021. *See Reed v. Wexford,* No. 1:21-cv-05954-SJC, Doc. 8 (N.D. Ill.). In the Motion to Quash and at the hearing on the Motion to Quash, Defendants' counsel informed Judge Coleman of the Protective Orders issued in this matter. The Reeds then disclosed that UPLC had responded to their subpoena by stating that UPLC could not produce the requested documents.

---

[1] The subpoena that the Reeds issued to the IDOC is significantly more extensive than that issued to UPLC, incorporating 34 numbered requests and numerous sub-parts. *See* Doc. 1486-1. The subpoena requests the disclosure of documents subject to Protective Orders issued in this case. For example, in item No. 8 the Reeds request the IDOC "Produce documents sufficient to identify, by name and IDOC Number, each prisoner whose medical care is discussed in the 2014 Lippert Report," and Item No. 13 requests "documents sufficient to identify, by name and IDOC Number, each prisoner whose medical care is discussed in the 2018 Lippert Report." *See id.* pp. 4-5.

Judge Coleman continued the motion to quash pending resolution of Movants' present motion to intervene in this case and scheduled a status conference for November 29, 2021. *See id.* Doc. 8 (Nov. 12, 2021).

On November 29, 2021, the Reeds filed their Motion to Intervene in this matter to request modification of the Protective Orders issued in this matter. *See* Doc. 1484. The motion was noticed for presentment on December 3, 2021. *See* Doc. 1485. On December 2, 2021, out of an abundance of caution in case the matter was to be argued on December 3rd, Wexford filed its first Response in opposition to the Reeds' Motion to Intervene and Modify Protective Order. *See* Doc. 1493. On December 3, 2021, the Court ordered that Wexford shall file an amended objection to the Reeds' Motion to Intervene by December 17, 2021. *See* Doc. 1499.

**B. The Stipulated Protective Order**

The subpoenas to UPLC and IDOC expressly and specifically request information that is barred from production by orders issued in this matter. The Stipulated Protective Order entered by this Court on April 11, 2012, provides that materials can be designated "Confidential," or "Attorneys Eyes Only." The documents to be designated "CONFIDENTIAL," can only be disclosed to:

> (a) the Court, its officers, and any jury seated to hear this case;
> (b) the attorneys of records in this case, employees of the attorneys of record engaged in this action, and outside litigation support providers retained by the attorneys of records…, all of whom shall use such information solely for purposes of this litigation, provided that each outside litigation support provider signs a confidentiality agreement…
> (c) third party experts or independent consultants engaged by the attorneys of record in this case or by the parties to assist in this litigation ("Experts"), who shall use such information solely for purposes of this litigation, provided that each Expert signs a confidentiality agreement…
> (d) the Parties…
> (e) witnesses or deponents whose testimony is reasonably related to the confidential information sought to be disclosed to him or harm provided that each such person signs a confidentiality agreement…"

Doc. 111 p. 2-3.

Defendant does not know what records are retained by the UPLC; however, to the extent they have retained records marked "CONFIDENTIAL," the Reeds and their counsel undisputedly do not fall within the list of persons that the "CONFIDENTIAL" records can be disclosed to, thus the records "shall not be disclosed." *Id.*

Second, the Stipulated Protective Order provides that documents designated "ATTORNEY'S EYES ONLY" shall only be disclosed to:

> (a)     the Court, its officers, and any jury seated to hear this case;
> (b)     the attorneys of records in this case, and employees of the attorneys of record engaged in this action, who shall use such information solely for purposes of this litigation, provided that each outside litigation support provider signs a confidentiality agreement…
> (c)     Experts, who shall use such information solely for purposes of this litigation provided that the Disclosing Party and the Expert comply with all requirements of Paragraph 2(c) above.

*Id.*

Again, Defendant does not know what records are retained by the UPLC. To the extent they have retained "ATTORNEY'S EYES ONLY" records the Reeds and their counsel undisputedly do not fall within the list of persons that the "ATTORNEY'S EYES ONLY" records can be disclosed to, thus they also "shall not be disclosed." *Id.*

The Stipulated Protective Order remains in full force until it is modified by this Court. *See* Doc. 111, pp. 7-8.

