## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Don Lippert *et al.*, | |
| Plaintiffs, | Case No. 1:10-cv-04603 (N.D. Ill.) |
| v. | Judge Jorge Luis Alonso |
| Partha Ghosh, *et al.*, | Magistrate Judge Susan Cox |
| Defendants. | |

## *REED* MOVANTS' REPLY IN SUPPORT OF MOTION TO INTERVENE

Movants Lennisha and Lenn Reed Jr. submit this reply in support of their motion to intervene, ECF 1484, and reply to *(1)* the amended response in opposition filed by Wexford and several of its employees (collectively "Wexford"), ECF 1506; and *(2)* the response filed by Uptown People's Law Center ("UPLC"), ECF 1508, in which UPLC notes that it does not oppose Movants' motion to intervene or to permit production of the requested material.

## BACKGROUND

In the underlying *Reed* litigation, Movants have alleged, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that Wexford has a widespread practice of providing inadequate care to patients suffering from cancer. Two reports filed in this case (*i.e., Lippert*) by experts appointed under Rule 706 (the 2014 "Puisis" and 2018 "Shansky" reports) identify numerous cases in which Wexford provided inadequate cancer care. Because proving a widespread-practice claim under *Monell* requires proving not just a single incident, but rather "a series of constitutional violations," *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 237 (7th Cir. 2021) (quotation omitted), Plaintiffs served document requests on Wexford asking it to produce medical records in its possession relating to multiple specific patients identified in the 2014 and 2018 reports as having received inadequate cancer care. As Movants noted in their

opening memorandum, their intention is to gather those medical records (along with medical records regarding the same cancer patients in possession of the IDOC) and then provide the records to their retained experts to opine on the policies or practices that the medical records of those cancer patients reveal. *See* ECF 1484 at 9. If those records do indeed reveal a widespread practice of providing inadequate care for cancer patients, Movants intend to use that information at trial in the *Reed* litigation to prove that Wexford does indeed have a widespread practice of providing inadequate care to cancer patients for whom it is responsible, as they have alleged.

That *Reed* discovery—of medical records in Wexford's own possession—is what the motion at bar in this case is ultimately about. And as Wexford tacitly concedes, multiple courts, including this Court, have held both that medical records in Wexford (and IDOC's) possession ***are not covered*** by the "Rule 706" protective orders that this Court issued for the Puisis and Shansky reports, and that such discovery is entirely appropriate for proving the *Monell* claims against Wexford, like the claims Movants seek to advance in *Reed*:

- *Lippert v. Ghosh* (*Burks v. Soto* motion to intervene), ECF 653 at 3 n.3 (N.D. Ill. Mar. 9, 2018) (denying intervenor's motion to take discovery from author of the Shansky report as covered by the 706 protective orders, but noting that "The originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim.").

- *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at \*\*5, 6 (N.D. Ill. Nov. 24, 2020) (ordering Wexford to produce documents in its possession underlying the *Lippert* reports and noting that the plaintiff intended to have his own expert opine on them. Also holding: "Wexford argues that responding to Plaintiff's discovery request [for documents it produced to the *Lippert* experts] would violate the court orders entered in the *Lippert* case. . . . However, as Plaintiff points out, the protective order entered in *Lippert* states that "[n]othing in this Order shall prevent a Party from disclosing or using any of its own documents, information or things as it deems appropriate.").

- *Wilkerson v. Chovinard*,[1] No. 3:17-cv-50046, ECF 206 (N.D. Ill Mar. 29, 2021) (citing *Lymon* and granting the plaintiff's motion to compel Wexford to produce "documents

---

[1] Movants inadvertently referred to this decision as "*Wilkerson v. Chamberlain*" in their motion to intervene, *see* ECF 1484 at 8.

underlying the *Lippert* Reports, together with documents [Wexford] and third parties provided to the *Lippert* Reports' authors and documents referenced in the reports," and noting that "In fact, at the hearing on November 30, 2020, after the subject order was issued in the *Lymon* case [*see Lymon*, *supra*], [Wexford] told the Court that it had determined upon investigation that the subject documents were produced pursuant to a subpoena to lawyers for the ACLU, and that it would get the documents from producing counsel within a relatively short period of time.").

- *Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-cv-50044, 2021 WL 5232733, at *8 (N.D. Ill. Nov. 10, 2021) ("Wexford also argues that producing the documents underlying the *Lippert* reports would 'encroach on the authority of the *Lippert* court and raise a concern about duplicitous litigation.' This Court does not find these objections supported. . . . Plaintiff seeks to use these documents to support his *Monell* claim as alleged in this case. He can do this by either identifying other similarly situated plaintiffs who were subjected to the same policies he alleges in his complaint or by providing the documents produced by Wexford and the IDOC to his own experts to opine on the policies or practices that they disclose.").

