UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DON LIPPERT, *et al.*, | ) |
| Plaintiffs, | ) No. 10-cv-4603 |
| v. | ) Judge Jorge L. Alonso |
| | ) Magistrate Judge Susan E. Cox |
| PARTHA GHOSH, *et al.*, | ) |
| Defendants. | ) |

## ORDER

Movants Lennisha Reed and Lenn Reed, Jr. seek to intervene in this case to modify the Court's April 11, 2012 Stipulated Protective Order [dkt. 111] to permit third-party Uptown People's Law Center ("UPLC") to respond to their subpoena [dkts. 1484 (motion to intervene), 1521 (reply brief)]. Defendant Wexford Health Sources, Inc ("Wexford") opposes the motion [dkt. 1506].[1] Third-party UPLC has also filed a brief in the instant action indicating it has no objection to the protective order modification sought by Movants. For the following reasons, Movants' motion [dkt. 1484] is GRANTED. Movants are granted intervention into this action for the sole purpose of modification to the Stipulated Protective Order.

1. **Background**

The instant matter is a class action alleging inadequate healthcare on behalf of all prisoners in the custody of the Illinois Department of Corrections ("IDOC") [*see* dkt. 653, p. 1]. Movants, plaintiffs in a separate case, *Reed et al. v. Wexford Health Sources, Inc., et al.*, Case No. 3:20-cv-1139 (S.D. Ill.), assert that Lenn Reed, Sr., who was imprisoned by the IDOC at the time of his death, died from cancer after Wexford medical personnel ignored the signs of his disease, and then, once the cancer was discovered,

---

[1] The defendants in the underlying *Reed* litigation (*i.e.*, Wexford and several of its employees) have brought a separate action to quash the Reed's subpoena to UPLC. *See* Case No. 21-cv-5954 (NDIL). Judge Coleman has entered and continued that motion to quash pending resolution of Movants' present motion to intervene. *See id.* at dkt. 8 (Nov. 12, 2021).

proceeded in an unhurried manner regarding Mr. Reed's treatment until it was too late to save him [dkt. 1484-1, ¶¶ 10-31]. The *Reed* complaint alleges, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that these failures were the result of widespread practices Wexford has allowed to flourish across the IDOC, in which its employees routinely fail to diagnose and treat patients suffering from cancer appropriately [*Id.* at ¶¶ 61-65]. In support of its *Monell* allegations, the *Reed* complaint points to two expert reports (the first of these reports is variously referred to as the "2014 report" or the "Shansky report," and the latter of these two reports is referred to as the "2018 report" or the "Puisis report;" together, the two reports are sometimes called the "*Lippert* reports") submitted in the instant matter identifying numerous cases where Wexford medical personnel were slow to diagnose and treat cancer, resulting in multiple unnecessary deaths [*Id.* at ¶¶ 41-45]. The Shansky and Puisis reports anonymized each of the patients, referring to them by description rather than by name [*see* dkt. 1484-2, ¶¶ 47, 54].

Movants (as plaintiffs in *Reed*) served discovery on Wexford, asking it to produce documents in its possession regarding the care of certain patients, by description, as identified in the Shansky and Puisis reports [*see* dkt. 1484-2]. In response, Wexford asserted it could not answer the discovery requests because it was "not in possession, custody, or control of documents that identify the persons described in Request for Production [47 or 54]" [*see id.* ¶¶ 47, 54; however, *see Lymon v. Chamberlain*, 2020 WL 6940985, at fn. 4 (N.D. Ill. Nov. 24, 2020)]. In light of Wexford's representation it was unable to identify the patients described in the Shansky and Puisis reports, Movants served a subpoena on the UPLC, one of the litigants in the instant matter [dkt. 1484-3].[2] UPLC advised Movants that while it was in "possession of various documents which appear to be responsive to the subpoena, [UPLC is] barred from producing those documents by [orders] entered in the *Lippert* case…Unless and until these orders are modified, UPLC is unable to produce any documents in its possession responsive to the subpoena"

---

[2] Movants also served a subpoena in *Reed* upon IDOC, asking it to produce medical records in its possession concerning the identities of the patients identified in the *Lippert* reports [dkt. 1521, fn. 2], although Wexford asserts that the IDOC subpoena is far broader than the subpoena issued to UPLC in the instant matter [dkt. 1506, fn. 1].

[dkt. 1484-6]. Thus, Movants have come before the Court on the instant Motion to Intervene and Motion to Modify Protective Order [dkt. 1484].

Movant subpoena asks the UPLC to produce documents sufficient to identify, by name, the patients discussed in the Shansky and Puisis reports [*Id.*]. Movants anticipate that UPLC's subpoena response will permit them to gather additional discovery in the underlying *Reed* litigation [dkt. 1484, p. 8]. Specifically, Movants purport that it is their intention to provide UPLC's subpoena response to Wexford so that Wexford will be able to gather documents and information responsive to Movants' discovery requests to it [dkt. 1484, pp. 2-3; dkt. 1521, p. 4].

