IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Don Lippert *et al.*, | |
| Plaintiffs, | Case No. 1:10-cv-04603 |
| v. | Judge Jorge Luis Alonso |
| Partha Ghosh, *et al.*, | |
| Defendants. | |

**MOVANT KEYANA WILEY'S REPLY IN SUPPORT OF HER
MOTION (1) TO INTERVENE AND (2) TO MODIFY PROTECTIVE ORDER**

Intervenor Keyana Wiley submits this reply memorandum, which relates to several different filings in this case: the reply supports Ms. Wiley's motion to intervene and to modify protective orders relating to expert reports (ECF 1625), and is submitted in rejoinder to the response in opposition filed by Wexford Health Sources, Inc. (ECF 1642), which the Illinois Department of Corrections has adopted (ECF 1644). In ECF 1642, Wexford also incorporates arguments it advanced in an opposition brief it has filed responding to the *Paris* intervention motion, ECF 1633. *See* ECF 1642 at 3. Wexford makes a number of arguments against modification of the protective order, which Ms. Wiley reviews below. They are incorrect. The motion should be granted.

## DISCUSSION

**1. Wexford has no confidentiality interest in the *Lippert* ciphers.**

Under controlling Seventh Circuit precedent, a *Monell* plaintiff like Ms. Wiley must come forward with evidence showing that a corporate defendant has a widespread practice of constitutional violations. *Daniel v. Cook Cnty.*, 833 F.3d 728, 734-35 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [the plaintiff] must show

more than the deficiencies specific to his own experience, of course.") If the defendant is a healthcare provider like Wexford, the *Monell* plaintiff must offer evidence that other, third-party patients received inadequate medical care. *Hildreth v. Butler*, 960 F.3d 420, 427 (7th Cir. 2020) (affirmed summary judgment in Wexford's favor on plaintiff's *Monell* claim based on the plaintiff's failure to provide evidence improper medical care to other Wexford patients).

Wexford has sought to prevent the gathering of such *Monell* evidence by weaponizing privacy protections that are designed to protect those other patients. For years now, it has opposed the entry of HIPAA-qualified protective orders themselves, arguing that entry of the HIPAA orders would lead to invasions of privacy.[1] Even when HIPAA orders have been entered, Wexford has still resisted discovery on the same privacy grounds, arguing that, notwithstanding the entry of a HIPAA order, disclosing third-party PHI would invade the privacy of its other patients. One district court sanctioned Wexford for this gambit, *See Haywood v. Wexford Health Sources, Inc.*, No. 16-cv-3566, 2021 WL 2254968 (N.D. Ill. June 3, 2021),[2] and this Court flatly rejected Wexford's "privacy" argument in the *Reed* intervention, noting that the underlying HIPAA protective order in *Reed* "provides the same degree of protection for patient privacy as do the [protective] orders in this case." ECF 1534 at 7.

---

[1] *See Jackson v. Wexford Health Sources, Inc.*, No. 20-cv-00900 (S.D. Ill.); *Johnson-Barker v. Wexford Health Sources, Inc.*, No. 21-cv-01234 (C.D. Ill.); *McCaffrey v. McAtee*, No. 21-cv-03029 (C.D. Ill.); *Reed v. Wexford Health Sources, Inc.*, No. 20-cv-1139 (S.D. Ill.); *Beppler v. Wexford Health Sources Inc.*, No. 3:22-cv-03052-SEM-EIL (C.D. Ill.); *Gay v. State of Illinois*, No. 19-cv1133 (C.D. Ill.).

[2] *Haywood* sanctioned Wexford $25,311 for refusing to disclose third-party PHI based on its claimed "obligation to protect the HIPAA protections afforded to all inmates other than Donald Haywood" and its claim that "HIPAA forbade it to disclose to plaintiff the PHI for 'thousands of' non-party inmates that is contained" in responsive discovery materials (quoting Wexford briefs), since a HIPAA order had been entered that "permits disclosure [of third-party PHI] to plaintiffs." *Haywood*, 2021 WL 2254968, at **3, 7, 15 (N.D. Ill. June 3, 2021).

