**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DON LIPPERT, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 10-cv-4603 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | Magistrate Judge Susan E. Cox |
| PARTHA GHOSH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PARIS AND WILEY**
**MOTIONS TO INTERVENE AND MODIFY PROTECTIVE ORDER**

## I. Paris Intervention and Modification

Movant John Paris seeks to intervene in this case to modify the Court's April 11, 2012 Stipulated Protective Order [dkt. 111] to permit third-party Uptown People's Law Center ("UPLC") to respond to his subpoena [dkts. 1601 (motion to intervene), 1647 (reply brief)]. Defendant Wexford Health Sources, Inc ("Wexford") opposes the motion [dkt. 1633], as do the individual Defendants [dkt. 1631]. Third-party UPLC, as *Lippert* class counsel representing all IDOC prisoners with medical needs in this case, has also filed a brief in the instant action indicating it has no objection to the protective order modification sought by Movant [dkt. 1645]. For the following reasons, Movant's motion [dkt. 1601] is GRANTED. Movant is granted intervention into this action for the sole purpose of modification to the Stipulated Protective Order.

### A. Background

The instant matter is a class action alleging inadequate healthcare on behalf of all prisoners in the custody of the Illinois Department of Corrections ("IDOC") [*see* dkt. 653, p. 1]. Movant, plaintiff in a separate case, *Paris v. Wexford Health Sources, Inc., et al.*, Case No. 2:21-cv-2149 (C.D. Ill.), asserts that Victoria L. Paris., who was imprisoned by the IDOC until her compassionate release days before her death, died from cancer after Wexford medical personnel ignored the signs of her disease, and then,

once the cancer was discovered, proceeded in an unhurried manner regarding Ms. Paris's treatment until it was too late to save her [dkt. 1601-1, ¶¶ 1-8]. The *Paris* complaint alleges, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that these failures were the result of widespread practices and a "custom of inaction" Wexford has allowed to flourish across the IDOC, in which its employees routinely fail "to provide minimally sufficient specialty care," including care necessary to diagnose and treat patients suffering from cancer appropriately [*Id.* at ¶¶ 68-72].

In support of its *Monell* allegations, the *Paris* complaint points to two expert reports (the first of these reports is commonly referred to as the "2014 report" or the "Shansky report" [dkt. 339], and the latter of these two reports is referred to as the "2018 report" or the "Puisis report" [dkt. 767]; together, the two reports are sometimes called the "*Lippert* reports") submitted in the instant matter identifying numerous cases where Wexford medical personnel failed to use or underutilized specialty care, resulting in multiple unnecessary deaths [*Id.* at ¶¶ 72-77]. The *Lippert* reports anonymized each of the patients, referring to them by description rather than by name [*see* dkt. 1534 at p. 2].

Movant (as plaintiff in *Paris*) served discovery on Wexford, asking it to produce documents in its possession regarding the care of certain patients, by description, as identified in the *Lippert* reports [*see* dkt. 1601-2 at pp. 10-17]. In response, Wexford asserted it could not answer the discovery requests because it "does not possess the names of the individuals identified" by description in the discovery requests [*id.* at pp. 9-10].[1] Irrespective of its possession of the unredacted reports, Wexford objected to Movant's requests for these reports because "the information being requested is confidential, as set

1 Movant was surprised by this assertion, and asked Wexford to confirm whether it had unredacted versions of the Shansky or Puisis reports [dkt. 1601-2 at pp. 8-9]. Wexford conceded it was in possession of an unredacted version of the 2014/Shansky report and had to further investigate whether it was in possession of an unredacted version of the 2018/Puisis report [*id.* at p. 4]. The Court is also surprised Wexford would claim not to have this information, as it noted in its ruling on a separate motion to intervene in this matter [dkt 1534 at p. 2 (citing *Lymon v. Chamberlain*, 2020 WL 6940985, at fn. 4 (N.D. Ill. Nov. 24, 2020)]. The Court is particularly surprised by this assertion as the Court previously modified the Stipulated Protective Order so UPLC could provide the redacted Shansky and Puisis reports to Movants (and presumably all parties to the litigation, including Wexford) in *Reed et al., v. Wexford Health Sources, Inc., et al.*, Case No. 3:20-cv1139 (S.D. Ill.) [dkt. 1543].

