IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DON LIPPERT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LATOYA HUGHES, *et al.*, <br><br> Defendants. | No. 10-cv-4603 <br><br> Hon. Jorge Alonso |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO EXTEND CONSENT DECREE**

Plaintiffs ask the Court to order a three-year extension of the *Lippert* Consent Decree and Implementation Plan, based solely on the Monitor's view that the Department is not in substantial compliance with terms of the Consent Decree and detailed provisions of its Implementation Plan. Plaintiffs fail to address the applicable legal standard. Plaintiffs' motion to extend is subject to the requirements of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A) *et seq*. ("PLRA"). Consequently, the Court cannot grant any prospective equitable relief, including extending its jurisdiction over the Decree's provisions, without finding that each term subject to extension "is narrowly drawn, extends no further than necessary to correct the violation of [a] Federal right, and is the least intrusive means necessary to correct the violation of [that] Federal right." 18 U.S.C. § 3626(a)(1)(A); *see also id.* at (c)(1). An alleged failure to attain substantial compliance with terms of the Decree therefore cannot serve as a lawful basis for an extension of federal jurisdiction, even where the Decree purports to provide for such an extension.

Plaintiffs' decision to seek an extension of federal jurisdiction without providing a proper legal or factual basis invites legal error. Because Plaintiffs base their motion to extend jurisdiction on the wrong standard, it should be denied. The Decree, with its incorporated Implementation Plan, should not, and cannot, be extended past its current expiration date. Plaintiffs have failed to meet their burden, and their motion should be denied.

**BACKGROUND**

On May 9, 2019, the Court gave final approval to the Consent Decree, ECF 1238, which was subsequently amended by agreement on June 24, 2022 (as amended, the "Decree"). ECF 1557. While the Decree contains a statement that it "complies in all respects with the [PLRA], 18 U.S.C. § 3626(a)," *id.* at 4–5, the Decree contained no findings that the specific prospective relief it required is "narrowly drawn, extends no further than necessary to correct the violation of [a] Federal right, and is the least intrusive means necessary to correct the violation of the Federal right" required by 18 U.S.C. 3626(a)(1)(A) (the "PLRA Findings"). To the contrary—by its terms the Decree reflected the Parties' joint agreement and understanding that no stipulation or findings as to the existence of an ongoing violation of federal rights had been entered or agreed. *See* ECF 1238 at 2 (recognizing that "Defendants deny all Plaintiffs' allegations in this case and maintain the medical and dental care provided to the Plaintiff class is constitutionally adequate.").

The Decree also included a sunset provision, providing that the Decree would terminate automatically on May 9, 2024 "with respect to any provisions of the Decree for which there is no outstanding determination that Defendants are not in substantial compliance." ECF 1557 § IX(B)(5) (the "Sunset Provision").

The Decree contemplated that the Defendants (on behalf of the "Department" or "IDOC") and the Monitor (but not the Plaintiffs) would jointly develop an "Implementation Plan" to "accomplish the obligations and objectives in this Decree." ECF 1557 § IV(A). When the Court approved the Decree, no Implementation Plan had been negotiated or presented for court approval. ECF 1612 at 2. Once approved, however, the "Implementation Plan, and all amendments or updates thereto," would be "incorporated into, and become enforceable as part of this Decree. *Id.* § IV(C).

Defendants filed a proposed plan in late 2021, ECF 1513, and then filed a revised plan in

mid-2022. ECF 1551. Following additional discussion, Plaintiffs and the Monitor demanded the entry of a revised version of the implementation plan that sought to require extensive changes in the Department's operations, prescribed at a minute level of detail. For example, the plan demanded by Plaintiffs and the Monitor required the Department to complete the following tasks:

