CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 24-1998 & 24-2210

DON LIPPERT, *et al.*,

*Plaintiffs-Appellees*,

*v.*

LATOYA HUGHES, *et al.*,

*Defendants-Appellants*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cv-4603 — **Jorge L. Alonso**, *Judge*.

ARGUED NOVEMBER 13, 2025 — DECIDED APRIL 2, 2026

Before EASTERBROOK, LEE, and MALDONADO, *Circuit Judges*.

LEE, *Circuit Judge*. A class of prisoners in the custody of the Illinois Department of Corrections sued the department's director, its director of health services, and the governor of Illinois in their official capacities (collectively, "IDOC") for providing inadequate medical and dental care in violation of the Eighth Amendment. The class was subsequently certified, and the parties settled the case and agreed to the entry of a

consent decree, which, among other things, required IDOC to create an implementation plan to rectify the systemic deficiencies identified in the decree. After several years of protracted litigation, the district court approved an implementation plan that was incorporated into the consent decree.

As time went on, IDOC filed several motions under Fed. R. Civ. P. 60(b) asking the district court to modify the consent decree in various ways. In turn, Plaintiffs filed a motion to extend the consent decree beyond the original expiration date. IDOC appealed the various rulings that went against it in two separate appeals, and Plaintiffs cross-appealed (the cross-appeal was subsequently dismissed). One notable issue IDOC raises is whether the district court, having already approved the implementation plan, must make certain findings required by the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1)(A), before enforcing any of its provisions. IDOC argues that this is the case, presumably believing that the district court's various orders leave this question in doubt. But, as we read this record, the district court in fact agreed with IDOC on this issue. Turning then to IDOC's two appeals, we conclude that we lack jurisdiction to address certain issues raised in the first appeal and affirm the remainder.

## I

The certified class consists of IDOC prisoners with serious medical and dental needs. They sued IDOC, alleging that it failed to provide necessary medical and dental care in violation of the Eighth Amendment. Eventually, the parties arrived at a settlement and agreed to the entry of a consent decree; the district court approved the consent decree in 2019 and amended it in 2022.

Its purpose, the consent decree states, is to ensure that IDOC "implements sufficient measures … to provide adequate medical and dental care to those incarcerated in the Illinois Department of Corrections with serious medical or dental needs while ensuring the availability of necessary services, supports and other resources to meet these needs." As part of the consent decree, the parties also stipulated that it "complies in all respects with … 18 U.S.C. § 3626(a)."

To achieve its broad purpose, the consent decree laid out a host of requirements and standards that IDOC had to meet in providing health and dental services. Rather than mandating specific detailed actions, however, the consent decree imposed rather general benchmarks and goals such as: providing "access to an appropriate level of primary, secondary, and tertiary care"; "implement[ing] changes in … [i]nitial intake screening"; the "development and implementation … of a comprehensive set of health care policies"; ensuring a certain minimum qualification for physicians; providing "sufficient private and confidential sick-call areas in all of its facilities"; maintaining various medical records; providing sufficient medical professionals to provide necessary services; and providing "[r]outine and regular dental cleanings" to "all prisoners at every IDOC facility."

To put flesh on the bones, the consent decree required IDOC, with the assistance of an "independent and impartial Monitor," to submit an implementation plan to accomplish the decree's mandates. The duties of the monitor included "assisting the IDOC in assessing staffing needs and assisting IDOC with the preparation of an initial staffing plan" as well as "providing input on the Defendants' Implementation Plan." The monitor also was tasked with "evaluat[ing]

Defendants' compliance with [the consent decree], including identifying actual and potential areas of substantial compliance, partial compliance and non-compliance and bringing these areas to the Parties' attention."

The implementation plan was due within six months from the monitor's selection and subject to the monitor's review. Once finalized and approved, the implementation plan would become part of the consent decree.

The monitor was selected in March 2019, and despite the six-month deadline, IDOC did not submit the implementation plan until December 2021. The monitor then reviewed the plan, found that the plan failed to comply with the consent decree in multiple ways, and made detailed recommendations as to each issue.

In response, IDOC argued that, in order for the district court to rule in the monitor's favor and adopt any particular recommendation, § 3626(a)(1)(A) of the PLRA requires the court to find that IDOC's proposed approach violated federal law and the monitor's recommendation was the least intrusive means necessary to correct the violation.[1] As the months

---

[1] Section 3626(a)(1)(A) provides in relevant part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(A).

passed, IDOC did not address the deficiencies identified by the monitor, and, on June 22, 2022, Plaintiffs filed a motion asking the court to find IDOC in contempt. The court granted that motion on August 5, 2022.