## C. The Orders Appointing Experts Dr. Shansky and Dr. Puisis

On December 19, 2013, this Court issued an order appointing an expert for the Court. *See* Agreed Order Appointing Expert, Doc. 244. Subpart 6a of that order required the expert, his

consultants and assistants, and "counsel for any party,"[2] to "maintain the confidentiality of all material obtained and reviewed pursuant to this Order, as if all material was marked 'Attorneys Eyes Only' as set forth in the Protective Order entered by this Court on April 11, 2012." Doc. 244, p. 5.

The reports prepared by court-appointed experts in the instant (*Lippert*) matter included analysis of confidential medical information provided on hundreds, if not thousands, of particular inmates whose identities were ordered to be anonymized and to remain secret. The inmates were identified in the reports by numbers only. These inmates received no notice of the inclusion of their confidential medical information in the reports, and they did not give their consent to be included in the reports.

The Reeds' subpoena requests that UPLC provide information that would strip the confidentiality away from those inmates. The inmates would then become subject to public scrutiny and involvement in any case in which parties may seek to use the *Lippert* reports currently or in the future. The *Lippert* court obtained the consent of the parties in that action to publicly produce and analyze the particular medical histories of these inmates on the express conditions that the inmate patients' anonymity would not be lost, subjecting them to such public exposure. Such was one of the primary functions of the Stipulated Protective Order.

This Court issued its Second Order Appointing Expert on December 8, 2017. *See* Doc. 593. The Court appointed Dr. Michael Puisis as an expert pursuant to Rule 706 of the Federal Rules of Evidence. That Order also required compliance with the Stipulated Protective Order. *See* Doc. 593, pp. 2, 5.

---

[2] The respondent to the subpoena at issue in this motion serves as counsel for one or more parties in the *Lippert* matter, and so qualifies as "counsel for any party" as that term is used in Subpart 6a of the order at Exhibit B.

## II.     <u>ARGUMENT</u>

In their Motion to Intervene, the Reeds seek to negate the protections agreed upon by the parties, for the sole purpose trying to further their own claims in a separate and entirely unrelated case. The Reeds' motion should be denied for several reasons.

First, allowing Lenn Reed, Jr. and Lennisha Reed to intervene would unduly delay proceedings in the *Lippert* case, as well as all other pending and future cases involving alleged systemic issues pertaining to correctional healthcare systems that contemplate the appointment of an expert pursuant to Fed. R. Civ. P. 706. In addition, intervention would prejudice the original parties in the *Lippert* matter. Furthermore, Fed. R. Civ. P. 24 does not serve as proper grounds to intervene in the present litigation for the purpose of accessing information for the purpose of trying their own lawsuit. Specifically, the Reeds do not have standing to intervene because their claim is entirely unrelated to the claim in *Lippert*. The Motion to Intervene should be denied as a matter of law.

**A. The Court Should Not Permit the Reeds to Use Fed. R. Civ. P. 24 as a Basis to Intervene in the Present Lawsuit.**

    *1. <u>Allowing Plaintiff to Intervene Would Delay Proceedings in the</u>* Lippert *<u>Case and Greatly Prejudice the Parties to this Litigation</u>*

Fed. R. Civ. P. 24 states "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In *Griffith v. University Hospital, L.L.C.*, 249 F.3d 658 (7th Cir. 2001), a large class action suit had reached tentative settlement based on the terms of the protective order at issue. *See Griffith v. University Hospital, L.L.C.*, 249 F.3d at 661. The district court in *Griffith* denied a motion for intervention and modification of the protective order because it would upset the finality of the settlement, thereby prejudicing the *Griffith* class plaintiffs. *Id.* Here, granting the Motion

to Intervene would unduly delay this case (and all other pending and future cases involving systemic correctional healthcare), as well as prejudice the original *Lippert* parties.

In regard to delay, the basis of the Reeds' desire to obtain the confidential medical documents is to further support the *Monell* claim asserted against Wexford in their own lawsuit. As the Court is well aware, there are hundreds, if not thousands, of claims against Wexford and the IDOC filed in Illinois in which this information will be sought by plaintiffs. Should the Reeds' request to modify the Protective Orders be granted, the "floodgates" would be opened to similar motions filed by inmates asserting claims against Wexford and the IDOC. Thus, this Court and the parties would be bombarded with an overwhelming amount of ancillary litigation regarding production of documents in this case to plaintiffs in other cases resulting in undue delay in an already complex case that has now been open for over 10 years.