The underlying discovery sought by Movants is the same as the discovery described in each of these decisions: documents in Wexford's possession underlying the *Lippert* reports, specifically Wexford's own medical records of certain patients who are mentioned in the two *Lippert* reports. Movants are not making a document request to the *Lippert* Rule 706 experts, as Wexford incorrectly claims. *See* ECF 1506 at 6. Nor are they seeking to depose the *Lippert* experts, as Wexford incorrectly claims as well. *Id.* at 7. Rather, Movants seek production of documents that multiple courts have held to be both an appropriate subject of *Monell* discovery and specifically ***not*** prohibited by the Rule 706 "protective" orders that this Court issued to shield the Puisis and Shansky report authors from discovery in other cases.

The only reason that Movants are now before this Court is that when they served document requests on Wexford asking it to produce those medical records in the underlying *Reed* case, Wexford told Movants that it is unable to identify which patients were referred to in Movants' document requests, because the *Lippert* reports are anonymized. *See* ECF 1484 at 2 (explaining Wexford representation). As an initial matter, there are reasons not to take this

representation at face value. In *Lymon*, Magistrate Judge Jensen explained that while the public versions of the two *Lippert* reports (the only ones to which Movants have access) are anonymized, the *Lippert* experts provided "confidential versions of those reports" to the *Lippert* litigants which permitted them to identify the prisoner-patients described in the reports. *Lymon*, 2020 WL 6940985, at *4. Judge Jensen then went on to note: "***Defendant Wexford, although dismissed as a party in the Lippert case before the experts were appointed, also received confidential versions of the reports***." *Id.* n.4 (emphasis added). Thus it may be that when Wexford told Movants that it was unable to identify the individual patients described in the public, anonymized versions of the *Lippert* reports, it was misleading them.

In all events, in light of Wexford's representation that it was unable to identify the patients listed in the *Lippert* reports, Movants served the subpoena at issue in this motion to UPLC, which serves as class counsel for the plaintiffs in this case, asking it to produce documents that will permit them to identify the persons described in the *Lippert* reports. Movants believe the responsive documents in UPLC's possession will be the confidential versions of the *Lippert* reports described by Judge Jensen in *Lymon*, *supra*. If this Court permits UPLC to produce those confidential *Lippert* reports to Movants, Movants will in turn provide them to Wexford.[2] That will permit Wexford to identify medical records in its possession responsive to Movants' discovery requests in *Reed*, which will permit Movants to gather information relevant to their *Monell* claims in the underlying *Reed* litigation.

That is what Movants seek in their Rule 24 motion at bar. Their subpoena does not seek anything from Wexford, or anything from the *Lippert* report authors. Rather it asks UPLC to

---

[2] In *Reed*, Movants have also served a subpoena to IDOC asking it to produce medical records in its possession concerning the cancer patients identified in the two *Lippert* reports. That discovery is pending. If the IDOC also claims that it cannot identify those same patients, Movants will provide the confidential *Lippert* reports to the IDOC as well.

4

produce the confidential versions of the *Lippert* reports—which are necessary to enable Wexford
to identify and produce its own records in response to Movants' discovery in the underlying
*Reed* litigation. UPLC has responded to Movants' motion to intervene for its own part,
clarifying that while it believes that the confidential versions of the *Lippert* reports are covered
by this Court's "Rule 706" protective orders, UPLC does not oppose an order permitting it to
produce the confidential reports to Movants. ECF 1508. UPLC explains that Movants "are not
seeking to depose the Court-appointed experts, or making any other request which would require
production of documents not contained in the final report of the Court's experts. Rather, they
simply seek the names of the individual patients which were redacted from the version of the
reports which were filed on the public docket." *Id.* ¶ 3. Notably, UPLC explains that the privacy
interests of the patients identified in the confidential *Lippert* reports will be protected because
Movants included with their subpoena a HIPAA-qualified protective order in the *Reed*, "which
provides the same degree of protection for patient privacy as to the orders in this case." *Id.* ¶ 8.
No other party to this case has objected to Movants' motion, nor have the Puisis or Shansky
experts themselves—only Wexford.