The parties in this case (including the UPLC) are covered under the April 11, 2012 Stipulated Protective Order [dkt. 111]. That order provides that materials can be designated "Confidential," or "Attorneys Eyes Only." The documents designated "CONFIDENTIAL" can only be disclosed to:

> (a) the Court, its officers, and any jury seated to hear this case;
> (b) the attorneys of records in this case, employees of the attorneys of record engaged in this action, and outside litigation support providers retained by the attorneys of records…all of whom shall use such information solely for purposes of this litigation, provided that each outside litigation support provider signs a confidentiality agreement…
> (c) third party experts or independent consultants engaged by the attorneys of record in this case or by the parties to assist in this litigation ("Experts"), who shall use such information solely for purposes of this litigation, provided that each Expert signs a confidentiality agreement…
> (d) the Parties…
> (e) witnesses or deponents whose testimony is reasonably related to the confidential information sought to be disclosed to him or harm provided that each such person signs a confidentiality agreement…"

Dkt. 111, ¶ 2. Neither set of documents may be disseminated to any current or former inmate of the DOC, with minor exception. *Id.* at ¶ 5. Movants do not fall amongst these five categories. Thus, Movants seek to modify the Stipulated Protective Order to allow the UPLC to provide Movants confidential documents pursuant to their subpoena to it.

In order to conduct their *Monell* discovery (including into their allegations regarding the medical cases of other prisoners identified by Shansky and Puisis), Movants obtained a HIPAA-qualified

3

protective order in the underlying *Reed* case before serving their subpoena on the UPLC [dkt. 1484-4]. That order, entered pursuant to 45 C.F.R. § 164.512, protects the private health information of parties and non-parties alike [*Id.*]. It provides that all protected health information of both parties and nonparties must be maintained by the parties and their counsel in strict confidence, must be used only for purposes of the *Reed* litigation, and must be returned or destroyed at the conclusion of that litigation [*Id.*]. In granting Movants' motion for the HIPAA protective order, the *Reed* court noted that Movants' *Monell* claim against Wexford required "a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights," and that such discovery must be sufficiently broad that it permits a plaintiff to prove "systemic and gross deficiencies that have impacted others in IDOC custody, not just the plaintiff" [dkt. 1484-5, p. 4 (signals and citations omitted)]. That scope of discovery, the *Reed* court held, meant that "third party medical information is discoverable," and was "good cause for the entry of a…protective order governing the use of any third party protected health information [("PHI")] produced" in the case [*Id.*].[3]

2.  Discussion

    A.  Permissive Intervention

Movants seek permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). Rule 24(b)(1)(B) allows for permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As the Court has

---

[3] In fact, back in 2018, Judge Martin appears to have contemplated the exact request the Movants now bring in the instant litigation, acknowledging that an intervening third-party is able to request the underlying Shansky and Puisis documents from parties to this action directly for use in the third-party's own case. [*see* dkt. 653]. In 2018, a different third party, Kenneth Burks, sought to intervene in the instant matter [*see id.*]. Originally, Burks sent a 2017 subpoena to Dr. Shansky for documents and information that comprised the basis for certain findings and opinions in his expert report [*Id.* at p. 2]. Because Dr. Shansky had disposed of his underlying documents in a cross-country move some time before the documents were subpoenaed, Burks sought Shansky's testimony believing it was the "only readily available source of admissible evidence to explain the basis of his opinions" [dkt. 653, pp. 2-3]. Judge Martin denied Burks's request to depose Dr. Shansky [*see* dkt. 653 generally], and specifically disagreed with Burks's assertion that Dr. Shansky's testimony was the only way to explain the basis of the opinions in the Shansky report [dkt. 653, fn. 3]. Judge Martin noted that "[t]he originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim" [*Id*]. Which is exactly what Movants have done.

already recognized in the instant action, "the language of Rule 24(b)(1)(B) is broad enough to encompass a third-party challenge to a protective order even though it is not a neat fit [because] the 'interest' being asserted by such an intervenor is not really a 'claim' or 'defense'" [dkt. 653, Judge Martin's March 9, 2018 Order on Kenneth Burks's Motion to Intervene, p. 4 (cleaned up; citations omitted)]. The Court adopted a "generous interpretation" of Rule 24(b) "because of the need for an effective mechanism for third-party claims of access to information generated through judicial proceedings" [*Id.* (citation omitted)]. In fact, "every court of appeals to have considered the matter has come to the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders" [*Id.* at pp. 4-5 (citations omitted)]. Moreover, where a nonparty seeks to intervene for the sole purpose of gaining access to documents subject to a protective order "no particularly strong nexus of fact or law need exist between the two suits" [*Id.* at p. 5 (citations omitted)]. Thus, the Court cannot find that permitting intervention in this case to challenge the Stipulated Protective Order "impermissibly stretches the wording of the Rule" [*Id.* (citation omitted)].