Wexford thus has been unable to stymie *Monell* discovery by claiming to assert the privacy interests of third-party prisoner-patients. In opposing the interventions by Ms. Wiley and the *Paris* intervenor, therefore, Wexford has taken a new tack: instead of claiming it seeks to protect the privacy interests of third-party patients, Wexford's response brief implies that the privacy protections for patients that were incorporated into the *Lippert* protective orders are designed to protect *Wexford*. Wexford emphasizes this point repeatedly—if indirectly—in its brief, *see* ECF 1633 at 26-29, arguing that modifying the *Lippert* confidentiality orders is improper now, since "[t]he only way any rational actor [like Wexford] would ever disclose such highly confidential documents or allow . . . unfettered access to scores confidential records is with the protection provided by the Protective Order." ECF 1633 at 29.

There is a simple problem with this argument: the only privacy or confidentiality interests implicated in the *Wiley* and *Paris* motions are the privacy interests of the third-party prisoner-patients whose names would be used in the underlying *Wiley* and *Paris* cases—not Wexford. Wexford's response conflates its own interest in the confidentiality of its business records with the protections afforded to patients through laws like HIPAA. But Wexford does not have, and has never had, a confidentiality or privacy interest at stake in the HIPAA-protected information of the third-party prisoner-patients whose names are revealed in the ciphers sought by the *Wiley* and *Paris* movants. That interest belongs to the prisoner-patients alone, and the anonymity provided to them in the two *Lippert* reports was designed to protect them alone. As *Lippert* class counsel Uptown People's Law Center explains, "the sole reason for . . . redacti[ng]" the names of patient-prisoners from the publicly filed *Lippert* reports "was to protect the private medical information of the patients," not the confidentiality interests of Wexford or the IDOC. ECF 1645 (UPLC Memorandum) ¶ 5.

3

Wexford does not identify a single authority, in either its *Paris* or its *Wiley* briefs, suggesting it has ever been or could be entitled to assert the privacy protections afforded to prisoner-patients under its care for its own benefit. Indeed Wexford emphasizes that the *Lippert* confidentiality orders applied "to *more* than just medical records for individuals in custody," ECF 1633 at 26 (emphasis added), and speculates that modifying the order could lead to the disclosure of "a wide array" of documents, such as "employment, disciplinary, financial," and other sensitive information "regarding defendants, non-party witnesses and non-party employees of the Illinois Department of Corrections and Wexford Health Sources, Inc." *Id.*[3]

As an initial matter, Wexford's suggestion that the order would impact various types of confidential information is simply incorrect—as the UPLC's memorandum explains, the *Lippert* "ciphers" consist of documents containing "a handful of names, which are contained in [] 'keys' which were provided to the parties at the time the names of patients were removed from the reports prior to their being filed in the public docket." ECF 1645 ¶ 8. More to the point, the Wexford's focus on *other* types of records in which it does have a confidentiality interest is a tacit concession that it has no such interests in HIPAA-protected "ciphers" that the *Wiley* and *Paris* movants seek—which, again, only implicate the privacy interests of patient-prisoners.

The third-party patients whose names are identified in the ciphers, moreover, do have someone to speak for their privacy interests: the UPLC, which is *Lippert* class counsel and represents all IDOC prisoners with medical needs in this case. The UPLC has filed a memorandum regarding this matter, and as that memorandum makes clear, the UPLC has no

---

[3] Likewise, the declaration of Wexford's risk manager identifies numerous confidential business and employment records that Wexford would have resisted disclosing absent a confidentiality order. ECF 1633-4. None of them, notably, include private patient information or information protected by patient privacy interests. *Id.* ¶ 9.

4

objection to modification of the protective order sought by the *Wiley* and *Paris* litigants. ECF 1645 ¶ 4. That is so, the UPLC explains, because HIPAA-qualified protective orders have been entered in both underlying cases that will protect the privacy of the patients whose names are identified in the ciphers. *Id.* ¶ 6.

In short: the only privacy or confidentiality interest at stake in the *Wiley* and *Paris* motions is that of third-party patient-prisoners. Wexford and the IDOC have no interest in prisoner-patient confidentiality, and they never have had such an interest at any point in time, including when the protective orders were being negotiated. And the UPLC, which represents those same patient-prisoners in this case, has made clear that it does not oppose the modifications requested in the *Wiley* and *Paris* motions, because it's the *Lippert* class members' confidentiality interests will be protected by the HIPAA orders entered in both those cases. For these reasons alone, the Court should grant Ms. Wiley's motion, as well as that of the *Paris* movant.