forth by the Court in *Lippert*, *e.g.*, Docs 111, 244, and 593" [dkt. 1601-2 at p. 4]; Wexford ultimately refused to produce the unredacted reports [dkt. 1601, p. 3]. In light of Wexford's initial representation it was unable to identify the patients described in the Shansky and Puisis reports, Movant served a subpoena on the UPLC, counsel for one of the litigants in the instant matter [dkt. 1484-3].[2] While the ULPC is barred from producing those documents by orders entered in the instant matter (largely the Court's April 11, 2012 Stipulated Protective Order [dkt. 111]), the UPLC has no objection to the subpoena served upon it, "as long as the privacy of class members is protected via an appropriate protective order" in the instant litigation [dkt. 1645, p. 1]. Thus, Movant has come before the Court on the instant Motion to Intervene and Motion to Modify Protective Order [dkt. 1601].

Movant's subpoena asks the UPLC to produce the "keys" that identify, by name, the anonymized patients discussed in the *Lippert* reports [*id* at ¶ 8.]. Movant anticipates the UPLC's subpoena response will permit him to gather additional discovery in the underlying *Paris* litigation [dkt. 1601, p. 3]. Specifically, Movant purports that it is his intention to provide UPLC's subpoena response to Wexford so that Wexford will be able to gather documents and information responsive to Movant's discovery requests to it [*id*. 4].

The parties in this case (including the UPLC) are covered under the April 11, 2012 Stipulated Protective Order [dkt. 111]. That order provides that materials can be designated "Confidential," or "Attorneys Eyes Only." The documents designated "CONFIDENTIAL" can only be disclosed to:

> (a) the Court, its officers, and any jury seated to hear this case;
> (b) the attorneys of records in this case, employees of the attorneys of record engaged in this action, and outside litigation support providers retained by the attorneys of records…all of whom shall use such information solely for purposes of this litigation, provided that each outside litigation support provider signs a confidentiality agreement…
> (c) third party experts or independent consultants engaged by the attorneys of record in this case or by the parties to assist in this litigation ("Experts"), who shall use such information solely for purposes of this litigation, provided that each Expert signs a

[2] Movant also served a subpoena in *Paris* upon IDOC, "requesting the production of documents related to the same patients discussed in the 2014 and 2018 Lippert reports" [dkt. 1601, p. 3]. That subpoena remains pending. [*Id*.]

> confidentiality agreement…
> (d) the Parties…
> (e) witnesses or deponents whose testimony is reasonably related to the confidential information sought to be disclosed to him or harm provided that each such person signs a confidentiality agreement…"

Dkt. 111, ¶ 2.

Because he does not fall into any of these categories, Movant seeks to modify the Stipulated Protective Order to allow the UPLC to provide Movant confidential documents pursuant to his subpoena to it. In order to conduct his *Monell* discovery (including into his allegations regarding the medical cases of other prisoners identified by Shansky and Puisis), Movant obtained a HIPAA-qualified protective order in the *Paris* case before serving his subpoena on the UPLC [dkt. 1601, pp. 3-4]. That order, entered pursuant to 45 C.F.R. § 164.512, protects the private health information of parties and non-parties alike [*Id.*]. It provides that all protected health information of both parties and nonparties must be maintained by the parties under an "Attorneys' Eyes Only" designation, must be used only for purposes of the *Paris* litigation, and must be returned or destroyed at the conclusion of that litigation [*Id.*].[3]

**B. Discussion**

**i. Permissive Intervention**

At the outset, Wexford argues Movant's motion to intervene should be denied as he failed to attach his operative pleading in *Paris*, despite the requirements of Rule 24(c) that a motion to intervene