- Task 1.b: requiring IDOC to use the Monitor's preferred methodology when conducting the workload analysis that will be used for a staffing plan;
- Task 2: requiring IDOC and Southern Illinois University to hire specific numbers of persons at specific levels for auditing, data, quality improvement, and process analysis;
- Tasks 4 and 5: requiring IDOC's organizational chart for its medical program to be structured in a certain way, and dictating responsibility for hiring and firing of medical personnel;
- Task 8: requiring certain functions (training, infection control, chronic care, and quality improvement) to be performed at each facility by staff members dedicated solely to these functions;
- Task 9: requiring new contract with medical vendor to contain provision governing hiring if staffing levels are not met;
- Task 25: requiring 3 information technology staff members to be hired to run a help desk for the electronic medical records system to be implemented;
- Task 26: requiring policies for immunization, cancer screenings, and routine health maintenance that must follow the recommendations from the Centers for Disease Control (CDC) and the United States Preventive Services Task Force (USPSTF);
- Task 29: requiring a 15-step procedure to be implemented to promote medication adherence and contend with nonadherence by individuals in custody;
- Task 31: requiring a 6-step procedure to be implemented covering the release of individuals from custody;
- Task 33: requiring a specific type of software to be purchased for preventable adverse event reporting system;
- Task 34: requiring a preventable adverse event reporting system to be overseen by a system-wide coordinator who will follow Monitor's prescribed duties;
- Task 35: requiring a preventable adverse event reporting system that must follow a specific 6-step process that the Monitor requires;
- Tasks 37 and 38: requiring IDOC to hire or procure by contract a dietician to review all foods in IDOC system for all medical and non-medical issues relating to healthy diets;

- Task 43a: requiring 10 specific steps to follow to set up comprehensive audit process;

- Task 43b: 7 imposing responsibilities for a quality improvement leadership team;

- Task 44: requiring that each facility quality improvement coordinator must receive training by Southern Illinois University as well as one of two other Monitor-approved training modules;

- Task: 53: imposing 8 required areas to improve for sick call process;

- Task 54: imposing 16 required areas to improve for chronic care treatment;

- Task 55: imposing 8 required areas to improve for medication management;

- Task 56: imposing 8 required areas to improve for immunizations, cancer screenings, and routine health maintenance;

- Task 57: requiring a specific TB test;

- Task 60: requiring clinical space and sanitation issues to be managed by dedicated environmental services coordinator;

- Task 67: requiring focus group of facility staff to be used to figure out needs of aged and infirm individuals in custody;

- Task 70: requiring 7 specific parameters to address needs of aged and infirm individuals in custody;

- Task 71: requiring 15 areas of improvement for infirmary care;

- Task 75: requiring IDOC to register with the National Practitioner Data Bank;

- Task 80: requiring mortality review process to include 27 separate components;

- Task 92: imposing 9 components for dental staff orientation;

- Task 94: imposing 6 required areas of improvement for urgent/emergency care; and

- Task 97: requiring detailed "useful life analysis" to be conducted for all medical/dental space.

Defendants objected to the entry of this proposed plan, pointing out that the record did not contain the necessary PLRA Findings, and that the implementation plan proposed by Plaintiffs therefore could not be approved or implemented consistent with the requirements of the PLRA. *See* Order, ECF 1612, at 6.

On February 21, 2023, the Court rejected Defendants' arguments and adopted (with minor modifications) the implementation plan proposed by Plaintiffs and the Monitor. *Id.* at 3–6. In its

4

order approving this implementation plan and making it enforceable as part of the underlying Decree, the Court specifically acknowledged that Plaintiffs' and the Monitor's proposed implementation plan imposed requirements on the Department that would require PLRA Findings to be enforceable. *See id.* at 6 (recognizing "the Court cannot enforce specific reform requirements, such as specific staffing requirements, without" PLRA Findings). The Court recognized that it had "not made narrowness-need-intrusiveness findings required by the PLRA on any … matters that amount to 'prospective relief'." ECF 1612 at 6. The Court's reason for declining to make PLRA findings was practical, rather than legal: "As a practical matter, it will be difficult, if not impossible, to determine the narrowest, least intrusive means of doing something outside a precise factual context. Realistically, the Court cannot determine now the narrowest, least intrusive means of accomplishing the multitude of tasks recited in the implementation plan . . . ." *Id.* Given this concern, the Court declined to take on the task of making PLRA Findings until such a time as Plaintiffs attempted to actually enforce the Decree and the Implementation Plan, cautioning that "any attempt to enforce a provision of the implementation plan, certainly to the extent it concerns a matter such as a particular staffing requirement, will likely require supporting evidence on which the Court can base" PLRA Findings. *Id.* A final version of the approved implementation plan was filed on the docket on August 1, 2023. ECF 1688 (the "Implementation Plan").