Then, after the parties and the monitor narrowed their disputes somewhat, they presented the remaining issues to the court for resolution. In short, the monitor believed that many of IDOC's proposals were too vague and failed to identify specific steps IDOC would take to satisfy the consent decree requirements. IDOC disagreed and maintained its argument that, before rejecting its proposal in favor of the monitor's recommendations, the district court had to make the findings required by § 3626(a)(1)(A) for each issue.

The district court was clearly frustrated with IDOC's refusal to engage with the monitor's recommendations, noting that "[t]he disputes in the comment threads [of the proposed implementation plan] were so numerous that defendants were either unable or unwilling to provide substantial rebuttals including counterproposals to the Monitor's proposed changes." This, in the court's view, "basically left [it] to choose between defendants' version and the Monitor's, without much to provide grounds for the decision either way."

Given the state of things, the district court concluded that "the only fair and workable option at this point is to accept the Monitor's proposed edits to defendants' draft [plan]." And so, it adopted essentially all of the monitor's recommendations, observing:

> Accepting the Monitor's recommendations as prima facie evidence of how to implement the reforms necessary to achieve compliance with the consent decree

> seems like an appropriate starting point—and defendants will not be heard to complain about any unfairness they may purport to find in it, given that the Court has held them in contempt for failing to meet their contractual obligations with regard to the implementation plan.

At the same time, recognizing its obligations under § 3626(a)(1)(A), the district court put the parties "on notice that any attempt to enforce a provision of the implementation plan, certainly to the extent it concerns a matter such as a particular staffing requirement, will likely require supporting evidence on which the Court can base findings meeting the PLRA's narrowness-need-intrusiveness requirements." The court then ordered the parties to submit a revised final implementation plan consistent with its order.

IDOC complied, and, on August 1, 2023, the parties filed a joint motion for entry of the implementation plan to become part of the consent decree, which the court granted. The joint motion did note, however, that the plan was being entered over IDOC's objection that the district court had failed to comply with § 3626(a)(1)(A) with regard to certain specified plan terms.

Shortly thereafter, IDOC filed several motions to modify the consent decree under Fed. R. Civ. P. 60(b). First, IDOC asked the court to strike from the consent decree the prior stipulation that the consent decree had complied "in all respects with … § 3626(a)(1)(A)." The court denied the motion.

Second, IDOC filed a motion requesting that the court excise the implementation plan from the consent decree or, alternatively, terminate the implementation plan altogether

based on the court's failure to make the necessary findings under § 3626(a)(1)(A). The court reserved ruling on the former and denied the latter without prejudice.

Meanwhile, as the consent decree's expiration approached, Plaintiffs moved to extend the consent decree, contending that IDOC had failed to substantially comply with its obligations under it.[2] The district court agreed, and, after making numerous findings that IDOC had failed to live up to its obligations under the consent decree, the court extended the term to May 9, 2027. Each of these three rulings are the subject of IDOC's first appeal.

---

[2] Section IX.B.5 of the amended consent decree states (emphasis added):

> This Decree and the Court's jurisdiction over the Decree and underlying case shall terminate five (5) years after the Effective Date, with respect to any provisions of the Decree for which there is no outstanding determination that Defendants are not in substantial compliance. **If the Court determines that Defendants are not in substantial compliance with any provisions of the Decree at any time during the five (5) year period of the Decree, the Court's jurisdiction with respect to such provisions shall continue** for the remainder of the five (5) year period or for a period to be determined by the Court of not more than three (3) years from the date of the Court's finding the Defendants are not in substantial compliance. If after eight (8) years, the Court determines that the Defendants have failed to come into substantial compliance with respect to one or all provisions of the Decree, the Court's jurisdiction with respect to such provisions shall continue for a period of not more than two (2) additional years for that particular provision(s). In any event, this Decree shall terminate no later than ten (10) years after its Effective Date.

This left IDOC's motion under Rule 60(b) to completely excise the implementation plan from the consent decree. In IDOC's view, the implementation process had strayed far afield of what the parties had envisioned when they agreed to the consent decree. After reviewing the procedural history, the district court agreed. For example, the court recognized that the consent decree had anticipated a process where IDOC would take the lead in creating the implementation plan while the monitor played more of a supporting role. Instead, the way things played out, the court adopted almost all of the monitor's recommendations (which were numerous) over IDOC's objections. Thus, the district court agreed with IDOC that there was a significant change in circumstances that warranted modification of some sort.

In the court's view, however, IDOC's request to remove the implementation plan entirely from the consent decree far exceeded what was needed. At the same time, the district court acknowledged, it "cannot enforce the requirements of the implementation plan against defendants without making the requisite PLRA findings." "To the extent that the consent decree, as drafted, suggests otherwise," the court concluded, "a modification is appropriate."