Furthermore, all parties agreed to the Order's entry for the sole purpose of obtaining expert-formulated solutions to possible deficiencies. *See Lippert* Doc. 244, ¶ 1a. To facilitate this endeavor, the parties agreed that the Expert would be protected from being called as a witness in unrelated cases to testify on the privileged knowledge and information he obtained, (Doc. 244 ¶ 1b), and that the parties' sensitive documents under his review would be protected with heightened confidentiality, (Doc. 244 ¶¶ 6a-b). Modifying the Order in the manner requested by the Reeds would discourage this sort of consultation and cooperation as in the absence of confidence in such agreed orders, experts and parties will understand that working towards solutions comes at the cost of experts being flooded with subpoenas, and parties exposing themselves liability. As such, granting the Reeds' Motion to Intervene would have such far-reaching implications that it would not only cause delay in this case; but in fact, would delay all pending and future cases involving systemic correctional healthcare because the parties and the Court will have difficulty in obtaining

7

experts to testify based upon the exposure of being compelled to give deposition testimony in countless unrelated cases.

Allowing confidential information to be disseminated not only to the Reeds, but also the hundreds of inmates that will seek similar documents should this Court grant the Motion to Intervene, will unduly prejudice Defendants by allowing inmates to access confidential information that was only intended to be privy to the attorneys and experts in this case; and thus, impeding their ability to defend their position in other cases filed by IDOC inmates. *See* Doc. #244 at ¶ 1b. In fact, the Order was entered to prevent the disclosure of sensitive information in situations exactly like this.

Based upon the foregoing, there is no doubt that granting the Reeds' request to intervene and modify the Stipulated Protective Order will lead to undue delay and prejudice to the *Lippert* parties. As such, this Court should deny the Motion to Intervene as a matter of law.

      *2.* <u>*The Court Should Not Grant the Reeds Permissive Intervention Pursuant to Fed. R. Civ. P. 24(B).*</u>

Fed. R. Civ. P. 24 allows for permissive intervention when someone "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Article III standing requires an injury-in-fact capable of being redressed by a favorable decision of the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). An injury-in-fact is "a 'concrete and particularized' invasion of a 'legally protected interest.'" *Spring Commc'ns Co. v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2535, 171 L. Ed. 2d 424 (2008) (*quoting Lujan*, 504 U.S. at 560). The injury-in-fact must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Furthermore, standing exists only if it is "'likely,' as opposed to merely 'speculative,' that the

injury will be 'redressed by a favorable decision.'" *Id.* (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)).

This Court granted a motion to intervene in this case filed by a plaintiff in another suit, *Burks v. Soto*, No. 15-cv-00055 (N.D. Ill), that involved the confidentiality of certain *Lippert* expert materials. *See Lippert,* Doc. 653 (Mar. 9, 2018). This Court found that because Burks sought to intervene in this case to request a change in the Order appointing Dr. Shansky, Burks did not meet the criteria for intervening under Rule 24 of seeking to "resolve an issue on the merits that is in common with the claims or defenses of the parties." Doc. 653, p. 5. The Court found that Burks's challenge to the Order appointing Shansky, "[l]ike a third-party challenge to a protective order…lacks a clear fit with the literal terms of Rule 24(b)." *Id.* Nevertheless, the Court granted the Burks Motion to Intervene, stating that the Court "cannot find that permitting intervention in this case for the limited purpose of deciding the modification issue 'impermissibly stretches the wording of the Rule.'" *Id.* The Court noted that it was applying a "flexible" interpretation of Fed. R. Civ. P. 24 in order to grant Burks's motion to intervene. Doc. 653, p. 6. The Court found that Burks had an interest, subject to Fed. R. Civ. P. 45(d)(3)(B)(ii), in seeking to depose Dr. Shansky about his expert work in his case "as there is no federal privilege against compelled expert testimony." *Id.* The Court further found that the parties had an interest in resolution of the question of whether Dr. Shansky could be compelled to testify; "the parties' interest in prohibiting Dr. Shansky from providing testimony in an unrelated case based on the knowledge and information he gained during the course of performing his expert work in this matter is a sufficient question of law between the parties and Mr. Burks." *Id.* In sum, the Court utilized its discretion to grant permissive intervention to Burks in order to address Burks's request

9

for modification of the order appointing Dr. Shansky as an expert in order to resolve the question of whether Dr. Shansky would be compelled to testify about his work in this matter.