## ARGUMENT

Wexford argues that Movants should not be permitted to intervene under Rule 24 because
doing so will interfere in the Court's management of this litigation. Specifically, Wexford
argues that permitting UPLC to produce the confidential versions of the *Lippert* reports to
Movants would *(1)* invade the privacy of the patients in those reports; *(2)* interfere with the
Court's management of this case by generating ancillary litigation about such confidential
disclosures; and *(3)* subject the *Lippert* report experts to discovery. Wexford also argues *(4)* that
*Dean* renders the underlying discovery irrelevant. Each of these arguments is meritless.

1. **The HIPAA order in *Reed* protects the privacy of the patients identified in the confidential *Lippert* reports.**

In its opposition Wexford repeatedly invokes the privacy of the patients identified in the confidential versions of the *Lippert* reports, claiming that allowing UPLC to produce the confidential reports will invade their privacy without providing them with any notice, such that their "anonymity will be lost." *See* ECF 1506 at 5. This argument studiously ignores a glaring fact: if UPLC produces the confidential *Lippert* reports to Movants, the reports and the information in them will be covered by the HIPAA-qualified protective order entered by the court in *Reed*. Before issuing the subpoena at issue here, Movants obtained from Judge McGlynn a HIPAA-qualified protective order in the underlying *Reed* litigation, and appended that protective order to the subpoena they served on UPLC. *See* ECF 1484-4. That HIPAA-qualified protective order specifically provides that any health information of third parties must be kept in confidence; that it may be used only for purposes of the litigation; and that at the conclusion of the litigation the third-party protected health information must be returned or destroyed. *Id.* Under HIPAA, these protections are specifically designed to protect the privacy interests of third parties—such as the patients identified in the *Lippert* reports—when discovering such third-party health information is necessary and appropriate in litigation. *See Reed v. Wexford Health Sources, Inc.*, No. 20-cv-01139-SPM, 2021 WL 5578076, at **1-3 (S.D. Ill. Oct. 19, 2021). As UPLC explained in its response to Movants' motion to intervene, it does not oppose production of the confidential *Lippert* reports because the HIPAA-qualified protective order provides "same degree of protection for patient privacy as to the orders in this case." ECF 1508 ¶ 8.

Wexford's failure to acknowledge the existence of the HIPAA order anywhere in its brief is a tacit acknowledgement that its "privacy" argument is frivolous. District courts have

uniformly rejected this same "privacy" argument everywhere Wexford has made it, and indeed they have begun to sanction Wexford for objecting to production of documents on grounds of a patient objection when a HIPAA-qualified order is in place. *See Haywood v. Wexford Health Sources, Inc.*, No. 16-cv-3566, 2021 WL 2254968, at **3, 10, 15 (N.D. Ill. June 3, 2021) (holding that "binding case law from the Seventh Circuit as well as a host of persuasive authority from courts in this District and across the country holds that non-party PHI may be disclosed consistent with HIPAA when a qualified protective order, like the one entered by the District Judge in this case, is in place," and sanctioning Wexford for resisting discovery notwithstanding the HIPAA order). The privacy interests of the patients identified in the confidential *Lippert* reports will be protected under the HIPAA order already entered in the *Reed* litigation.

## 2. Wexford's "floodgates" argument is meritless.

Wexford also argues that if the Court permits UPLC to produce the confidential *Lippert* reports to Movants, a "flood" of requests from other litigants will derail the management of this case. ECF 1506 at 7. This claim is dubious as a factual matter. Multiple courts—this Court in the *Burks* motion, and the courts in *Lymon*, *Wilkerson*, and *Asberry*—have held that plaintiffs in individual cases asserting *Monell* claims against Wexford should be permitted to request the documents in its possession that underly the *Lippert* reports. These decisions date back to 2018, but if they have generated a "flood" of similar requests, Wexford's brief does not identify them.

Even if permitting UPLC to produce the confidential *Lippert* reports might lead some other litigants to make the same request, moreover, what would the resulting "flood" be about? By all appearances the confidential *Lippert* reports at issue here consist of two, or perhaps a handful, of documents. The subpoena seeks production only from UPLC, and UPLC has not objected that producing the confidential reports would be burdensome in any way or lead it to

receive a flood of requests. *See* ECF 1508. Wexford pejoratively intimates that the private health information in the confidential reports would be exposed to other "inmates," *see* ECF 1506 at 8, but any litigant seeking the confidential reports would first need to obtain a HIPAA-qualified protective order from the court in their underlying case, meaning that the courts in those cases would have adjudged both that gathering third-party PHI was appropriate to the needs of that case and that issuing a HIPAA order was appropriate, on penalty of sanction. In short, permitting UPLC to produce the confidential *Lippert* reports will have no impact on the management of this case unless Wexford insists on continuing to file frivolous objections to their production, like this one.