Under Rule 24(b), courts should also consider whether permissive intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Wexford argues such delay would be inevitable if the Court granted the instant motion because the "floodgates" would be opened to similar motions by countless inmates asserting similar claims, causing the parties to be bombarded with an "overwhelming amount of ancillary litigation regarding production of documents in this case to plaintiffs in other cases" [dkt. 1506]. The Court disagrees. There have only been two such challenges (*i.e.*, Burks and Reed) in the instant matter in the 8 years since the first of the two expert reports at issue was filed.[4] Movants identify only three other cases total where the issue of

---

[4] More accurately, Burks sought to take Dr. Shansky's deposition, but the Court acknowledged Burks would be able to request the underlying Shansky and Puisis documents directly from the parties to this action [dkt. 653, fn. 3; *see also*, fn. 3, *supra*].

these particular documents has come up, with each holding that plaintiffs in individual cases asserting *Monell* claims against Wexford should be permitted to request the documents that underly the *Lippert* reports.[5]

Wexford also asks the Court to consider the prejudice that would result if more third-parties (framed in the context of Movants) were allowed access to the underlying sensitive documents which have been protected with heightened confidentiality [dkt. 1506, p. 7 (referencing order appointing Shansky, dkt. 244, ¶¶ 6a-b)].[6] This is not a concern here. Movants have obtained (as would, presumably, any other third-party litigant seeking the confidential reports) a HIPAA-qualified protective order in their underlying case, meaning that the *Reed* court has adjudged both that gathering third-party PHI was appropriate to the needs of that case and that issuing a HIPAA order was appropriate, on penalty of sanction [*see* dkt. 1484-5, p. 4].

It is worth noting at this point that the subpoenaed entity, UPLC, counsel to the Plaintiffs in this case, filed a response to the instant Motion to Intervene, stating it has no objection to the relief sought by Movants [dkt. 1508]. The UPLC has not objected that producing the confidential reports would be burdensome in any way, lead to a flood of requests, or delay the litigation [*Id.*]. In fact, UPLC suggests the opposite is true. UPLC acknowledges that Movants are not seeking a whole host of medical records and documents, but that "they simply seek the names of the individual patients which were

---

[5] *See Lymon v. Chamberlain*, Case No. 17-cv-50093, 2020 WL 6940985, at **5-6 (N.D. Ill. Nov. 24, 2020) (ordering Wexford to produce documents underlying the *Lippert* reports and noting that plaintiff intended to have his own expert opine on them); *Wilkerson v. Chovinard*, Case No. 3:17-cv-50046, dkt. 206 (N.D. Ill Mar. 29, 2021) (citing *Lymon* and granting plaintiff's motion to compel Wexford to produce "documents underlying the *Lippert* Reports, together with documents [Wexford] and third parties provided to the *Lippert* Reports' authors and documents referenced in the reports."); and *Arsberry v. Wexford Health Sources, Inc.*, Case No. 3:17-cv-50044, 2021 WL 5232733, at *8 (N.D. Ill. Nov. 10, 2021) ("Plaintiff seeks to use [the *Lippert*] documents to support his *Monell* claim as alleged in this case. He can do this by either identifying other similarly situated plaintiffs who were subjected to the same policies he alleges in his complaint or by providing the documents produced by Wexford and the IDOC to his own experts to opine on the policies or practices that they disclose.").

[6] Under the Agreed Order Appointing Expert in this case [dkt. 244], it appears all documents given to Shansky and Puisis, as well as any documents/drafts created based on the same are to be treated as "Attorney's Eyes Only" by all concerned [dkt. 244, ¶¶ 6a-b]. The Court sees no reason to deviate from this agreed, heightened level of protection.

redacted from the version of the reports which were filed on the public docket [*Id.* at ¶ 3]. UPLC goes on to note that "[t]he sole reason for these redactions was to protect the private medical information of the patients—all of whom are class members and UPLC's clients" and that "UPLC is satisfied that the privacy of its clients will be properly protected" because the *Reed* court has already determined "that the medical records of third parties were relevant and discoverable, and [granted] entry of a protective order which provides the same degree of protection for patient privacy as do the orders in this case" [*Id.* at ¶¶ 4-5, 8]. The Court agrees with this assessment.