**2. The requested modification would not affect the Rule 706 experts.**

Wexford also argues that the modifications requested by the *Wiley* and *Paris* movants would impact the Rule 706 experts who authored the Shansky and Puisis reports. *See* ECF 1633 at 32-33; ECF 1642 at 7. But as UPLC points out, the *Wiley* and *Paris* movants seek nothing from either expert at all—only production of a list of names from UPLC. ECF 1645 ¶ 4. Tellingly, in contrast to the *Burks* intervention, the Rule 706 experts have not opposed the *Wiley*, *Paris*, or *Reed* movants. *Cf.* ECF 653 at 8-9 (*Burks* ruling noting expert opposition).

**3. There is no flood of litigation.**

In opposing the *Reed* intervention, Wexford claimed that a floodgate would open and "hundreds" of litigants would "bombard" the Court with copycat requests, as "hundreds, if not thousands, of claims against Wexford and the IDOC filed in Illinois in which this information

5

will be sought by plaintiffs" ECF 1506 at 8, 10. How did this prediction fare? The *Reed* ruling opened the floodgates, but there is no flood. In the last year, out of the legion of cases pending against Wexford, exactly two litigants—*Paris* and *Wiley*—have sought similar modifications. Wexford's warning was demonstrably wrong. Undaunted, Wexford warns that perhaps a different flood of other movants will make other requests from the Court about other topics, inflicting "a thousand cuts" on the protective order. ECF 1633 at 32. Wexford does not explain why this new flood would happen or what it even might be, and in any event the Court has denied numerous intervention requests before, demonstrating that it is capable of distinguishing between appropriate and inappropriate requests. *Cf. id.* at 7-10; ECF 1642 at 5 (Wexford brief collecting intervention denials).

### 4. Ms. Wiley did not stipulate to the *Lippert* protective orders.

Wexford emphasizes that the stipulated nature of the *Lippert* protective orders weighs against modification, citing *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006). ECF 1633 at 25. *Murata*, however, makes clear that this is so because *parties* to stipulated protective orders should be held to a high bar for oversights in negotiating, *id.*, and *Bayer AG & Miles, Inc. v. Barr Lab'ys, Inc.*, 162 F.R.D. 456 (S.D.N.Y. 1995), on which *Murata* relies, *see Murata*, 234 F.R.D. at 179, makes clear that this presumption does not apply to a "non-party" seeking modification, as non-parties were not present to bargain. *Bayer*, 162 F.R.D. at 465-66. Ms. Wiley was not a party to the *Lippert* protective order negotiations and could not have been—she filed her suit in 2021. This factor does not weigh against modification.

### 5. Information underlying the *Lippert* reports is appropriate discovery.

Wexford disputes whether the information underlying the *Lippert* reports is an appropriate subject of *Monell* at all, and thus argues that any discovery to gather that evidence is

6

inappropriate. ECF 1642 at 9. This argument is at war with the *Wiley* district court, which found certain medical records underlying the *Lippert* reports relevant to Ms. Wiley's *Monell* claims and specifically ordered Wexford to produce medical records for multiple patients identified in the anonymized public versions of the *Lippert* reports—the very order that induced Ms. Wiley to seek intervention in this case. *See* ECF 1625 at 4 (describing court order). Wexford next claims that the *Wiley* district court's order is not final because Wexford has filed a motion to bifurcate which, "*if* . . . granted," ECF 1642 at 7 (emphasis added), would have the effect of staying Ms. Wiley's *Monell* discovery. *Id.* Litigants should not try to override discovery schedules in this manner. After losing on the motion to compel, Wexford did indeed file an eleventh-hour bifurcation motion in *Wiley*. But the *Wiley* court has not granted that motion, and more to the point, it has not stayed *Monell* discovery while it considers the motion. Wexford seeks to enlist this Court in frustrating the discovery schedule implemented by the *Wiley* court. This Court should decline that invitation.

April 4, 2023

Respectfully submitted,

/s/ Stephen H. Weil
Stephen H. Weil
Attorney for Plaintiff

Jon I. Loevy
Stephen H. Weil
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
weil@loevy.com

7