3 In 2018, Judge Martin appears to have contemplated the exact request Movant now brings in the instant litigation, acknowledging that an intervening third-party is able to request the documents underlying the *Lippert* reports from parties to this action directly for use in the third-party's own case. [*see* dkt. 653]. In 2018, a different third party, Kenneth Burks, sought to intervene in the instant matter [*see id.*]. Originally, Burks sent a 2017 subpoena to Dr. Shansky for documents and information that comprised the basis for certain findings and opinions in his expert report [*Id.* at p. 2]. Because Dr. Shansky had disposed of his underlying documents in a cross-country move some time before the documents were subpoenaed, Burks sought Shansky's testimony believing it was the "only readily available source of admissible evidence to explain the basis of his opinions" [dkt. 653, pp. 2-3]. Judge Martin denied Burks's request to depose Dr. Shansky [*see* dkt. 653 generally], and specifically disagreed with Burks's assertion that Dr. Shansky's testimony was the only way to explain the basis of the opinions in the Shansky report [dkt. 653, fn. 3]. Judge Martin noted that "[t]he originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim" [*Id*]. Which is exactly what Movant has done. *See, also*, the *Reed* intervention into the instant matter [dkt. 1534].

shall be "accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). However, as the Court has noted before, "where a nonparty seeks to intervene for the sole purpose of gaining access to documents subject to a protective order 'no particularly strong nexus of fact or law need exist between the two suits'" [dkt. 1534, p. 5 (citing dkt. 653, p. 5)]. This would certainly seem to obviate any need for Movant to attach to his motion a copy of the operative complaint in his case. Thus, as to any alleged violation of Rule 24(c), the Court, as is within its power, will "overlook [any potential] procedural oversight" and instead address the substance of Movant's motion to intervene. *F.T.C. v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 606 (N.D. Ill. 2001).

Movant seeks permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). Rule 24(b)(1)(B) allows for permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As the Court has already recognized in the instant action, "the language of Rule 24(b)(1)(B) is broad enough to encompass a third-party challenge to a protective order even though it is not a neat fit [because] the 'interest' being asserted by such an intervenor is not really a 'claim' or 'defense'" [dkt. 653, Judge Martin's March 9, 2018 Order on Kenneth Burks's Motion to Intervene, p. 4 (cleaned up; citations omitted)]. The Court adopted a "generous interpretation" of Rule 24(b) "because of the need for an effective mechanism for third-party claims of access to information generated through judicial proceedings" [*Id.* (citation omitted)]. In fact, "every court of appeals to have considered the matter has come to the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders" [*Id.* at pp. 4-5 (citations omitted)]. Thus, the Court cannot find that permitting intervention in this case to challenge the Stipulated Protective Order "impermissibly stretches the wording of the Rule" [*Id.* (citation omitted)].

Additionally, a Rule 24(b) "inquiry focuses on whether intervention itself will cause undue delay

or prejudice to the adjudication of the original parties' rights" [dkt. 653, p. 7; Fed. R. Civ. P. 24(b)(3)]. Just like in the *Reed* intervention, because Movant seeks to litigate only the issue of the modification of Stipulated Protective Order and not to intervene on the merits, and because he has already obtained a HIPAA-qualified protective order [dkt. 1601, pp. 3-4], the Court finds that permitting intervention will not unduly delay this case or prejudice the adjudication of the rights of the original parties. (*See* dkt. 1534, pp. 5-7 for further discussion of this topic.) Accordingly, Movant Paris shall be allowed permissive intervention into this matter under Rule 24(b).

**ii. Modification of Stipulated Protective Order**

Having found that permissive intervention is permitted for the purpose of deciding the modification issue, the Court considers whether the Stipulated Protective Order should be modified to allow Movant access to the unredacted versions of the *Lippert* reports. Under the Seventh Circuit test for resolving motions to modify protective orders, "courts consider the following four factors: (1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 565 (7th Cir. 2018) (citation omitted).