On January 3, 2024, the Monitor filed his Seventh Report, ECF 1710, which was unsealed on February 2, 2024, ECF 1723.[1] In this report, the Monitor noted that he had changed his methodology for evaluating compliance with the Decree following the rejection of Defendants' proposed implementation plan and the approval and entry of the Implementation Plan proposed by

---

[1] After reviewing the Seventh Report, Defendants informed the Monitor of serious errors in his work and analysis, as they had done before. *See* IDOC Letter to Dr. Raba, Exhibit A. The Monitor refused to substantively engage with Defendants on these important issues. *See* Dr. Raba Response to IDOC, Exhibit B.

Plaintiffs and the Monitor. ECF 1723 at 5. Where the Monitor previously sought to evaluate Defendants' compliance with the terms of the underlying Decree itself, in his Seventh Report the Monitor disclosed that the "evaluation of Defendant's progress [was] measured in relation to the Implementation Plan since these are the steps necessary to achieve compliance." *Id.* In other words, the Monitor ceased to directly evaluate compliance with the terms of the Decree actually negotiated by the Parties—instead, the Monitor had replaced those negotiated terms with the far more specific terms of the Implementation Plan, which were entered over Defendants' objections, and without the entry of the necessary PLRA Findings. *Id.* at 5. The Monitor assumes (but does not show) that lack of substantial compliance with the Implementation Plan also constitutes a failure to achieve substantial compliance with the underlying Decree itself. ECF 1723 at 5.

As with prior reports from the Monitor, the Seventh Report did not address (a) whether the items it was evaluating could be justified by PLRA Findings, or (b) the extent to which the Department's compliance met the standard set by the United States Constitution. Indeed, the Monitor acknowledges that his "[staffing] analysis does not provide data as to what is minimally required by the Consent Decree or the U.S. Constitution." ECF 1723 at 16. The Monitor also did not address whether the terms of the underlying Decree itself were, or could have been, achieved through means other than those prescribed in the Implementation Plan. *Id.*

On February 12, 2024, Plaintiffs filed a motion to extend the term of the Decree and the Court's jurisdiction for three additional years with respect to "at least 92 provisions of the Consent Decree" based on the Monitor's findings of alleged lack of substantial compliance with respect to those terms. ECF 1727 at 1 (the "Motion"). As the basis for their Motion, Plaintiffs cite the Sunset Provision, § IX(B)(5), which they claim requires the Court to extend any term of the Decree for which the Court has found a lack of substantial compliance by Defendants before May 9, 2024. *Id.* Plaintiffs ask the Court to adopt the Monitor's findings of non-compliance in his Seventh Report,

6

and insist that the Court must extend the term of the Decree on that basis alone. *Id.* at 1–2.

## ARGUMENT

**I.     An extension of the Consent Decree requires the entry of new PLRA Findings for all terms subject to such an extension.**

"[T]he PLRA requires that courts give prison administrators wide latitude to set constitutionally adequate procedures," *Rasho v. Jeffreys*, 22 F.4th 703, 712 (7th Cir. 2022), and "limits the Court's authority to enter relief," *Rasho v. Walker*, 2022 U.S. Dist. LEXIS 129805, at *13–14 (C.D. Ill. July 21, 2022). Among these limitations, the PLRA requires that a "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Rasho*, 22 F.4th at 711 (quoting 18 U.S.C. § 3626(a)(1)(A)). "The PLRA defines 'prospective relief' as 'all relief other than compensatory damages.'" *Rasho v. Walker*, 2022 U.S. Dist. LEXIS 129805, at *12 (C.D. Ill. July 21, 2022) (quoting 18 U.S.C. § 3626(g)(7)). All prison conditions consent decrees therefore fall within the PLRA's definition of "prospective relief." *Id.*; *see also* 18 U.S.C. § 3626(c)(1) ("the court shall not enter or approve a [prison conditions] consent decree unless it" is supported by PLRA Findings.).