Unfortunately, Plaintiffs had not provided a counterproposal, which left the court "to fashion an appropriate modification on its own." And, after weighing various factors, the district court decided to amend § IV.C of the consent decree to state:

> The Implementation Plan, and all amendments or updates thereto, shall become enforceable as part of this Decree, provided that the Court makes any factual

findings that may be required by the PLRA prior to enforcement of its terms.

This, the court reasoned, struck the proper balance between providing IDOC the requisite flexibility to implement reforms and allowing Plaintiffs to demonstrate that a particular reform is necessary, narrowly drawn, and the least intrusive means to correct the harm. IDOC's second appeal challenges this ruling.

**II**

Turning to first principles, we must confirm our own jurisdiction. Federal appellate jurisdiction is generally limited to reviewing "final decisions of the district courts." 28 U.S.C. § 1291. Section 1292(a)(1), however, grants us jurisdiction to review a district court's interlocutory order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

"[W]e approach the § 1292(a)(1) exception 'somewhat gingerly lest a floodgate be opened' that would deluge the appellate courts with piecemeal litigation." *Albert v. Trans Union Corp.*, 346 F.3d 734, 737 (7th Cir. 2003) (quoting *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 481–82 (1978)). Thus, this circuit "has repeatedly held that it will look beyond labels such as 'clarification' or 'modification' to consider the actual effect of the order." *Gautreaux v. Chi. Hous. Auth.*, 178 F.3d 951, 956–57 (7th Cir. 1999) (citations omitted).

Under our caselaw, § 1292(a)(1) imposes two requirements. *Id.* at 957. First, an interlocutory order qualifies as "a modification (however labeled)" "only when a court substantially alters the pre-existing legal relationship of the parties."

Case: 1:10-cv-04603 Document #: 2088 Filed: 04/24/26 Page 10 of 15 PageID #:38263
Case: 24-2210 Document: 00714742479 Filed: 04/24/2026 Pages: 15



*Id.* (citation omitted). Second, "it must be apparent or obvious that [the] order has such an effect before § 1292(a)(1) jurisdiction will be proper." *Id.* (citation omitted).

We lack jurisdiction to review two of the three rulings that form the grounds for IDOC's first appeal. IDOC's appeal of the district court's denial of its request to strike the stipulation from the decree does not satisfy § 1292(a)(1) because, although the stipulation was a term in the consent decree, it was not itself an injunction. *See, e.g.*, *Bogard v. Wright*, 159 F.3d 1060, 1063 (7th Cir. 1998) (finding a lack of jurisdiction over the grant of extending a monitor because the "appointment of the monitor was not itself an injunction, although it was a provision in an equitable decree."). Moreover, given that the parties assented to the stipulation as part of the consent decree, it is not "apparent or obvious" that the order denying IDOC's request to strike the stipulation substantially altered "the pre-existing legal relationship of the parties." *See Gautreaux*, 178 F.3d at 957.

We also lack jurisdiction over IDOC's appeal of the district court's order extending the term of the consent decree. In granting the extension, the court merely applied § IX.B.5 of the consent decree that not only granted the court with the authority to extend the consent decree but laid out the precise terms and limitations for doing so. And, because the parties agreed to this section when the consent decree was entered, it is not apparent that the extension substantially altered the parties' pre-existing legal relationship. *See, e.g.*, *Bogard*, 159 F.3d at 1063.

As for the remaining issues on appeal, our jurisdiction is sound. IDOC appeals the district court's denial of its motion to modify the consent decree by terminating the

Case: 1:10-cv-04603 Document #: 2088 Filed: 04/24/26 Page 11 of 15 PageID #:38264
Case: 24-2210 Document: 00714742479 Filed: 04/24/2026 Pages: 15



implementation plan and the court's denial of its motion to excise the plan from the decree. Both requests, if granted, would have substantially altered the pre-existing relationship between the parties; therefore, § 1292(a)(1) is satisfied. *See Jones-El v. Berge*, 374 F.3d 541, 544 (7th Cir. 2004).

Because IDOC's objection to both orders is premised on a common theme—the district court's failure to make the requisite findings under § 3626(a)(1)—we will consider the two in tandem.

**III**

We review the denial of relief from judgment under Rule 60(b) for abuse of discretion. *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 263 (1978). Likewise, "[w]e evaluate both the district court's grant of injunctive relief and the scope of that relief for abuse of discretion." *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011) (citations omitted). But we adopt the court's factual findings unless clearly erroneous. *See Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 840 (7th Cir. 2021). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (citation modified).