The Reeds' Motion to Intervene is distinguishable because the basis for granting permissive intervention to Burks does not support intervention by the Reeds. The Court granting the Reeds' Motion to Intervene would not spare an expert from the obligation to repeatedly defend against requests for his deposition in unrelated cases. In fact, granting the Motion to Intervene would open the door to repeated attempts to intervene to ask the Court if it still intends the parties to comply with its Orders. Granting the Reeds' Motion to Intervene would invite other unrelated litigants to use the order to justify their attempt to intervene in this matter for the purpose of seeking confidential materials underlying the appointed expert reports. As an example of this, the Reeds cite as support for their Motion to Intervene the Court's Order granting Burks's Motion to Intervene.

Additionally, the Burks Motion to Intervene is distinguishable because the Court could more easily issue a categorical answer to the question posed by Burks than that posed by the Reeds. The Burks plaintiff sought an answer to the question: Can Dr. Shansky be compelled to testify in an unrelated case about his work in *Lippert*? That could be answered, as the Court did: "No." The question the Reeds plaintiffs seek to pose could arise in different forms because the confidential materials considered by Dr. Shansky were of different types collected from different parties, permitting ambitious litigants to raise the question in different forms to distinguish their request for modification of the Orders. The Reeds seek to intervene to request modification of the Court's Orders (the Stipulated Protective Order, at least) that would permit UPLC to produce documents identifying anonymized inmates discussed in the Shansky and Puisis reports. If the Court were to grant their Motion to Intervene, but deny the requested modification (i.e., a similar

10

result to Burks's Motion to Intervene), other litigants with an interest in the materials would be encouraged to move to intervene to test their theories on why the Orders should be modified.

It is evident that the Reeds do not have a right to intervene in this case in order breach the Order, and to obtain information for the sole purpose of trying their suit. Further, the bases for granting permissive intervention to Burks do not support granting it to the Reeds, and granting the Reeds' request to intervene would delay proceedings in *Lippert* and discourage parties and experts from engaging in the process ordered by the Court in this case. The Court should not grant the Reeds' Motion to Intervene.

**B. The Jurisprudence Does Not Support Modifying the Protective Order.**

The jurisprudence cited by the Reeds does not support modifying the Protective Order to allow production of the documents underlying the *Lippert* reports. Additionally, as discussed below, the U.S. Court of Appeals for the Seventh Circuit in *Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, __ F.4th __, 2021 WL 5230855 (7th Cir., Nov. 10, 2021), and *Wilson v. Wexford*, 932 F.3d 513, 522 (7th Cir. 2019), has held that the *Lippert* reports are hearsay; that a party seeking to use them must show that they are properly submitted for a non-hearsay purpose; and that the non-hearsay purpose of providing notice to Wexford of the reports' contents is not satisfied in cases (at least) where the plaintiff alleges violations at a facility not covered by the reports. The facility where the Reeds allege constitutional violations, Lawrence Correctional Center, was not addressed in the *Lippert* reports. Under that jurisprudence, the Reeds cannot use the *Lippert* reports as evidence in their case. The Reeds cannot show good cause to amend the Court's Stipulated Protective Order or its Orders appointing experts to permit the stripping of anonymity from inmates discussed in the *Lippert* reports.