### 3. Permitting UPLC to respond to Movants' subpoena does not affect the *Lippert* experts in any way.

Wexford argues that UPLC should not be permitted to produce the confidential *Lippert* reports to Movants because doing so will cause discovery and depositions to be taken of the Puisis and Shansky expert teams, in direct violation of the Rule 706 orders preventing such discovery. ECF 1506 at 6-7. This argument is utterly without foundation. Movants' subpoena seeks nothing of the sort, and would lead to nothing of the sort. It asks only UPLC to produce the confidential *Lippert* reports. It seeks no discovery from the Rule 706 experts at all, in any form. And if UPLC produces the confidential *Lippert* reports, the resulting discovery will not concern the experts, either. Rather Plaintiffs will provide the confidential reports to Wexford so that it can respond to Movants' discovery in the underlying *Reed* case. The Court's Rule 706 experts will not be affected in any way.

### 4. The *Dean* decision is inapposite to the discovery at issue here.

Finally, Wexford invokes the Seventh Circuit's decision in *Dean*, suggesting that *Dean* renders the *Lippert* reports and the documents underlying them irrelevant for purposes of

establishing *Monell* liability against Wexford. ECF 1506 at 14-16. There are two responses to this argument. **First**, Wexford simply misreads *Dean*. In *Dean* the plaintiff attempted to prove *Monell* liability against Wexford using evidence that its written policies were unconstitutional "as applied" to him alone. *Dean*, 18 F.4th at 236. On that narrow theory, granular changes to Wexford's written procedures and small variations in protocol at different IDOC prisons took on dispositive significance. *Id.* at 236-37. And the *Dean* plaintiff did not introduce the medical records of any of the patients discussed in the *Lippert* reports, but instead introduced only the *Lippert* reports themselves—not for the truth of the matter asserted, but for notice. *Dean* held that the *Lippert* reports themselves did not provide appropriate notice in the context of the plaintiff's narrow, "as applied" *Monell* theory, and that given the narrowness of the "as applied" theory, the problems that the plaintiff had identified could not be attributed to Wexford as a municipal entity. *Id.* at 237. In reaching this holding, *Dean* emphasized that "it is usually necessary in *Monell* cases to introduce evidence of a prior pattern of similar constitutional violations." *Id.* at 234.

The discovery here is entirely different: the *Lippert* experts identified numerous cases in which they concluded Wexford had provided inadequate care for cancer. In the underlying discovery in the *Reed* case, Movants seek to gather the medical *records* of those patients and provide them to their own experts to determine whether, in fact, Wexford was providing inadequate cancer care to them, and whether the problems at issue with those other patients were similar to the problems that plagued Wexford's care of Mr. Reed. Movants thus seek precisely the evidence that *Dean* calls for: a "pattern of similar constitutional violations," *id.*, which is discovery familiar to virtually every *Monell* widespread-practice case. Movants are only forced to seek intervention in *this* case because Wexford claims that it cannot identify the numerous

cancer patients listed in the *Monell* reports. *Dean*, which did not concern a widespread-practice claim, says nothing about the appropriate scope of that discovery.

**Second**, to the extent Wexford believes that *Dean* should limit or circumscribe the scope of the Movants' *Monell* discovery, there is no need to advance such granular arguments here, where the Court is not familiar with the issues in *Reed*, and has no need to be. Wexford can make such arguments before the *Reed* court itself via Rule 37 discovery motions regarding Movants' underlying discovery requests. All that is at issue in *this* case is whether UPLC may be permitted to produce a handful of documents comprising the confidential *Lippert* reports, which will permit identification of the various cancer patients listed in those reports, and permit medical records for those patients to be gathered and produced under the protection of the HIPAA orders in *Reed*.

## CONCLUSION

Wexford's objections to Movant's request are meritless. For the foregoing reasons, the reasons set forth in Movants' opening motion (ECF 1484), and the reasons set forth in UPLC's response to that motion (ECF 1508), Movants respectfully submit that the Court should permit them to intervene for the limited purpose of requesting the confidential *Lippert* reports from the UPLC; and that the Court should permit the UPLC to produce those reports to Movants, where their confidentiality will be preserved by the HIPAA orders entered in the *Reed* action.

January 18, 2022                                    Respectfully submitted,

                                                   /s/ Stephen H. Weil
Sarah C. Grady                                      Stephen H. Weil
Stephen H. Weil
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
weil@loevy.com

10