In short, it does not appear to the Court that permitting UPLC to produce the confidential *Lippert* reports will have any impact on the management of this case under Fed. R. Civ. P. 24(b)(3), particularly because that "inquiry focuses on whether intervention itself will cause undue delay or prejudice to the adjudication of the original parties' rights" [dkt. 653, p. 7]. As in the oft-referenced *Burks* case, "[a]ny delay or prejudice to the adjudication of the original parties' rights will be negligible as the purpose of intervention here is not to become a party in the action in order to litigate a claim or defense on the merits" [*Id.*].[7] Because Movants seek to litigate only the issue of the modification of Stipulated Protective Order and not to intervene on the merits, the Court finds that permitting intervention will not unduly delay this case or prejudice the adjudication of the rights of the original parties. Accordingly, Movants meet the requirements for permissive intervention under Rule 24(b).

**B.     Modification of Stipulated Protective Order**

Having found that permissive intervention is permitted for the purpose of deciding the modification issue, the Court considers whether the Stipulated Protective Order should be modified to allow Movants access to the documents underlying the Shansky and Puisis reports (*i.e.,* the non-

---

[7]     On this basis, the Court notes that while the question of modification requires more individualized analysis, it is unlikely that future third-parties seeking the confidential *Lippert* reports would be denied intervention (*i.e.*, future litigants addressing the issue of intervention for the purpose of modifying the Stipulated Protective Order to seek the confidential Shansky and Puisis reports would do well to limit their arguments on intervention and instead focus on whether modification is appropriate).

confidential versions of those reports).[8]

Wexford raises a concern that the requested information would strip away confidentiality from the inmates listed on the reports, subjecting them "to public scrutiny and involvement in any case in which parties may seek to use the *Lippert* reports currently or in the future" [dkt. 1506, p. 5]. The Court has no such "public exposure" concern here, as addressed above. Again, Movants have obtained a HIPAA-qualified protective order in their underlying case [dkts. 1484-4 and 1484-5]. That order is intended "to prevent the unauthorized disclosure and to direct the use of protected health information during the course of [the *Reed*] litigation" [dkt. 1484-4, p. 1; *see, also*, dkt. 1484-5, p. 6]. The Court has reviewed the *Reed* protective order [dkt. 1484-4] and has no concerns that it will not adequately protect the privacy interests of the inmates listed by description in the public versions of the Shansky and Puisis reports.[9] In fact, the *Reed* protective order purports to treat all PHI (which, presumably, includes all of the documents at issue) as Attorneys' Eyes Only, which comports with the level of protection offered to those documents in this case [*compare* dkt. 1484-4, ¶ 4(a) *with* dkt. 244, ¶ 6a].

Finally, Wexford argues, under *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214 (7th Cir. 2021) and *Wilson v. Wexford*, 932 F.3d 513 (7th Cir. 2019), that the *Lippert* reports are hearsay and, thus, Movants cannot use the *Lippert* reports as evidence in their case [dkt. 1506, p. 11]. On the other hand, Movants assert they seek from the *Lippert* reports precisely the evidence *Dean* calls for: a "pattern of similar constitutional violations" [dkt. 1521, p. 9 (citing *Dean*, 18 F.4th at 234)]. Regardless, hearsay objections are not properly before this Court; the future admissibility of these documents is solely the

---

[8] Both Movants and the UPLC have led this Court to believe the non-redacted versions of the Shansky and Puisis reports are the only documents truly at issue here (as opposed to any other documents that might have been considered by Shansky and Puisis). Specifically, UPLC understands Movants to be seeking "the names of the individual patients which were redacted from the version of the reports which were filed on the public docket" [dkt. 1508, ¶ 3]. Similarly, "Movants believe the responsive documents in UPLC's possession will be the confidential versions of the *Lippert* reports…" [dkt. 1521, p. 4].

[9] Similarly, the subpoenaed-party, UPLC, has framed the issue as follows: whether the subpoena properly protects the privacy interests of UPLC's clients [dkt. 1508, ¶ 8]. UPLC itself has answered that query in the affirmative, asserting that Movants "have ensured that those privacy interests are protected" [*Id.*].

province of the *Reed* court. Wexford can make such arguments before the *Reed* court itself.

In sum, there exists no good reason to deny Movants the modification to the protective order they seek.

### 3. Conclusion

For the reasons set forth above, Movants' Motion to Intervene and Motion to Modify Protective Order [dkt. 1484] is GRANTED. Movants are granted intervention into this action for the sole purpose of modification to the Stipulated Protective Order. To that end, all relevant parties are ordered to have an in-person meet and confer (a videoconference is an acceptable substitute, a telephone conference is not) and jointly submit a proposed order outlining the modification granted to the Movants. Such proposed order shall be submitted to Judge Cox's Proposed Order inbox (proposed_order_cox@ilnd.uscourts.gov) by March 4, 2022.

**ENTERED: February 24, 2022**

United States Magistrate Judge
Susan E. Cox