As an initial matter, it is plain the protective order at issue here is not immune from modification because the Court modified it in February 2022 (notably, in the same way Movant now seeks modification) [dkt. 1534]. As to the nature of the protective order, the mere fact the protective order in this matter order was stipulated does not grant Wexford the ability to deny reasonable discovery requests in another litigation.[4] It does, however, mean anyone seeking to modify the protective order

[4] Wexford also alleges the protective order prevents Wexford or IDOC from subsequently providing patient files to Movant (or anyone else) [dkt. 1633, p. 26]. This is a fundamental misunderstanding of the protective order; nothing in the *Lippert* protective order prevents Wexford or IDOC from producing documents in their possession merely because they were also produced in discovery in *Lippert.* In fact, the protective order itself states that "[n]othing in this Order shall prevent a Party from disclosing or using any of its own documents, information or things as it deems appropriate" [dkt. 111, ¶ 17]. Additionally, other courts have also concluded that the protective order does not prevent

must demonstrate good cause for the modification, which the Court discusses below. *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179-80 (N.D. Ill. 2006).

As to the second prong of the test, the "foreseeability" factor "has been defined as asking whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order." *Murata Mfg. Co.*, 234 F.R.D. at 180 (signals and citation omitted). Logically, any oversight in "not negotiating a provision in a protective order considering a matter which should have been reasonably foreseeable at the time of the agreement has been held not to constitute good cause for relief from the protective order." *Id.* (citation omitted)). Wexford argues that "[i]t was reasonably foreseeable, with such a large class and such a sweeping Complaint, that individualized exceptions (like the one Movant seeks) could be advantageous to litigants in other cases" [dkt. 1633, p. 24]. On the other hand, Movant maintains the *Lippert* parties "could not have foreseen the need to include a provision allowing for the modification of the protective order in the event that Wexford claims it cannot identify its own patients as an attempt to shield itself from discovery" [dkt. 1646, p. 6]. The Court finds Movant's argument more persuasive. The Court does not believe the *Lippert* parties foresaw, back in 2012, the need to create any individualized exceptions to the protective order, as Movant now seeks.

Next, the Court addresses the parties' reliance on the protective order. Despite Wexford painting modification of the protective order as an "unparalleled invasion" with far-reaching consequences stemming from even minor modifications [dkt. 1633, pp. 1, 25-28], this is simply not so. Wexford has conflated its own interest in the confidentiality of its business records with the protections afforded to patients through laws like HIPAA. But Wexford does not have, and has never had, a confidentiality or privacy interest at stake in the HIPAA-protected information of the third-party

---

production of the underlying medical records. *See Lymon v. Chamberlain*, 2020 WL 6940985, at *6 (N.D. Ill. Nov. 24, 2020); *Arsberry v. Wexford Health Sources, Inc.*, 2021 WL 5232733, at *7 (N.D. Ill. Nov. 10, 2021).

prisoner-patients whose names are contained in the unredacted *Lippert* keys. That interest belongs to the prisoner-patients alone, and the anonymity provided to them in the *Lippert* reports (and further safeguarded by the protective orders) was designed to protect them alone. *U.S. ex rel. Chandler v. Cook Cnty., Ill.*, 277 F.3d 969, 981 (7th Cir. 2002), aff'd, 538 U.S. 119 (2003) (recognizing "the privacy rights of individual patients that are at stake" under HIPAA); *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 845 (N.D. Ill. 2021) ("HIPAA protects patient health information, not medical provider information…"); *see*, *also*, *Haywood v. Wexford Health Sources, Inc.*, 2021 WL 2254968 at *5, *7 (N.D. Ill. June 3, 2021) (Wexford sanctioned for refusing to produce third-party protected health information ("PHI") despite its claim that "HIPAA [allegedly] forbade it to disclose to plaintiff the PHI for 'thousands of' non-party inmates" because the HIPAA-qualified protective order entered in that case permitted disclosure of third-party PHI to plaintiffs). As the UPLC has explained, "the sole reason for . . . redacti[ng]" the names of patient-prisoners from the publicly filed *Lippert* reports "was to protect the private medical information of the patients," not the confidentiality interests of Wexford or the IDOC [dk. 1645, ¶ 5]. In short, Wexford never had such an interest at any point in time and, thus, Wexford's argument it "crucially relied on the protection of the Protective Order to disclose highly confidential information" [dkt. 1633, p. 25] is somewhat misplaced when it comes to the unredacted keys. The Court finds the parties' reliance on the protective order will not be disrupted by modification, as the third-party HIPAA qualified protective order in *Paris* will protect the improper dissemination of any confidential information [dkt. 1601-3, pp. 6-8]; the confidential information that is the subject of Movant's request – essentially, patient names, provided in the unredacted keys – will remain protected.