Because the Decree is a form of "prospective relief" under the PLRA, the obligations imposed under the Decree can "extend no further" than the Court can justify through the entry of valid PLRA Findings. 18 U.S.C. § 3626(a)(1)(A). In other words, the PLRA limits the power of federal courts "to issue *and maintain* prospective relief absent a violation of a federal right." *Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 657 (1st Cir. 1997) (emphasis added).

One well-established consequence of this principle is that "the prospective-relief provisions of the PLRA apply to [a] motion to extend jurisdiction" over a prison consent decree

7

as a matter of law, whether or not the underlying decree purports to provide for an alternative extension mechanism. *See Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002); *Rasho v. Walker*, 2022 U.S. Dist. LEXIS 129805 (C.D. Ill. July 21, 2022). This Court therefore has no legal basis to extend its jurisdiction over the Decree unless Plaintiffs make two separate showings for each term subject to extension: (a) the existence of an ongoing violation of a federal right, and (b) that any such term is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. Conversely, the alleged failure to achieve substantial compliance with terms of the Implementation Plan and Decree, is not a lawful basis for an extension of federal jurisdiction, even though the Decree purports to provide for such an extension mechanism. *Id*

In *Hallett*, the Ninth Circuit considered an appeal relating to a contested motion to extend federal jurisdiction over a prison conditions consent decree, much like the motion Plaintiffs present here. Like here, the district court in *Hallett* had "approved" a settlement that "resolved Plaintiffs' claims and required Defendants to implement a number of changes in the Prison's health care policies." *Id.* at 738–39. Also like here, the settlement agreement in *Hallett* had "a procedure for extending the court's jurisdiction beyond" the anticipated termination date. *Id.* at 739. Specifically, the *Hallett* settlement provided that the plaintiffs could seek an extension of the court's jurisdiction over "the areas in which [*Hallett* plaintiffs] allege Defendants have not substantially complied with the conditions of" the *Hallett* decree. *Id*. at 740. Consistent with that provision, the *Hallett* plaintiffs moved to extend the settlement based on an alleged failure to achieve substantial compliance with certain terms of the *Hallett* settlement. *Id.* at 732. The *Hallett* district court rejected the motion to extend, holding "that the prospective-relief provisions of the PLRA applied to Plaintiffs' motion to extend jurisdiction," and "that Plaintiffs failed to demonstrate a 'current and ongoing violation' of their constitutional rights." *Id.* at 742.

The *Hallett* plaintiffs appealed, and the Ninth Circuit affirmed. Agreeing with the district court's ruling and reasoning, the Ninth Circuit held that a motion to extend jurisdiction over a consent decree relating to prison conditions may be granted *only* if a plaintiff proves an ongoing violation of a federal right, and also establishes that the terms of the consent decree subject to extension are "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [are] the least intrusive means necessary to correct the violation of the Federal right." *Id.* at 742. The Ninth Circuit confirmed that the *Hallett* settlement properly "expired by its own terms" because plaintiffs failed to prove "that the Prison's mental health and dental services violated the Eighth Amendment." *Id.* at 744.

Recently, the federal court presiding over the consent decree in *Rasho v. Walker* came to the same conclusion as in *Hallett*, ruling against a plaintiff class that made the same argument Plaintiffs make here.[2] *See* 2022 U.S. Dist. LEXIS 129805 (C.D. Ill. July 21, 2022). In *Rasho*, the court considered a motion to extend a consent decree relating to mental health care in Illinois prisons. *Id.* at *3. As in this case, the consent decree in *Rasho* "[p]urport[ed] to authorize an extension of jurisdiction based solely on an alleged lack of substantial compliance" with the terms of that decree. *Id.* at *13. Also as in this case, *Rasho* plaintiffs moved to extend the court's jurisdiction over that decree based solely on findings of alleged non-compliance with the terms of the *Rasho* decree by the consent decree monitor. *Id.* at *7. The *Rasho* court denied this motion, reasoning that "[e]ven though the [*Rasho* consent decree] purports to authorize an extension of jurisdiction based solely on an alleged lack of substantial compliance, [the] PLRA still limits the Court's authority to enter relief." *Id.* at *13–14. Rejecting *Rasho* plaintiffs' argument that a

---

[2] Plaintiffs are represented by the same attorney who represented the plaintiffs in *Rasho* and who agreed in that case that a consent decree extension requires new PLRA findings. *See* Exhibit C at 18 (COURT: "So…would you agree that the Court couldn't extend its jurisdiction under the PLRA without making new PLRA findings? The statute seems to require that. MR. HIRSHMAN: That is correct.").