The Supreme Court has set forth a two-part test to determine whether modification of a consent decree is warranted under Rule 60(b). *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992). First, the movant "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Id.* at 383. The movant may meet its threshold burden by showing "a significant change either in factual

conditions or in law." *Id.* at 384. Second, if the movant satisfies this initial burden, "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383.

Faithfully applying *Rufo*, the district court first found that IDOC had shown a significant factual change in circumstances. Although the consent decree had designated IDOC as the primary drafter of the implementation plan (with the monitor providing assistance), the implementation plan adopted by the court was based predominantly on the monitor's opinion and recommendations. As the court put it, "although the parties intended for the implementation plan to be 'create[d]' by defendants," after IDOC failed to address the monitor's concerns, "the plan was essentially rewritten by the Monitor and approved by the Court in its revised form." On this record, we cannot say that the district court's finding of changed circumstances was clearly erroneous.

Moving to the next step, the district court held that complete removal of the implementation plan from the consent decree (as IDOC had requested) was excessive and not suitably tailored to the change in circumstances. Plaintiffs now contend that IDOC waived any objection to maintaining the plan by joining the motion to enter it. But this is the first time that Plaintiffs have offered this argument, thereby forfeiting it on appeal. *See DM Trans, LLC v. Scott*, 38 F.4th 608, 619 (7th Cir. 2022) (issues and arguments raised for the first time on

appeal are forfeited). And, in any event, IDOC preserved its objection in the joint motion as noted above.[3]

Turning to the merits, the district court recognized that the current situation was due, in large part, to "defendants' flouting—for years—their obligation under the consent decree … to the point that the Court was forced to find them in contempt." It had accepted the monitor's recommendations (at last, on a preliminary basis) given "defendants' refusal to make a serious attempt at an implementation plan." And the court was clearly concerned that excising the implemention plan *in toto* would leave the consent decree rudderless.

That said, the district court correctly acknowledged that "[d]efendants' history of noncompliance does not blunt the requirements of the PLRA." Therefore, it fashioned a middle ground by amending § IV.C of the consent decree in the manner described, in essence requiring Plaintiffs to establish the § 3626(a)(1)(A) factors—that any prospective relief be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [] the least intrusive means necessary to correct the violation of the Federal right"—before enforcing any term in the implementation plan. This, the court reasoned, would respect IDOC's need for flexibility to "adopt and implement policies that balance prison resources,

---

[3] Even if Plaintiffs' argument were not forfeited, their reliance on *Association of Community Organizations for Reform Now (ACORN) v. Edgar*, 99 F.3d 261 (7th Cir. 1996), is misplaced. In contrast to IDOC's explicit preservation of its objection to the court's adopting portions of the implementation plan in violation of § 3626(a)(1)(A), *ACORN* involved a standard refusal to acknowledge wrongdoing in a consent decree, which we held was insufficient to preserve the right to appeal the decree as a whole. *See id.* at 262.

safety concerns, and inmate health," *Rasho v. Jeffreys*, 22 F.4th 703, 713 (7th Cir. 2022), while preserving Plaintiffs' ability to demonstrate a reform's indispensability.

Despite the amendment's language, IDOC insists that the district court erred by failing to make the § 3626(a)(1)(A) findings when denying its Rule 60(b) motions. But IDOC conceded at oral argument that, given the § IV.C amendment, the implementation plan imposes no binding obligations upon it. And Plaintiffs agreed, admitting that they are not entitled to enforce any part of the plan unless § IV.C is satisfied.

This rather peculiar posture stands in stark contrast to the cases upon which IDOC relies. *See Doe v. Cook County*, 798 F.3d 558, 566 (7th Cir. 2015) (overturning a district court's determination that the requisite PLRA findings were unnecessary); *Rasho*, 22 F.4th at 712 (vacating a permanent injunction for exceeding the least-intrusiveness requirement of the PLRA); *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (same). During oral argument, IDOC clarified that all it was really seeking is a clear statement that the implementation plan is not enforceable unless and until the district court makes the findings that § 3626(a)(1)(A) requires. As we see it, the district court's modification does just that.

* * *

We DISMISS for lack of jurisdiction IDOC's appeal of the district court's order denying the motion to strike the stipulation from the consent decree and the order granting Plaintiffs' motion to extend the consent decree. We AFFIRM the district court's order denying in part and granting in part IDOC's motion to excise the plan from the consent decree or, in the alternative, to modify the consent decree. Because we affirm the

district court's modification of the consent decree, we also AFFIRM the district court's order denying IDOC's motion to terminate the implementation plan. We REMAND for further proceedings consistent with this opinion.