The Reeds cite *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985 (N.D. Ill. Nov. 24, 2020), for the proposition that documents underlying the *Lippert* expert reports should be produced in discovery despite the Stipulated Protective Order entered in this case. Somewhat puzzlingly, the Reeds assert that the *Lymon* court "rejected" an argument in that case that the Stipulated Protective Order prohibited production of the documents, "holding that Wexford had already produced much of the underlying material and as such production was not prohibited." Doc. 1484, p. 8. But the court simply did not make that finding. When addressing the Stipulated Protective Order, the court in *Lymon* stated the following:

> However, as Plaintiff points out, the protective order entered in Lippert states that "[n]othing in this Order shall prevent a Party from disclosing or using any of its own documents, information or things as it deems appropriate." Lippert, No. 1:10-cv-04603, Dkt. 111 at 8. Additionally, the court in Lippert acknowledged that an intervening party was able to request the underlying documents from the IDOC and Wexford directly for his case. See Lippert, No. 1:10-cv-04603, Dkt. 653 at 3 n.3 ("The originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim."). As such, ordering Defendant Wexford or the IDOC to produce the underlying documents does not violate these court orders.

*Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at \*19.

Contrary to the Reeds' argument, the *Lymon* court did not find that "Wexford had already produced much of the underlying material." The reasons provided by the *Lymon* court for overruling the Stipulated Protective Order to compel production of materials underlying the expert reports were that (1) the Stipulated Protective Order permits parties to produce their own documents; and (2) the *Lippert* Court's statement in a footnote to the Court's Order denying Burks's request for a deposition of Dr. Shansky that, "[t]he originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim." *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at \*19; *Lippert*, Doc. 653, at page 3, fn 3.

The two bases for the decision in *Lymon* to compel production of documents underlying the Shansky report do not apply here, and therefore the *Lymon* decision is inapposite to the Reeds' Motion to modify the Stipulated Protective Order.

The *Lymon* court's reasoning that the *Lippert* Court's Orders did not prevent production of underlying documents in that case because the Stipulated Protective Order permits a party to produce its own documents is irrelevant to the Reeds' request for modification of the Court's Orders. This Court apparently did not believe the provision that permitted a party to produce its own documents vitiated the other portions of the Stipulated Protective Order and Orders appointing experts—it entered each of those orders and presumably did not consider them moot. Additionally, as UPLC has presumably correctly concluded in stating that the Court's Orders prevent it producing the documents sought in the Reed Plaintiffs' subpoena, the medical documents sought were not created by UPLC, and so cannot be produced pursuant to that portion of the Stipulated Protective Order.

Neither does the *Lymon* court's reading of footnote 3 of the Court's Order on Burks's Motion to Intervene (Doc. 653) support the Reeds' request for modification of the Stipulated Protective Order. In that portion of the Court's Order on Burks's Motion, the Court was disagreeing with Burks that he was entitled to a deposition of Dr. Shansky because Dr. Shansky's disposal of the documents that informed his opinions made his testimony the only available evidence. *See* Doc. 653, p. 3. In denying Burks's request to amend the Protective Orders to compel Dr. Shansky's testimony, the Court noted that Burks could have sought discovery from Wexford or IDOC instead of Shansky. The *Lippert* Court did not modify its Stipulated Protective Order or Orders appointing experts, or otherwise state that Burks could have obtained confidential

13

documents underlying the Shansky report that the parties and their counsel (like UPLC) are expressly forbidden to produce.

Furthermore, although the *Lymon* court also held that the *Lippert* reports and the underlying documents could potentially be used for non-hearsay purposes, such as notice to Wexford of the conclusions reached in the Shansky report, the U.S. Seventh Circuit has limited that use of the *Lippert* reports in *Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, __ F.4th __, 2021 WL 5230855 (7th Cir., Nov. 10, 2021). Per *Dean*, the Reeds cannot use the *Lippert* reports as evidence in support of their *Monell* claim because, *inter alia*, they cannot show that the reports provided notice of conditions at Lawrence Correctional Center.