Finally, the fourth step of the test is an inquiry into whether good cause exists for the modification. This is truly where the parties have the most vehement disagreement: they disagree about the burden modification would cause to the parties in this litigation; they disagree about the extent Drs. Shansky and Puisis will be affected by modification; they disagree about whether third-party discovery

is even relevant in the *Paris* litigation; they disagree whether modification will open the "floodgates" to a host of other requests for modification; they disagree about Movant's need for the unredacted information; and they disagree about the import of *Dean v. Wexford Health Sources, Inc.*, 18 F. 4th 214 (7th Cir. 2021).

With respect to the burden on the *Lippert* litigants, the Court understands that Movant seeks modification for the purpose of the UPLC producing to him two documents – the unredacted version/key of the Shansky report and of the Puisis report. This is no great burden, particularly since this same unredacted information has been produced to the Reeds when they intervened in this same action [see dkt. 1534]. Further, whether any medical records or other documents will ever be produced is (as it should be) left to the court in which *Paris* is pending.[5]

As to the extent Drs. Shansky and Puisis will be affected by any potential modification, Movant "seeks no discovery from [Drs. Shansky and Puisis] at all, in any form" [dkt. 1647, p. 8]. Indeed, the Court finds it unlikely the doctors would have cause to know about any modifications to the protective order in this case. The Court does not believe modification "contorts Dr. Shansky and Dr. Puisis' role in this litigation from one of 'a neutral expert' that 'interpret[s] complex information for the trier of fact', to one which 'serve[s] the interests' of any litigant looking for an easy route to data for a *Monell* claim" by "curat[ing] a list of comparator cases" [dkt. 1633, p. 33 (citations omitted)]. Rather, the Court finds modification in no way undermines the terms under which the experts in *Lippert* consented to doing their work. The Court finds the *Arsberry* court to have best clarified this issue as follows:

> Plaintiff seeks to use [the *Lippert*] documents to support his *Monell* claim [in his] case. He can do this by either identifying other similarly situated plaintiffs who were subjected to the same policies he alleges in his complaint or by providing the documents

[5] The parties cannot even agree on the amount of ancillary information that will be sought pursuant to the unredacted reports. While Wexford claims modification "would provide Movant's counsel with the names of over 1,000 individuals in custody, the entirety of those persons' medical files, and eventually, any other documents generated by IDOC and Wexford in this case regarding those patients" [dkt. 1633, p. 1], Movant has requested medical records for only 45 patients from the *Lippert* reports. Regardless, none of these ancillary requests would ever be a burden to the *Lippert* parties – Wexford is free to make this argument as a party in *Paris*.

produced by Wexford and the IDOC to his own experts to opine on the policies or practices that they disclose.

*Arsberry v. Wexford Health Sources, Inc.*, Case No. 3:17-cv-50044, 2021 WL 5232733, at *8 (N.D. Ill. Nov. 10, 2021).