9

monitor's opinion regarding substantial compliance with the terms of a consent decree are sufficient to satisfy the PLRA standard, the *Rasho* court was "compelled to deny Plaintiffs' Motion as they do nothing to persuade the Court that the PLRA findings are met." *Id.* at *15.

Not only were *Hallett* and *Rasho* rightly decided, those decisions are consistent with the plain text and intent of the PLRA. As the PLRA makes clear, PLRA Findings are required any time a court either (1) enters or approves a "consent decree" (18 U.S.C. § 3626(c)(1)) or (2) otherwise orders "prospective relief" (18 U.S.C. § 3626(a)(1)), defined as "all relief other than compensatory monetary damages" (18 U.S.C. § 3626(g)(9)). Entering an order extending federal court jurisdiction over a consent decree plainly falls into both categories. Moreover, requiring PLRA Findings as a prerequisite to extending federal jurisdiction is consistent with the PLRA's purpose of placing "significant restrictions on . . . maintaining prospective relief." *See Green v. Peters*, 2002 U.S. Dist. LEXIS 11671 at *16–17 (N.D. Ill. June 27, 2002); *see also Inmates of Suffolk Cty. Jail*, 129 F.3d at 657 (PLRA limits court's ability to "maintain prospective relief").

**II.   Plaintiffs' motion to extend is legally and factually insufficient and contrary to the PLRA.**

The Court should deny Plaintiff's Motion because it fails to address the proper legal standard, and fails to provide a factual record showing that Defendants' alleged lack of substantial compliance with specific provisions of the Implementation Plan amount to a violation of federal law and that those provisions are the least intrusive means necessary to remedy a federal violation. The Court also should decline Plaintiff's effort to obtain an extension of federal jurisdiction without the required PLRA Findings.

**A. Plaintiffs fail to present a record sufficient to justify their motion to extend.**

Plaintiffs ask the Court to extend its jurisdiction for three years based solely on the Monitor's view that Defendants are not in substantial compliance with the Decree, and more

particularly, based on detailed provisions of the Implementation Plan that have never been vetted under the PLRA. ECF 1727 at 11. Plaintiffs do not present any facts showing that the alleged lack of substantial compliance with those detailed provisions amounts to a violation of *federal rights*, as required by the PLRA. Plaintiffs rely entirely on the Monitor's Seventh Report (which is hearsay, *see Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 221 (7th Cir. 2021)), but the Monitor's conclusions do not show or even address whether Defendants' alleged failure to fully comply with detailed provisions of the Implementation Plan constitute a violation of federal law, including the Eighth Amendment. As noted, the Monitor acknowledged that his own staffing analysis does not provide data based on what may be minimally required by the U.S. Constitution. ECF 1723 at 6.

Plaintiffs' Motion and the Monitor's Seventh Report also do not demonstrate that the specific terms Plaintiffs wish to extend are "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [are] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Plaintiffs base their Motion entirely on the Monitor's allegation that Defendants are not in substantial compliance with the Decree as implemented in the Implementation Plan, ECF 1727 at 11, *see also* ECF 1723 at 5, but Plaintiffs make no effort to show that any of those provisions are narrowly drawn and constitute the least intrusive means necessary to correct a violation of a federal right. In fact, members of the monitoring team have acknowledged that some of the requirements even go above the accepted standard of care, a standard above the least intrusive means to which the terms of the Decree must be limited. *See* Exhibit D (email from dental consultant on monitoring team, acknowledging that use of lead apron with thyroid collar, although required by consent decree, exceeds the standard of dental care in Illinois). Plaintiffs' failure to address and meet the required PLRA standard is insufficient as a matter of law to justify the extension of federal jurisdiction over a prison consent

11

decree, *Hallett*, 296 F.3d at 743; *Rasho*, 2022 U.S. Dist. LEXIS 129805 at *13–14, and fatal to their Motion.