As recognized by the U.S. Seventh Circuit, the *Lippert* reports are hearsay and cannot be submitted as evidence for the truth of the matters asserted therein. *See Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *33, __ F.4th __, 2021 WL 5230855; *Wilson v. Wexford*, 932 F.3d 513, 522 (7th Cir. 2019). Nevertheless, the Reeds state that they seek to use the *Lippert* reports and the underlying documents as evidence of the truth of the matters asserted in the reports. To quote the Reeds:

> In support of its *Monell* allegations, the *Reed* complaint points to two expert reports submitted in this case (i.e., Lippert), see id. ¶¶ 41-45, that had been filed in 2014 and 2018 (these are also referred to as the "Shansky" and "Puisis" reports). In these reports, experts appointed by this Court pursuant to Fed. R. Evid. 706 identified numerous cases where Wexford medical personnel were slow to diagnose and slow to treat cancer, resulting in multiple unnecessary deaths. *Id.*

Doc. 1484, p. 2.

The Reeds expressly state that they will use the *Lippert* reports to support their *Monell* allegations. They suggest that they will submit the reports – and the documents consulted in creation of the reports – as evidence that Wexford personnel were slow to diagnose and treat cancer, causing deaths.

14

The Reeds have not offered any reason why the *Lippert* reports would not be hearsay in this matter. In *Dean v. Wexford* the plaintiff attempted to justify their use of the reports despite their status as hearsay by stating that they did so for the non-hearsay purpose of providing notice of their contents. The Seventh Circuit held that the 2018 Puisis report cannot be used for that purpose for events preceding the report, as it could not have provided notice before it existed. *See Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *34. The Seventh Circuit further indicated that a trial court could commit error in admitting the 2014 Shansky report as evidence of notice of its contents where the report did not address the facility where the plaintiff was incarcerated, and admission of the reports raised the possibility of causing undue prejudice to Wexford. *See Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *38-*40.[3]

The Reeds have not attempted to show that the *Lippert* reports could have provided notice to Wexford of an issue that was present in their case. The Decedent at issue in *Reed* was an inmate at Lawrence Correctional Center. *See* Doc. 1484-1, p. 3. Neither the 2014 Shansky report nor the 2018 Puisis report addressed Lawrence Correctional Center, or its staff, or its history of medical services. The reports offered different findings about different facilities: it would be purely speculative to assert that the experts would have found certain unsatisfactory conditions at Lawrence Correctional Center. The Seventh Circuit in *Dean* held that the Shansky report could not provide notice of conditions at a facility not covered in the report:

> Even assuming, moreover, that notice-only evidence can prove deliberate indifference for *Monell* liability, the 2014 report nonetheless falls short. The 2014 report provides notice—but notice of what? Taylorville was not one of the facilities

---

[3] The Seventh Circuit stated that it did not need to decide whether the trial court was in error in admitting the 2014 Shansky report, because the evidence admitted at trial—including the Shansky report—did not support the plaintiff's *Monell* claim by showing a pattern or practice of violations of constitutional rights similar to those alleged by the *Dean* plaintiff. One reason for this was that the facility where the plaintiff was incarcerated was not addressed in the Shansky report. *See Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *40, 49, addressed further below.

reviewed in the 2014 report, so the report could not have given Wexford notice of any specific problems occurring there.

*Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *49.

Lawrence Correctional Center is where Decedent in *Reed* was incarcerated, and, like Taylorville Correctional Center, that facility was not addressed in the *Lippert* reports. Even if the facility where Decedent had been incarcerated during the events alleged in his Complaint *had* been addressed in the *Lippert* expert reports, per the U.S. Seventh Circuit, that would not be sufficient basis for him to use the reports as evidence during his trial "without linking those problems to [the plaintiff's] personal experience." *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019). There is no factual basis—at least none identified by the Reeds—on which the *Lippert* reports could be used as evidence that Wexford received notice of conditions at Lawrence Correctional Center.

Wexford acknowledges that the *Dean* court addressed whether the trial court was in error to have admitted the *Lippert* reports at trial, and that the scope of what is admissible at trial is narrower than the scope of what may be obtained in discovery. However, in this matter, the fact that the *Lippert* reports are inadmissible hearsay for the Reeds should weigh against their argument that they need the materials underlying the report. Because the Reeds cannot submit the reports as evidence, the reports cannot support their *Monell* claim. For this reason and others addressed above, such as prejudice to the parties, the Reeds do not present good cause for this Court to modify its orders to strip the anonymity from the inmates discussed in the *Lippert* reports.