Wexford further argues against modification because "[w]hile there is a third party protective order in Movant's case, Movant has not obtained a ruling [in *Paris*] that the records at issue are relevant (as all claims of relevance are reserved under the third-party protective order)" [dkt. 1633, fn. 4].[6] Although the parties disagree about whether third-party discovery is relevant in the *Paris* litigation, this is another issue for the *Paris* court, not this Court.

Despite averring it would not renew a "floodgates" argument, Wexford makes that exact argument many times in its overlarge brief [dkt. 1633, pp. 9, 11, 21, 31-32]. A small handful of requests to intervene/modify occurring in a near-decade is not an unacceptable flood. Moreover, the Court has denied numerous intervention requests before, demonstrating it is capable of distinguishing between appropriate and inappropriate requests [*see*, *e.g.*, dkts. 320-321, 387, 653, 832, 1307, 1311, 1313, 1341, 1370, 1439-41, 1443, 1444, 1449, 1450, 1455, 1468-71, 1475, 1480, 1489, 1502, 1593, 1597, 1600]. Even if there is a figurative "death by a thousand cuts" coming using a *Reed* template as Wexford intimates, it does not follow that the end result will be the improper disclosure of significant amounts of sensitive information [dkt. 1633, p. 32]. The Court does not anticipate Movant Paris (or any other hypothetical movant) would violate the significant protections afforded the documents under the third-party

[6] It is of no moment that Movant has not obtained a "relevancy ruling" in his pending case-in-chief. The language to which Wexford refers here comes from this Court's February 24, 2022 Order permitting the Reeds to intervene and modify the protective order [dkt. 1534]. In dicta in that Order, court explained that the "'UPLC is satisfied that the privacy of its clients will be properly protected' because the *Reed* court has already determined 'that the medical records of third parties were relevant and discoverable, and [granted] entry of a protective order which provides the same degree of protection for patient privacy as do the orders in this case'" [*Id.* p. 7.] Movant here points out that that *Reed* ruling was obtained as "a direct result of Wexford's opposition to entry of a third-party protective order in the *Reed* case, which led to the *Reed* plaintiffs moving the *Reed* court for such an order" [dkt. 1647, p. 9]. However, in *Paris*, Wexford *agreed* to the entry of third-party protective order to the same effect: "[d]ocuments relevant to the present litigation include statements from medical and health professionals that discuss the health, physical conditions, and mental conditions of third parties" [dkt. 1601-5 at p. 2.]

HIPAA qualified protective order obtained in his own case. It is simply not the case that the minor modification Movant seeks to the protective order in this case renders the Protective Order inert such that it provides no protection whatsoever.

Next, Wexford believes the seven other lawsuits cited in the *Paris* Complaint should be enough for Movant to conduct *Monell* discovery in hopes of supporting his claims alleging a pattern and practice of unconstitutional medical care. Yet Wexford cites no authority for the proposition that a particular number of comparators is sufficient to establish a pattern and practice. Wexford also believes the fact that Ms. Paris was never housed at any of the facilities that were part of the Lippert reposts undercuts Movant's need for the unredacted reports and, subsequently, future discovery requests stemming therefrom. And so we come to the relevancy of *Dean v. Wexford Health Sources, Inc.*, 18 F. 4th 214 (7th Cir. 2021). Movant in *Paris* is proceeding on an entirely different *Monell* theory than in *Dean* – widespread practice [dkt 1646, p. 12]. Movant has explained his need for the unredacted *Lippert* reports as so:

> [T]he *Lippert* experts identified numerous cases in which they concluded Wexford had provided inadequate care. In the underlying discovery in the *Paris* case, Movant seeks to gather the medical records of those patients and provide them to his own experts to determine whether, in fact, Wexford was providing inadequate care to them, and whether the problems at issue with those patients were similar to the problems that plagued Wexford's care of Ms. Paris. Movant thus seeks precisely the evidence that *Dean* calls for: a "pattern of similar constitutional violations," *id.*, which is discovery familiar to virtually every *Monell* widespread-practice case…*Dean*, which did not concern a widespread-practice claim, says nothing about the appropriate scope of that discovery. The very point of Mr. Paris's *Monell* discovery is to discover "substantive evidence of a pattern or practice of similar violations," the very thing that *Dean* held was missing at the *Dean* plaintiff's trial, and whose absence circumscribed the scope of the court's *Monell* analysis to the facility where the *Dean* plaintiff was imprisoned.