### B. Plaintiffs' arguments as to why the PLRA does not apply here are unavailing.

Plaintiffs raise two arguments as to why they need not support the entry of new PLRA Findings to prevail on their Motion to Extend. Neither are sufficient to justify the relief they seek.

*First*, Plaintiffs point to the Decree's stipulation that it "complies in all respects with the [PLRA], 18 U.S.C. § 3626(a)," ECF 1557 at 4–5, and the fact that Defendants agreed to the initial entry of the Decree containing this stipulation. *See* ECF 1727 at 10. Plaintiffs ignore that the Decree expressly recognizes that Defendants did *not* agree to the existence of any ongoing violations of federal law—rather Defendants expressly denied "all Plaintiffs' allegations in this case and maintain the medical and dental care provided to the Plaintiff class is constitutionally adequate." ECF 1557 at 2. However, the Seventh Circuit has held that a prison conditions consent decree cannot be held to contain valid PLRA findings where (as here) it contains both (a) a statement "that it complied with the PLRA," and (b) "language denying liability." *Doe v. Cook Cty.*, 798 F.3d 558, 565 (7th Cir. 2015). This holding is binding on this Court, and requires the rejection of Plaintiffs' argument to the contrary. Moreover, even if the Court declines to follow the binding precedent in *Doe*, the stipulation in the Decree could not relate to the Implementation Plan, which was only proposed and approved by the Court (over Defendants' objection) in 2023 without any PLRA Findings. That aside, this stipulation was entered and approved in 2019 and 2022—it does not and cannot address whether ongoing violations of federal law exist in 2024, a necessary component of the PLRA Findings required for an extension to be granted. *See Hallett*, 296 F.3d at 743; *Rasho*, 2022 U.S. Dist. LEXIS 129805 at *13–14.

*Second*, Plaintiffs try to change the topic by asserting that Defendants "could have tried to negotiate for and obtain language parallel to that in the PLRA in order to extend the Decree, but

12

they did not." ECF 1727 at 10–11. Plaintiffs say that no new PLRA Findings are necessary because the Decree "makes no provision for a hearing to determine compliance or other proceedings in order to extend the Decree," and "does not in any way reference the PLRA or incorporate any of its familiar language about 'findings.'" ECF 1727 at 10. "[I]nstead," Plaintiffs say, the Decree "sets out its own simple and clear (and quite different) process by which the Court can extend the Decree." *Id.* This argument, however, is refuted by the decisions in *Hallett* and *Rasho*, both of which hold that a prison conditions consent decree may not be extended absent new PLRA Findings—even where the consent decree purports to provide just such an extension mechanism. *See Hallett*, 296 F.3d at 743; *Rasho*, 2022 U.S. Dist. LEXIS 129805 at *13–14.

Plaintiffs' extension Motion also cannot be justified as mere "enforcement" or "implementation" of previously entered relief. A federal court cannot "enforce" or "implement" a consent decree without first confirming that the decree being "enforced" itself complies with the PLRA. *See Doe*, 798 F.3d at 564–65. In *Doe*, the Seventh Circuit made clear that an order to enforce a prison conditions settlement must include new PLRA Findings if the underlying settlement agreement being enforced does not already contain proper PLRA Findings. *Id.* If the agreement being enforced *lacks* proper PLRA Findings, new findings are necessary for "enforcement" to proceed. *Id.* (rejecting notion that "enforcement" did not require new PLRA Findings because the "judge did not . . . make any of the findings that § 3626 requires" with respect to the underlying settlement agreement).

Here, the Court has already recognized that there are no valid PLRA Findings as to the terms of the Implementation Plan. *See* ECF 1612 at 6 ("the Court has not made narrowness-need-intrusiveness findings required by the PLRA on any … matters that amount to 'prospective relief'."). The Court therefore cannot extend its jurisdiction over such terms under the guise of a motion to enforce. *See Doe*, 798 F.3d at 564–65. As the district court noted in *Rasho*, "[i]n *Doe*,

13

the Seventh Circuit made clear that an order to enforce a prison conditions settlement must include new PLRA Findings if the underlying settlement agreement being enforced does not already contain proper PLRA Findings. If the agreement being enforced lacks proper PLRA Findings, new findings are necessary for 'enforcement' to proceed." *Rasho*, 2022 U.S. Dist. LEXIS 129805, at *14. The same result applies here.