The Reeds also cite *Wilkerson v. Chamberlain*, No. 3:17-cv-50046, ECF 206 (N.D. Ill. Mar. 29, 2021), noting that it "reached the same conclusion" as the *Lymon* court. The court in *Wilkerson* relies upon the *Lymon* decision, and it summarily repeats some of the same reasoning stated in *Lymon* when addressing the Protective Orders:

> The argument that the reports themselves were inadmissible hearsay failed because the reports and/or underlying documents could be used for non-hearsay purposes, and the argument that the production of the documents underlying the report would violate orders in the Lippert case failed because the Lippert court specifically acknowledged that an intervening party could request those underlying documents. [*Lymon*] at *16, 19.

*Wilkerson v. Chamberlain*, No. 3:17-cv-50046, ECF 206, at 2.

Therefore, the court in *Wilkerson* echoed the *Lymon* court's finding that this Court had overruled its Stipulated Protective Order in footnote 3 of the Order denying Burks leave to depose Dr. Shansky. As noted above, these cases interpret that footnote to state much more than it states on its face, and in doing so, they contradict the express meaning of this Court's Stipulated Protective Order.

The Reeds also cite an order in *Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-cv-50044, 2021 WL 5232733, at *6 (N.D. Ill. Nov. 10, 2021). However, that order does not address the Stipulated Protective Order issued in this case. Additionally, that court only permitted documents related to specialty offsite treatment at Dixon Correctional Center from 2012-2018, and, notably, *the identification of all people in the report was to be redacted in the documents produced. See Arsberry*, No. 3:17-cv-50044, 2021 WL 5232733, at *17-*19. The relief requested in that case is so different from that requested by the Reeds in how it impacts the Orders of this Court and the parties that the *Arsberry* decision is irrelevant here.

### III.     CONCLUSION

The Reeds' Motion to Intervene should be denied. Allowing Lenn Reed, Jr. and Lennisha Reed to intervene would unduly delay and disrupt proceedings in this case, as well as all other pending and future cases involving systemic issues pertaining to correctional healthcare systems that contemplate the appointment of an expert pursuant to Fed. R. Civ. P. 706. In addition, intervention would prejudice the original parties in the *Lippert* matter. Furthermore, Fed. R. Civ.

17

P. 24 does not serve as proper grounds to intervene in the present litigation for the purpose of accessing information for the purpose of trying their own lawsuit.

Additionally, the Reeds' Motion to Modify the Protective Orders to permit UPLC to produce confidential documents underlying the expert reports should be denied. The modification requested by the Reeds would retroactively destroy the confidentiality expectations of all who contributed information to the expert reports, would expose confidential medical information of inmates without their consent, and would encourage plaintiffs in unrelated cases to expose such information for their own cases. The *Lippert* reports will not be admissible at trial in the Reeds' case. Lawrence Correctional Center was not evaluated by either Dr. Shansky or Dr. Puisis. Therefore, the reports will not support Plaintiff's *Monell* claim and should be barred from trial as hearsay and unduly prejudicial. The Reeds cannot use the materials as evidence, they cannot present good cause to amend the Stipulated Protective Order, and their request to fundamentally change to the Court's Orders to obtain materials they are prohibited from obtaining should be denied.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests that this Honorable Court deny LENN REED JR.'s and LENNISHA REED's, Motion to Intervene and Motion to Modify the Protective Order, and for whatever further relief it deems fair and just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Timothy P. Dugan
    One of the Attorneys for Defendant,
    WEXFORD HEALTH SOURCES, INC.

18

Timothy P. Dugan
ARDC No. 6271610
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
tdugan@cassiday.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to all counsel of record.

I also hereby certify that a true and correct copy of the foregoing Motion was served to the following non-CM-ECF participant at the following addresses via email on December 17, 2021. Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct:

ATTORNEYS FOR DEFENDANT, FAIYAZ AHMED, M.D.:
Keith Hill
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia, Suite 100
Edwardsville IL 62025
khill@heylroyster.com


ATTORNEYS FOR LENN REED JR. and LENNISHA REED
Sarah Copeland Grady
Jon I. Loevy
Stephen H. Weil
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
sarah@loevy.com
jon@loevy.com
weil@loevy.com


/s/ Timothy P. Dugan

10011524

20