[Dkt. 1647, pp. 12-13]. The Court finds this explanation persuasive. The Court will not deny Movant's request for modification when doing so has the clear potential, under *Dean*, to limit his *Monell* claims to the facilities in which Ms. Paris was housed, when he is instead proceeding under a widespread practice theory of liability.

In sum, Movant has demonstrated good cause for modification of the protective order. Ultimately, the Court will grant Movant the modification to the protective order he seeks.

### C. Conclusion

For the reasons set forth above, Movant John Paris's Motion to Intervene and Motion to Modify Protective Order [dkt. 1601] is GRANTED. Movant is granted intervention into this action for the sole purpose of modification to the Stipulated Protective Order. To that end, all relevant parties are ordered to have an in-person meet and confer (a videoconference is an acceptable substitute, a telephone conference is not) and jointly submit a proposed order outlining the modification granted to the Movant. Such proposed order shall be submitted to Judge Cox's Proposed Order inbox (proposed_order_cox@ilnd.uscourts.gov) by May 15, 2023.

## II. Wiley Intervention and Modification

Movant Keyana Wiley also seeks to intervene in this case to modify the April 11, 2012 Stipulated Protective Order [dkt. 111]. However, counsel for Ms. Wiley already has a copy of the unredacted *Lippert* reports, as counsel for Ms. Wiley is the same firm that represented the intervenors in *Reed* [*see* dkt. 1534]. Therefore, Movant seeks a modification to the order to permit her counsel to share those unredacted keys with the litigants in the *Wiley* litigation [dkt. 1625, p. 2].[7] Wexford opposes Ms. Wiley's motion [dkt. 1642], as do the individual Defendants [dkt. 1644]. The UPLC has no objection to the protective order modification sought by Ms. Wiley [dkt. 1645]. For the following reasons, Movant's motion [dkt. 1625] is GRANTED. Movant is granted intervention into this action for the sole purpose of modification to the Stipulated Protective Order.

### A. Background

Much of the relevant background information remains the same as in Section I(A) above, and

[7] Although counsel has styled the request as one to share the ciphers with the *Wiley* litigants, the ciphers are the encoded/disguised versions of the *Lippert* reports (*i.e.*, the public versions). It is clear to the Court Ms. Wiley is instead seeking access to the cipher keys (*i.e.*, the non-public, unredacted versions) to the *Lippert* reports.

the Court adopts the language relevant to the *Lippert* litigation here. Movant Keyana Wiley, plaintiff in a separate case, *Wiley v. Wexford Health Sources, Inc., et al.*, Case No. 3:21-cv-599 (S.D. Ill.), asserts that Omar H. McCullough, who was imprisoned by the IDOC until 6 months before his death, died of cancer after Wexford medical providers made little effort to diagnose the cause of his repeated complaints of abdominal pain. [dkt. 1625, p. 3]. The *Wiley* complaint alleges, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that these failures were the result of "widespread policies and practices…throughout the IDOC, pursuant to which prisoners…with serious medical needs were routinely denied medical care and access to medical care," including care necessary to diagnose and treat patients suffering from cancer appropriately [dkt. 1625-1, ¶ 58].

**B. Discussion**

**i. Permissive Intervention**

Wexford has largely adopted its response to John Paris's Motion to Intervene and Modify as its response to Keyana Wiley's Motion to Intervene and Modify [*see* dkt. 1642, p. 3]. Because Ms. Wiley seeks to litigate only the issue of the modification of Stipulated Protective Order and not to intervene on the merits, and has already obtained a HIPAA-qualified protective order [dkt. 1625, p. 3], the Court finds that permitting intervention will not unduly delay this case or prejudice the adjudication of the rights of the original parties. (*See* dkt. 1534, pp. 5-7 for further discussion of this topic.) Accordingly, Movant Wiley shall be allowed permissive intervention into this matter under Rule 24(b).