**III.** **Even if Plaintiffs file a new extension motion addressing the proper standard, they will be unable to justify extending specific terms as a matter of law.**

Even if Plaintiffs file a new motion to extend jurisdiction applying the proper standard, their request to extend the Court's jurisdiction over Decree terms requiring detailed reforms to prison operations would almost certainly fail as a matter of law. In its *Rasho* decision, the Seventh Circuit held that a prison conditions consent decree may not impose an excessive degree of specificity. Vacating an order imposing requirements that were at least as detailed as those at issue here, the Seventh Circuit held that the *Rasho* order went "well beyond these bounds by prescribing specific staffing levels and treatment timelines without evidence that such requirements go no further than necessary to correct an Eighth Amendment violation." *Rasho*, 22 F.4th at 706. Cautioning against conflating "what is constitutionally *adequate* . . . with what is constitutionally *required*," the Seventh Circuit reaffirmed its holding in *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012), against excessively specific relief in the prison context. For example, the Seventh Circuit rhetorically inquired, "[c]ould IDOC have provided constitutionally adequate care with 85 Psychiatric Providers instead of 85.5? What about using 103 Behavioral Health Technicians but only 22 Staff Assistants? There is no evidence in the record establishing that these specific numbers correspond to the constitutional floor, yet the PLRA demands that injunctive relief 'extend no further' than necessary to remedy the constitutional violation." *Rasho*, 22 F.4th 703, at 712–13. This "degree of specificity," the Seventh Circuit held, "contravenes the PLRA's

least-intrusive-means requirement" and constituted "an independent reversible error." *Id.* at 712, 714.

The Seventh Circuit's *Rasho* ruling demonstrates why Plaintiffs cannot justify an extension of the Decree, and particularly the terms found in the Implementation Plan. The Decree, and especially the Implementation Plan, are filled with precise, granular requirements that far exceed anything Plaintiffs could justify under the PLRA, *Westefer*, and *Rasho*. As the Court has already observed, "[a]s a practical matter, it will be difficult, if not impossible, to determine the narrowest, least intrusive means of doing something outside a precise factual context. Realistically, the Court cannot determine now the narrowest, least intrusive means of accomplishing the multitude of tasks recited in the implementation plan . . . ." ECF 1612 at 6. Because *Rasho* and *Hallett* require that findings be made now, this "practical" concern will almost certainly foreclose Plaintiffs from making the showing they are required to make to extend the Decree because *Rasho*. *Id.*

While Plaintiffs' extension Motion is insufficient to justify the relief they seek, Defendants continue to hold out hope that a negotiated resolution of this issue is possible. In October of 2023, after Plaintiffs first broached the topic of an extension, Defendants responded with the letter Plaintiffs attached to their extension Motion previewing Defendants arguments made herein, writing:

> [o]ur preference is for the Parties to agree to an extension of the Consent Decree after negotiating a revised Implementation Plan and Amended Consent Decree that satisfy the provisions of the Prisoner Litigation Reform Act. If the parties are able to do so, the Department will agree to the full three-year extension requested without the need to litigate substantial compliance.

ECF 1727-1. This offer remains outstanding today.

## CONCLUSION

For all these reasons, this Court should deny Plaintiffs' Motion to Extend Consent Decree Pursuant to Section IX.B.5.

Dated: March 22, 2024                     Respectfully submitted,

R. Douglas Rees                           Defendants Latoya Hughes, *et al*.
Isaac Freilich Jones
Michael D. Arnold                         KWAME RAOUL
Assistant Attorney General                Illinois Attorney General
Office of the Illinois Attorney General
115 S. La Salle Street                    By: s/ *Michael D. Arnold*
Chicago, Illinois 60603
(312) 814-3720
*richard.rees@ilag.gov*
*isaac.freilichjones@ilag.gov*
*michael.arnold@ilag.gov*

16