**ii. Modification of Stipulated Protective Order**

As above, most of the Court's rulings applicable to Mr. Paris's modification motion are also applicable to Ms. Wiley's modification motion. The protective order is not immune from modification; there was no foreseeability of the need to create individualized exceptions to the protective order back in 2012; and the parties' reliance on the protective order will not be disrupted by modification.

Ms. Wiley has also addressed the good cause factors in her reply brief once they were raised by

Wexford. Unsurprisingly, the good cause factors here track those already analyzed by the Court above. In Ms. Wiley's case, the burden on any parties to instant litigation is negligible – Ms. Wiley's attorneys already have the unredacted documents at issue and only seek a ruling allowing them to use those documents in her case.[8] Next, the Court finds modification in no way undermines the terms under which the experts in *Lippert* consented to doing their work. Similarly, Wexford's floodgates argument is not persuasive for the reasons detailed above.

Wexford also argues the *Lippert* reports are hearsay, and hints at concerns about relevancy and admissibility, which are arguments for the *Wiley* court. As are Wexford's arguments concerning whether the *Lippert* reports are sufficient to provide notice of conditions at the specific facility at which Mr. McCullough was housed. It is sufficient for this Court that Ms. Wiley has alleged "widespread policies and practices…throughout the IDOC…"[dkt. 1625-1, ¶ 58]. *See Dean*, 18 F. 4th 214 (7th Cir. 2021). But Plaintiff will be able to use the *Lippert* documents to support her *Monell* claim by either identifying other similarly situated plaintiffs who were subjected to the same policies alleged in her complaint or by providing the unredacted reports to her own experts to opine on the policies or practices they disclose. *Arsberry,* 2021 WL 5232733, at *8 (N.D. Ill. Nov. 10, 2021). She may ultimately fail in these efforts for the reasons Wexford details in its response (*e.g.*, the short duration of the alleged delay in medical care, the facility at which Mr. McCullough was housed, etc.) [dkt. 1642], but that is an issue for another day in another court.

In sum, Movant has demonstrated good cause for modification of the protective order.

---

8 Movant notes that Wexford has already been compelled to provide documents relating to "individuals described within the *Lippert* report[s] whose cancer diagnoses were…delayed in a series of events similar to the alleged events leading to [the *Wiley* decedent's] cancer diagnosis" [dkt. 1625, p. 4]. That ruling necessitated the filing of Ms. Wiley's motion to intervene/modify because the names listed in the unredacted *Lippert* reports "were necessary to identify responsive documents to comply with the order granting Plaintiff's motion to compel" [*id.*]. While Wexford has a pending motion to reconsider that order and a separate motion to bifurcate and stay *Monell* discovery [see dkt. 1642, pp. 6, 10], those motions are pending before the *Wiley* court, not this one. It is not the province of this court to speculate on what those rulings might be, when they might be made, or to frustrate the discovery plan put in place by the *Wiley* court.

Ultimately, the Court will grant Movant the modification to the protective order she seeks.

### C. Conclusion

For the reasons set forth above, Movant Keyana Wiley's Motion to Intervene and Motion to Modify Protective Order [dkt. 1625] is GRANTED. Movant is granted intervention into this action for the sole purpose of modification to the Stipulated Protective Order. To that end, all relevant parties are ordered to have an in-person meet and confer (a videoconference is an acceptable substitute, a telephone conference is not) and jointly submit a proposed order outlining the modification granted to the Movant. Such proposed order shall be submitted to Judge Cox's Proposed Order inbox (proposed_order_cox@ilnd.uscourts.gov) by May 15, 2023.

**ENTERED: May 4, 2023**

United States Magistrate Judge
Susan E. Cox